UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| CHASE MORTIMER, Individually and on Behalf of All Others Similarly Situated,<br><br>                      Plaintiff,<br><br>    vs.<br><br>DIPLOMAT PHARMACY, INC., BRIAN T. GRIFFIN, JEFFREY PARK, JOEL SABAN, and ATAL KAVTHEKAR,<br><br>                      Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Chase Mortimer, individually and on behalf of all others similarly situated, alleges the following based upon the investigation of Plaintiff's counsel, which included a review of U.S. Securities and Exchange Commission ("SEC") filings made by Diplomat Pharmacy, Inc. ("Diplomat" or the "Company"), securities analyst reports and advisories, press releases, media reports, conference call transcripts, and other public statements issued by, or about, the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a securities class action brought on behalf of all purchasers of Diplomat publicly traded securities between February 26, 2018 and February 21, 2019, inclusive (the "Class Period"), seeking to pursue remedies under and pursuant to §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b) and 78t(a)] and SEC Rule 10b-5 [17 C.F.R. § 240.10b-5]. Defendants include Diplomat and certain of its current and former senior executives.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to §§ 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5). This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 27 of the Exchange Act. This is a civil action arising under the laws of the United States of America.

3. Venue is proper in this District pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as Diplomat conducts business and has several offices and locations in this District, certain defendants reside in this District, and the alleged misstatements entered and resulting damages took place within this District.

- 2 -

4. In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications, and the facilities of the national securities exchange.

**PARTIES**

5. Plaintiff Chase Mortimer, as set forth in the accompanying certification, incorporated herein by reference, purchased Diplomat common stock during the Class Period and has been damaged thereby.

6. Defendant Diplomat purports to operate as an independent specialty pharmacy in the United States. The Company is a Michigan corporation with locations in Buffalo Grove and Bannockburn, Illinois. Throughout the Class Period, Diplomat common stock traded on the New York Stock Exchange, an efficient market, under the ticker symbol "DPLO." As of November 5, 2018, Diplomat had more than 74 million shares of common stock issued and outstanding.

7. Defendant Brian T. Griffin ("Griffin") has served as the Company's Chief Executive Officer ("CEO") and Chairman of its Board of Directors (the "Board") since June 4, 2018. During his tenure as Diplomat's CEO, Griffin participated in conference calls with Diplomat investors and analysts.

8. Defendant Jeffrey Park ("Park") served as the Company's Interim CEO from January 5, 2018 until May 2018 and was a member of the Company's Board of Directors throughout the Class Period. On February 28, 2019, Diplomat announced that the Company's board of directors had accepted Park's resignation, effective February 22, 2019, the same day the Company announced the impairment charge and delay in releasing financial results. During his tenure as Diplomat's CEO, Park participated in conference calls with Diplomat investors and analysts.

9. Defendants Joel Saban ("Saban") was, from the beginning of the Class Period until the time he departed from the Company on January 4, 2019, Diplomat's President. During his tenure as Diplomat's President, Saban participated in conference calls with Diplomat investors and analysts. Saban is a resident of Buffalo Grove, Illinois.

10. Defendant Atul Kavthekar ("Kavthekar") is, and was throughout the Class Period, the Company's Chief Financial Officer ("CFO") and Treasurer. Kavthekar temporarily served as the Company's interim CEO from May 2018 until defendant Griffin was hired on June 4, 2018. During his tenure as Diplomat's CFO and CEO, Kavthekar participated in conference calls with Diplomat investors and analysts.

11. Defendants Griffin, Park, Saban, and Kavthekar are herein referred to as "Individual Defendants." The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

12. Each of the Individual Defendants was directly involved in the management and day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, operational trends, controls, markets, and present and future business prospects, as alleged herein. In addition, the Individual Defendants were involved in drafting, producing, reviewing, and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, the false and misleading statements being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

13. As officers and controlling persons of a publicly-held company whose common stock is registered with the SEC pursuant to the Exchange Act and trades on the NYSE, which is governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to promptly disseminate accurate and truthful information with respect to the Company's

business, operations, operational trends, controls, markets, and present and future business prospects. In addition, the Individual Defendants each had a duty to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. Defendants' false and misleading misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

14. The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to, and did, control the content of the various SEC filings, press releases, and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading before or shortly after their issuance and had the ability and/or opportunity to cause them to be corrected or prevent their issuance. Each Individual Defendant is responsible for the accuracy of the public statements detailed herein and, accordingly, is primarily liable for the representations contained therein. Defendants are liable for making materially false statements and failing to disclose adverse facts known to them about Diplomat. Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Diplomat shares was a success, as it: (i) deceived the investing public regarding Diplomat's business metrics and financial prospects; (ii) artificially inflated the prices of Diplomat securities; and (iii) as a result, caused Plaintiff and other members of the Class to purchase Diplomat shares at fraud-inflated prices.

## SUBSTANTIVE ALLEGATIONS

**Background**

15. Diplomat is an independent provider of specialty pharmacy services. The Company operates as two reporting segments. The Specialty segment provides solutions to address the dispensing, delivery, dosing, and reimbursement of clinically intensive, high-cost specialty drugs

and a wide range of applications, and the Pharmacy Benefit Management ("PBM") segment offers services designed to help customers manage the complexity of their prescription drug programs.[1] The Company dispenses pharmaceuticals to patients in all U.S. states.

16. In late 2017, the Company entered the pharmacy benefit management ("PBM") business through its acquisitions of Pharmaceutical Technologies, Inc., doing business as National Pharmaceutical Services ("NPS"), and LDI Holding Company, LLC, doing business as LDI Integrated Pharmacy Services ("LDI"), in November and December 2017, respectively.

17. Diplomat's PBM segment purports to "provide[] services designed to help [its] customers reduce the cost and manage the complexity of their prescription drug programs."

18. On April 30, 2018, Diplomat launched CastiaRx, the Company's rebranded PBM, which was intended to unite the PBM capabilities of recently acquired LDI and NPS with Diplomat's specialty pharmacy and infusion business. Albert Thigpen, former senior executive of LDI prior to its acquisition by Diplomat, was named President and Chief Operating Officer of CastiaRx.

**Defendants' False and Misleading Class Period Statements**

19. On February 26, 2018, the Company announced its fourth quarter and 2017 year-end financial results. In the announcement, Defendant Park commented that the Company's "strong performance for the fourth quarter and full year reflects the successful execution of our strategy, as well as the actions we took to position Diplomat for long-term growth, including entering the PBM market and bolstering our bench of talent." Park also stated, in relevant part:

> Our strong performance for the fourth quarter and full year reflects the successful execution of our strategy, as well as the actions we took to position Diplomat for long-term growth, including entering the PBM market and bolstering our bench of talent. As evidenced by our 2018 outlook, we are confident in our ability to build

---

[1] A PBM is a "middleman" third-party administrator of prescription drug programs, designed to process prescription medication claims and benefits for insurance companies and plan sponsors.

- 5 -

on this momentum and capture the growth opportunities ahead. As we execute on our go-to-market strategies across specialty, infusion and PBM, we are focused on continuing to accelerate growth and profitability, and enhance value for our shareholders while keeping our patients at the center of everything that we do.

20. On March 1, 2018, the Company filed a Form 10-K for the fiscal year ended December 31, 2017 with the SEC ("the 2017 10-K"), which provided the Company's financial results and position. Diplomat's 2017 10-K was signed by Defendants Park and Kavthekar and contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Park and Kavthekar attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud. Diplomat's 2017 10-K represented that the Company's internal control over financial reporting was effective as of December 31, 2017.

21. On May 7, 2018, the Company issued a press release announcing its financial results for the first quarter ended March 31, 2018. In the announcement, Defendant Park commented that the Company's "PBM integration has progressed rapidly[.]" Park also stated, in relevant part:

> Diplomat reached a new high mark this quarter in which the incredible team we've built executed on our plan and achieved record revenues. Our first quarter demonstrated strong performance in both our Specialty segment and our PBM segment — relaunched last week under its new brand, CastiaRx. Our PBM integration has progressed rapidly, and as our innovation, growth and profitability initiatives continue to gain momentum, we believe we can drive substantial market share gains over time and generate long term value for all our stakeholders.

22. On August 6, 2018, the Company issued a press release announcing its financial results for the second quarter ended June 30, 2018. In the announcement, Defendant Griffin commented that the Company's "PBM integration is reaching its conclusion with CastiaRx demonstrating strong results in the quarter, as well as continued momentum on our growth and profitability initiatives across the entire enterprise." Griffin also stated, in relevant part:

> The Diplomat team delivered another great quarter with record revenue and adjusted EBITDA, driven by continued solid execution of our plan. Our PBM integration is reaching its conclusion with CastiaRx demonstrating strong results in the quarter, as well as continued momentum on our growth and profitability initiatives across the entire enterprise. I am truly excited to join such a highly energized organization and look forward to exploring our growth potential for the benefit of all of our stakeholders.

23. The statements referenced in ¶¶ 19-22 above were materially false and/or misleading because they failed to disclose the following adverse facts pertaining to the Company's business and operations which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Diplomat was experiencing significant difficulty integrating and growing its PBM business, which included LDI and NPS, companies Diplomat acquired in late 2017; (2) Diplomat's PBM business was significantly impaired, was experiencing material customer losses, and would need to record a massive non-cash impairment charge relating to its PBM business and the 2017 acquisitions; and (3) as a result, Defendants' statements about Diplomat's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times during the Class Period.

**While Continuing to Obscure the Truth, Defendants Begin to Reveal the Mounting Customer and PBM Problems**

24. On November 6, 2018, after the market closed, Diplomat announced its financial results for the third quarter ended September 30, 2018. In the earnings release, Defendant Griffin commented that the Company's "solid" results were driven by the Company's ability to "successfully execute on [its] growth plan" and through "strong . . . PBM performance." Griffin continued to tout the Company's solid results, stating:

> Third quarter results were solid as we continue to successfully execute on our growth plan. ***Results were driven by strong Specialty segment growth and PBM performance***. We recently opened our new state-of-the-art distribution and call center facility in Chandler, Arizona, furthering our efforts to provide the highest

quality patient care nationwide. Every day we put our patients first, while at the same time investing in initiatives to drive further growth and productivity.

25. On a conference call with investors and analysts that same day, Defendant Saban commented on the PBM's strong customer base, stating:

The other thing I would add is that some of our clients are not necessarily leaving us, but some of their base tends to fluctuate, such as TPAs or Medicare Part D sponsors as they win regions or lose regions. So *we feel very confident that we -- that our retention rate is typical, if not a little bit better than most PBMs*, but this client base does have some fluctuation based on membership within the clients themselves.

26. Defendants also revealed a portion of the mounting problems and revealed that with less than two months remaining in the year, the Company *expected to lose roughly $200 million in revenue – 4% of total enterprise revenue – in its PBM business because of client losses*.

27. On this news of client losses and a 4% enterprise value loss, the price of Diplomat common stock declined by 27%, falling $5.54 on heavy volume.

28. Then, before the market opened on January 7, 2019, the Company issued a press release providing updated 2018 guidance and the Company's preliminary outlook for 2019, which stated, in relevant part, that "*Diplomat now expects 2018 revenue to be at the lower end of the previously communicated $5.5 to $5.7 billion range* and adjusted EBITDA to be at the higher end of the previously communicated $164 to $170 million range."

29. Commenting on the results, Defendant Griffin stated:

Diplomat delivered strong revenue and EBITDA growth in 2018 despite challenges in our CastiaRx PBM segment. Solid specialty growth, robust infusion performance, and *better than expected synergy capture following completion of the PBM integration drove 2018 results*, and investments we have made in sales, systems, processes and facilities are expected to drive future growth and profitability, positioning the company well for 2019 and beyond.

30. The Company also provided its "Preliminary 2019 Outlook," and stated that "[i]n 2019, Diplomat also expects":

- 8 -

- Continued sales growth in specialty pharmacy, supported by further penetration in the payer space, particularly with health plans, as the company leverages coordinated sales and clinical efforts across specialty and infusion.

- Specialty infusion growth should also benefit from growth in key therapeutic areas, additional sales resources added in 2018, further traction from biosimilars, and new limited-distribution drugs, with the potential to expand therapeutic areas and geographically via tuck-in acquisitions.

- A realignment of the PBM to increase win rates and offset lost business. The company expects to significantly expand experienced sales and account management resources to drive business wins and position the business to return to growth in 2020.

31. Commenting on the "Preliminary 2019 Outlook," Defendant Griffin commented,

We expect 2019 to be characterized by continued growth in specialty and infusion given our payer-focused strategy, and actions we are taking to return our PBM business to growth.

32. That same day, Diplomat also disclosed that two senior executives – Joel Saban, President of Diplomat, and Albert Thigpen, president and chief operating officer of CastiaRx – would immediately be departing from the Company. The Company also warned that 2018 revenue will be at the lower end of its guidance and that 2019 revenue would may fall short of consensus.

33. On the sudden news of Saban's and Thigpen's abrupt departure from the Company and the downward revision of guidance, Diplomat shares dropped 10.5% to close at $12.62.

34. Despite providing glimpses of the Company's mounting and severe PBM and customer retention problems, the statements referenced above in ¶¶ 24-32 continued to be materially false and/or misleading because Defendants failed to disclose the following adverse facts pertaining to the Company's business and operations which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Diplomat was experiencing significant difficulty integrating and growing its PBM business, which included LDI and NPS, companies Diplomat acquired in late 2017; (2) Diplomat's PBM business was significantly impaired and as a result of material

- 9 -

customer losses would need to record a massive non-cash impairment charge relating to its PBM business and the 2017 acquisitions; (3) Diplomat's preliminary 2019 full-year outlook, issued less than seven weeks before being withdrawn, was not accurate and could not be achieved; and (4) as a result, Defendants' statements about Diplomat's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times during the Class Period.

**Diplomat Abandons All Guidance and Announces Massive Impairment Charge**

35. On February 22, 2019, Diplomat filed a Form 8-K with the SEC, announcing it was unable to release its Form 10-K for the fiscal year ended December 31, 2018 due to a "recent determination" that it would need to record a non-cash impairment charge upwards of approximately $630 million relating to 2017 acquisitions for its PBM business. Diplomat also disclosed that it was withdrawing its preliminary 2019 full-year outlook provided just a few weeks earlier on January 7, 2019. The Company's release stated, in relevant part:

**Diplomat Delays Release of 2018 Financial Results and Filing of 10-K**

> *Company withdraws 2019 full year preliminary outlook provided in January; will provide updated outlook when it reports 2018 results.*
>
> FLINT, Mich. — February 22, 2019 — Diplomat Pharmacy, Inc. (NYSE: DPLO), announced today that it is ***postponing the release of its fourth-quarter and full-year 2018 financial results*** and the related conference call and webcast to March 15, 2019. The Company expects to file its annual report on Form 10-K for the fiscal year ended December 31, 2018 soon afterwards.
>
> The postponement is due primarily to the recent ***determination by Diplomat and its auditors that the company will need to record a non-cash impairment charge related to its PBM business. This charge is expected to be equal to a significant portion of the PBM's Goodwill and Definite-lived intangible assets, which total approximately $630 million*** as of December 31, 2018, prior to impairment charges. ***The charge relates to the 2017 acquisitions of NPS and LDI and is driven by reduced financial forecasts for the PBM business***. Despite success in improving our customer service performance to industry standard levels, previously disclosed execution challenges experienced in 2018 continue to impact customer perception and have resulted in further customer losses.

>The company and its auditors require additional time to finalize the level of impairment, the allocation between Goodwill and Definite-lived intangible assets, tax implications and the total impact on Diplomat's 2018 fourth quarter and full year financial results. Full-year 2018 revenues and Total Adjusted EBITDA are not impacted by any impairment charge and the company's previously communicated outlook of 2018 revenues of $5.5 - $5.6 billion and 2018 EBITDA of $167 - $170 million remain unchanged.
>
>However, ***the company has withdrawn its preliminary 2019 full-year outlook provided in January***.

(Emphasis added.)

36. On this news, shares of Diplomat plummeted an additional $7.59, or over 56%, to close at $5.87 per share on February 22, 2019.

37. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## ADDITIONAL SCIENTER ALLEGATIONS

38. As alleged herein, Diplomat and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth herein in detail, these Defendants, by virtue of their receipt of information reflecting the true facts regarding Diplomat's business metrics and financial prospects, their control over and/or receipt and/or modification of Diplomat's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information, participated in the fraudulent scheme alleged herein.

**LOSS CAUSATION/ECONOMIC LOSS**

39. During the Class Period, as detailed herein, the Defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Diplomat securities and operated as a fraud or deceit on Class Period purchasers of Diplomat securities by misrepresenting the Company's business metrics and financial prospects. Later, beginning on January 6, 2019 and continuing through February 21, 2019, when the Defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the price of Diplomat securities fell precipitously, as the prior artificial inflation came out of the price over time. As a result of their purchases of Diplomat securities during the Class Period, Plaintiff and other members of the Class suffered economic loss, i.e., damages, under the federal securities laws.

**APPLICABILITY OF PRESUMPTION OF RELIANCE**

40. Plaintiff and the Class are entitled to a presumption of reliance under *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972), because the claims asserted herein against Defendants are predicated upon omissions of material fact for which there was a duty to disclose.

41. Plaintiff and the Class are also entitled to a presumption of reliance pursuant to *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), and the fraud-on-the-market doctrine because the market for Diplomat stock was an efficient market at all relevant times by virtue of the following factors, among others:

(a) Diplomat stock met the requirements for listing and was listed and actively traded on the NYSE, a highly efficient market;

(b) Diplomat regularly communicated with public investors via established market communication mechanisms, including the regular dissemination of press releases on

national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

    (c) Diplomat was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were distributed to the salesforces and certain customers of their respective brokerage firms. These reports were publicly available and entered the public marketplace.

  42. As a result of the foregoing, the market for Diplomat securities promptly incorporated current information regarding the Company from publicly available sources and reflected such information in the price of the securities. Under these circumstances, all those who transacted in Diplomat securities during the Class Period suffered similar injury through their transactions in Diplomat securities at artificially inflated prices and a presumption of reliance applies.

  43. Without knowledge of the misrepresented or omitted material facts, Plaintiff and other Class members purchased or acquired Diplomat securities between the time Defendants misrepresented and failed to disclose material facts and the time the true facts were disclosed. Accordingly, Plaintiff and other Class members relied, and are entitled to have relied, upon the integrity of the market price for Diplomat securities and are entitled to a presumption of reliance on Defendants' materially false and misleading statements and omissions during the Class Period.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

  44. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all those who purchased or otherwise acquired the publicly-traded securities of Diplomat during the Class Period and were damaged thereby (the "Class"). Excluded from the Class are Defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families and their

legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.

45. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Diplomat securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

46. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

47. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

48. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether Defendants' acts as alleged herein violated the Exchange Act;

(b) whether Defendants' Class Period statements made to the investing public misrepresented material facts about the Company' business metrics and financial prospects; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

49. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I

**Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Against All Defendants**

50. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

51. During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

52. Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they:

(a) employed devices, schemes, and artifices to defraud;

(b) made untrue statements of material fact or omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c) engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Diplomat securities during the Class Period.

53. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Diplomat securities. Plaintiff and the Class would not have purchased Diplomat securities at the prices they paid, or at all, if they had been

aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

## COUNT II

**Violation of Section 20(a) of The Exchange Act Against Individual Defendants**

54. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55. The Individual Defendants acted as controlling persons of Diplomat within the meaning of § 20(a) of the Exchange Act. By reason of their positions with the Company and their ownership of Diplomat securities, the Individual Defendants had the power and authority to cause Diplomat to engage in the wrongful conduct complained of herein. Diplomat controlled the Individual Defendants and all of its employees. By reason of such conduct, these Defendants are liable pursuant to § 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

DATED: March 12, 2019

*/s/ Lori A. Fanning*

Marvin A. Miller
Lori A. Fanning
**MILLER LAW LLC**
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
Telephone: (312) 332-3400
Facsimile: (312) 676-2676
Email: mmiller@millerlawllc.com
lfanning@millerlawllc.com

*Liaison Counsel for Plaintiff*

Frank J. Johnson
**JOHNSON FISTEL, LLP**
655 West Broadway, Suite 1400
San Diego, CA 92101
Telephone: (619) 230-0063
Facsimile: (619) 255-1856
Email: frankj@johnsonfistel.com

*Counsel for Plaintiff*