# EXHIBIT D



**History**  Pomerantz LLP is one of the most respected law firms in the United States dedicated to representing investors. The Firm was founded in 1936 by the late Abraham L. Pomerantz, widely regarded as a legal pioneer and "dean" of the plaintiffs' securities bar, who helped secure the right of investors to bring class and derivative actions.

**Leadership**  Today, led by Managing Partner Jeremy A. Lieberman, the Firm maintains the commitments to excellence and integrity passed down by Abe Pomerantz.

**Results**  In 2018, Pomerantz achieved a landmark $3 billion settlement for investors, and precedent-setting legal rulings, in *In re Petrobras Securities Litigation*. Pomerantz consistently shapes the law, having won landmark decisions that expanded and protected investor rights and initiated historic corporate governance reforms, including securing the rights of U.S. and foreign institutions that purchased BP shares abroad to bring common law claims in U.S. court.

**Global Expertise**  Jennifer Pafiti, Partner and Head of Client Services, is dually qualified to practice in the United States and United Kingdom. Our Paris office is headed by French lawyer, Nicolas Tatin, Pomerantz's Director-Business Development Consultant for France, Benelux, Monaco and Switzerland. In addition to the Firm's in-house team in the United States and Paris, Pomerantz utilizes an extensive network of prominent law firms in the United Kingdom, Switzerland, and the Middle East, so that we are ready to assist clients, wherever they are situated, in recovering monies lost due to corporate misconduct and securities fraud. Our team of attorneys is collectively fluent in English, Arabic, Mandarin Chinese, Farsi, French, Hebrew, Italian, Portuguese, Romanian, Spanish, and Taiwanese.

**Practice**  Pomerantz protects, expands, and vindicates shareholder rights through our securities litigation services and portfolio monitoring program. The Firm represents some of the largest pension funds, asset managers and institutional investors around the globe, monitoring assets of $5 trillion, and growing. Pomerantz's practice includes corporate governance, antitrust, and strategic consumer litigation.

**Recognition**  In 2019, Jeremy Lieberman was honored as Plaintiff Attorney of the Year by Benchmark Litigation; Pomerantz also received Benchmark Litigation's National Case Impact Award for *In re Petrobras Securities Litig*. In 2018, Pomerantz was honored as a Law360 Securities Practice Group of the Year and was a finalist for the *National Law Journal*'s Elite Trial Lawyers award; Jeremy Lieberman was named a Law360 Titan of the Plaintiffs' Bar and a Benchmark Litigation Star. Among other accolades, many of our attorneys have been chosen by their peers, year after year, as Super Lawyers® Top-Rated Securities Litigation Attorneys and Rising Stars.

Pomerantz is headquartered in New York City, with offices in
Chicago, Los Angeles and Paris.

# Securities Litigation

## Significant Landmarks

On January 3, 2018, in a significant victory for investors, Pomerantz, as sole Lead Counsel for the class, along with Lead Plaintiff Universities Superannuation Scheme Limited ("USS"), achieved a historic $2.95 billion settlement with Petróleo Brasileiro S.A. ("Petrobras") and its related entity, Petrobras International Finance Company, as well as certain of Petrobras' former executives and directors. On February 2, 2018, Pomerantz and USS reached a $50 million settlement with Petrobras' auditors, PricewaterhouseCoopers Auditores Independentes, bringing the total recovery for Petrobras investors to $3 billion. This is not only the largest securities class action settlement in a decade but is the largest settlement ever in a securities class action involving a foreign issuer, the fifth-largest securities class action settlement ever achieved in the United States, the largest securities class action settlement achieved by a foreign Lead Plaintiff, and the largest securities class action settlement in history not involving a restatement of financial reports.

The class action, brought on behalf of all purchasers of common and preferred American Depositary Shares ("ADSs") on the New York Stock Exchange, as well as purchasers of certain Petrobras debt, principally alleged that Petrobras and its senior executives engaged in a multi-year, multi-billion-dollar money-laundering and bribery scheme, which was concealed from investors.

The settlement was achieved after nearly three years of hard-fought litigation, including U.S. and foreign discovery and complex motion practice before Judge Jed S. Rakoff, United States District Judge for the Southern District of New York; and an appeal before the United States Court of Appeals for the Second Circuit. Defendants also filed a petition for writ of certiorari with the United States Supreme Court.

In addition to the outstanding multi-billion-dollar recovery to investors, Pomerantz secured precedent-setting decisions during the litigation. In a February 2016 Opinion and Order, the district court certified all the classes proposed by plaintiffs, encompassing not only purchasers of Petrobras American Depository Receipts, but also Petrobras bondholders who acquired securities pursuant to domestic transactions. Plaintiffs asserted claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Sections 11, 12(a)(2), and 15 of the Securities Act of 1933. Defendants appealed the district court's certification opinion on multiple grounds, including for failure to satisfy the requirement of ascertainability, and for failure to satisfy the burden of showing that the Petrobras securities at issue traded in efficient markets. The Second Circuit accepted the appeal and largely rejected defendants' arguments, sending the case back to the district court for further proceedings.

The Second Circuit's decision is an important and favorable precedent in several respects. First, in an issue of first impression, the Second Circuit squarely rejected defendants' invitation to adopt the heightened ascertainability requirement promulgated by the United States Court of Appeals for the Third Circuit, which would have required plaintiffs to demonstrate that determining membership in a class is "administratively feasible." The Second Circuit's rejection of this standard is not only a victory for bondholders in securities class actions, but also for plaintiffs in consumer fraud class actions and other class actions where documentation regarding Class membership is not readily attainable.

---

With respect to Petrobras' bondholders, the Second Circuit vacated the district court's granting of class certification, but only to the extent that it did not perform an analysis regarding the impact of the Supreme Court's decision in *Morrison v. National Australia Bank Ltd*., 561 U.S. 247 (2010), on the predominance requirement of class certification, acknowledging that "the district court might properly certify one or more classes that capture all of the Securities holders who fall within the Classes as currently defined." *In re Petrobras Sec. Litig.,* 862 F.3d 250, 274 (2d Cir. 2017).

The Second Circuit also refused to adopt a requirement, urged by defendants, that all securities class action plaintiffs seeking class certification prove through direct evidence (*i.e.*, via an event study) that the prices of the relevant securities moved in a particular direction in response to new information.

Pomerantz, as sole Lead Counsel in *Strougo v. Barclays PLC,* No. 14-cv-5797 (S.D.N.Y.), achieved a $27 million settlement for the Class (pending court approval) in January 2019. This high-profile securities litigation alleges that defendants concealed information and misled investors regarding its management of its "LX" dark pool, a private trading platform where the size and price of the orders are not revealed to other participants. On November 6, 2017, the Second Circuit affirmed former District Court Judge Shira S. Scheindlin's February 2, 2016, Opinion and Order granting plaintiffs' motion for class certification in the case.

The Court of Appeals in *Barclays* held that direct evidence of price impact is not always necessary to demonstrate market efficiency, as required to invoke the *Basic* presumption of reliance, and was not required here. Significantly, when handing down its decision, the Second Circuit cited its own *Petrobras* decision, stating, "We have repeatedly—and recently—declined to adopt a particular test for market efficiency." *Waggoner v. Barclays PLC,* 875 F.3d 79, 94 (2d Cir. 2017).

The court held that defendants seeking to rebut the *Basic* presumption of reliance on an efficient market must do so by a preponderance of the evidence. The court further held that it would be inconsistent with *Halliburton II* to "allow [ ] defendants to rebut the *Basic* presumption by simply producing *some* evidence of market inefficiency, but not demonstrating its inefficiency to the district court." *Id.* at 100. The court rejected defendants' contention that Federal Rule of Evidence 301 applies, and made clear that the *Basic* presumption is a judicially-created doctrine and thus the burden of persuasion properly shifts to defendants. The court thus confirmed that plaintiffs have no burden to show price impact at the class certification stage—a significant victory for investors.

On September 10, 2018, Pomerantz, as Co-Lead Counsel, achieved final approval of a historic $80 million settlement for the Class in *In re Yahoo! Inc. Sec. Litig.*, No. 17-cv-00373 (N.D. Cal.). The complaint, filed in January 2017, alleged that the internet giant intentionally misled investors about its cybersecurity practices in the wake of massive data breaches in 2013 and 2014 that compromised the personal information of all 3 billion Yahoo customers. Plaintiffs allege that Yahoo violated federal securities laws by failing to disclose the breaches, which caused a subsequent stock price dive. This represents the first significant settlement to date of a securities fraud class action filed in response to a data breach.

As part of due diligence, Pomerantz located critical evidence showing that Yahoo's management had concurrent knowledge of at least one of the data breaches. Importantly, these records showed that Yahoo's Board of Directors, including Defendant CEO Marissa Mayer, had knowledge of and received repeated updates regarding the breach. In its public filings, Yahoo denied that the CEO knew about the breach, and the CEO's knowledge was a key issue in the case.

---

After receiving Plaintiffs' opposition to the motion to dismiss, but before the federal District Court ruled on the motion, the case settled for $80 million. This early and large settlement reflects the strength of the complaint's allegations.

In May 2017, Pomerantz, as Co-Lead Counsel, achieved final approval of a $135 million recovery for the Class in *Kaplan v. S.A.C. Capital Advisors, L.P*, No. 12-cv-9350 (S.D.N.Y.)*.* This securities class action stemmed from what has been called the most profitable insider trading scheme in U.S. history. After years of vigorous litigation, billionaire Steven A. Cohen's former hedge fund, S.A.C. Capital Advisors LP, agreed to settle the lawsuit by investors in the drug maker Elan Corp, who said they lost money because of insider trading by one of his portfolio managers.

In July 2017, Pomerantz secured the right of investors in BP p.l.c. to pursue "holder claims." The ruling, by Judge Keith P. Ellison of the U.S. District Court for the Southern District of Texas, is significant, given the dearth of precedent from anywhere in the U.S. that both recognizes the potential viability of a holder claim under some body of non-U.S. federal law and holds that the plaintiffs pursuing one had sufficiently alleged facts giving rise to reliance and other required elements of the underlying legal claims. Since 2012, Pomerantz has pursued ground-breaking claims on behalf of institutional investors in BP p.l.c. to recover losses in BP's common stock (which trades on the London Stock Exchange) stemming from the 2010 Gulf oil spill. The threshold challenge was how to litigate in U.S. court in the wake of the Supreme Court's 2010 decision in *Morrison v. National Australia Bank*, which barred recovery for losses in foreign-traded securities under the U.S. federal securities laws. In 2013 and 2014, Pomerantz secured a series of significant victories in individual actions pursued on behalf of institutional investors in *In re BP p.l.c. Securities Litigation*, MDL No. 2185 (S.D. Tex.). Pomerantz defeated BP's *forum non conveniens* arguments seeking dismissal of U.S. institutions and, later, foreign institutions, pursuing English common law claims seeking recovery of investment losses stemming in both NYSE-traded ADSs and London Stock Exchange (LSE)-traded common stock. Pomerantz also defeated BP's attempt to extend the Securities Litigation Uniform Standards Act to dismiss these claims. Thanks to these rulings, Pomerantz now leads the only litigation, post-*Morrison*, where U.S. and foreign investors, pursuing foreign claims seeking recovery for losses in foreign-traded stocks, are doing so in a U.S. court.

In June 2010, Judge Nicholas G. Garaufis of the U.S. District Court for the Eastern District of New York granted final approval of a $225 million settlement proposed by Pomerantz and Lead Plaintiff the Menora Group, with Comverse Technology and certain of Comverse's former officers and directors, after four years of highly-contested litigation. The *Comverse* settlement is one of the largest securities class action settlements reached since the passage of the Private Securities Litigation Reform Act ("PSLRA").[1] It is the second-largest recovery in a securities litigation involving the backdating of options, as well as one of the largest recoveries – $60 million – from an individual officer-defendant, Comverse's founder and former CEO, Kobi Alexander. *In re Comverse Technology, Inc. Sec. Litig.,* No. 06-CV-1825 (E.D.N.Y.)

Even before the enactment of the PSLRA, Pomerantz represented state agencies in securities class actions, including the Treasurer of the Commonwealth of Pennsylvania (recovered $100 million) against a major investment bank. *In re Salomon Brothers Treasury Litig.*, No. 91-cv-5471 (S.D.N.Y.).

---

[1] Institutional Shareholder Services, *SCAS Top 100 Settlements Quarterly Report* (Sept. 30, 2010).

Pomerantz recovered $50 million for the Treasurer of the State of New Jersey and several New Jersey pension funds in an individual action. This was a substantially higher recovery than what our clients would have obtained had they remained in a related federal class action. *Treasurer of State of New Jersey v. AOL Time Warner, Inc.* (N.J. Super. Ct. Law Div., Mercer Cty.).

Pomerantz has litigated numerous cases for the Louisiana School Employees' Retirement System. For example, as Lead Counsel, Pomerantz recovered $74.75 million in a securities fraud class action against Citigroup, its CEO Sanford Weill, and its now infamous telecommunications analyst Jack Grubman. *In re Salomon Analyst AT&T Litig.*, No. 02-cv-6801 (S.D.N.Y.) Also, the Firm played a major role in a complex antitrust and securities class action which settled for over $1 billion. *In re NASDAQ Market-Makers Antitrust Litig.*, MDL No. 1023 (S.D.N.Y.). Pomerantz was a member of the Executive Committee in *In re Transkaryotic Therapies, Inc. Securities Litigation*, C.A. No. 03-10165 (D. Mass.), helping to win a $50 million settlement for the class.

In 2008, together with Co-Counsel, Pomerantz identified a substantial opportunity for recovery of losses in Countrywide mortgage-backed securities ("MBS") for three large New Mexico funds (New Mexico State Investment Council, New Mexico Public Employees' Retirement Association, and New Mexico Educational Retirement Board), which had been overlooked by all of the firms then in their securities litigation pool. We then filed the first non-class lawsuit by a public institution with respect to Countrywide MBS. *See N.M. State Inv. Council v. Countrywide Fin. Corp.,* No. D-0101-CV-2008-02289 (N.M. 1st Dist. Ct.). In Fall 2010, we negotiated for our clients an extremely favorable but confidential settlement.

Over its long history, Pomerantz has achieved significant settlements in numerous cases, a sampling of which is listed below:

- *In re Petrobras Sec. Litig.*, No. 14-cv-9662 (S.D.N.Y. 2018)
  $3 billion settlement of securities class action in which Pomerantz was Lead Counsel.
- *In re Yahoo! Inc. Sec. Litig.,* No. 17-cv-00373 (N.D. Cal. 2018)
  $80 million settlement of securities class action in which Pomerantz was Co-Lead Counsel
- *In re Libor Based Financial Instruments Antitrust Litig.,* 1:11-md-2262
  $31 billion partial settlement with three defendants in this multi-district litigation in which Pomerantz represents the Berkshire Bank and the Government Development Bank for Puerto Rico
- *Strougo v. Barclays PLC,* No. 14-cv-5797 (S.D.N.Y. 2019)
  $27 million settlement (pending court approval) of securities class action in which Pomerantz was Lead Counsel
- *In re Am. Capital, Ltd. S'holder Litig.*, No. 422598-V (Md. Cir Ct. Montgomery Cty. 2018)
  $17.5 million settlement of class action in which Pomerantz was Co-Lead Counsel.
- *Kaplan v. S.A.C. Capital Advisors, L.P.*, No. 12-cv-9350 (S.D.N.Y. 2017)
  $135 million settlement of class action in which Pomerantz was Co-Lead Counsel.
- *Thomas v. Magnachip Semiconductor Corp.*, No. 14-cv-01160 (N.D. Cal. 2016)
  $23.5 million partial settlement of class action in which Pomerantz was sole Lead Counsel.
- *In re Lumber Liquidators, Inc. Sec. Litig.,* No. 13-cv-00157 (E.D. Va. 2016)
  $26 million and 1 million shares of common stock settlement in class action in which Pomerantz was sole Lead Counsel.
- *Thorpe v. Walter Inv. Mgmt. Corp.,* No. 14-cv-20880 (S.D. Fla. 2016)
  $24 million settlement of class action in which Pomerantz was sole Lead Counsel.

- *In re Groupon, Inc. Sec. Litig.*, No. 12-cv-02450 (N.D. Ill. 2015)
  $45 million settlement of class action in which Pomerantz was sole Lead Counsel.
- *In re Sealed Air Corp. Sec. Litig.*, No. 03-cv-4372 (D.N.J. 2010)
  $20 million settlement in class action in which Pomerantz was Co-Lead Counsel representing the Louisiana Municipal Police Employees' Retirement System.
- *In re Elan Corp. Sec. Litig.*, No. 05-cv-2860 (S.D.N.Y. 2005)
  $75 million settlement in class action arising out of alleged accounting manipulations.
- *In re Livent, Inc. Noteholders Sec. Litig.*, No. 98-cv-7161 (S.D.N.Y. 2005)
  $17 million settlement for the class; plus summary judgment against remaining defendants for $36 million (including pre-judgment interest); totaling over 100% of claimed damages.
- *In re Safety-Kleen Corp. Stockholders Litig.*, No. 00-cv-736-17 (D.S.C. 2004)
  $54.5 million in total settlements in class action alleging accounting manipulations by corporate officials and auditors; last settlement reached on eve of trial.
- *Duckworth v. Country Life Ins. Co.*, No. 1998-CH-01046 (Ill. Cir. Ct., Cook Cty. 2000)
  $45 million recovery.
- *Snyder v. Nationwide Ins. Co.*, No. 97/0633 (N.Y. Sup. Ct. Onondaga Cty. 1998)
  Settlement valued at $100 million in derivative case arising from injuries to consumers purchasing life insurance policies.
- *In re National Health Lab., Inc. Sec. Litig.*, No. CV 92-1949 (S.D. Cal. 1995)
  $64 million recovery.
- *In re First Executive Corp. Sec. Litig.*, No. 89-cv-07135 (C.D. Cal. 1994)
  $102 million recovery for the class, exposing a massive securities fraud arising out of the Michael Milken debacle.
- *In re Boardwalk Marketplace Sec. Litig.*, MDL No. 712 (D. Conn. 1994)
  Over $66 million benefit in securities fraud action.
- *In re Telerate, Inc. S'holders Litig.*, C.A. No. 1115 (Del. Ch. 1989)
  $95 million benefit in case alleging violation of fiduciary duty under state law.

Pomerantz has also obtained stellar results for private institutions and Taft-Hartley funds. Below are a few examples:

- *In re Charter Commc'ns, Inc. Sec. Litig*., No. 02-cv-1186 (E.D. Mo. 2005) (sole Lead Counsel for Lead Plaintiff StoneRidge Investment Partners LLC); $146.25 million class settlement, where Charter also agreed to enact substantive improvements in corporate governance.
- *In re Am. Italian Pasta Sec. Litig.*, No. 05-cv-865 (W.D. Mo. 2008) (sole Lead Counsel for Lead Plaintiff Ironworkers Locals 40, 361 and 417; $28.5 million aggregate settlements).
- *Richardson v. Gray*, No. 116880/1995 (N.Y. Sup. Ct. N.Y. Cty. 1999); and *In re Summit Metals*, No. 98-2870 (Bankr. D. Del. 2004) (two derivative actions where the Firm represented C.C. Partners Ltd. and obtained judgment of contempt against controlling shareholder for having made "extraordinary" payments to himself in violation of a preliminary injunction; persuaded the court to jail him for two years upon his refusal to pay; and, in a related action, won a $43 million judgment after trial and obtained turnover of stock of two companies).

**Shaping the Law**

Not only has Pomerantz established a long track record of obtaining substantial monetary recoveries for our clients; whenever appropriate, we also pursue corporate governance reforms on their behalf. In *In re Chesapeake Shareholders Derivative Litig*ation, No. CJ-2009-3983 (Okla. Dist. Ct., Okla. Cty. 2011), for example, the Firm served as Co-Lead Counsel, representing a public pension client in a derivative case arising from an excessive compensation package granted to Chesapeake's CEO and founder. This was a derivative action, not a class action. Yet it is illustrative of the results that can be obtained by an institutional investor in the corporate governance arena. There we obtained a settlement which called for the repayment of $12.1 million and other consideration by the CEO. The Wall Street Journal (Nov. 3, 2011) characterized the settlement as "a rare concession for the 52-year old executive, who has run the company largely by his own rules since he co-founded it in 1989." The settlement also included comprehensive corporate governance reforms.

The Firm has won many landmark decisions that have enhanced shareholders' rights and improved corporate governance. These include decisions that established that:

- defendants seeking to rebut the *Basic* presumption of reliance on an efficient market must do so by a preponderance of the evidence. *Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017) (*Strougo v. Barclays PLC,* in the court below);
- plaintiffs have no burden to show price impact at the class certification stage. *Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017) (*Strougo v. Barclays PLC,* in the court below);
- the ascertainability doctrine requires only that a class be defined using objective criteria that establish a membership with definite boundaries. *Universities Superannuation Scheme Ltd. v. Petróleo Brasiliero S.A. Petrobras*, 862 F.3d 250 (2d Cir. 2017);
- companies cannot adopt bylaws to regulate the rights of former stockholders. *Strougo v. Hollander*, C.A. No. 9770-CB (Del. Ch. 2015);
- a temporary rise in share price above its purchase price in the aftermath of a corrective disclosure does not eviscerate an investor's claim for damages. *Acticon AG v. China Ne. Petroleum Holdings Ltd.,* 692 F.3d 34 (2d Cir. 2012);
- an MBS holder may bring claims if the MBS price declines even if all payments of principal and interest have been made. Transcript of Proceedings, *N.M. State Inv. Council v. Countrywide Fin. Corp.,* No. D-0101-CV-2008-02289 (N.M. 1st Dist. Ct. Mar. 25, 2009);
- when a court selects a Lead Plaintiff under the Private Securities Litigation Reform Act ("PSLRA"), the standard for calculating the "largest financial interest" must take into account sales as well as purchases. *In re Comverse Tech.,, Inc. Sec. Litig.*, No. 06-cv-1825, 2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007);
- a managing underwriter can owe fiduciary duties of loyalty and care to an issuer in connection with a public offering of the issuer stock, even in the absence of any contractual agreement. Professor John C. Coffee, a renowned Columbia University securities law professor, commenting on the ruling, stated: "It's going to change the practice of all underwriting." *EBC I, Inc. v. Goldman Sachs & Co.*, 5 N.Y. 3d 11 (2005);
- purchasers of options have standing to sue under federal securities laws. *In re Green Tree Fin. Corp. Options Litig.*, No. 97-2679, 2002 U.S. Dist. LEXIS 13986 (D. Minn. July 29, 2002);
- shareholders have a right to a jury trial in derivative actions. *Ross v. Bernhard*, 396 U.S. 531 (1970);

- a company may have the obligation to disclose to shareholders its Board's consideration of important corporate transactions, such as the possibility of a spin-off, even before any final decision has been made. *Kronfeld v. Trans World Airlines, Inc*., 832 F.2d 726 (2d Cir. 1987);
- specific standards for assessing whether mutual fund advisors breach fiduciary duties by charging excessive fees. *Gartenberg v. Merrill Lynch Asset Mgmt., Inc*., 740 F.2d 190 (2d Cir. 1984);
- investment advisors to mutual funds are fiduciaries who cannot sell their trustee positions for a profit. *Rosenfeld v. Black*, 445 F.2d 1337 (2d Cir. 1971); and
- management directors of mutual funds have a duty to make full disclosure to outside directors "in every area where there was even a possible conflict of interest."  *Moses v. Burgin*, 445 F.2d 369 (1st Cir. 1971).

## Comments from the Courts

Throughout its history, courts time and again have acknowledged the Firm's ability to vigorously pursue and successfully litigate actions on behalf of investors.

In approving the $3 billion settlement in *In re Petrobras Securities Litigation* in June 2018, Judge Jed S. Rakoff of the Southern District of New York wrote:

> [T]he Court finds that Class Counsel's performance was in many respects exceptional, with the result that, as noted, the class is poised to enjoy a substantially larger per share recovery [65%] than the recovery enjoyed by numerous large and sophisticated plaintiffs who separately settled their claims.

At the hearing for preliminary approval of the settlement in *In re Petrobras Securities Litigation* in February 2018, Judge Rakoff stated:

> [T]he lawyers in this case [are] some of the best lawyers in the United States, if not in the world.

Two years earlier, in certifying two Classes in *In re Petrobras Securities Litigation* in February 2016, Judge Rakoff wrote:

> [O]n the basis not only of USS's counsel's prior experience but also the Court's observation of its advocacy over the many months since it was appointed Lead Counsel, the Court concludes that Pomerantz, the proposed class counsel, is "qualified, experienced and able to conduct the litigation." ... [T]he Pomerantz firm has both the skill and resources to represent the Classes adequately.

In approving the settlement in *Thorpe v. Walter Investment Management Corp.*, No. 14-cv-20880, 2016 U.S. Dist. LEXIS 144133 (S.D. Fla. Oct. 14, 2016) Judge Ursula Ungaro wrote:

> Class Counsel has developed a reputation for zealous advocacy in securities class actions. ... The settlement amount of $24 million is an outstanding result.

At the May 2015 hearing wherein the court approved the settlement in *Courtney v. Avid Technology, Inc.*, No. 13-cv-10686 (D. Mass. May 12, 2015), following oral argument by Jeremy A. Lieberman, Judge William G. Young stated:

> This has been very well litigated. It is always a privilege. I don't just say that as a matter of form. And I thank you for the vigorous litigation that I've been permitted to be a part of. [Tr. at 8-9.]

At the January 2012 hearing wherein the court approved the settlement in *In re Chesapeake Energy Corp. Shareholder Derivative Litigation*, No. CJ-2009-3983 (Okla. Dist. Ct., Okla. Cty. Jan. 30, 2012), following oral argument by Marc I. Gross, Judge Daniel L. Owens stated:

> Counsel, it's a pleasure, and I mean this and rarely say it. I think I've said it two times in 25 years. It is an extreme pleasure to deal with counsel of such caliber. [Tr. at 48.])

In approving the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.) in June 2010, Judge Nicholas G. Garaufis stated:

> As outlined above, the recovery in this case is one of the highest ever achieved in this type of securities action. … The court also notes that, throughout this litigation, it has been impressed by Lead Counsel's acumen and diligence. The briefing has been thorough, clear, and convincing, and … Lead Counsel has not taken short cuts or relaxed its efforts at any stage of the litigation.

In approving a $146.25 million settlement in *In re Charter Communications Securities Litigation*, No. 02-CV-1186, 2005 U.S. Dist. LEXIS 14772 (E.D. Mo. June 30, 2005), in which Pomerantz served as sole Lead Counsel, Judge Charles A. Shaw praised the Firm's efforts, citing "the vigor with which Lead Counsel … investigated claims, briefed the motions to dismiss, and negotiated the settlement." He further stated:

> This Court believes Lead Plaintiff achieved an excellent result in a complex action, where the risk of obtaining a significantly smaller recovery, if any, was substantial.

In approving a $24 million settlement in *In re Force Protection, Inc.,* No. 08 CV 845 (D.S.C. 2011), Judge C. Weston Houk described the Firm as "attorneys of great ability and great reputation" and commended the Firm for having "done an excellent job."

In certifying a class in a securities fraud action against analysts in *DeMarco v. Robertson Stephens Inc.*, 228 F.R.D. 468 (S.D.N.Y. 2005), Judge Gerard D. Lynch stated that Pomerantz had "ably and zealously represented the interests of the class."

Numerous courts have made similar comments:

- Appointing Pomerantz Lead Counsel in *American Italian Pasta Co. Securities Litigation*, No 05-CV-0725 (W.D. Mo.), a class action that involved a massive fraud and restatements spanning several years, the District Court observed that the Firm "has significant experience (and has been extremely effective) litigating securities class actions, employs highly qualified attorneys,

and possesses ample resources to effectively manage the class litigation and protect the class's interests."

- In approving the settlement in *In re Wiring Devices Antitrust Litigation*, MDL No. 331 (E.D.N.Y. Sept. 9, 1980), Chief Judge Jack B. Weinstein stated that "Counsel for the plaintiffs I think did an excellent job. ... They are outstanding and skillful. The litigation was and is extremely complex. They assumed a great deal of responsibility. They recovered a very large amount given the possibility of no recovery here which was in my opinion substantial."

- In *Snyder v. Nationwide Insurance Co.*, No. 97/0633, (N.Y. Supreme Court, Onondaga Cty.), a case where Pomerantz served as Co-Lead Counsel, Judge Tormey stated, "It was a pleasure to work with you. This is a good result. You've got some great attorneys working on it."

- In *Steinberg v. Nationwide Mutual Insurance Co.* (E.D.N.Y. 2004), Judge Spatt, granting class certification and appointing the Firm as class counsel, observed: "The Pomerantz firm has a strong reputation as class counsel and has demonstrated its competence to serve as class counsel in this motion for class certification." (224 F.R.D. 67, 766.)

- In *Mercury Savings & Loan*, No. 90-cv-00087 LHM (C.D. Cal. 1993), Judge McLaughlin commended the Firm for the "absolutely extraordinary job in this litigation."

- In *Boardwalk Marketplace Securities Litigation*, MDL No. 712 (D. Conn.), Judge Eginton described the Firm's services as "exemplary," praised it for its "usual fine job of lawyering ...[in] an extremely complex matter," and concluded that the case was "very well-handled and managed." (Tr. at 6, 5/20/92; Tr. at 10, 10/10/92.)

- In *Nodar v. Weksel*, No. 84 Civ. 3870 (S.D.N.Y.), Judge Broderick acknowledged "that the services rendered [by Pomerantz] were excellent services from the point of view of the class represented, [and] the result was an excellent result." (Tr. at 21-22, 12/27/90.)

- In *Klein v. A.G. Becker Paribas, Inc.*, No. 83 Civ. 6456 (S.D.N.Y.), Judge Goettel complimented the Firm for providing "excellent ...absolutely top-drawer representation for the class, particularly in light of the vigorous defense offered by the defense firm." (Tr. at 22, 3/6/87.)

- In *Digital Securities Litigation*, No. 83-3255 (D. Mass.), Judge Young lauded the Firm for its "[v]ery fine lawyering." (Tr. at 13, 9/18/86.)

- In *Shelter Realty Corp. v. Allied Maintenance Corp.*, 75 F.R.D. 34, 40 (S.D.N.Y. 1977), Judge Frankel, referring to Pomerantz, said: "Their experience in handling class actions of this nature is known to the court and certainly puts to rest any doubt that the absent class members will receive the quality of representation to which they are entitled."

- In *Rauch v. Bilzerian*, No. 88 Civ. 15624 (N.J. Sup. Ct.), the court, after trial, referred to Pomerantz partners as "exceptionally competent counsel," and as having provided "top drawer, topflight [representation], certainly as good as I've seen in my stay on this court."

## Corporate Governance Litigation

Pomerantz is committed to ensuring that companies adhere to responsible business practices and practice good corporate citizenship. We strongly support policies and procedures designed to give shareholders the ability to oversee the activities of a corporation. We vigorously pursue corporate

governance reform, particularly in the area of excess compensation, where it can address the growing disparity between the salaries of executives and the workers of major corporations. We have successfully utilized litigation to bring about corporate governance reform in numerous cases, and always consider whether such reforms are appropriate before any case is settled.

Pomerantz partners are frequent speakers at domestic and international conferences on the importance of securities fraud actions in such countries as the United Kingdom, France, and Israel. According to Senior Partner, Marc Gross, "We need to have these kinds of legal remedies available in order to maintain corporate honesty and accountability."

Pomerantz's Corporate Governance Practice Group, led by Partner Gustavo F. Bruckner, enforces shareholder rights and prosecutes actions challenging corporate transactions that arise from an unfair process or result in an unfair price for shareholders.

In September 2017, New Jersey Superior Court Judge Julio Mendez, of Cape May County Chancery Division, approved Pomerantz's settlement in a litigation against Ocean Shore Holding Co. The settlement provided non-pecuniary benefits for a non-opt out class. In so doing, Judge Mendez became the first New Jersey state court judge to formally adopt the Third Circuit's nine-part *Girsh* factors, *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975). There has never before been a published New Jersey state court opinion setting out the factors a court must consider in evaluating whether a class action settlement should be determined to be fair and adequate. After conducting an analysis of each of the nine *Girsh* factors and holding that "class actions settlements involving non-monetary benefits to the class are subject to more exacting scrutiny," Judge Mendez held that the proposed settlement provided a material benefit to the shareholders.

In February 2018, the Maryland Circuit Court, Montgomery County, approved a $17.5 million settlement that plaintiffs achieved as additional consideration on behalf of a class of shareholders of American Capital, Ltd. *In re Am. Capital, Ltd. S'holder Litig.*, C.A. No. 422598-V (2018). The settlement resolved Plaintiffs' claims regarding a forced sale of American Capital.

Pomerantz filed an action challenging the sale of American Capital, a Delaware corporation with its headquarters in Maryland. Among other things, American Capital's board of directors (the "Board") agreed to sell the company at a price below what two other bidders were willing to offer. Worse, the merger price was even below the amount that shareholders would have received in the company's planned phased liquidation, which the company was considering under pressure from Elliott Management, an activist hedge fund and holder of approximate 15% of American Capital stock. Elliott was not originally named as a defendant, but after initial discovery showed the extent of its involvement in the Board's breaches of fiduciary duty, Elliott was added as a defendant in an amended complaint under the theory that Elliott exercised actual control over the Board's decision-making. Elliott moved to dismiss on jurisdictional grounds and additionally challenged its alleged status as a controller of American Capital. In June 2017, minutes before the hearing on defendants' motion to dismiss, a partial settlement was entered into with the members of the Board for $11.5 million. The motion to dismiss hearing proceeded despite the partial settlement, but only as to Elliott. In July 2017, the court denied the motion to dismiss, finding that Elliott, "by virtue solely of its own conduct, … has easily satisfied the transacting business prong of the Maryland long arm statute." The court also found that the "amended complaint in this case sufficiently pleads that Elliott was a controller with respect to" the sale, thus

implicating a higher standard of review. Elliott subsequently settled the remaining claims for an additional $6 million. Pomerantz served as Co-Lead Counsel.

In May 2017, the Circuit Court of the State of Oregon approved the settlement achieved by Pomerantz and co-counsel of a derivative action brought by two shareholders of Lithia Motors, Inc. The lawsuit alleged breach of fiduciary duties by the board of directors in approving, without any meaningful review, the Transition Agreement between Lithia Motors and Sidney DeBoer, its founder, controlling shareholder, CEO, and Chairman, who was stepping down as CEO. DeBoer and his son, the current CEO, Bryan DeBoer, negotiated virtually all the material terms of the Agreement, by which the company agreed to pay the senior DeBoer $1,060,000 and a $42,000 car allowance annually for the rest of his life, plus other benefits, in addition to the $200,000 per year that he would receive for continuing to serve as Chairman.

The *Lithia* settlement extracted corporate governance therapeutics that provide substantial benefits to Lithia and its shareholders and redress the wrongdoing alleged by plaintiffs. The board will now be required to have at least five independent directors -- as defined under the New York Stock Exchange rules -- by 2020; a number of other new protocols will be in place to prevent self-dealing by board members. Further, the settlement calls for the Transition Agreement to be reviewed by an independent auditor who will determine whether the annual payments of $1,060,000 for life to Sidney DeBoer are reasonable. Lithia has agreed to accept whatever decision the auditor makes.

In January 2017, the Group received approval of the Delaware Chancery Court for a $5.6 million settlement it achieved on behalf of a class of shareholders of Physicians Formula Holdings Inc. over an ignored merger offer in 2012. *In re Physicians Formula Holdings Inc.*, C.A. No. 7794-VCL (Del. Ch.).

The Group obtained a landmark ruling in *Strougo v. Hollander*, C.A. No. 9770-CB (Del. Ch.), that fee-shifting bylaws adopted after a challenged transaction do not apply to shareholders affected by the transaction. They were also able to obtain a *25% price increase* for members of the class cashed out in the going private transaction.

In *Miller v. Bolduc*, No. SUCV 2015-00807 (Mass. Super. Ct.), the Group caused Implant Sciences to hold its first shareholder annual meeting in five years and put an important compensation grant up for a shareholder vote.

In *Smollar v. Potarazu*, C.A. No. 10287-VCN (Del. Ch.), the Group pursued a derivative action to bring about the appointment of two independent members to the board of directors, retention of an independent auditor, dissemination of financials to shareholders and the holding of first ever in-person annual meeting, among other corporate therapeutics.

In *Hallandale Beach Police Officers & Firefighters' Personnel Retirement Fund vs. Lululemon athletica, Inc.,* C.A. No. 8522-VCP (Del. Ch.), in an issue of first impression in Delaware, the Chancery Court ordered the production of the chairman's 10b5-1 stock trading plan. The court found that a stock trading plan established by the company's chairman, pursuant to which a broker, rather than the chairman himself, would liquidate a portion of the chairman's stock in the company, did not preclude potential liability for insider trading.

In *Strougo v. North State Bancorp*, No. 15 CVS 14696 (N.C. Super. Ct.), the Group caused the Merger Agreement to be amended to provide a "majority of the minority" provision for the holders of North State Bancorp's common stock in connection with the shareholder vote on the merger. As a result of the Action, common shareholders could stop the merger if they did not wish it to go forward.

Pomerantz's commitment to advancing sound corporate governance principles is further demonstrated by the more than 26 years that we have co-sponsored the Abraham L. Pomerantz Lecture Series with Brooklyn Law School. These lectures focus on critical and emerging issues concerning shareholder rights and corporate governance and bring together top academics and litigators.

Our bi-monthly newsletter, *The Pomerantz Monitor*, provides institutional investors updates and insights on current issues in corporate governance.

# Antitrust Litigation

Pomerantz has earned a reputation for prosecuting complex antitrust and consumer class actions with vigor, innovation, and success. Pomerantz's Antitrust and Consumer Group has recovered billions of dollars for the Firm's business and individual clients and the classes that they represent. Time and again, Pomerantz has protected our free-market system from anticompetitive conduct such as price fixing, monopolization, exclusive territorial division, pernicious pharmaceutical conduct, and false advertising. Pomerantz's advocacy has spanned across diverse product markets, exhibiting the Antitrust and Consumer Group's versatility to prosecute class actions on any terrain.

Pomerantz has served and is currently serving in leadership or Co-Leadership roles in several high-profile multi-district litigation class actions. In December 2018, the Firm achieved a $31 billion partial settlement with three defendants on behalf of a class of U.S. lending institutions that originated, purchased or held loans paying interest rates tied to the U.S. Dollar London Interbank Offered Rate (USD LIBOR). It is alleged that the class suffered damages as a result of collusive manipulation by the LIBOR contributor panel banks that artificially suppressed the USD LIBOR rate during the class period, causing the class members to receive lower interest payments than they would have otherwise received. *In re Libor Based Financial Instruments Antitrust Litig.,* 1:11-md-2262.

Pomerantz represented baseball and hockey fans in a game-changing antitrust class action against Major League Baseball and the National Hockey League, challenging the exclusive territorial division of live television broadcasts, internet streaming, and the resulting geographic blackouts. *See Laumann v. NHL* and *Garber v. MLB* (S.D.N.Y. 2012).

Pomerantz has spearheaded the effort to challenge harmful anticompetitive conduct by pharmaceutical companies—including Pay-for-Delay Agreements—that artificially inflates the price of prescription drugs by keeping generic versions off the market.

Even prior to the 2013 precedential U.S. Supreme Court decision in *Actavis*, Pomerantz litigated and successfully settled the following generic-drug-delay cases:

- *In re Flonase Antitrust Litig.* (E.D. Pa. 2008) ($35 million);
- *In re Toprol XL Antitrust Litig.* (D. Del. 2006) ($11 million); and

- *In re Wellbutrin SR Antitrust Litig.* (E.D. Pa. 2004) ($21.5 million).

Other exemplary victories include Pomerantz's prominent role in *In re NASDAQ Market-Makers Antitrust Litigation* (S.D.N.Y.), which resulted in a settlement in excess of $1 billion for class members, one of the largest antitrust settlements in history. Pomerantz also played prominent roles in *In re Sorbates Direct Purchaser Antitrust Litigation* (N.D. Cal.), which resulted in over an $82 million recovery, and in *In re Methionine Antitrust Litigation* (N.D. Cal.), which resulted in a $107 million recovery. These cases illustrate the resources, expertise, and commitment that Pomerantz's Antitrust Group devotes to prosecuting some of the most egregious anticompetitive conduct.

# Strategic Consumer Litigation

Pomerantz represents consumers in strategic consumer litigation, namely, actions that recover monetary relief on behalf of class members while also advocating for important consumer rights. We have successfully prosecuted claims involving California's Unfair Competition Law, California's Consumer Legal Remedies Act, the Song Beverly Consumer Warranty Act and the Song Beverly Credit Card Act. Pomerantz attorneys have resolved data breach privacy cases and cases involving unlawful recording, illegal background checks, unfair business practices, misleading advertising and other consumer finance related actions. Attorneys at Pomerantz also have been Lead Counsel in the prosecution and successful resolution of major nationwide class actions against Nissan, Ford, Volkswagen, BMW, Toyota, Chrysler and General Motors arising out of failures to disclose car defects. All of these actions also have involved significant changes to defendants' business practices.

# A Global Advocate for Asset Managers and Public and Taft-Hartley Pension Funds

Pomerantz represents some of the largest pension funds, asset managers, and institutional investors around the globe, monitoring assets of $5 trillion, and growing. Utilizing cutting-edge legal strategies and the latest proprietary techniques, Pomerantz protects, expands, and vindicates shareholder rights through our securities litigation services and portfolio monitoring program.

Pomerantz partners routinely advise foreign and domestic institutional investors on how best to evaluate losses to their investment portfolios attributable to financial misconduct and how best to maximize their potential recoveries worldwide. In particular, Pomerantz Partners, Jeremy Lieberman, Patrick Dahlstrom, Jennifer Pafiti, and Marc Gross regularly travel throughout the U.S. and across the globe to meet with clients on these issues and are frequent speakers at investor conferences and educational forums in North America, Europe, and the Middle East.

# Institutional Investor Services

Pomerantz offers a variety of services to institutional investors. Through the Firm's proprietary system, PomTrack®, Pomerantz monitor client portfolios to identify and evaluate potential and pending securities fraud, ERISA and derivative claims, and class action settlements. Monthly customized PomTrack® reports are included with the service.

When a potential securities fraud claim impacting a client is identified, Pomerantz offers to thoroughly analyze the case's merits and provide a written analysis and recommendation. If litigation is warranted, a team of highly skilled attorneys will provide efficient and effective legal representation. The experience and expertise of our attorneys – which have consistently been acknowledged by the courts – allow Pomerantz to vigorously pursue the claims of investors, taking complex cases to trial when warranted.

Pomerantz is committed to ensuring that companies adhere to responsible business practices and practice good corporate citizenship. The Firm strongly support policies and procedures designed to give shareholders the ability to oversee the activities of a corporation. Pomeranz has successfully utilized litigation to bring about corporate governance reform, and always considers whether such reforms are appropriate before any case is settled.

Pomerantz provides clients with insightful and timely commentary on matters essential to effective fund management in our bi-monthly newsletter, *The Pomerantz Monitor* and regularly sponsors conferences and roundtable events around the globe with speakers who are experts in securities litigation and corporate governance matters.

# Attorneys

### Partners

#### Jeremy A. Lieberman

Jeremy A. Lieberman is Pomerantz's Managing Partner. Jeremy became associated with the Firm in August 2004 and was elevated to Partner in January 2010. He was honored as Benchmark Litigation's 2019 Plaintiff Attorney of the Year. In 2018, Jeremy was honored as a Titan of the Plaintiffs Bar by Law360 and as a Benchmark Litigation Star. The Pomerantz team that Jeremy leads was named a 2018 Securities Practice Group of the Year. Jeremy has been honored as a Super Lawyers® "Top-Rated Securities Litigation Attorney" in 2016, 2017, and 2018 – a recognition bestowed on no more than 5% of eligible attorneys in the New York Metro area. The Legal 500, in honoring Pomerantz as a Leading Firm for 2016 and 2017, stated that in New York, "Jeremy Lieberman is super impressive – a formidable adversary for any defense firm."

Jeremy led the litigation of *In re Petrobras Securities Litigation,* a closely-watched securities class action arising from a multi-billion-dollar kickback and bribery scheme involving Brazil's largest oil company, Petróleo Brasileiro S.A. – Petrobras, in which Pomerantz was sole Lead Counsel. The biggest instance of

corruption in the history of Brazil ensnared not only Petrobras' former executives but also Brazilian politicians, including former president Lula da Silva and one-third of the Brazilian Congress. In January and February 2018, Jeremy achieved a historic $3 billion settlement for the Class. This is not only the largest securities class action settlement in a decade but is the largest settlement ever in a securities class action involving a foreign issuer, the fifth-largest securities class action settlement ever achieved in the United States, the largest securities class action settlement achieved by a foreign Lead Plaintiff, and the largest securities class action settlement in history not involving a restatement of financial reports.

Jeremy also secured a significant victory for Petrobras investors at the Second Circuit Court of Appeals, when the court rejected the heightened ascertainability requirement for obtaining class certification that had been imposed by the Third Circuit Courts of Appeals. The ruling will have a positive impact on plaintiffs in securities fraud litigation. Indeed, the *Petrobras* litigation was honored in 2019 as a National Impact Case by Benchmark Litigation.

In January 2019, Jeremy achieved a $27 million settlement for the Class, pending court approval, in *Strougo v. Barclays PLC*, a high-profile securities class action in which Pomerantz is Lead Counsel. Plaintiffs allege that Barclays PLC misled institutional investors about the manipulation of the banking giant's so-called "dark pool" trading systems in order to provide a trading advantage to high-frequency traders over its institutional investor clients. This case turns on the duty of integrity owed by Barclays to its clients. In November 2017, he achieved precedent-setting victories for investors, when the Second Circuit Court of Appeals held that direct evidence of price impact is not always necessary to demonstrate market efficiency to invoke the presumption of reliance, and that defendants seeking to rebut the presumption of reliance must do so by a preponderance of the evidence rather than merely meeting a burden of production.

Jeremy led the Firm's high-profile class action litigation against Yahoo! Inc., in which Pomerantz, as Lead Counsel, achieved an $80 million settlement for the Class in 2018. The case involved the biggest data breaches in U.S. history, in which over 3 billion Yahoo accounts were compromised.

In 2018 Jeremy achieved a $3,300,000 settlement for the Class in the Firm's securities class action against Corinthian Colleges, one of the largest for-profit college systems in the country, for alleged misrepresentations about its job placement rates, compliance with applicable regulations, and enrollment statistics. Pomerantz prevailed in the motion to dismiss the proceedings, a particularly noteworthy victory because Chief Judge George King of the Central District of California had dismissed two prior lawsuits against Corinthian with similar allegations. *Erickson v. Corinthian Colleges, Inc.* (C.D. Cal.).

Jeremy led the Firm's litigation team that in 2018 secured a $31 million partial settlement with three defendants in *In re Libor Based Financial Instruments Antitrust Litigation*, a closely-watched multi-district litigation, which concerns the London Interbank Offered Rate (LIBOR) rigging scandal.

Jeremy heads the Firm's recently filed individual action against pharmaceutical giant Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc. (together, "Teva"), and certain of Teva's current and former employees and officers relating to alleged anticompetitive practices in Teva's sales of generic drugs. *Clal Insurance Company Ltd. v. Teva Pharmaceutical Industries Ltd.*

Jeremy also serves as Lead Counsel in a number of the most high-profile securities class actions pending in the U.S. courts, such as *In re Mylan N.V. Securities Litigation, In re Perrigo Co. Securities Litigation,* and *In re Fiat Chrysler Automobiles N.V. Securities Litigation.*

In *In re China North East Petroleum Corp. Securities Litigation*, Jeremy achieved a significant victory for shareholders in the United States Court of Appeals for the Second Circuit, whereby the Appeals Court ruled that a temporary rise in share price above its purchase price in the aftermath of a corrective disclosure did not eviscerate an investor's claim for damages. The Second Circuit's decision was deemed "precedential" by the *New York Law Journal* and provides critical guidance for assessing damages in a § 10(b) action.

Jeremy had an integral role in *In re Comverse Technology, Inc. Securities Litigation*, in which he and his partners achieved a historic $225 million settlement on behalf of the Class, which was the second-largest options backdating settlement to date.

Jeremy regularly consults with Pomerantz's international institutional clients, including pension funds, regarding their rights under the U.S. securities laws. Jeremy is working with the Firm's international clients to craft a response to the Supreme Court's ruling in *Morrison v. National Australia Bank, Ltd*., which limited the ability of foreign investors to seek redress under the federal securities laws. Currently, Jeremy is representing several UK and EU pension funds and asset managers in individual actions against BP plc in the United States District Court for the Southern District of Texas.

Jeremy is a frequent lecturer regarding current corporate governance and securities litigation issues. In March 2017, he spoke at the ICGN conference in Washington D.C., regarding recent trends in foreign securities litigation. He also recently led a discussion regarding U.S. securities class actions in Paris, France.

Jeremy graduated from Fordham University School of Law in 2002. While in law school, he served as a staff member of the *Fordham Urban Law Journal*. Upon graduation, he began his career at a major New York law firm as a litigation associate, where he specialized in complex commercial litigation.

Jeremy is admitted to practice in the State of New York; the U.S. District Courts for the Southern and Eastern Districts of New York, the Southern District of Texas, the District of Colorado, the Eastern District of Michigan and Northern District of Illinois; the U.S. Courts of Appeals for the Second, Third, Fourth, Sixth, Ninth, and Tenth Circuits; and the United States Supreme Court.

## Patrick V. Dahlstrom

Patrick Dahlstrom joined Pomerantz as an associate in 1991 and was elevated to Partner in January 1996. He was Co-Managing Partner with Jeremy Lieberman in 2017 and 2018 and is now Senior Partner. Patrick is based in the Firm's Chicago office. He was honored as a Super Lawyers® "Top-Rated Securities Litigation Attorney" in 2018.

Patrick, a member of the Firm's Institutional Investor Practice and New Case Groups, has extensive experience litigating cases under the PSLRA. He led *In re Comverse Technology, Inc. Securities Litigation*,

No. 06-CV-1825 (E.D.N.Y.), in which the Firm, as Lead Counsel, recovered a $225 million settlement for the Class – the second-highest ever for a case involving back-dating options, and one of the largest recoveries ever from an individual officer-defendant, the company's founder and former CEO. In *Comverse*, the Firm obtained an important clarification of how courts calculate the "largest financial interest" in connection with the selection of a Lead Plaintiff, in a manner consistent with *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005). Judge Garaufis, in approving the settlement, lauded Pomerantz: "The court also notes that, throughout this litigation, it has been impressed by Lead Counsel's acumen and diligence. The briefing has been thorough, clear, and convincing, and ... Lead Counsel has not taken short cuts or relaxed its efforts at any stage of the litigation."

In *DeMarco v. Robertson Stephens Inc.*, 228 F.R.D. 468 (S.D.N.Y. 2005), Patrick obtained the first class certification in a federal securities case involving fraud by analysts.

Patrick's extensive experience in litigation under the PSLRA has made him an expert not only at making compelling arguments on behalf of Pomerantz' clients for Lead Plaintiff status, but also in discerning weaknesses of competing candidates. *In re American Italian Pasta Co. Securities Litigation* and *Comverse* are the most recent examples of his success in getting our clients appointed sole Lead Plaintiff despite competing motions by numerous impressive institutional clients.

Patrick was a member of the trial team in *In re ICN/Viratek Securities Litigation* (S.D.N.Y. 1997), which, after trial, settled for $14.5 million. Judge Wood praised the trial team: "[P]laintiffs counsel did a superb job here on behalf of the class. ...This was a very hard fought case. You had very able, superb opponents, and they put you to your task. ...The trial work was beautifully done and I believe very efficiently done."

Patrick's speaking engagements include interviews by NBC and the CBC regarding securities class actions, and among others, a presentation at the November 2009 State Association of County Retirement Systems Fall Conference as the featured speaker at the Board Chair/Vice Chair Session entitled: "Cleaning Up After the 100 Year Storm. How trustees can protect assets and recover losses following the burst of the housing and financial bubbles."

Patrick is a 1987 graduate of the Washington College of Law at American University in Washington, D.C., where he was a Dean's Fellow, Editor in Chief of the *Administrative Law Journal*, a member of the Moot Court Board representing Washington College of Law in the New York County Bar Association's Antitrust Moot Court Competition, and a member of the Vietnam Veterans of America Legal Services/Public Interest Law Clinic. Upon graduating, Patrick served as the Pro Se Staff Attorney for the United States District Court for the Eastern District of New York and was a law clerk to the Honorable Joan M. Azrack, United States Magistrate Judge.

Patrick is admitted to practice in New York and Illinois, the United States District Courts for the Southern and Eastern Districts of New York, Northern District of Illinois, Northern District of Indiana, Eastern District of Wisconsin, District of Colorado, Western District of Pennsylvania, the United States Courts of Appeals for the First, Fourth, Sixth, Seventh, Eighth, and Ninth Circuits, and the United States Supreme Court.

**Gustavo F. Bruckner**

Gustavo F. Bruckner heads Pomerantz's Corporate Governance practice area, which enforces shareholder rights and prosecutes litigation challenging corporate actions that harm shareholders. Under Gustavo's leadership, the Corporate Governance group has achieved numerous noteworthy litigation successes. He has been quoted frequently by Bloomberg, Law360, The New York Times, and Reuters, and was honored in 2016, 2017, and 2018 by Super Lawyers® as a "Top-Rated Securities Litigation Attorney," a recognition bestowed on no more than 5% of eligible attorneys in the New York Metro area. Gustavo regularly appears in state and federal courts across the nation.

In September 2017, Gustavo's Corporate Governance team achieved a settlement in New Jersey Superior Court that provided non-pecuniary benefits for a non-opt out class, in Pomerantz's litigation against Ocean Shore Holding Co. In approving the settlement, Judge Julio Mendez, of Cape May County Chancery Division, became the first New Jersey state court judge to formally adopt the Third Circuit's nine-part *Girsh* factors, *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975). Never before has there been a published New Jersey state court opinion setting out the factors a court must consider in evaluating whether a class action settlement should be determined to be fair and adequate.

Gustavo successfully argued *Strougo v. Hollander*, C.A. No. 9770-CB (Del. Ch. 2015), obtaining a landmark ruling in Delaware that bylaws adopted after shareholders are cashed out do not apply to shareholders affected by the transaction. In the process, Gustavo and the Corporate Governance team beat back a fee-shifting bylaw and were able to obtain a 25% price increase for members of the class cashed out in the "going private" transaction. Shortly thereafter, the Delaware Legislature adopted legislation to ban fee-shifting bylaws.

In *Stein v. DeBoer* (Or. Cir. Ct. 2017), Gustavo and the Corporate Governance group achieved a settlement that provides significant corporate governance therapeutics on behalf of shareholders of Lithia Motors, Inc. The company's board had approved, without meaningful review, the Transition Agreement between the company and Sidney DeBoer, its founder, controlling shareholder, CEO, and Chairman, who was stepping down as CEO. DeBoer and his son, the current CEO, negotiated virtually all the material terms of the Agreement, by which the company agreed to pay the senior DeBoer $1,060,000 and a $42,000 car allowance annually for the rest of his life, plus other benefits, in addition to the $200,000 per year that he would receive for continuing to serve as Chairman.

In *Miller v. Bolduc*, No. SUCV 2015-00807 (Mass. Sup. Ct. 2015), Gustavo and the Corporate Governance group, by initiating litigation, caused Implant Sciences to hold its first shareholder annual meeting in 5 years and to place an important compensation grant up for a shareholder vote.

In *Strougo v. North State Bancorp*, No. 15 CVS 14696 (N.C. Super. Ct. 2015), Gustavo and the Corporate Governance team caused the North State Bancorp merger agreement to be amended to provide a "majority of the minority" provision for common shareholders in connection with the shareholder vote on the merger. As a result of the action, common shareholders had the ability to stop the merger if they did not wish it to go forward.

In *Hallandale Beach Police Officers and Firefighters' Personnel Retirement Fund vs. Lululemon athletica, Inc.*, C.A. No. 8522-VCP (Del. Ch. 2014), in an issue of first impression in Delaware, Gustavo successfully

---

argued for the production of the company chairman's Rule 10b5-1 stock trading plan. The court found that a stock trading plan established by the company's chairman, pursuant to which a broker, rather than the chairman himself, would liquidate a portion of the chairman's stock in the company, did not preclude potential liability for insider trading.

Gustavo was Co-Lead Counsel in *In re Great Wolf Resorts, Inc. Shareholders Litigation*, C.A. No. 7328-VCN (Del. Ch. 2012), obtaining the elimination of stand-still provisions that allowed third parties to bid for Great Wolf Resorts, Inc., resulting in the emergence of a third-party bidder and approximately $94 million (57%) in additional merger consideration for Great Wolf shareholders.

Gustavo received his law degree in 1992 from the Benjamin N. Cardozo School of Law, where he served as an editor of the Moot Court Board and on the Student Council. Upon graduation, he received the award for outstanding student service.

After graduating law school, Gustavo served as Chief-of-Staff to a New York City legislator.

Gustavo is a Mentor and Coach to the NYU Stern School of Business, Berkley Center for Entrepreneurial Studies, New Venture Competition. He was a University Scholar at NYU where he obtained a B.S. in Marketing and International Business in 1988 and an MBA in Finance and International Business in 1989.

Gustavo is a Trustee and the Treasurer of the Beit Rabban Day School, and an arbitrator in the Civil Court of the City of New York.

Gustavo is licensed to practice in New York and New Jersey and is admitted to practice before the United States District Court for the Eastern, Northern, and Southern Districts of New York, the United States District Court for the District of New Jersey, United States Court of Appeals for the Second and Seventh Circuits, and the United States Supreme Court.

## Emma Gilmore

Emma Gilmore is a partner at the Firm and is regularly involved in high-profile class-action litigation. In 2018, Emma was honored as an MVP in Securities Litigation, part of an "elite slate of attorneys [who] have distinguished themselves from their peers by securing hard-earned successes in high-stakes litigation, complex global matters and record-breaking deals." Only up to six attorneys nationwide are selected each year as MVPs in Securities Litigation. Emma is only the third woman in that practice group to have received this outstanding award since it was initiated in 2011. Emma was also honored as a 2018 Super Lawyer® in the New York Metro area.

Emma is a Fellow of the American Bar Foundation, an honorary society of lawyers, judges, law faculty and legal scholars who have demonstrated outstanding leadership in the profession. Membership is limited to one percent of the lawyers admitted to practice in the United States and includes the leading US lawyers.

Emma recently played a leading role in the Firm's class action case in the Southern District of New York against Brazil's largest oil company, Petrobras, arising from a multi-billion-dollar kickback and bribery scheme, in which the Firm was sole Lead Counsel. The biggest instance of corruption in the history of

Brazil had ensnared not only Petrobras' former executives but also Brazilian politicians, including former president Lula da Silva and one-third of the Brazilian Congress. Emma was the principal drafter of the complaint. She deposed and defended numerous fact and expert witnesses, including deposing the former CEO of Petrobras, the whistleblower, and the chief accountant. She was also the principal drafter of the appellate brief and played an instrumental role in securing a significant victory for investors in this case at the Second Circuit Court of Appeals, when the Court rejected the heightened ascertainability requirement for obtaining class certification that had been imposed by other circuit courts. She opposed defendants' petition for a writ of certiorari to the Supreme Court. In a significant victory for investors, Pomerantz has achieved a historic $3 billion settlement with Petrobras. This is not only the largest securities class action settlement in a decade but is the largest settlement ever in a class action involving a foreign issuer, the fifth-largest class action settlement ever achieved in the United States, and the largest settlement achieved by a foreign lead plaintiff.

Emma played a leading role in *Strougo v. Barclays PLC*, a high-profile securities class action that alleges Barclays PLC misled institutional investor clients about the extent of the banking giant's use of so-called "dark pool" trading systems. She drafted the complaint and defeated defendants' efforts to dismiss the action and more recently contributed to securing an important precedent-setting opinion from the Second Circuit. Emma organized a group of leading evidence experts who filed amicus briefs supporting plaintiffs' position in the Second Circuit.

Together with managing partner Jeremy Lieberman, Emma leads the securities class action litigation against Philip Morris International, arising from the development of its Reduced Risk smoking products.

Emma also plays a leading role in the Firm's class action litigation against Arconic, arising from the deadliest U.K. fire in more than a century.

She also represents Safra Bank in a class action against Samarco Mineração S.A., in connection with the Fundao dam-burst disaster, which is widely regarded as the worst environmental disaster in Brazil's history.

Emma played a leading role in the high-profile class action litigation against Yahoo! Inc., in which the Firm, as Lead Counsel, achieved an $80 million settlement for the Class. The case involved the biggest data breaches in U.S. history, in which over 3 billion Yahoo accounts were compromised.

Among other cases, Emma is part of the team prosecuting securities fraud claims against BP on behalf of many foreign and domestic public and private pension funds arising from the company's 2010 Deepwater Horizon oil spill. *In re BP p.l.c. Sec. Litig.*, No. 10-md-2185 (S.D. Tex.). She helped devise a cutting-edge strategy that established the right of individual foreign investors who purchased foreign-traded shares of a foreign corporation to pursue claims for securities fraud in a U.S. court, thereby overcoming obstacles created by the U.S. Supreme Court's 2010 decision in *Morrison v. National Australia Bank Ltd*.

Emma secured a unanimous decision by a panel of the Ninth Circuit Court of Appeals, benefitting defrauded investors in *Costa Brava Partnership III LP v. ChinaCast Education Corp*. In an issue of first impression, the Ninth Circuit held that imputation of the CEO's scienter to the company was warranted

vis-a-vis innocent third parties, despite the fact that the executive acted for his own benefit and to the company's detriment.

She has also devoted a significant amount of time to pro bono matters. She played a critical role in securing a unanimous ruling by the Arkansas Supreme Court striking down as unconstitutional a state law banning cohabiting individuals from adopting children or serving as foster parents. The ruling was a relief for the 1,600-plus children in the state of Arkansas who needed a permanent family. The litigation generated significant publicity, including coverage by the Arkansas Times, the Wall Street Journal, and the New York Times.

Before joining Pomerantz, Emma was a litigation associate with the firms of Skadden, Arps, Slate, Meagher and Flom, LLP, and Sullivan & Cromwell, LLP, where she was involved in commercial and securities matters. Her experience includes working on the *WorldCom Securities Litigation,* representing more than a dozen prominent banks and also representing clients such as General Electric, Columbia University, Samsung, LG Electronics, Sony, Philips, BT, and JVC.

She also served as a law clerk to the Honorable Thomas C. Platt, former U.S. Chief Judge for the Eastern District of New York.

Emma graduated *cum laude* from Brooklyn Law School, where she served as a staff editor for the *Brooklyn Law Review*. She was the recipient of two CALI Excellence for the Future Awards, being the highest scoring student in the subjects of evidence and discovery. She graduated *summa cum laude* from Arizona State University, with a BA in French and a minor in Business.

She serves on the Firm's Anti-Harassment and Discrimination Committee.

## Michael Grunfeld

Michael Grunfeld joined Pomerantz in July 2017 as Of Counsel and was elevated to Partner in 2019. He has extensive experience in securities, complex commercial, and white-collar matters in federal and state courts around the country. In particular, Michael has represented issuers, underwriters, and individuals in securities class actions dealing with a wide variety of industries. He has also represented financial institutions and individuals in cases related to RMBS, securities lending, foreign exchange practices, insider trading, and other financial matters. Michael was honored in 2018 as a Super Lawyers® Rising Star.

Michael is the co-author of a chapter on damages in securities class actions in the LexisNexis treatise, *Litigating Securities Class Actions*.

Michael served as a clerk for Judge Ronald Gilman of the Sixth Circuit Court of Appeals and as a foreign law clerk for Justice Asher Grunis of the Israeli Supreme Court. Before joining Pomerantz, he was a litigation associate at Shearman & Sterling LLP and Paul, Weiss, Rifkind, Wharton & Garrison LLP. Michael graduated from Columbia Law School in 2008, where he was a Harlan Fiske Stone Scholar and Submissions Editor of the Columbia Business Law Review. He graduated from Harvard University with an A.B. in Government, *magna cum laude*, in 2004.

Michael is admitted to practice in the State of New York, the Second, Fourth, and Sixth Circuit Courts of Appeals, and the United States District Courts for the Southern and Eastern Districts of New York.

**Jordan L. Lurie**

Jordan L. Lurie joined Pomerantz as a partner in the Los Angeles office in December 2018.  Jordan heads Pomerantz's Strategic Consumer Litigation practice.

Jordan has litigated shareholder class and derivative actions, complex corporate securities and consumer litigation, and a wide range of fraud and misrepresentation cases brought under state and federal consumer protection statutes involving unfair competition, false advertising, and privacy rights. Among his notable representations, Jordan served as Lead Counsel in the prosecution and successful resolution of major nationwide class actions against Nissan, Ford, Volkswagen, BMW, Toyota, Chrysler and General Motors. He also successfully preserved a multi-million dollar nationwide automotive class action settlement by convincing the then Chief Judge of the Ninth Circuit and his wife, who were also class members and had filed objections to the settlement, to withdraw their objections and endorse the settlement.

Jordan has argued cases in the California Court of Appeals and in the Ninth Circuit that resulted in published opinions establishing class members' rights to intervene and clarifying the standing requirements for an objector to appeal. He also established a Ninth Circuit precedent for obtaining attorneys' fees in a catalyst fee action. Jordan has tried a federal securities fraud class action to verdict. He has been a featured speaker at California Mandatory Continuing Legal Education seminars and is a trained ombudsman and mediator.

Outside of his legal practice, Jordan is an active educator and community leader and has held executive positions in various organizations in the Los Angeles community. Jordan participated in the first Wexner Heritage Foundation leadership program in Los Angeles and the first national cohort of the Board Member Institute for Jewish Nonprofits at the Kellogg School of Management.

Prior to joining Pomerantz, Jordan was the Managing Partner of the Los Angeles office of Weiss & Lurie and Senior Litigator at Capstone Law APC.

Jordan graduated cum laude from Yale University in 1984 with a B.A in Political Science and received his law degree in 1987 from the University of Southern California Law Center, where he served as Notes Editor of the *University of Southern California Law Review*.

Jordan is a member of the State Bar of California and has been admitted to practice before the United States District Courts for the Northern, Southern, Central and Eastern Districts of California, the Eastern and Western Districts of Michigan, and the District of Colorado.

**Jennifer Pafiti**

Jennifer Pafiti became associated with the Firm in May 2014 and was elevated to Partner in December 2015. A dually qualified U.K. solicitor and U.S. attorney, she is the Firm's Head of Client Services and also takes an active role in complex securities litigation, representing clients in both class and non-class

action securities litigation. In 2019 Jennifer was named to Benchmark Litigation's exclusive *40 & Under Hot List* of the best young attorneys in the United States and was honored by Super Lawyers® as a Southern California Rising Star. In 2018, Jennifer was recognized as a Lawyer of Distinction, an honor bestowed upon less than 10% of attorneys in any given state. She was honored by Super Lawyers® in 2017 as both a Rising Star and one of the Top Women Attorneys in Southern California. In 2016, the *Daily Journal* selected Jennifer for its prestigious "Top 40 Under 40" list of the best young attorneys in California.

Jennifer was an integral member of the Firm's litigation team for *In re Petrobras Securities Litigation,* a case relating to a multi-billion-dollar kickback and bribery scheme at Brazil's largest oil company, Petróleo Brasileiro S.A.- Petrobras, in which the Firm was sole Lead Counsel. She helped secure a significant victory for investors in this case at the Second Circuit Court of Appeals, when the court rejected the heightened ascertainability requirement for obtaining class certification that had been imposed by other Circuit courts such as the Third and Sixth Circuit Courts of Appeals. Working closely with Lead Plaintiff, Universities Superannuation Scheme Limited, she was also instrumental in achieving the historic settlement of $3 billion for Petrobras investors. This is not only the largest securities class action settlement in a decade but is the largest settlement ever in a securities class action involving a foreign issuer, the fifth-largest securities class action settlement ever achieved in the United States, the largest securities class action settlement achieved by a foreign Lead Plaintiff, and the largest securities class action settlement in history not involving a restatement of financial reports.

Jennifer is also involved in the litigations of *Dabe v. Calavo Growers*, *Flynn v. Sientra, Inc., Isensee v. KaloBios, Robb v. FitBit, Inc., Monachelli v. Hortonworks, Inc., Plumley v. Sempra Energy, and Greenberg v. Sunrun, Inc.,* in which the Firm is Lead Counsel.

Jennifer earned a Bachelor of Science degree in Psychology at Thames Valley University in England, prior to studying law. She earned her law degrees at Thames Valley University (G.D.L.) and the Inns of Court School of Law (L.P.C.) in the U.K. Jennifer is admitted to practice law in England and Wales (Solicitor) and in California.

Before studying law in England, Jennifer was a regulated financial advisor and senior mortgage underwriter at a major U.K. financial institution. She holds full CeFA and CeMAP qualifications. After qualifying as a Solicitor, Jennifer specialized in private practice civil litigation, which included the representation of clients in high-profile cases in the Royal Courts of Justice. Prior to joining Pomerantz, Jennifer was an associate with Robbins Geller Rudman & Dowd LLP in their San Diego office.

Jennifer regularly travels throughout the U.S. and Europe to advise clients on how best to evaluate losses to their investment portfolios attributable to financial fraud or other misconduct, and how best to maximize their potential recoveries.

Jennifer serves on the Honorary Steering Committee of Equal Rights Advocates ("ERA"), which focuses on specific issues that women face in the legal profession. ERA is an organization that protects and expands economic and educational access and opportunities for women and girls.

Jennifer is a member of the National Association of Pension Fund Attorneys and represents the Firm as a member of the California Association of Public Retirement Systems, the State Association of County

Retirement Systems, the National Association of State Treasurers, the National Conference of Employee Retirement Systems, the Texas Association of Public Employee Retirement Systems, and the U.K.'s National Association of Pension Funds.

Jennifer is admitted to practice in England and Wales; the State of California; and the United States District Courts for the Northern, Central and Southern Districts of California. She is based in Los Angeles.

## Joshua B. Silverman

Joshua B. Silverman specializes in individual and class action securities litigation. He was Lead Counsel in *In re Groupon, Inc. Securities Litigation,* achieving a $45 million settlement, representing one of the highest recoveries as a percentage of damages in the Seventh Circuit. Josh was also Co-Lead Counsel in *In re MannKind Corp. Securities Litigation*, reaching a settlement valued at more than $23 million and setting precedent regarding the use of expert information in a shareholder complaint. He served as Co-Lead Counsel for three large public funds in *New Mexico State Investment Council v. Countrywide Financial Corp.,* resulting in a very favorable confidential settlement. He regularly represents clients in controversies involving securities fraud, private equity investments, hedge fund investments, structured financial instruments, securities lending arrangements, and investment consultants. In addition, Josh was Co-Lead Counsel in *New Mexico State Investment Council v. Cheslock Bakker & Associates* (summary judgment award in excess of $30 million), played a key role in the Firm's representation of investors before the United States Supreme Court in *StoneRidge,* and prosecuted many of the Firm's other class cases, including *In re Sealed Air Corp. Securities Litigation* ($20 million settlement), *Bruce v. Suntech Power Holdings Corp.* ($5 million settlement); *In re AgFeed, Inc. Securities Litigation* ($7 million settlement); and *In re Hemispherx BioPharma Securities Litigation* ($2.75 million settlement).

Before joining Pomerantz, Josh practiced at McGuireWoods LLP and its Chicago predecessor, Ross & Hardies, where he represented one of the largest independent futures commission merchants in commodities fraud and civil RICO cases. He also spent two years as a securities trader, and continues to actively trade stocks, futures, and options for his own account.

Josh is a 1993 graduate of the University of Michigan, where he received Phi Beta Kappa honors, and a 1996 graduate of the University of Michigan Law School.

Josh is admitted to practice in Illinois, the United States District Court for the Northern District of Illinois, the United States Courts of Appeal for the First, Second, Third, Seventh and Eighth Circuits, and the United States Supreme Court.

## Leigh Handelman Smollar

Leigh Handelman Smollar, formerly Of Counsel to Pomerantz, was elevated to Partner in January 2012.

As a member of Pomerantz' Securities Litigation Group, Leigh plays a key role in litigating class actions against public companies for securities fraud. She was a member of the Pomerantz team in its successful litigation on behalf of three New Mexico pension funds related to Countrywide's mortgage-backed securities, resulting in a very favorable confidential settlement. Leigh has been a member of the Pomerantz litigation team for many of the cases where significant settlements were obtained. *See In re Sealed Air Corp. Sec. Litig.*, No. 03-CV-4372 (D.N.J.) ($20 million settlement approved December 2009);

and *In re Safety-Kleen Stockholders Sec. Litig.*, No. 00-736-17 (D.S.C.) (as Co-Lead Counsel, Firm obtained a $54.5 million settlement).

In 2015, Leigh published an article in the Loyola Law Journal entitled, *The Importance of Conducting Thorough Investigations of Confidential Witnesses in Securities Fraud Litigation*. She has authored several articles and updates for the Illinois Institute for Continuing Legal Education (IICLE), including *Shareholder Derivative Suits and Stockholder Litigation in Illinois*, published in IICLE Chancery and Special Remedies 2004 Practice Handbook; *Prosecuting Securities Fraud Class Actions*, published in IICLE Chancery and Special Remedies 2009 Practice Handbook, including a 2011 supplement to Chancery and Special Remedies; and a new chapter in the 2013 Edition of the Chancery and Special Remedies Practice Handbook. In June 2011, as a panelist at the Illinois Public Employee Retirement Systems Summit in Chicago, Illinois, Leigh gave a presentation entitled *Carrying out Fiduciary Responsibilities in Management and Investments*.

Leigh is currently litigating *In re Galena Biopharma, Inc.*, No. 14-cv-00367 (D. Or.); *Alizadeh v. Tellabs, Inc.*, No. 13-cv-537 (N.D. Ill.); *Lubbers v. Flagstar Bancorp, Inc.*, No. 14-cv-13459 (E.D. MI); and *Cooper v. Thoratec Corp.*, No. 14-cv-360 (N.D. Cal.).

She is a 1993 graduate of the University of Illinois at Champaign-Urbana, where she graduated from the School of Commerce with high honors, and a 1996 graduate of the Chicago-Kent College of Law. Leigh spent the next five years specializing in insurance defense litigation.

Leigh is admitted to practice in Illinois, the United States District Court for the Northern District of Illinois, and the United States Courts of Appeals for the Seventh and Eighth Circuits.

## Matthew L. Tuccillo

Matthew L. Tuccillo joined Pomerantz in 2011 and was elevated to Partner in December 2013. He is responsible, on an ongoing basis, for the Firm's litigation of numerous securities fraud class actions pending nationwide, currently including:  *In re Toronto-Dominion Bank Securities Litigation*, 1:17-cv-01735 (D.N.J.); *Chun v. Fluor Corp., et al.*, No. 3:18-cv-01338-S (N.D. Tex.); and *Heuschen v. Sibanye Gold Ltd., et al.*, No. 1:18-cv-03902 (E.D.N.Y.).

Matt oversees and is the lead litigator on the Firm's securities fraud lawsuits arising from BP's 2010 Gulf oil spill, pending in Multidistrict Litigation 2185, *In re BP p.l.c. Secs. Litig.*, No. 4:10-md-2185 (S.D. Tex.). He briefed and argued successful oppositions to three rounds of BP's motions to dismiss the claims of roughly 100 institutional investors, drawing the court's praise for the "quality of lawyering," which it called "uniformly excellent."  In leading the BP litigation, Matt has secured some of the Firm's most ground-breaking rulings:

• He successfully argued that foreign and domestic investors had asserted viable "holder claims" seeking to recover investment losses due to their retention of already-owned shares in reliance upon the fraud, which is believed to be the first ruling by a U.S. court sustaining such a theory under English common law.

• He successfully argued against *forum non conveniens* dismissal, obtaining the first ruling after the Supreme Court's decision in *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869 (2010) to

permit foreign investors pursuing foreign law claims to seek recovery for losses on a foreign stock exchange in a U.S. court.

•       He successfully argued that the Securities Litigation Uniform Standards Act of 1998 (SLUSA), which extinguishes U.S. state law claims in deference to the U.S. federal securities laws, should not be extended to foreign common law claims being pursued by both domestic and foreign investors.

Matt also fulfills Pomerantz's roles as MDL 2185 Individual Action Plaintiffs Steering Committee member and sole Liaison with BP and the Court. The Firm's BP clients include 32 public and private pension funds, investment management firms, limited partnerships, and investment trusts from the U.S., Canada, the U.K., France, the Netherlands, and Australia, seeking recovery for losses in BP's common stock (traded on the London Stock Exchange) and American Depository Shares (traded on the NYSE).

As the Firm's lead litigator in *Perez v. Higher One Holdings, Inc., et al.*, No. 14-cv-00755-AWT (D. Conn.), Matt persuaded the court, after an initial dismissal, to uphold a second amended complaint that pled five separate threads of fraud over a multi-year period by an education funding company and its executives. Among other rulings, court agreed that the company's reported financial and operating results violated Regulation S-K, Item 303, 17 C.F.R. §229.303, for failure to disclose known trends regarding the underlying misconduct and its impacts on reported results – a rare ruling in the absence of any accounting restatement. He negotiated a $7.5 million class-wide settlement that was approved by the court.

As the Firm's lead litigator in *In re KaloBios Pharmaceuticals, Inc. Securities Litigation*, No. 15-cv-05841 (N.D. Cal.), Matt negotiated two court-approved class-wide settlements worth over $3.25 million in the aggregate, from a bankrupt pharmaceutical company, its jailed former CEO, and two separate D&O insurers. Significantly, he secured payments of cash and stock directly from the bankrupt company, which also required bankruptcy court approval.

As the Firm's lead litigator in *In re Silvercorp Metals, Inc. Securities Litigation*, No. 1:12-cv-09456 (S.D.N.Y.), Matt worked closely with mining, accounting, damages, and market efficiency experts to defeat a motion to dismiss and oversee discovery in a securities class action involving a Canadian company with mining operations in China and stock traded on the NYSE. After two mediations, the case was resolved for a $14 million all-cash fund. In granting final approval of the settlement, Judge Rakoff noted that the case was "unusually complex," given the technical nature of mining metrics, the need to compare mining standards in Canada, China, and the U.S., and the volume of Chinese-language evidence requiring translation.

Matt's prior casework also includes litigation and resolution of complex disputes over roll ups of consulting companies and of commercial real estate interests. At Pomerantz, he was on the multi-firm team that litigated and settled *In re Empire State Realty Trust, Inc. Investor Litig.*, No. 650607/2012 (N.Y. Sup. Ct.), representing investors in public and private commercial real estate interests against the long-term lessees/operators, the Malkin family and the Estate of Leona Helmsley, regarding a proposed consolidation, REIT formation, and IPO centered around New York's iconic Empire State Building. These efforts achieved broad relief for the class, including a $55 million cash/securities settlement fund, a restructured deal creating a $100 million tax benefit, expansive remedial disclosures, and important deal

protections.

Before joining Pomerantz, Matt began his career at a large full-service Boston firm, litigating primarily for corporate clients. He also worked at plaintiff-side firms in Boston and Connecticut, litigating securities, consumer, and wage and hour class actions, as well as complex sale of business disputes. He has negotiated numerous multi-million-dollar settlements, through both mediation and direct negotiation. His pro bono work includes securing Social Security benefits for a veteran suffering from non-service-related disabilities.

In 2018, Matt was recognized by *Lawyer Monthly* as its Lawyer of the Year (U.S.A.) in the Federal Tort & Military category, based on a ten-point assessment including significance of legal matters, case value, legal expertise, innovation in client care, activity level, and peer recognition. Also in 2018, he was a New York honoree in both the National Trial Lawyers' Class Action Trial Lawyers Association Top 25 and in America's Top 100 High Stakes Litigators® for New York. He was honored as a 2018, 2017, and 2016 Super Lawyers® "Top-Rated Securities Litigation Attorney," a recognition bestowed on 5% of eligible attorneys in the New York Metro area, after a rigorous process overseen by Thompson Reuters. Since 2016, he has been a recommended securities litigator by The Legal 500, which evaluates law firms worldwide for cutting edge, innovative work based on client feedback, practitioner interviews, and independent research. Since 2014, he has maintained Martindale-Hubbell's highest-available AV® Preeminent™ peer rating, scoring 5.0 out of 5.0 in Securities Law, Securities Class Actions, and Securities Litigation while being described as a "First class, top flight lawyer, especially in complex litigation."

Matt graduated from the Georgetown University Law Center in 1999, where he made the Dean's List. He graduated from Wesleyan University in 1995, and among his various volunteer activities, he currently serves as President of the Wesleyan Lawyers Association.

Matt is a member of the Bars of the Supreme Court of the United States; the State of New York; the State of Connecticut; the Commonwealth of Massachusetts; the Second and Ninth Circuit Courts of Appeals; and the United States District Courts for the Southern and Eastern District of New York, Connecticut, Massachusetts, the Northern District of Illinois, and the Southern District of Texas. He is regularly admitted to practice *pro hac vice* in state and federal courts nationwide.

## Murielle Steven Walsh

Murielle Steven Walsh joined the Firm in 1998 and was elevated to Partner in 2007. She was recently recognized as a 2018 Lawyer of Distinction, an honor bestowed upon less than 10% of attorneys in any given state.

During her career at Pomerantz, Murielle has prosecuted highly successful securities class action and corporate governance cases. She was one of the lead attorneys litigating *In re Livent Noteholders' Securities Litigation*, a securities class action in which she obtained a $36 million judgment against the company's top officers, a ruling which was upheld by the Second Circuit on appeal. Murielle was also part of the team litigating *EBC I v. Goldman Sachs*, where the Firm obtained a landmark ruling from the New York Court of Appeals, that underwriters may owe fiduciary duties to their issuer clients in the context of a firm-commitment underwriting of an initial public offering.

Murielle currently leads the high-profile securities class action against Wynn Resorts Ltd., in which Pomerantz is lead counsel. The litigation arises from the company's concealment of a long-running pattern of sexual misconduct against Wynn employees by billionaire casino mogul Stephen Wynn, the company's founder and former Chief Executive Officer. *Ferris v. Wynn Resorts Ltd.*, No. 18-cv-479 (D. Nev.).  She also leads the Firm's ground-breaking litigation arising from the popular Pokémon Go game, in which Pomerantz is lead counsel. Pokémon Go is an "augmented reality" game in which players use their smart phones to "catch" Pokémon in real-world surroundings. GPS coordinates provided by defendants to gamers included directing the public to private property without the owners' permission, amounting to an alleged mass nuisance. *In re Pokémon Go Nuisance*,  No. 3:16-cv-04300 (N.D. Cal.)

Murielle is co-lead counsel in *Thorpe v. Walter Investment Management Corp.*, No. 14-cv-20880 (S.D. Fla.), a securities fraud class action challenging the defendants' representations that their lending activities were regulatory-compliant, when in fact the company's key subsidiary engaged in rampant violations of federal consumer financial protection laws, subjecting it to various government investigations and a pending enforcement action by the CFPB and FTC. In 2016, the Firm obtained a $24 million settlement on behalf of the class.  She is also co-lead counsel in *Robb v. Fitbit Inc.*, No. 16-cv-00151 (N.D. Cal.), a securities class action alleging that the defendants misrepresented that their key product delivered "highly accurate" heart rate readings when in fact their technology did not consistently deliver accurate readings during exercise and its inaccuracy posed serious health risks to users of Fitbit's products. The Firm obtained a $33 million settlement on behalf of the investor class in this action.

In 2018 Murielle, along with then-Senior Partner Jeremy Lieberman, achieved a $3,300,000 settlement for the Class in the Firm's case against Corinthian Colleges, one of the largest for-profit college systems in the country, for alleged misrepresentations about its job placement rates, compliance with applicable regulations, and enrollment statistics. Pomerantz prevailed in the motion to dismiss the proceedings, a particularly noteworthy victory because Chief Judge George King of the Central District of California had dismissed two prior lawsuits against Corinthian with similar allegations. *Erickson v. Corinthian Colleges, Inc.*, No. 2:13-cv-07466 (C.D. Cal.).

Murielle serves as a member and on the Executive Committee of the Board of Trustees of the non-profit organization Court Appointed Special Advocates for Children ("CASA") of Monmouth County. She also serves on the Honorary Steering Committee of Equal Rights Advocates ("ERA"), which focuses on and discusses specific issues that women face in the legal profession. ERA is an organization that protects and expands economic and educational access and opportunities for women and girls. In the past, Murielle served as a member of the editorial board for Class Action Reports, a Solicitor for the Legal Aid Associates Campaign, and has been involved in political asylum work with the Association of the Bar of the City of New York.

Murielle serves on the Firm's Anti-Harassment and Discrimination Committee.

Murielle graduated *cum laude* from New York Law School in 1996, where she was the recipient of the Irving Mariash Scholarship. During law school, Murielle interned with the Kings County District Attorney and worked within the mergers and acquisitions group of Sullivan & Cromwell.

---

Murielle is admitted to practice in New York, the United States District Court for the Southern District of New York, the United States Court of Appeals for the Second Circuit and the United States Court of Appeals for the Sixth Circuit.

**Tamar A. Weinrib**

Tamar A. Weinrib joined Pomerantz in early 2008. She was Of Counsel to the Firm from 2014 through 2018 and was elevated to Partner in 2019. Tamar was named a 2018 Rising Star under 40 years of age by Law360, a prestigious honor awarded to a select few "top litigators and dealmakers practicing at a level usually seen from veteran attorneys." Tamar has been recognized by Super Lawyers® as a New York Metro Rising Star every year from 2014 through 2018.

In January 2019, Tamar and Managing Partner Jeremy Lieberman achieved a $27 million settlement for the Class, pending court approval, in *Strougo v. Barclays PLC*, a high-profile securities class action in which Pomerantz is Lead Counsel. Plaintiffs allege that Barclays PLC misled institutional investor clients about the extent of the banking giant's use of so-called "dark pool" trading systems. This case turns on the duty of integrity owed by Barclays to its clients. In November 2016, Tamar and Jeremy achieved precedent-setting victories for investors, when the Second Circuit Court of Appeals held that direct evidence of price impact is not always necessary to demonstrate market efficiency to invoke the presumption of reliance, and that defendants seeking to rebut the presumption of reliance must do so by a preponderance of the evidence rather than merely meeting a burden of production. In 2018, Tamar successfully opposed Defendants' petition to the Supreme Court for a writ of certiorari.

Tamar was the attorney responsible for the litigation of *In re Delcath Systems, Inc. Securities Litigation*, in which Pomerantz recently achieved a settlement of $8,500,000 for the Class. She successfully argued before the Second Circuit in *In re China North East Petroleum Securities Litigation,* to reverse the district court's dismissal of the defendants on scienter grounds. In addition to her involvement in several other securities matters pending nationwide, Tamar is the Pomerantz attorney responsible for the litigation of *KB Partners I, L.P. v. Pain Therapeutics, Inc.*, a securities fraud case for which Judge Sparks of the Western District of Texas recently granted final approval for a settlement of up to $8,500,000 for class members.

Before coming to Pomerantz, Tamar had over three years of experience as a litigation associate in the New York office of Clifford Chance US LLP, where she focused on complex commercial litigation. Tamar has successfully tried pro bono cases, including two criminal appeals and a housing dispute filed with the Human Rights Commission.

Tamar graduated from Fordham University School of Law in 2004 and, while there, won awards for successfully competing in and coaching Moot Court competitions.

Tamar is admitted to practice in New York, the United States District Courts for the Southern and Eastern Districts of New York, and the United States Courts of Appeals for the Second, Third, Fourth, and Ninth Circuits.

**Michael J. Wernke**

Michael J. Wernke joined Pomerantz as Of Counsel in 2014 and was elevated to Partner in 2015.

Michael is Co-Lead Counsel in *Pirnik v. Fiat Chrysler Automobiles N.V. et al.*, No. 1:15-cv-07199-JMF (S.D.N.Y), a high profile securities class action that alleges Fiat Chrysler concealed from investors that it improperly outfitted its diesel vehicles with "defeat device" software designed to cheat NOx emissions regulations in the U.S. and Europe, and that regulators had accused Fiat Chrysler of violating the emissions regulations.

In December 2018, Michael, along with Pomerantz Managing Partner Jeremy A. Lieberman, secured a $31 million partial settlement with three defendants in *In re Libor Based Financial Instruments Antitrust Litigation*, a closely-watched multi-district litigation, which concerns the LIBOR rigging scandal.

In October 2018, Michael secured a $15 million settlement in *In re Symbol Technologies, Inc. Securities Litigation*, No. 2:05-cv-03923-DRH-AKT (E.D.N.Y.), a securities class action that alleges that, following an accounting fraud by prior management, Symbol's management misled investors about state of its internal controls and the Company's ability to forecast revenues.

He was Lead Counsel in *Thomas v. Magnachip Semiconductor Corp.*, in which he achieved a $23.5 million partial settlement with certain defendants, securing the settlement despite an ongoing investigation by the Securities and Exchange Commission and shareholder derivative actions. He played a leading role in *In re Lumber Liquidators, Inc. Securities Litigation*, in which Pomerantz, as Co-Lead Counsel, achieved a settlement of $26 million in cash and 1,000,000 shares of Lumber Liquidators common stock for the Class. Michael also secured a $7 million settlement (over 30% of the likely recoverable damages) in the securities class action *Todd v. STAAR Surgical Company, et. al.*, No. 14-cv-05263-MWF-RZ (C.D. Cal.), which alleged that STAAR concealed from investors violations of FDA regulations that threatened the approval of STAAR's long awaited new product.

In the securities class action *In re Atossa Genetics, Inc. Securities Litigation*, No. 13-cv-01836-RSM (W.D. Wash.), Michael secured a decision by the Ninth Circuit Court of Appeals that reversed the district court's dismissal of the complaint. The Ninth Circuit held that the CEO's public statements that the company's flagship product had been approved by the FDA were misleading despite the fact that the company's previously-filed registration statement stated that that the product did not, at that time, require FDA approval.

Michael is also Lead Counsel in the securities class action *Zwick Partners, LP v. Quorum Health Corp., et al.*, No. 3:16-cv-2475, which alleges that defendants misrepresented to investors the poor prospects of hospitals that the parent company spun-off into a stand-alone company. In defeating the defendants' motions to dismiss the complaint, Michael successfully argued that company from which Quorum was spun-off was a "maker" of the false statements even though all the alleged false statements concerned only Quorum's financials and the class involved only purchasers of Quorum's common stock.

During the nine years prior to coming to Pomerantz, Michael was a litigator with Cahill Gordon & Reindel LLP, with his primary focus in the securities defense arena, where he represented multinational

financial institutions and corporations, playing key roles in two of only a handful of securities class actions to go to jury verdict since the passage of the PSLRA.

In 2014 and 2015, Michael was voted by his peers as a Super Lawyers® New York Metro Rising Star.

Michael received his J.D. from Harvard Law School in 2004. He also holds a B.S. in Mathematics and a B.A. in Political Science from Ohio State University, where he graduated *summa cum laude*.

He serves on the Firm's Anti-Harassment and Discrimination Committee.

Michael is admitted to practice in the State of New York and the United States District Court for the Southern District of New York.

## Senior Counsel

### Marc I. Gross

Marc I. Gross has been with Pomerantz LLP for over four decades, serving as its Managing Partner from 2009 to 2016. During that time frame, Marc led securities lawsuits against SAC Capital (Steven Cohen - insider trading); Chesapeake Energy (Aubrey McClendon - insider bail out); Citibank (analyst Jack Grubman - AT&T research report upgrade to facilitate underwriting role); Charter Communications (Paul Allen - accounting fraud); and numerous others. He also litigated the market efficiency issues in the firm's landmark $3 billion recovery in *Petrobras*.

Marc is the President-Elect of the Institute of Law and Economic Policy ("ILEP"), which has organized symposiums each year where leading academics have presented papers on securities law and consumer protection issues. These papers have been cited in over 60 cases, including several in the United States Supreme Court. http://www.ilep.info.

Marc has addressed numerous forums in the United States on shareholder-related issues, including ILEP; Loyola University Chicago School of Law's Institute for Investor Protection Conference; the National Conference on Public Employee Retirement Systems' ("NCPERS") Legislative Conferences; PLI conferences on Current Trends in Securities Law; and a panel entitled *Enhancing Consistency and Predictability in Applying Fraud-on-the-Market Theory*, sponsored by the Duke Law School Center for Judicial Studies.

Marc is also valued by foreign investors for his expertise, having addressed the Tel Aviv Institutional Investors Forum, the National Association of Pension Funds Conference in Edinburgh, and law students at Bar Ilan University in Tel Aviv.

Among other articles, Marc co-authored, with Jeremy Lieberman, *Back to Basic(s): Common Sense Trumps Econometrics*, N.Y.L.J. (Jan. 8, 2018); *Class Certification in a Post-Halliburton II World*, 46 Loyola-Chicago L.J. 485 (2015); and *Loser-Pays - or Whose "Fault" Is It Anyway: A Response to Hensler-Rowe's "Beyond 'It Just Ain't Worth It,'"* 64 L. & Contemp. Probs. 163 (Duke Law School 2001).

Marc is also a Board member of T'ruah, The Rabbinic Call for Human Rights, and graduate of NYU Law '76 and Columbia College '73.

Marc is admitted to practice in New York, the United States District Courts for the Southern and Eastern Districts of New York, the United States Courts of Appeals for the First, Second, Eighth, and Ninth Circuits, and the United States Supreme Court.

Marc serves on the Firm's Anti-Harassment and Discrimination Committee.

### Stanley M. Grossman

Stanley M. Grossman, Senior Counsel, is the former Managing Partner of Pomerantz. He is recognized as a leader in the plaintiffs' securities bar. He was selected by *Super Lawyers* magazine as an outstanding attorney in the United States for the years 2006 through 2011 and was featured in the *New York Law Journal* article *Top Litigators in Securities Field -- A Who's Who of City's Leading Courtroom Combatants*. Stan has litigated securities (individual and class), derivative, and antitrust actions with the Firm for 39 years.

Stan has primarily represented plaintiffs in securities and antitrust class actions, including many of those listed in the Firm biography. *See, e.g., Ross v. Bernhard*, 396 U.S. 531 (1970); *Rosenfeld v. Black*, 445 F.2d 137 (2d Cir. 1971); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433 (9th Cir. 1987); and *In re Salomon Bros. Treasury Litig.*, 9 F.3d 230 (2d Cir. 1993). In 2008 he appeared before the United States Supreme Court to argue that scheme liability is actionable under Section 10(b) and Rule 10b-5(a) and (c). *See StoneRidge Inv. Partners, LLC v. Sci.-Atlanta*, *Inc.,* No. 06-43 (2008). Other cases where he was the Lead or Co-Lead Counsel include: *In re Salomon Brothers Treasury Litigation*, No. 91 Civ. 5471 (S.D.N.Y. 1994) ($100 million cash recovery); *In re First Executive Corporation Securities Litigation*, No. CV-89-7135 (C.D. Cal. 1994) ($100 million settlement); and *In re Sorbates Direct Purchaser Antitrust Litigation*, No. C98-4886 (N.D. Cal. 2000) (over $80 million settlement for the class).

In 1992, Senior Judge Milton Pollack of the Southern District of New York appointed Stan to the Executive Committee of counsel charged with allocating to claimants hundreds of millions of dollars obtained in settlements with Drexel Burnham & Co. and Michael Milken.

Many courts have acknowledged the high quality of legal representation provided to investors by Stan. In *Gartenberg v. Merrill Lynch Asset Management, Inc.*, No. 79 Civ. 3123 (S.D.N.Y.), where Stan was lead trial counsel for plaintiff, Judge Pollack noted at the completion of the trial:

> [I] can fairly say, having remained abreast of the law on the factual and legal matters that have been presented, that I know of no case that has been better presented so as to give the Court an opportunity to reach a determination, for which the court thanks you.

Stan was also the lead trial attorney in *Rauch v. Bilzerian* (N.J. Super. Ct.) (directors owed the same duty of loyalty to preferred shareholders as common shareholders in a corporate takeover), where the court described the Pomerantz team as "exceptionally competent counsel." He headed the six week trial on

---

liability in *Walsh v. Northrop Grumman* (E.D.N.Y.) (a securities and ERISA class action arising from Northrop's takeover of Grumman), after which a substantial settlement was reached.

Stan frequently speaks at law schools and professional organizations. In 2010, he was a panelist on *Securities Law: Primary Liability for Secondary Actors*, sponsored by the Federal Bar Council, and he presented *Silence Is Golden – Until It Is Deadly: The Fiduciary's Duty to Disclose*, at the Institute of American and Talmudic Law. In 2009, Stan was a panelist on a Practicing Law Institute "Hot Topic Briefing" entitled StoneRidge - *Is There Scheme Liability or Not?*

Stan served on former New York State Comptroller Carl McCall's Advisory Committee for the NYSE Task Force on corporate governance. He is a former president of NASCAT. During his tenure at NASCAT, he represented the organization in meetings with the Chairman of the Securities and Exchange Commission and before members of Congress and of the Executive Branch concerning legislation that became the PSLRA.

Stan served for three years on the New York City Bar Association's Committee on Ethics, as well as on the Association's Judiciary Committee. He is actively involved in civic affairs. He headed a task force on behalf of the Association, which, after a wide-ranging investigation, made recommendations for the future of the City University of New York. He serves on the board of the Appleseed Foundation, a national public advocacy group.

Stan is admitted to practice in New York, the United States District Courts for the Southern and Eastern Districts of New York, Central District of California, Eastern District of Wisconsin, District of Arizona, District of Colorado, the United States Courts of Appeals for the First, Second, Third, Ninth and Eleventh Circuits, and the United States Supreme Court.

## Of Counsel

### J. Alexander Hood II

J. Alexander Hood II joined Pomerantz in June 2015 and was elevated to Of Counsel to the Firm in 2019. Alex leads the Firm's case origination team, identifying and investigating potential violations of the federal securities laws. Alex played a key role in securing Pomerantz's appointment as Lead Counsel in actions against Yahoo! Inc., Fiat Chrysler Automobiles N.V., Wynn Resorts Limited, Mylan N.V., The Western Union Company, Perrigo Company plc, and Blue Apron Holdings, Inc., among others.

Alex also assists Pomerantz clients with respect to evaluating and pursuing recovery in foreign jurisdictions, including matters in the Netherlands, Germany, the UK, Australia, Denmark, and elsewhere.

Prior to joining Pomerantz, Alex was a litigation associate at Alston & Bird LLP and an attorney at Bernstein Litowitz Berger & Grossmann LLP, where he was involved in commercial, financial services, corporate governance and securities matters.

Alex graduated from Boston University School of Law (J.D.) and from the University of Oregon School of Law (LL.M.). During law school, he served as a member of the Boston University Review of Banking &

Financial Law and participated in the Thomas Tang Moot Court Competition. In addition, Alex clerked for the American Civil Liberties Union of Tennessee and, as a legal extern, worked on the Center for Biological Diversity's Clean Water Act suit against BP in connection with the Deepwater Horizon oil spill.

Alex is admitted to practice in New York and the United States District Courts for the Southern and Eastern Districts of New York, the District of Colorado, the Eastern District of Michigan, and the Northern District of Illinois.

### Louis C. Ludwig

Louis C. Ludwig joined Pomerantz in April 2012 and was elevated to Of Counsel in 2019. He has been honored as a 2016 and 2017 Super Lawyers® "Rising Star" and as a 2018 Super Lawyers® "Top-Rated Securities Litigation Attorney."

Louis focuses his practice on securities fraud litigation, and has served as a member of the litigation team in multiple actions that concluded in successful settlements for the Class, including *Satterfield v. Lime Energy Co.*, (N.D. Ill.); *Blitz v. AgFeed Industries, Inc.* (M.D. Tenn.); *Frater v. Hemispherx Biopharma, Inc.* (E.D. Pa.); *Bruce v. Suntech Power Holdings Co.* (N.D. Cal.); *In re: Groupon, Inc. Securities Litigation* (N.D. Ill.); *Flynn v. Sientra, Inc.* (C.D. Cal.); *Thomas v. MagnaChip Semiconductor Corp.* (N.D. Cal.); *In re: AVEO Pharmaceuticals, Inc. Securities Litigation* (N.D. Cal.); and *In re: Akorn, Inc. Securities Litigation* (N.D. Ill.).

Louis graduated from Rutgers University School of Law in 2007, where he was a Dean's Law Scholarship Recipient. He served as a law clerk to the Honorable Arthur Bergman, Superior Court of New Jersey. Prior to joining Pomerantz, Louis specialized in litigating consumer protection class actions at Bock & Hatch LLC in Chicago, Illinois.

Louis is admitted to practice in New Jersey, Illinois, the United States Courts of Appeal for the Seventh and Ninth Circuits, and the United States District Courts for the District of New Jersey and the Northern District of Illinois.

### Justin S. Nematzadeh

Justin Solomon Nematzadeh joined Pomerantz in June 2015 and was elevated to Of Counsel in 2019. Justin focuses his practice on securities fraud litigation. He was honored in 2018 as a Rising Star under 40 years of age by Law360® in Class Actions, a prestigious award given to a select few "top litigators and dealmakers practicing at a level usually seen from veteran attorneys." He was also honored in 2018 by Super Lawyers® as a Rising Star in New York and by Lawyers of Distinction®.

Justin played a key role in the securities class action against Brazil's largest oil company, Petróleo Brasileiro S.A. – Petrobras, arising from a multi-billion-dollar kickback and bribery scheme, in which Pomerantz LLP, as sole Lead Counsel, recently achieved a historic $3 billion settlement for the class, as well as precedent-setting legal rulings.

Justin's robust experience in representing both plaintiffs and defendants in antitrust and securities-fraud litigation, including first-chair trial experience, has forged him into a formidable advocate on behalf of

plaintiffs in class actions. In addition to his role in the *In re Petrobras Securities Litigation* (S.D.N.Y.), Justin played pivotal roles in several class actions that resulted in total recoveries amounting to over $270 million for plaintiffs: *In re Altair Nanotechnologies Securities Litigation* (S.D.N.Y.), recovery of $1.5 million; *Carmack v. Amaya Inc., et al.* (D.N.J.), recovery of $5.75 million; *Calfo v. Messina, et al.* (S.D.N.Y.), recovery of $1.65 million; *Kaplan v. S.A.C. Capital Advisors, L.P., et al.* (S.D.N.Y.), recovery of $135 million; *Mauss v. NuVasive, Inc., et al.* (S.D. Cal.), recovery of $7.9 million; *In re OSG Securities Litigation* (S.D.N.Y.), recovery of over $30 million; *Perez v. Higher One Holdings, Inc., et al.* (D. Conn.), recovery of $7.5 million; *In re Retrophin, Inc. Securities Litigation* (S.D.N.Y.), recovery of $3 million; *Springer v. Code Rebel Corporation* (S.D.N.Y.), recovery of $1 million; and *In re Yahoo! Inc. Securities Litigation* (N.D. Cal.), recovery of $80 million. Justin played integral roles in representing plaintiffs in the *In re Generic Digoxin and Doxycycline Antitrust Litigation* (E.D. Pa.) and *In re Treasury Securities Auction Antitrust Litigation* (S.D.N.Y.).

Prior to joining Pomerantz in 2015, Justin practiced at Gibson, Dunn & Crutcher LLP. His practice involved federal and state complex litigation and internal and regulatory investigations, with a focus on antitrust and securities-fraud litigation. He played integral roles in representing defendants in *Alaska Electrical Pension Fund v. Bank of America, N.A., et al* (S.D.N.Y.), *Garofalo v. Revlon, Inc., et al.* (D. Del.), *In re Foreign Exchange Benchmark Rates Antitrust Litigation* (S.D.N.Y.), and *In re LIBOR-Based Financial Instruments Antitrust Litigation* (S.D.N.Y.). For his work in representing plaintiffs in *Toney-Dick v. Doar*, he was awarded a 2013 Pro Bono Publico award from The Legal Aid Society.

An avid writer, Justin is the co-author of the Delaware Business Court Insider article entitled *Lead Plaintiffs' Shareholdings Draw Chancery Review*. He contributed to chapters in the American Bar Association's *Antitrust Law Developments*, Matthew Bender's *Antitrust Laws and Trade Regulation*, the *ABA Antitrust Civil Jury Instructions Handbook*, and Professor Deborah W. Denno's chapter entitled *When Willie Francis Died: The "Disturbing" Story Behind One of the Eighth Amendment's Most Enduring Standards of Risk*, in John H. Blume and Jordan M. Steiker's book, *Death Penalty Stories*.

Justin earned his J.D. degree, *cum laude*, from the Fordham University School of Law. During law school, he served as a member of the Fordham Urban Law Journal and as a business editor of the Fordham Dispute Resolution Society. Additionally, he served as a judicial intern to the Honorable Stuart M. Bernstein of the United States Bankruptcy Court for the Southern District of New York. He earned his B.B.A. degree, *with distinction*, from the University of Michigan Stephen M. Ross School of Business, with an emphasis in finance and corporate strategy. During business school, he was awarded a University of Michigan Alumnae Council MBNA Scholarship.

Justin is admitted to practice law in New York and the United States District Courts for the Southern and Eastern Districts of New York and Eastern District of Michigan. He is a member of the American Bar Association and the New York City and State Bar Associations.

## H. Adam Prussin

Adam Prussin specializes in securities litigation and has extensive experience in derivative actions. He was special litigation counsel in the derivative actions on behalf of Summit Metals, Inc., actions which resulted in entry of a judgment, after trial, of $43 million in cash, plus an order transferring the stock of two multi-million-dollar companies to the plaintiff.

Adam has published several articles on the subject of the standards and procedures for the maintenance or dismissal of derivative actions, including *Termination of Derivative Suits Against Directors on Business Judgment Grounds: From* Zapata *to* Aronson, 39 Bus. Law. 1503 (1984); *Dismissal of Derivative Actions Under the Business Judgment Rule:* Zapata *One Year Later*, 38 Bus. Law. 401 (1983); and *The Business Judgment Rule and Shareholder Derivative Actions: Viva* Zapata*?* 37 Bus. Law. 27 (1981). In June 2009 he spoke at the 6th Annual Securities Litigation Conference in New York, participating in the panel discussion, *From Behind Enemy Lines: The Perspective of Two Prominent Plaintiff Attorneys*.

Before joining the Firm, Adam was a named partner in Silverman, Harnes, Harnes, Prussin & Keller, which specializes in representing plaintiffs in shareholder derivative and class action litigation, particularly those involving self-dealing by corporate officers, directors and controlling shareholders. He played a key role in several landmark derivative cases in the Delaware courts, and has appeared frequently before the Delaware Supreme Court.

Adam graduated *cum laude* from Yale College in 1969 and, after obtaining a master's degree from the University of Michigan in 1971, received his J.D. degree from Harvard Law School in 1974.

Adam is admitted to practice in New York, the United States District Courts for the Southern and Eastern Districts of New York, and the United States Courts of Appeals for the Second, Ninth and D.C. Circuits.

## **Brenda Szydlo**

Brenda Szydlo joined Pomerantz in January 2016 as Of Counsel. She brings to the Firm thirty years of experience in complex civil litigation in federal and state court on behalf of plaintiffs and defendants, with a particular focus on securities and financial fraud litigation, litigation against pharmaceutical corporations, accountants' liability, and commercial litigation.

Brenda played a leading role in the Firm's securities class action case in the Southern District of New York against Brazil's largest oil company, Petrobras, arising from a multi-billion-dollar kickback and bribery scheme, in which the Firm, as sole Lead Counsel, achieved a precedent-setting legal ruling and a historic $3 billion settlement for the Class. This is not only the largest securities class action settlement in a decade but is the largest settlement ever in a securities class action involving a foreign issuer, the fifth-largest securities class action settlement ever achieved in the United States, the largest securities class action settlement achieved by a foreign Lead Plaintiff, and the largest securities class action settlement in history not involving a restatement of financial reports.

Brenda has represented investors in additional class and private actions that have resulted in significant recoveries, such as *In re Pfizer, Inc. Securities Litigation*, where the recovery was $486 million, and *In re Refco, Inc. Securities Litigation*, where the recovery was in excess of $407 million. She has also represented investors in opt-out securities actions, such as *In re Bank of America Corp. Securities, Derivative & ERISA Litigation*.

Prior to joining Pomerantz, Brenda served as Senior Counsel at Grant & Eisenhofer P.A., where she represented plaintiffs in securities and financial fraud litigation, and litigation against pharmaceutical corporations and accounting firms. Brenda also served as Counsel in the litigation department of Sidley

Austin LLP in New York, and its predecessor, Brown & Wood LLP, where her practice focused on securities litigation and enforcement, accountants' liability defense, and commercial litigation.

Brenda is a 1988 graduate of St. John's University School of Law, where she was a St. Thomas More Scholar and member of the Law Review. She received a B.A. in economics from Binghamton University in 1985.

Brenda is admitted to practice in the State of New York; United States District Courts for the Southern and Eastern Districts of New York; the U.S. Courts of Appeals for the Second and Ninth Circuits; and the United States Supreme Court.

**Nicolas Tatin**

French lawyer Nicolas Tatin joined Pomerantz in April 2017 as Of Counsel. He heads the Firm's Paris office and serves as its Director-Business Development Consultant for France, Benelux, Monaco and Switzerland. Nicolas advises institutional investors in the European Union on how best to evaluate losses to their investment portfolios attributable to financial misconduct, and how best to maximize their potential recoveries in U.S. and international securities litigations.

Nicolas was previously a financial lawyer at ERAFP, France's €24bn pension and retirement fund for civil servants, where he provided legal advice on the selection of management companies and the implementation of mandates entrusted to them by ERAFP.

Nicolas began his career at Natixis Asset Management, before joining BNP Paribas Investment Partners, where he developed expertise in the legal structuring of investment funds and acquired a global and cross-functional approach to the asset management industry.

Nicolas graduated in International law and received an MBA from IAE Paris, the Sorbonne Graduate Business School.

**Austin P. Van**

Austin P. Van joined Pomerantz in January 2017 as Of Counsel. He brings to the Firm experience in a variety of federal and state securities law matters, including disputes involving publicly traded stocks, RMBS and other ABS, securities lending disputes, and breach-of-trust matters arising in the securities law context. Austin was honored in 2018 as a Super Lawyers® Rising Star.

Austin also has experience in complex commercial litigation, including contract disputes, business torts, consumer fraud, and antitrust matters. He has represented investment banks and other financial sector clients, as well as public and private companies in the technology, energy, pharmaceutical, telecommunications and shipping industries, among others. Austin was previously an associate at WilmerHale and at Cravath, Swaine & Moore, both in New York City.

Austin received a J.D. from Yale Law School, where he was an editor of the Yale Law Journal and the Yale Journal of International Law. He has a B.A. from Yale University and an M.Sc. from the London School of Economics.

Austin is admitted to practice law in the State of New York and in the United States District Courts for the Southern and Eastern Districts of New York.

## Associates

### Samuel J. Adams

Samuel J. Adams focuses on corporate governance litigation.

Mr. Adams was previously an associate at Robbins Geller Rudman & Dowd LLP, where he focused his practice on securities fraud litigation and other complex matters. He has been recognized as a SuperLawyers® "Rising Star" for the New York Metro area for every year from 2015 through 2018.

Sam is a 2009 graduate of the University of Louisville Louis D. Brandeis School of Law. While in law school, he was a member of the National Health Law Moot Court Team. He also participated in the Louis D. Brandeis American Inn of Court.

Sam is admitted to practice in New York, the United States District Courts for the Southern, Northern, and Eastern Districts of New York, and the United States District Court for the Eastern District of Wisconsin.

### Ari Y. Basser

Ari Y. Basser focuses his practice on strategic consumer litigation.

Prior to joining Pomerantz, Ari was an associate at major litigation law firms in Los Angeles. Ari also worked as a Law Clerk in the Economic Crimes Unit of the Santa Clara County Office of the District Attorney. Ari has litigated antitrust violations, product defect matters, and a variety of fraud and misrepresentation cases brought under state and federal consumer protection statutes involving unfair competition and false advertising. He has also been deputized in private attorneys general enforcement actions to recover civil penalties from corporations, on behalf of the State of California, for violations of the Labor Code.

Ari is a contributing author to the Competition Law Journal, the official publication of the Antitrust, UCL, and Privacy Section of the State Bar of California, where he has examined trends in antitrust litigation and the regulatory authority of the Federal Trade Commission.

Ari received dual degrees in Economics and Psychology from the University of California, San Diego in 2004. He earned his Juris Doctor in 2010 from Santa Clara University School of Law.
Ari is a member of the State Bar of California and has been admitted to practice before the United States District Courts for the Northern, Southern, Central and Eastern Districts of California.

**Jessica N. Dell**

Jessica Dell focuses her practice on securities fraud litigation.

She has worked on dozens of cases at Pomerantz, including the Firm's securities fraud lawsuits arising from BP's 2010 Gulf oil spill, pending in Multidistrict Litigation. Jessica has expertise in managing discovery and a nose for investigating complex fraud across many sectors, including pharmaceuticals, medical devices, and data security. True to her roots in public interest law, she has also worked in complex pro bono class action litigation at Pomerantz.

Jessica graduated from CUNY School of Law in 2005. She was the recipient of an Everett fellowship for her work at Human Rights Watch. She also interned at the Urban Justice Center and National Advocates for Pregnant Women. While in the CUNY clinical program, she represented survivors of domestic violence facing deportation and successfully petitioned under the Violence Against Women Act. She also successfully petitioned for the release of survivors incarcerated as drug mules in Central America. After Hurricane Katrina, Jessica traveled to Louisiana to aid emergency efforts to reunite families and restore legal process for persons lost in the prison system weeks after the flood.

Jessica is a member of the New York City and State Bar Associations and the National Lawyers Guild.

**Andrea Farah**

Andrea Farah focuses her practice on corporate governance and securities fraud litigation.

Prior to joining Pomerantz in 2018, Andrea worked as a litigation associate at a boutique class action law firm, where she represented institutional and individual clients in federal and state courts throughout the United States, and the Financial Industry Regulatory Authority in a variety of matters, including securities, consumer, antitrust, and other complex commercial litigation. Andrea's experience includes litigation of prominent cases, several of which achieved notable victories.

Andrea is a graduate of the Quinnipiac University School of Law (J.D., *cum laude,* 2013) and the School of Business (M.B.A, 2013). She graduated *summa cum laude* from the University of North Florida with a Bachelor of Arts in Psychology in 2009.

Andrea is licensed to practice in the States of New York and Connecticut and is admitted to practice in the United States District Courts for the Districts of Southern New York and Eastern Wisconsin.

Andrea is bilingual and maintains a personal *pro bono* practice, representing refugees and asylees.

**Marc C. Gorrie**

Marc C. Gorrie joined Pomerantz in 2014. He focuses his practice on securities fraud litigation and is actively involved in the Firm's securities lawsuit concerning Petróleo Brasileiro S.A.- Petrobras. As a member of the Firm's new matter group, he identifies and investigates potential violations of the federal securities laws.

Prior to joining the Firm, Marc focused his practice on a major securities fraud litigation with a prominent New York law firm. He was actively engaged in legal outreach for the Center for Seafarers' Rights of the Seamen's Church Institute of New York and New Jersey. Marc has previously served as a consultant for an EU development project on the rule of law in Gambia. He has authored articles on international humanitarian and human rights law published by organizations including the Foreign Policy Association and the Revue de Droit Comparé du Travail et de la Sécurité Sociale. Marc currently serves a member of the Ambassadors Advisory Group for One to One International Consulting, an international aid and development consulting firm headquartered in Ghana.

Marc is a 2010 graduate of Indiana University Maurer School of Law - Bloomington (J.D.) where he held a research fellowship in legal ethics and was consistently on the Dean's List. He is a 2012 graduate of University of Lund, Sweden (LLM, in conjunction with the Raoul Wallenberg Institute of Human Rights and Humanitarian Law) where he earned honors marks, lectured on U.S. Legal Ethics and on Federal Indian Law, and delivered his thesis on the interaction of tribal, state, federal, and international human rights and labor laws in the United States. Marc is a 2005 graduate of Sarah Lawrence College with a BA in Liberal Arts.

Marc is admitted to practice in New Jersey and the United States District Court, District of New Jersey.

**Aatif Iqbal**

Aatif Iqbal focuses his practice on securities fraud litigation.

Before joining Pomerantz, Aatif was a litigation associate at Cleary Gottlieb Steen & Hamilton LLP, where his practice involved bankruptcy, securities, and complex commercial litigation matters. Aatif also served as a law clerk for the Honorable Patricia A. Seitz, United States District Judge for the Southern District of Florida.

Aatif graduated cum laude from Harvard Law School, where he earned a Dean's Scholarship in First Amendment Law and served as Managing Editor of the Harvard International Law Journal and Managing Technical Editor of the Harvard Human Rights Journal. He graduated cum laude from Yale University with a B.A. in Political Science.

Aatif is admitted to practice in New York.

**Omar Jafri**

Omar Jafri's practice focuses on securities fraud litigation.

Before joining Pomerantz LLP, he was a law clerk to Judge William S. Duffey, Jr. of the United States District Court for the Northern District of Georgia. Omar was also an associate at Jenner & Block LLP's Chicago Office, where he represented clients in a wide variety of matters, including securities litigation, complex commercial litigation, white collar criminal defense and internal investigations.

During the last several years, Omar has litigated major disputes on behalf of institutional investors arising out of the credit crisis, including disputes relating to Collateralized Debt Obligations, Residential

Mortgage-Backed Securities, Credit Default Swaps and other complex financial investments. He also has provided pro bono representation to several individuals charged with first-degree murder and attempted murder in the State and Federal courts of Illinois.

Omar graduated, magna cum laude, from the University of Illinois College of Law, where he was a Harno Scholar, and represented the College of Law in the Midwest Moot Court competition, winning second place for best oral advocate in the preliminary round and first place for best oral advocate in the semi-final round. He received his B.A. from the University of Texas at Austin, where he was on the Dean's Honor List and the University Honors List.

Omar is admitted to practice in Illinois, and the United States District Courts for the Northern District of Illinois and the Northern District of Indiana.

## Jonathan Lindenfeld

Jonathan Lindenfeld focuses his practice on securities fraud litigation. Prior to joining Pomerantz, Jonathan was an associate at a national plaintiffs' securities litigation firm where he focused on securities fraud litigation and stockholder derivative suits.

Jonathan graduated *cum laude* from Hofstra University School of Law in 2015, where he received Honors in Business Law, was awarded Merit Based Scholarships, and was on the Dean's Honor List. While in law school, Jonathan gained experience in the U.S. Attorney's Office for the Eastern District of New York and a boutique law firm specializing in forex and derivative exchanges. Jonathan also served as an editor of the Hofstra Journal of International Business and Law. Jonathan earned a Bachelor of Arts in Economics from City University of New York-Queens College in 2012.

In 2015, Jonathan published "The CFTC's Substituted Compliance Approach: An Attempt to Bring About Global Harmony and Stability in the Derivatives Market," in the Journal of International Business and Law: Vol. 14: Iss. 1, Article 6.

The article is available at: http://scholarlycommons.law.hofstra.edu/jibl/vol14/iss1/6.

Jonathan is admitted to practice in New York, New Jersey, and the United States District Courts for the Southern District of New York and District of New Jersey.

## Veronica V. Montenegro

Veronica V. Montenegro focuses her practice on securities fraud litigation.

Prior to joining Pomerantz, Veronica served for seven years as an Assistant Attorney General in the Investor Protection Bureau in the Office of the New York State Attorney General. Veronica represented the Office in some of its most high-profile financial fraud prosecutions. She worked on a case against a Madoff feeder-fund manager which resulted in the return of millions of dollars to defrauded investors. She was a member of the Residential Mortgage Backed Securities (RMBS) Working Group, comprised of State and Federal prosecutors tasked with investigating and prosecuting mortgage securities fraud, which has resulted in billions of dollars in recoveries. In recognition of her work in the

RMBS Working Group, Veronica was awarded the Louis Lefkowitz Award for Exceptional Service. Veronica also worked on cases involving insider trading, auction rate securities and foreign exchange execution.

Veronica graduated from Fordham University School of Law in 2008. During law school, she served as a member of the Fordham International Law Journal and in Fordham's Moot Court Board. Additionally, she served as a judicial extern to the Honorable Ronald L. Ellis, Magistrate Judge for the Southern District of New York. Veronica graduated from New York University's College of Arts and Science in 2004, *cum laude*, with a double major in Political Science and Latin American Studies.

Veronica is admitted to practice in the States of New York and New Jersey and the United States District Court for the Southern District of New York.

## Villi Shteyn

Villi Shteyn focuses his practice on securities fraud litigation.

Before joining Pomerantz, Villi was employed by a boutique patent firm, where he worked on patent validity issues in the wake of the landmark *Alice* decision, in which the court ruled that an abstract idea does not become eligible for a patent simply by being implemented on a generic computer. He also helped construct international patent maintenance tools for clients and assisted in pursuing injunctive relief for a patent-holder client against a large tech company.

Villi graduated from The University of Chicago Law School (J.D., 2017). In 2014, he graduated *summa cum laude* from Baruch College with a Bachelor of Science in Public Affairs.

## Jennifer Banner Sobers

Jennifer Banner Sobers focuses her practice on securities fraud litigation.

Jennifer played an integral role on the team litigating *In re Petrobras Securities Litigation,* in the Southern District of New York*,* a securities class action arising from a multi-billion-dollar kickback and bribery scheme involving Brazil's largest oil company, Petróleo Brasileiro S.A. - Petrobras. The Firm, as sole Lead Counsel, recently achieved a historic $3 billion settlement on behalf of investors in Petrobras securities. Among Jennifer' contributions to the team's success were: managing the entire third-party discovery in the United States, which resulted in the discovery of key documents and witnesses; deposing several underwriter bank witnesses; and drafting portions of Plaintiffs' amended complaints that withstood motions to dismiss the claims and Plaintiffs' successful opposition to Defendants' appeal in the Second Circuit, which resulted in precedential rulings.

Jennifer is a key member of the litigation teams of other nationwide cases, including: *In re BP p.l.c Securities Litigation*, the MDL pending in the Southern District of Texas, which are securities fraud lawsuits on behalf of institutional investors in BP p.l.c. to recover losses in BP's common stock (which trades on the London Stock Exchange), arising from BP's 2010 Gulf oil spill and for which the team has successfully opposed several motions to dismiss the claims; *In re KaloBios Pharmaceuticals Inc. Securities Litigation,* pending in the Northern District of California, which secured successful settlements for the

Class; and *Perez v. Higher One Holdings, Inc.,* pending in the District of Connecticut, which survived dismissal and was successfully settled, pending court approval.

Prior to joining Pomerantz, Jennifer was an associate with a prominent law firm in New York where her practice focused on complex commercial litigation, including securities law and accountants' liability. An advocate of pro bono representation, Jennifer earned the Empire State Counsel honorary designation from the New York State Bar Association and received an award from New York Lawyers for the Public Interest for her pro bono work.

Jennifer received her B.A. from Harvard University (with honors), where she was on the Dean's List, a Ron Brown Scholar, and a recipient of the Harvard College Scholarship. She received her J.D. from University of Virginia School of Law where she was a participant in the Lile Moot Court Competition and was recognized for her pro bono service.

She is a member of the Federal Bar Council, New York City Bar Association, and New York State Bar Association. She is also a member of the Association of Arbitrators.

Jennifer is admitted to practice in New York, the United States District Court for the Southern District of New York, and the United States Courts of Appeals for the Second and Ninth Circuits.

**Roxanna Talaie**

Roxanna Talaie focuses her practice on securities litigation.

As a member of the Firm's investor relations group, she also frequently travels throughout the United States to inform clients on how best to evaluate losses to their investment portfolios attributable to financial fraud or other misconduct.

Roxanna earned a Bachelor of Arts in Political Science from the University of Southern California in Los Angeles, California. She earned her law degree from Pepperdine University School of Law. During her time at Pepperdine, Roxanna participated in Pepperdine's Community Justice Clinic, in which she acted as general counsel for nonprofits, nongovernmental organizations, and other community groups working to promote social justice, human rights and develop economic opportunities and resources for vulnerable, underserved people and communities. She also earned a certificate in Dispute Resolution from Pepperdine's Straus Institute for Dispute Resolution, the highest-ranked dispute resolution program in the United States.

Prior to studying law, Roxanna worked as an auditor and analyst in the mortgage industry at Bank of America.

Roxanna is admitted to practice in the State of California and the United States District Court for the Central District of California. She is based in Los Angeles.

**Staff Attorneys**

**Átila de Carvalho Beatrice Condini**

Átila de Carvalho Beatrice Condini, an international attorney at Pomerantz, focuses on class action securities litigation.

Átila brings to Pomerantz his 13 years' expertise in complex Brazilian federal legal, procedural, and regulatory issues. He is a member of Pomerantz's team for three securities class actions against Brazilian companies: *In re Petrobras Sec. Litig.*, *Manidhar Kukkadapu, et al. v. Embraer, et al.*, and *Banco Safra S.A. - Cayman Islands Branch* v. *Samarco Mineração S.A.* et al.

Átila is a partner (on leave) at the law firm, Condini & Tescari Advogados, in São Paolo, Brazil, where he was responsible for the tax and litigation divisions. Before that, he was an associate and senior associate at two other major Brazilian law firms in São Paolo. During that period, he successfully worked on cases that became benchmarks in the Brazilian legal scenario. In one of them, he prepared a brief in the Extraordinary Appeal nº 559.937, whose thesis was accepted by the Brazilian Supreme Court, reducing the social contribution taxes (PIS / COFINS-Importação) levied on imports. In another case, he defended an advanced interpretation about D&O responsibilities, which was also accepted by the Brazilian Supreme Court in the Extraordinary Appeal nº 562.276.

Átila has also been attentive to social causes, not only practicing pro bono, but also in the human rights field. For example, Átila conducted a legal research project that ultimately resulted in the human rights group, Tortura Nunca Mais, being able to help fund and support the creation of a free virtual library focused on keeping alive Brazilian recent history for future generations. In 2006, Átila received a Bachelor of Laws degree from Pontifical University Catholic of São Paulo ("PUC/SP"). In 2008, he received a specialized law degree in taxation from PUC/SP.

**Laura M. Perrone**

Laura M. Perrone focuses on class action securities litigation.

Prior to joining Pomerantz, Laura worked on securities class action cases at Labaton Sucharow. Preceding that experience, she represented plaintiffs at her own securities law firm, the Law Offices of Laura M. Perrone, PLLC.

More recently, Laura has represented bondholders against Citigroup for its disastrous investments in residential mortgage backed securities, shareholders against Barclays PLC for misrepresentations about its dark pool trading system known as Barclays LX, and shareholders against Fiat Chrysler Automobiles for misrepresentations about its recalls and its diesel emissions defeat devices.

Laura graduated from the Benjamin N. Cardozo School of Law, where she was on the editorial staff of Cardozo's Arts and Entertainment Law Journal and was the recipient of the Jacob Burns Merit Scholarship.

Laura is admitted to practice in the New York State Courts, the United States District Courts for the Southern and Eastern Districts of New York, and the United States Courts of Appeals for the Second and the Fifth Circuits.

## Samir Sidi

Samir Sidi focuses his practice on securities fraud litigation.

Samir participated in the Firm's securities class action case against Brazil's largest oil company, Petrobras, arising from a multi-billion-dollar kickback and bribery scheme, in which the Firm, as sole Lead Counsel, recently achieved a historic $3 billion settlement for the Class, as well as precedent-setting legal rulings.

Previously, Samir represented plaintiffs in disputes related to a variety of financial investments, including the Federal Home Loan Bank of Seattle and the FDIC in their multi-billion-dollar actions against securities dealers to rescind the purchase of certificates backed by residential mortgage loans. He also represented institutional investors in a securities fraud action against Vivendi Universal (*In re Vivendi Universal, S.A. Sec. Litig.*, 02 Civ. 5571 (S.D.N.Y.)), where in January 2010 the jury returned a verdict that at the time had an estimated value of up to $9 billion.

Samir also served as a judicial intern for the Administrative Office of the Federal Judiciary – Office of Legislative Affairs in Washington, D.C.

Samir received his LL.L from the University of Ottawa, and his LL.M. in Banking & Financial Law from the Boston University School of Law.

Samir is admitted to practice in New York State.

## Allison Tierney

Allison Tierney focuses her practice on securities fraud litigation.

Allison brings to Pomerantz her 10 years' expertise in large-scale securities class action litigation. She participated in the Firm's securities class action case against Brazil's largest oil company, Petrobras, arising from a multi-billion-dollar kickback and bribery scheme, in which the Firm, as sole Lead Counsel, recently achieved a historic $3 billion settlement for the Class, as well as precedent-setting legal rulings.

Prior to joining Pomerantz, Allison worked on securities class action cases at several top New York law firms, representing institutional investors. She has represented plaintiffs in disputes related to antitrust violations, corporate financial malfeasance, and residential mortgage-backed securities fraud.

Allison earned her law degree from Hofstra University School of Law, where she served as notes and comments editor for the *Cyberlaw Journal*. She received her B.A. in Psychology from Boston University, where she graduated magna cum laude.

Allison is conversant in Spanish and is currently studying to become fluent.

Allison is admitted to practice in New York State.