UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| CHASE MORTIMER, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>DIPLOMAT PHARMACY, INC., et al.,<br><br>    Defendants. | Case No. 1:19-cv-01735<br><br>CLASS ACTION<br><br>Judge Virginia M. Kendall |
| WILLIAM RIEHM, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>DIPLOMAT PHARMACY, INC., et al.,<br><br>    Defendants. | Case No. 1:19-cv-02631<br><br>CLASS ACTION<br><br>Judge Joan H. Lefkow |

[Caption continued on following page.]

MEMORANDUM OF LAW IN SUPPORT OF IRON WORKERS LOCAL NO. 25 PENSION FUND'S MOTION FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL

1557235_1

DAVID PRENTICE, Individually and on Behalf of All Others Similarly Situated,

      Plaintiff,

vs.

DIPLOMAT PHARMACY, INC., et al.,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 1:19-cv-02635

<u>CLASS ACTION</u>

Judge Elaine E. Bucklo

1557235_1

## I.     INTRODUCTION

Three related securities class action lawsuits brought on behalf of purchasers of Diplomat Pharmacy, Inc. ("Diplomat" or the "Company") securities between February 26, 2018 and February 21, 2019 (the "Class Period") are pending in this Court: (1) *Riehm v. Diplomat Pharmacy, Inc., et al.*, No. 1:19-cv-02631 (filed 2/24/19, transferred from C.D. Cal. on 4/18/19); (2) *Prentice v. Diplomat Pharmacy, Inc., et al.*, No. 1:19-cv-02635 (filed 3/6/19, transferred from C.D. Cal. on 4/18/19); and (3) *Mortimer v. Diplomat Pharmacy, Inc., et al.*, No. 1:19-cv-01735 (filed 03/12/19) (the "Related Actions"). The Private Securities Litigation Reform Act of 1995 ("PSLRA") requires district courts to resolve consolidation before appointing a lead plaintiff in securities cases. *See* 15 U.S.C. §78u-4(a)(3)(B)(ii). Here, the Related Actions should be consolidated because each asserts identical claims against nearly identical defendants on behalf of the class of investors that purchased Diplomat securities during the same Class Period. *See* Fed. R. Civ. P. 42(a); §III.A., *infra*.

As soon as practicable after consolidating the related actions, the Court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions." 15 U.S.C. §78u-4(a)(3)(B)(ii). The lead plaintiff is the "member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i). Here, the Iron Workers Local No. 25 Pension Fund (the "Pension Fund"), an institutional investor, should be appointed lead plaintiff because it filed a timely Motion, has a significant financial interest in the outcome of this litigation, and will typically and adequately represent the class's interests. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). In addition, the Pension Fund's selection of Robbins Geller Rudman & Dowd LLP to serve as lead counsel should be approved because the Firm possesses extensive experience prosecuting securities class actions and will adequately represent the interests of all class members.

- 1 -

1557235_1

## II.    FACTUAL BACKGROUND

Diplomat is an independent provider of specialty pharmacy services.  In late 2017, the Company entered the Pharmacy Benefit Management ("PBM") business through its acquisitions of National Pharmaceutical Services ("NPS") and LDI Integrated Pharmacy Services ("LDI").  During the Class Period, the Company operated as two reporting segments.  The Specialty segment provides solutions to address the dispensing, delivery, dosing, and reimbursement of clinically intensive, high-cost specialty drugs and a wide range of applications, and the PBM segment offers services designed to help customers manage the complexity of their prescription drug programs. Diplomat securities trade on the New York Stock Exchange under the symbol DPLO.

The complaints allege that throughout the Class Period, defendants made false and/or misleading statements and/or failed to disclose key facts related to its entry into the PBM business, its acquisitions of LDI and NPS, impending impairment charges to its PBM business, and the nature of its preliminary 2019 full-year outlook.[1]

On November 6, 2018, after the market closed, Diplomat announced its financial results for the third quarter ended September 30, 2018 ("3Q2018").  In the earnings release, defendant Brian T.

---

[1]    *See Riehm*, ECF No. 1 at ¶26 ("Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Diplomat had downplayed its success in integrating and growing its PBM business, which included LDI Integrated and National Pharmaceutical, two companies Diplomat had acquired in late 2017; (2) consequently, Diplomat would need to record a non-cash impairment charge upwards of approximately $630 million relating to its PBM business and these 2017 acquisitions; (3) due to the foregoing, Diplomat would withdraw its preliminary 2019 full-year outlook issued less than seven weeks prior;  and (4) as a result, Defendants' statements about Diplomat's business, operations and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times."); *Prentice*, ECF No. 1 at ¶26 (same); *Mortimer*, ECF No. 1 at ¶34 ("Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Diplomat was experiencing significant difficulty integrating and growing its PBM business, which included LDI and NPS, companies Diplomat acquired in late 2017; (2) Diplomat's PBM business was significantly impaired and as a result of material customer losses would need to record a massive non-cash impairment charge relating to its PBM business and the 2017 acquisitions; (3) Diplomat's preliminary 2019 full-year outlook, issued less than seven weeks before being withdrawn, was not accurate and could not be achieved; and (4) as a result, Defendants' statements about Diplomat's business, operations and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times during the Class Period.").

- 2 -

Griffin – the Company's CEO since June 4, 2018 – commented that the Company's "solid" results were driven by the Company's ability to "successfully execute on [its] growth plan" and through "strong . . . PBM performance." *Riehm*, ECF No. 1 at ¶24; *Prentice*, ECF No. 1 at ¶24; *Mortimer*, ECF No. 1 at ¶24. The *Mortimer* Complaint alleges that defendants' disclosures on November 6, 2018 also revealed a portion of the mounting problems, including that the Company expected to lose roughly $200 million in revenue – 4% of total enterprise revenue – in its PBM business because of client losses. *See Mortimer*, ECF No. 1 at ¶26. On this news, the price of Diplomat common stock declined over 25% on heavy volume.

Then, on January 7, 2019, the Company issued a press release which provided updated 2018 guidance and a preliminary outlook for 2019. *Riehm*, ECF No. 1 at ¶25; *Prentice*, ECF No. 1 at ¶25; *Mortimer*, ECF No. 1 at ¶28. The *Mortimer* Complaint alleges that the January 7, 2019 press release also disclosed that 2018 revenue would be at the lower end of its guidance, and that on the same day, defendants also disclosed that two senior executives would immediately be departing from the Company, and that its 2019 revenue may fall short of consensus. *See Mortimer*, ECF No. 1 at ¶28-32. On the sudden news of the executive departures and the downward revision of guidance, Diplomat shares declined over 10%.

Finally, on February 22, 2019, Diplomat filed a Form 8-K with the Securities and Exchange Commission, announcing it was unable to release its Form 10-K for the fiscal year ended December 31, 2018 due to a "recent determination" that it would need to record a non-cash impairment charge upwards of approximately $630 million relating to 2017 acquisitions for its PBM business. *Riehm*, ECF No. 1 at ¶27; *Prentice*, ECF No. 1 at ¶27; *Mortimer*, ECF No. 1 at ¶35. Diplomat also disclosed that it was withdrawing its preliminary 2019 full-year outlook provided just a few weeks earlier on January 7, 2019. *Id.* On this news, shares of Diplomat declined over 55%, causing substantial harm to investors.

- 3 -

1557235_1

As a result of defendants' alleged wrongful acts and omissions and the decline in Diplomat securities, class members have suffered significant losses and damages.

## III.   ARGUMENT

### A.   The Related Actions Should Be Consolidated

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the court shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. §78u-4(a)(3)(B)(ii).   Under Rule 42(a), consolidation is appropriate when actions "involve a common question of law or fact."  Fed. R. Civ. P. 42(a).  In these instances, courts maintain that, in order to avoid the unnecessary waste of judicial resources and the additional costs and delay to the parties, lawsuits which involve similar questions of law and fact should be consolidated.  *See Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992).

The Related Actions present identical factual and legal issues, allege identical claims in an identical class period on behalf of the same class, and name overlapping defendants.[2]  Indeed, in ruling on defendants' motions to transfer the *Riehm* and *Prentice* actions to this District, Judge Wu recognized that the Related Actions are "substantially similar" and that "allegations in all three cases relate to Diplomat's entry into the pharmacy benefits manager ('PBM') business and the performance of that business."  *See Riehm*, ECF No. 19 at 1.  Because the Related Actions pending before this Court are based on the same facts and involve the same subject matter, the same discovery will be relevant to all lawsuits.  Thus, consolidation is appropriate here.  *See, e.g., Mayo v. Apropos Tech., Inc.*, 2002 WL 193393, at *2 (N.D. Ill. Feb. 7, 2002) ("Given that each of the above Related Cases involve class action claims on behalf of the purchasers of Apropos common stock and

---

[2]   All three complaints name Diplomat, Griffin, Jeffrey Park (the Company's interim CEO from January 5, 2018 until May 2018) and Atul Kavthekar (Chief Financial Officer) as defendants.  The *Mortimer* Complaint also names Joel Saban (President) as a defendant.

1557235_1

assert essentially similar and overlapping class claims for relief brought on behalf of purchasers of Apropos common stock, consolidation of such actions by the same judge would result in a substantial saving of judicial time and effort.").

## B. The Pension Fund Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a Lead Plaintiff in "each private action arising under [the Securities Exchange Act of 1934] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1). First, "[n]ot later than 20 days" after the complaint is filed, a notice must be published "in a widely circulated national business-oriented publication or wire service" advising members of the purported plaintiff class "of the pendency of the action, the claims asserted therein, and the purported class period" and that "not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff." 15 U.S.C. §78u-4(a)(3)(A)(i). The statutory notice regarding the pendency of the *Riehm* Action was published on February 24, 2019 via *Business Wire*. *See* Motion, Ex. A.

Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person that –

(aa) has either filed the complaint or made a motion in response to a notice . . . ;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii). The Pension Fund meets these requirements and should therefore be appointed Lead Plaintiff.

- 5 -

1557235_1

### 1. The Motion Is Timely

The statutory notice published on February 24, 2019 advised purported class members of the pendency of the action, the claims asserted, the proposed class period, and the right to move the Court to be appointed as lead plaintiff within 60 days, or by April 25, 2019. *See* Motion, Ex. A; 15 U.S.C. §78u-4(a)(3)(A). Because the Pension Fund's Motion was timely filed by the statutory deadline, the Pension Fund is eligible for appointment as lead plaintiff.

### 2. The Pension Fund Has the Largest Financial Interest in the Relief Sought by the Class

As evidenced by its Certification, the Pension Fund purchased 32,324 shares of Diplomat common stock during the Class Period and suffered over $220,000 in losses as a result of defendants' alleged misconduct. *See* Motion, Exs. B, C. To the best of its counsel's knowledge, there are no other plaintiffs with a larger financial interest. Therefore, the Pension Fund satisfies the PSLRA's prerequisite of having the largest financial interest.

### 3. The Pension Fund Satisfies the Rule 23 Typicality and Adequacy Requirements

In addition to having the largest financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). In contrast to the class certification stage, at the lead plaintiff stage a proposed lead plaintiff need only make a "preliminary showing that it satisfies th[e] typicality and adequacy requirements of Rule 23." *In re Groupon, Inc. Sec. Litig.*, 2012 WL 3779311, at *3 (N.D. Ill. Aug. 28, 2012). "'A lead plaintiff's claims can be considered typical if they arise out of the "same event or practice or course of conduct that gives rise to the claims of other class members and . . . [its] claims are based on the same legal theory."'" *Id.* (citation omitted); *see also* Fed. R. Civ. P. 23(a)(3). "'A lead plaintiff meets the adequacy requirement if (1) its claims are not antagonistic or in conflict with those of the class; (2) it has sufficient interest in the outcome of the case to ensure

- 6 -

1557235_1

vigorous advocacy; and (3) it is represented by competent, experienced counsel who [will] be able to prosecute the litigation vigorously.'" *Id*. (citation omitted); *see also* Fed. R. Civ. P. 23(a)(4).

Here, the Pension Fund's claims are typical because, like all members of the putative class, it purchased Diplomat securities during the Class Period and claims it sustained losses resulting from defendants' false and misleading statements and/or omissions. Thus, the Pension Fund's claims arise from the same course of conduct as all class members' claims and will require similar – if not identical – legal arguments in order to prove defendants' liability. As a result, the Pension Fund satisfies the typicality requirements of Rule 23(a)(3).

The Pension Fund is also an adequate representative for the proposed class because it has a substantial financial interest in the outcome of the action, thus demonstrating that its interest is aligned with those of the class. In addition, the Pension Fund has selected highly experienced counsel committed to zealously and efficiently prosecuting this case to a successful conclusion. And given that the "'PSLRA was enacted with the explicit hope that institutional investors . . . would step forward to represent the class and exercise effective management and supervision of the class lawyers,'" the Pension Fund is well suited to adequately represent the class. *In re Bally Total Fitness Sec. Litig.*, 2005 WL 627960, at \*2-\*5 (N.D. Ill. Mar. 15, 2005) (quoting *Sakhrani v. Brightpoint, Inc.*, 78 F. Supp. 2d 845, 850 (S.D. Ind. 1999)).

The Pension Fund is a multi-employer pension plan governed by ERISA that has over 5,000 participants and over $500 million in assets under management. The Pension Fund receives contributions from its members' employers, invests these contributions, and then distributes pension benefits to qualifying members. The Pension Fund is governed by a six-person Board of Trustees. Not only is the Pension Fund a sophisticated institutional investor, but it is also experienced in fulfilling the duties of a lead plaintiff and class representative in securities class actions. *See In re Banc of California Sec. Litig.*, 326 F.R.D. 640, 647 (C.D. Cal. 2018) (certifying class of investors

- 7 -

1557235_1

and appointing the Pension Fund as class representative, finding that "[t]he Court actually need not speculate about the willingness of the [Pension Fund] and its counsel to vigorously prosecute this case, but only look at all the activity on the docket, which has over 110 entries since the Court denied Defendants' motion to dismiss about seven months ago, including three pending discovery motions. It's also worth noting that on the consolidation motion, all named plaintiffs and movants agreed that the [Pension Fund] was the most appropriate lead plaintiff."). As such, the Court can be assured of the Pension Fund's fitness to lead the Related Actions.

Because the Pension Fund believes it is the presumptively "most adequate plaintiff" under the PSLRA, 15 U.S.C. §78u-4(a)(3)(B)(iii)(I), it should be appointed Lead Plaintiff. *Groupon*, 2012 WL 3779311, at \*3.

### C. The Court Should Approve the Pension Fund's Selection of Counsel

The PSLRA entitles the lead plaintiff to select and retain counsel to represent the class, subject to the Court's approval. 15 U.S.C. §78u-4(a)(3)(B)(v). In this case, the Pension Fund has selected Robbins Geller as Lead Counsel. *See* Motion, Ex. D.

Robbins Geller, a 200-attorney firm with offices nationwide and in this District, regularly practices complex securities litigation, and has recovered tens of billions of dollars on behalf of injured investors in securities class actions like this. *See* Motion, Ex. D. The Firm's recoveries on behalf of shareholder classes include some of the largest in history, including $7.2 billion recovered in *In re Enron Corp., Sec. Litig.*, No. 4:01-cv-03624 (S.D. Tex.) (the largest securities class action recovery ever) and $1.575 billion recovered in *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 1:02-cv-05893 (N.D. Ill.) (the largest securities class action recovery following a trial). *Id.* With hundreds of highly skilled attorneys and legal professionals, including forensic accountants, economists, damage analysts, investigators, and paralegals, Robbins Geller provides high quality attention and professionalism to each case and client. District courts throughout the country,

- 8 -

including in this District, have recognized Robbins Geller's experience in litigating complex securities class actions and appointed Robbins Geller attorneys to lead roles in landmark complex class action securities cases such as this. *See, e.g.*, *Silverman v. Motorola, Inc.*, 2012 WL 1597388, at *3 (N.D. Ill. May 7, 2012)* (granting final approval of $200 million settlement and noting that the "representation that Class Counsel provided to the class was significant, both in terms of quality and quantity"); Motion, Ex. D.

Based upon Robbins Geller's extensive experience and proven track record as counsel in securities class actions, the Pension Fund's selection of Robbins Geller as lead counsel is reasonable and should be approved.

## IV.  CONCLUSION

The Related Actions should be consolidated as they involve identical legal and factual questions.  In addition, the Pension Fund has satisfied each of the PSLRA's requirements for appointment as lead plaintiff.  Accordingly, the Pension Fund respectfully requests that the Court grant its motion.

DATED:  April 25, 2019

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
MICHAEL ALBERT

s/ Danielle S. Myers
DANIELLE S. MYERS

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

- 9 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
JAMES E. BARZ (IL Bar # 6255605)
FRANK A. RICHTER (IL Bar # 6310011)
200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  312/674-4674
312/674-4676 (fax)
jbarz@rgrdlaw.com
frichter@rgrdlaw.com

[Proposed] Lead Counsel for [Proposed] Lead
Plaintiff

SULLIVAN, WARD, ASHER & PATTON, P.C.
MICHAEL J. ASHER
1000 Maccabees Center
25800 Northwestern Highway
Southfield, MI  48075
Telephone:  248/746-0700
248/746-2760 (fax)
masher@swappc.com

HESSIAN & McKASY P.A.
WILLIAM A. CUMMINGS
3700 RBC Plaza
60 South 6th Street
Minneapolis, MN  55402
Telephone:  612/746-5770
612/746-5755 (fax)

Additional Counsel for [Proposed] Lead Plaintiff

- 10 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on April 25, 2019, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

<div style="margin-left: 50%;">

s/ Danielle S. Myers
DANIELLE S. MYERS

ROBBINS GELLER RUDMAN
      & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail: danim@rgrdlaw.com

</div>

1557235_1

# Mailing Information for a Case 1:19-cv-01735 Mortimer v. Diplomat Pharmacy, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **James Wallace Ducayet**
  jducayet@sidley.com,james-ducayet-9115@ecf.pacerpro.com,efilingnotice@sidley.com

- **Lori Ann Fanning**
  LFanning@MillerLawLLC.com,MMiller@MillerLawLLC.com,ajewell@millerlawllc.com,drobinson@millerlawllc.com,JRamirez@millerlawllc.com

- **David Allan Geiger**
  dgeiger@sidley.com,efilingnotice@sidley.com,david-geiger-9990@ecf.pacerpro.com

- **Carl V. Malmstrom**
  malmstrom@whafh.com

- **Nilofer Ibrahim Umar**
  numar@sidley.com,efilingnotice@sidley.com,nilofer-umar-6698@ecf.pacerpro.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
William Riehm
,

Alaxander Virgili
,
```