# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF ILLINOIS

### EASTERN DIVISION

| | |
|---|---|
| CHASE MORTIMER, Individually and on Behalf of All Others Similarly Situated, <br><br>            Plaintiff, <br><br> v. <br><br> DIPLOMAT PHARMACY, INC., BRIAN T. GRIFFIN, JEFFREY PARK, JOEL SABAN, and ATAL KAVTHEKAR, <br><br>            Defendants. | Civil Action No. 1:19-cv-01735 <br><br> <u>CLASS ACTION</u> <br><br> Judge Virginia M. Kendall |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION OF ARSANY GIRGIS TO CONSOLIDATE RELATED CASES,
APPOINT LEAD PLAINTIFF, APPROVE SELECTION OF LEAD COUNSEL,
AND IN OPPOSITION TO COMPETING MOTIONS**

010828-11 1127744 V1

**TABLE OF CONTENTS**

I.      PROCEDURAL HISTORY.................................................................................................2

II.     ARGUMENT.................................................................................................................3

        A.      The PSLRA Framework Dictates the Procedure for Appointing

               a Lead Plaintiff.................................................................................................3

               1.     Mr. Girgis Has the Largest Financial Interest in the Relief Sought by the

                      Class and Is Presumptively the Most Adequate Lead Plaintiff...................4

               2.     Mr. Girgis Is Both Typical and Adequate Under Fed. R. Civ. P. 23 ...........6

               3.     The Motions of All Competing Movants Should Be Denied Because They

                      Have Significantly Smaller Financial Interests than Movant or are

                      Otherwise Inadequate or Atypical ..............................................................6

        B.      The Court Should Approve Mr. Girgis's Choice of Lead Counsel. ......................13

III.    CONCLUSION...........................................................................................................14

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bally Total Fitness Sec. Litig.*,
2005 WL 627960 (N.D. Ill. Mar. 15, 2005)............................................................................7, 9

*Bensley v. FalconStor Software, Inc.*,
277 F.R.D. 231 (E.D.N.Y. 2011) ...........................................................................................7, 9

*Bristol Cty. Ret. Sys. v. Allscripts Healthcare Sols., Inc.,*
2012 WL 5471110 (N.D. Ill. Nov. 9, 2012) ...............................................................................4

*In re Cardinal Health, Inc. ERISA Litig.*,
225 F.R.D. 552 (S.D. Ohio 2005) .............................................................................................11

*In re Cardinal Health, Inc. Sec. Litig.*,
226 F.R.D. 298 (S.D. Ohio 2005) ..........................................................................................8, 11

*Chandler v. Ulta Beauty, Inc.*,
2018 WL 3141763 (N.D. Ill. June 26, 2018) .........................................................................8, 14

*City of Sterling Heights Gen. Employees' Ret. Sys. v. Hospira, Inc.*,
2012 WL 1339678 (N.D. Ill. Apr. 18, 2012) ..............................................................................4

*In re Comverse Tech., Inc. Sec. Litig.*,
2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ................................................................................8

*Constr. Workers Pension Tr. Fund v. Navistar Int'l Corp.*,
2013 WL 3934243 (N.D. Ill. July 30, 2013)..............................................................................10

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005)......................................................................................................................7

*Fiandaca v. Cunningham*,
827 F.2d 825 (1st Cir. 1987).......................................................................................................12

*Jackshaw Pontiac, Inc. v. Cleveland Press Pub. Co.*,
102 F.R.D. 183 (N.D. Ohio 1984) ..............................................................................................12

*Johnson v. Tellabs, Inc.*,
214 F.R.D. 225 (N.D. Ill. 2002)....................................................................................................6

*Kops v. NVE Corp.*
2006 WL 2035508 (D. Minn. July 19, 2006*)* ...........................................................................8

ii

*Krim v. pcOrder.com, Inc.*,
  210 F.R.D. 581 (W.D. Tex.2002) ...................................................................................11, 12

*Kuper v. Quantum Chem. Corp.*,
  145 F.R.D. 80 (S.D. Ohio 1992) ....................................................................................11, 12

*Kurczi v. Eli Lilly & Co.*,
  160 F.R.D. 667 (N.D. Ohio 1995) ........................................................................................12

*Lax v. First Merchants Acceptance Corp.*,
  1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ........................................................................4, 5

*In re McKesson HBOC, Inc. Sec. Litig.*,
  97 F.Supp.2d 993 (N.D. Cal.1999) ..........................................................................................8

*In re Motorola Sec. Litig.*,
  2003 WL 21673928 (N.D. Ill. July 16, 2003)...........................................................................6

*Porzio v. Overseas Shipholding Group*,
  2013 WL 407678 (S.D.N.Y. Feb. 1, 2013)...........................................................................5, 8

*Rao v. Quorum Health Corp.*,
  221 F. Supp. 3d 987 (M.D. Tenn. 2016)...................................................................................4

*Ruland v. InfoSonics Corp.*,
  2006 WL 3746716 (S.D. Cal. Oct. 23, 2006) ...........................................................................9

*Sullivan v. Chase Inv. Servs. of Boston, Inc.*,
  79 F.R.D. 246 (N.D. Cal. 1978).............................................................................................12

*Wong v. Accretive Health, Inc.*,
  773 F.3d 859 (7th Cir. 2014) ...................................................................................................7

**Statutes, Rules and Regulations**

15 U.S.C. §78u-4 ................................................................................................ *passim*

15 U.S.C. §78u-4(a)(3)(A)-(B) ..........................................................................................3

15 U.S.C. §78u-4(a)(3)(B) ..................................................................................................1

15 U.S.C. § 78u-4(a)(3)(B)(i) ............................................................................................6

15 U.S.C. §78u-4(a)(3)(B)(iii) .......................................................................................3, 6

15 U.S.C. § 78u- 4(a)(3)(B)(iii)(I)(bb) ..............................................................................4

15 U.S.C. § 78u- 4(a)(3)(B)(iii)(I)(cc)...............................................................................1

iii

15 U.S.C. § 78u-4(a)(3)(B)(v) ..................................................................................................13

17 C.F.R. §240.10b-5...........................................................................................................2, 7

Fed. R. Civ. P. 23................................................................................................ *passim*

Ill. Sup. Ct. R. Prof. Conduct, R 1.7 .......................................................................................13

Arsany Girgis ("Mr. Girgis") respectfully submits this Memorandum of Law in further support of his Motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for entry of an Order: (1) appointing Mr. Girgis as Lead Plaintiff on behalf of all persons or entities who purchased or otherwise acquired the securities of Diplomat Pharmacy, Inc. ("Diplomat", "DPLO", or the "Company") from February 26, 2018 through February 21, 2019 ("Class Period"), both dates inclusive; (2) approving Mr. Girgis's selection of the law firm of Hagens Berman Sobol Shapiro LLP ("Hagens Berman") as Lead Counsel for the class; and (3) granting such other and further relief as the Court may deem just and proper.

Mr. Girgis, having suffered losses of over $130,000 as a result of his acquisition of Diplomat securities during the Class Period, has the largest financial interest in the outcome of this litigation among any competing movant and is the "most adequate plaintiff" pursuant to the PSLRA. As discussed below, while movant Iron Workers Local No. 25 Pension Fund ("IWLPF") claims a purported loss of $220,000, in truth, IWLPF has no financial interest in the litigation as IWLPF sold all of its Diplomat shares prior to any alleged corrective disclosure. Moreover, IWLPF's "in-and-out" trading history prior to the alleged disclosures subjects IWLPF to unique standing defenses and serious adequacy challenges, rendering IWLPF unsuitable to serve as Lead Plaintiff. Finally, IWLPF's counsel is conflicted as it is currently trying to settle an earlier action against Defendants. Accordingly, Mr. Girgis respectfully submits that the Court should appoint him as Lead Plaintiff and approve his selection of Lead Counsel.[1]

---

[1] Unless otherwise noted, all ECF references pertain to *Mortimer v. Diplomat, et al.*, Case No. 1:19-cv-01735 ("*Mortimer*"), and the complaint filed in that action.

1

## I.    PROCEDURAL HISTORY

Pending before the Court are two competing motions to appoint a Lead Plaintiff, and approve Lead Counsel in these consolidated actions: *Riehm v. Diplomat Pharmacy, Inc., et al.*, Case No. 1:19-cv-02631 (N.D. Ill.) ("*Riehm*"), *Prentice v. Diplomat Pharmacy, Inc., et al.*, Case No. 1:19-cv-02635 (N.D. Ill.) ("*Prentice*"), and this main action, *Mortimer*.[2] The consolidated actions each allege securities violations by Diplomat and certain Diplomat senior officers and directors (Individual Defendants Brian T. Griffin, Jeffrey Park, Joel Saban, and Atul Kavthekar) (collectively referred to as "Defendants" along with Diplomat), for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5. The *Riehm* and *Prentice* complaints each allege that the disclosures that caused losses occurred on February 22, 2019 (and not before), when the Company's adverse disclosures caused Diplomat shares to fall over 56%, wiping out over $560 million in market capitalization.[3] In both complaints, statements made on November 6, 2018 and January 7, 2018 are alleged to have been false statements.[4] The *Mortimer* complaint alleges an additional corrective disclosure on January 7, 2019, where the Company's release of adverse information caused Diplomat shares to drop 10%, erasing over $100 million in market capitalization.[5]

On April 25, 2019, five competing movants filed motions before this Court, each requesting appointment as lead plaintiff: movant Alexander Virgili ("Virgili"), ECF Nos. 13, 14,

---

[2] These actions were consolidated by this Court's Order of May 1, 2019, ECF No. 42.

[3] *See* Kathrein Decl., Ex. A (*Riehm* Compl.) at ¶27 and Ex. B (*Prentice* Compl.) at ¶27.

[4] *Riehm* Compl. at ¶¶24-26; *Prentice* Compl. at ¶¶ 24-26.

[5] *Mortimer* Compl. at ¶39.

15, 16; movants Feihua Xu and Frank Mazur ("Xu and Mazur"), ECF Nos. 17, 18, 19; movant

Eugene Klabak ("Klabak"), ECF Nos. 21, 22, 23, 24; movant Iron Workers Local No. 25

Pension Fund ("IWLPF"), ECF Nos. 26, 28, and 30; and movant Arsany Girgis, ECF Nos. 27,

29, and 31.  Movant Virgili moved to withdraw (ECF No. 37), and that withdrawal was granted

by this Court on May 1, 2019 (*see* ECF No. 42).  Movant Klabak filed a Notice of Non-

Opposition on May 15, 2019 (ECF No. 50).  Movants Xu and Mazur filed a Notice of Non-

Opposition on the same day (ECF No. 51).  Accordingly, only movants Mr. Girgis and IWLPF

effectively remain.

## II.	ARGUMENT

### A.	The PSLRA Framework Dictates the Procedure for Appointing a Lead Plaintiff.

In determining the "most adequate plaintiff" for the purposes of appointing a Lead

Plaintiff, the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the ***person*** or group of persons that –
>
> (aa)	has either filed the complaint ***or made a motion*** in response to a notice . . .;
>
> (bb)	in the determination of the court, has the ***largest financial interest*** in the relief sought by the class; and
>
> (cc)	otherwise ***satisfies the requirements of Rule 23*** of the Federal Rules of Civil Procedure.[6]

The time period in which class members may move to be appointed Lead Plaintiff in this

case expired on April 24, 2019.[7]  Pursuant to the PSLRA's provisions, and within the requisite

time frame after publication of the required notice, Mr. Girgis timely moved this Court to be

---

[6] 15 U.S.C. §78u-4(a)(3)(B)(iii) (emphasis added).

[7] *See* 15 U.S.C. §78u-4(a)(3)(A)-(B).

appointed as Lead Plaintiff on behalf of all members of the class.[8]  In addition, as discussed

below, Mr. Girgis has the largest financial interest in the relief sought by the class and otherwise

satisfies the requirements of Rule 23.

### 1.    Mr. Girgis Has the Largest Financial Interest in the Relief Sought by the Class and Is Presumptively the Most Adequate Lead Plaintiff

The PSLRA creates a rebuttable presumption that the "most adequate plaintiff" is the

plaintiff with the largest financial interest in the relief sought by the class.[9]  The PSLRA does not

identify how the financial interest should be calculated, but courts within this District consider,

among other things, (1) the number of shares that the movant purchased during the putative class

period; (2) the net shares purchased during the class period; (3) the total net funds expended by

the movants during the class period; and (4) the approximate losses suffered by the movants.[10]

Courts generally find the fourth factor to be the "most salient factor in assessing the lead

plaintiff."[11]

During the Class Period, Mr. Girgis expended $1,409,140.88 (with a net amount of

$217,289.85 in the Class Period) purchasing 15,000 DPLO shares on NASDAQ during the Class

Period at artificially inflated prices and suffered losses of $130,006.90, whether calculated on a

---

[8] *See* ECF Nos. 27, 29, and 31.  After filing the motion, and to ensure Mr. Girgis's financial interest was accurately represented, Mr. Girgis promptly submitted a corrected PSLRA certification, which reduced Mr. Girgis's estimated losses.  *See* ECF Nos. 44, 45, 46; *see also Rao v. Quorum Health Corp.*, 221 F. Supp. 3d 987, 989 (M.D. Tenn. 2016) ("courts have allowed lead plaintiff movants to amend their certifications if issues arose.") (collecting cases).  IWLPF also filed a corrected certification after filing its initial motion.  *See* ECF No. 47.

[9] 15 U.S.C. § 78u- 4(a)(3)(B)(iii)(I)(bb).

[10] *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.,* Case No. 11 C 8332, 2012 WL 1339678, at *4 (N.D. Ill. Apr. 18, 2012) (quoting *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)).

[11] *Bristol Cty. Ret. Sys. v. Allscripts Healthcare Sols., Inc.,* Case No. 12 C 3297, 2012 WL 5471110, at *2 (N.D. Ill. Nov. 9, 2012) (citing *Lax*, 1997 WL 461036, at *5).

FIFO or LIFO basis[12] – more than any other Lead Plaintiff movant (see chart below).  Applying the widely employed *LAX* factors[13] demonstrates Mr. Girgis's interest in the relief sought by the class compared to every other movant during the Class Period:

| Movant(s) | Name | Number of Shares Purchased | Number of Net Shares Purchased During the Class Period | Total Net Funds Expended During the Class Period | Approximate Losses Suffered |
|---|---|---|---|---|---|
| **Arsany Girgis** | **Arsany Girgis** | **100,072** | **15,000** | **$217,289.85** | **$130,006.90** |
| Iron Workers Local No. 25 Pension Fund | Iron Workers Local No. 25 Pension Fund | 32,324 | 0 | (220,005.61) | $0.00[14] |
| Fiehua Xu Frank Mazar | *Group* | | | | $26,840.01 |
| | Fiehua Xu | 2,800 | 1,650 | $24,760.00 | $15,158.88 |
| | Frank Mazar | 1,000 | 1,000 | $17,500.00 | $11,681.14 |
| Eugene Klabak | Eugene Klabak | 2,500 | 2,500 | $36,320.00 | $21,772.84 |
| Alexander Virgili | Alexander Virgili | 530 | 530 | $13,788.20 | $10,704.20 |

As reflected above, Mr. Girgis's financial interest dwarfs those of the other movants. Indeed, Mr. Girgis's losses of over $130,000 exceed the combined losses of the other movants, and are nearly five times larger than the next largest movant, Xu and Mazar.  With the largest losses and the largest number of net shares purchased, Mr. Girgis is presumed to have the largest

---

[12] *See* ECF No. 46.

[13] *See Lax*, 1997 WL 461036, at \*5.

[14] As noted above, IWLPF claims a loss of $220,005.61.  *See* ECF Nos. 26-3; 47-1.  However, as explained in more detail below, IWLPF purchased and sold all of its shares weeks to over two months prior to the alleged revelation of the fraud, and therefore could not have suffered losses as a result of the allegations of the Complaint under applicable Supreme Court and Seventh Circuit law.

financial interest and is therefore the presumptive lead plaintiff.[15]  Accordingly, the competing motions should be denied.

### 2. Mr. Girgis Is Both Typical and Adequate Under Fed. R. Civ. P. 23

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  In deciding a motion to serve as Lead Plaintiff, courts generally limit their inquiry to the typicality and adequacy prongs of Rule 23(a).[16]  As demonstrated in his motion and memorandum in support thereof, Mr. Girgis satisfies both the typicality and adequacy requirements of Rule 23, thereby warranting his appointment as Lead Plaintiff.  Mr. Girgis is willing to accept his responsibilities as a class representative and has selected experienced counsel to represent the class.

### 3. The Motions of All Competing Movants Should Be Denied Because They Have Significantly Smaller Financial Interests than Movant or are Otherwise Inadequate or Atypical

As set forth in the chart above, none of the competing movants, either individually or as a group, have a larger financial interest in this litigation than Mr. Girgis.  Although IWLPF claims to have suffered larger losses than Mr. Girgis, IWPLF lacks a financial interest in this case and is otherwise not adequate to represent the Class.  IWLPF's counsel, moreover, suffers from disqualifying conflicts of interest.  The Court should therefore deny all competing motions.

---

[15] 15 U.S.C. § 78u-4(a)(3)(B)(i).

[16] *Johnson v. Tellabs, Inc.*, 214 F.R.D. 225, 228 (N.D. Ill. 2002); *see also In re Motorola Sec. Litig.*, Case No. 03 C 287, 2003 WL 21673928, at *3 (N.D. Ill. July 16, 2003) ("In selecting the lead plaintiff under the PSLRA, however, typicality and adequacy of representation are the only relevant considerations.") (*citing Tellabs, Inc.*, 214 F.R.D. at 228).

### a. IWLPF Has No Financial Interest and Is Subject to Unique Defenses That Render It Inadequate To Serve As Class Representative

IWLPF cannot serve as Lead Plaintiff in this action because it is a complete "in and out" trader, having purchased and sold all of its shares by December 19, 2018, over two months prior to the first revelation of the fraud as alleged in *Riehm* and *Prentice* and weeks before the first revelation alleged in *Mortimer*.[17] Consequently, IWLPF presently has no financial interest in the litigation, and is in any case inadequate and atypical.[18]

To prevail on a Section 10b claim, a securities plaintiff must prove a causal connection between the alleged loss and defendant's fraudulent conduct.[19] In establishing loss causation, a party must typically identify a disclosure of the fraud that causes a drop in the share price.[20] If, however, "the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."[21]

Courts regularly consider loss causation in determining the appointment of a lead plaintiff.[22] Applying *Dura* at the lead plaintiff stage, courts in this District and others have not considered losses suffered by a movant as a result of sales prior to the date of alleged corrective

---

[17] *See* IWLPF trades at ECF No. 26-3.

[18] *See*, *e.g.*, *In re Bally Total Fitness Sec. Litig.*, Lead Case No. 04 C 3530, 2005 WL 627960, at *6 (N.D. Ill. Mar. 15, 2005) (refusing to appoint an "in and out" trader as lead plaintiff where movant sold all shares prior to an alleged corrective disclosure); *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 241 (E.D.N.Y. 2011) (denying in and out trader lead plaintiff status where movant sold all shares prior to the end of the class period and would face unique defenses to standing).

[19] *See Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005).

[20] *Id.*

[21] *Id.* at 342; *see also Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864-65 (7th Cir. 2014) ("[T]hose class members who sold their * * * common stock before * * * the first corrective price decline[ ] cannot be said to have suffered economic loss caused by [the] alleged fraud.").

[22] *See In re Bally Total Fitness Sec. Litig.*, 2005 WL 627960, at *6.

disclosures.[23]  In fact, many courts have found a movant's perceived difficulty in ultimately establishing loss causation a disqualifying factor.[24]

At bottom, these cases confirm IWLPF is not suitable to serve as Lead Plaintiff in this action.  IWLPF sold all of its shares and incurred all of its losses during the Class Period, but before any alleged corrective disclosure.[25]  Accordingly, IWLPF suffered no compensable damages and thus has no financial interest in the pending litigation.[26]

That IWLPF sold its shares after November 6, 2018, when the Company announced its financial results for the third quarter 2018, changes nothing.  While the *Mortimer* complaint references this event and the Company's stock price decline in its substantive allegations,[27] it does not identify the Company's November 8, 2018 disclosure as causally linked to disclosure of the misconduct.[28]

---

[23] *See, e.g., Rossbach v. Vasco Data Services*, Case No. 15-cv-06605, ECF No. 56, slip opp., at p. 3 (N.D. Ill. Dec. 1, 2016), attached hereto as Attachment 1; *Chandler v. Ulta Beauty, Inc.*, Case No. 18-CV-1577, 2018 WL 3141763, at *4 (N.D. Ill. June 26, 2018); *see also Kops v. NVE Corp.*, Lead Case No. 06 CV 574, 2006 WL 2035508, at *5 (D. Minn. July 19, 2006*)* (explaining that a plaintiff who sold all of its shares before the truth was revealed suffered no loss unless there was a partial disclosure before the class period ended); *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F.Supp.2d 993 (N.D. Cal.1999) (holding that it was inappropriate to count losses by "in-and-out" traders despite the argument that partial disclosures may have begun seeping into the market information).

[24] *See, e.g., In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 311 (S.D. Ohio 2005) (denying appointment of a proposed lead plaintiff that would be subject to unique defenses because it retained so few shares at the end of the class period and left the amount of damage incurred an open question).

[25] *See* ECF No. 26-3.

[26] *Porzio v. Overseas Shipholding Group*, Lead Case No. 12 Civ. 7948, 2013 WL 407678, at *3 (S.D.N.Y. Feb. 1, 2013) (denying lead plaintiff status to investor group where most of the stock purchased was sold before corrective disclosure).

[27] *Mortimer*, ECF No. 1 at ¶¶24-27.

[28] *Mortimer*, ECF No. 1 at ¶39 (identifying only January 6, 2019 and February 21, 2019 disclosures as causing investors' losses); *see also In re Comverse Tech., Inc. Sec. Litig.*, Case No.

Even if there had been a partial disclosure of information on November 6, 2018 that could result in recoverable damages, courts defer resolving that question finding it "too complicated" at this early juncture to determine the viability of a potential partial.[29] In the event the Court were to later find the November 6, 2018 announcement of the Company's third quarter 2018 results did not constitute a disclosure of fraud, none of IWLPF's alleged losses would qualify as proximately linked to the alleged fraud in this case, thereby potentially subjecting the entire case to dismissal. Absent class members should not be exposed to such risk.[30]

Finally, even assuming the Court were to uphold the November 6, 2018 news as a partial disclosure, IWLPF is still unable to satisfy the Rule 23 requirements necessary for a lead Plaintiff. IWLPF's damages are premised solely on the losses caused by news released on November 6, 2018. It is undisputed that after November 6, 2018, and before the alleged January 7, 2019 and February 21, 2019 disclosures, IWLPF *sold all* of its Diplomat stock. Thus, Diplomat has no interest in devoting resources to pursuing the much larger claims based upon the January 6, 2019 and February 21, 2019 disclosures. Instead, IWLPF's primary interest will be to show that the unalleged November 6, 2018 disclosure was the main culprit in the corrective

---

06 CV 1825, 2007 WL 680779, at *3 (E.D.N.Y. Mar. 2, 2007) (reversing Magistrate Judge's decision appointing an in-and-out trader as lead plaintiff since movant did not show losses were proximately linked to the misconduct).

[29] *Ruland v. InfoSonics Corp.*, Lead Case No. 06 CV 1231, 2006 WL 3746716, at *5 (S.D. Cal. Oct. 23, 2006); *see also In re Bally Total Fitness*, 2005 WL 627960, at *6 (movant inadequate and atypical because it would need to expend "considerable resources" to establish loss causation).

[30] *Bensley*, 277 F.R.D. at 241 (denying in and out trader lead plaintiff status because even after crediting potential partial disclosure, movant was subject to unique adequacy and typicality defenses that rendered it an inadequate class representative).

9

price drop in the market. Thus, IWLPF has no incentive to fairly and adequately protect the interests of the Class as to the later pled disclosures. In contrast, Mr. Girgis does.[31]

### a. IWLPF's Choice of Counsel Suffers from a Disqualifying Conflict of Interest

In separate litigation involving claims against Defendant Diplomat, IWLPF's chosen counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), currently represents a class of investors alleging claims against Diplomat. On April 22, 2019, just three days before moving for lead plaintiff in the instant action, Robbins Geller filed a Motion for Preliminary Approval of the Settlement in *Zimmerman v. Diplomat Pharmacy et al.*, Case No. 2:16-cv-14005-AC-SDD (E.D. Mich.) (the Earlier Diplomat Action).[32] The settlement in in the Earlier Diplomat Action has yet to be finally approved, and a fairness hearing has not yet been held. Objectors to the settlement may surface and the settlement may not be approved or finalized for years to come.[33]

While currently representing a class of Diplomat investors in the Earlier Diplomat Action, Robbins Geller now seeks to represent the proposed class in the instant litigation that is also adverse to Defendant Diplomat. Simultaneous representation of two different plaintiffs and classes in separate class action litigations that seek recovery from the same defendant has been

---

[31] *See Constr. Workers Pension Tr. Fund v. Navistar Int'l Corp.*, Case No. 13 C 2111, 2013 WL 3934243, at *4-5 (N.D. Ill. July 30, 2013) (denying in and out trader lead plaintiff status since "without net shares purchased" in the class period it would be subject to unique standing defenses and adequacy challenges).

[32] *See* Kathrein Decl. Ex. D (Motion for Preliminary Approval) and Ex. E (Order Preliminarily Approving Settlement and Providing for Notice).

[33] *Id.*

held to give rise to a conflict of interest between counsel and the proposed class, which undermines Robbins Geller's adequacy to serve as lead counsel.[34]

A conflict is particularly present where, as here, both classes of investors would be in competition for recovery from the same defendant. Diplomat's ability to pay judgments to both classes is not guaranteed. For example, as of its latest SEC filing, Diplomat has less than $3 million in cash and short-term assets.[35] Its assets only exceed liability based on goodwill and it is losing money and cash.[36] Diplomat's ability to satisfy a judgment for acts causing over a $560 loss in market capitalization is limited.

In *Cardinal Health*, for instance, the court declined to appoint a firm as class counsel in an ERISA class action due to its simultaneous representation of two different classes seeking recovery from essentially the same defendant, explaining:

> Counsel cannot represent different classes of plaintiffs with conflicting claims who are seeking recovery from a common pool of assets . . . . If the amount sought by each proposed class could exceed the total assets of the Defendants, then "competing claims may impair counsel's ability to vigorously pursue the interest of both classes."[37]

Similarly, in *Krim*, counsel for a proposed class of shareholders was involved in several other suits against the same defendant, including another federal class action in a different district, and a state class action.[38] The court identified several resulting conflicts: counsel's

---

[34] *See*, *e.g.*, *In re Cardinal Health, Inc. ERISA Litig.*, 225 F.R.D. 552, 557 (S.D. Ohio 2005); *Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581, 590 (W.D. Tex.2002); *Kuper v. Quantum Chem. Corp.*, 145 F.R.D. 80, 83 (S.D. Ohio 1992).

[35] *See* Kathrein Decl. Ex. C.

[36] *Id.*

[37] *In re Cardinal,* 225 F.R.D. at 557 (citations omitted).

[38] 210 F.R.D. at 589-90.

11

ability to frankly discuss settlement offers among clients would be limited; there could be pressure to settle all claims even if some clients would be better served by litigation; and counsel might be unable or unwilling to share all relevant information with all clients. The court noted that the defendant had actually attempted to negotiate a settlement of all claims across all cases, and that counsel had not informed all of its clients of its multiple representation. The court denied class certification on these grounds.[39]

Likewise, in *Kuper*, the putative class counsel also represented a different class in another action against the same defendant.[40] The court found that an irreconcilable conflict existed because there was some probability that the defendant would be insolvent. Despite class counsel's argument that the defendant's insolvency was not a certainty and that the conflict "may never materialize," the court nevertheless concluded that the potential "may impair counsel's ability to vigorously pursue the interests" of both client classes, and denied class certification.[41]

In addition to the above cases, several other courts have recognized the potential conflict of interest that lies with representing different plaintiffs and classes against the same defendant.[42] In light of this well-recognized conflict of interest, Robbins Geller is an inadequate lead counsel.

---

[39] *Id.* at 590-91.

[40] 145 F.R.D. at 82.

[41] *Id.* at 83.

[42] *See, e.g., Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667, 679 (N.D. Ohio 1995) ("counsel cannot represent different plaintiffs with conflicting claims against the same defendants without violating the ABA Code of Professional Responsibility") (internal citations omitted); *Fiandaca v. Cunningham*, 827 F.2d 825, 829-830 (1st Cir. 1987) (lawyers' "representation of plaintiffs could not escape the adverse effects of [their] loyalties to the [plaintiff class in a separate class action]"); *Jackshaw Pontiac, Inc. v. Cleveland Press Pub. Co.*, 102 F.R.D. 183, 191-192 (N.D. Ohio 1984) (denying class certification and finding "disturbing" the allegation that proposed class counsel sought to represent a proposed class while representing a class in a separate action, with each class "seeking to tap the same pool of [the defendant's] assets, so that a conflict of interest exists between them"); *Sullivan v. Chase Inv. Servs. of Boston, Inc.*, 79 F.R.D. 246, 258 (N.D. Cal. 1978) ("The

Finally, under Illinois law, lawyers cannot represent two clients that are adverse to each other, even where the adversity arises in two unrelated matters. Unless a lawyer fully discloses the conflict and obtains informed consent from each affected client, the lawyer is prohibited from simultaneous representation of clients with adverse interests.[43] Unlike in individual representation, it is impossible to get a client waiver; notice to the class and an opportunity to respond would be required. Robbins Geller has not shown that it has received a written waiver or any other indication of informed consent from the class in the Earlier Diplomat Action, and it clearly has not obtained a written waiver or informed consent from the class in the instant action.

**B.      The Court Should Approve Mr. Girgis's Choice of Lead Counsel.**

Pursuant to the PSLRA, the lead plaintiff may select and retain lead counsel, subject to this Court's approval.[44] Mr. Girgis has selected Hagens Berman to serve as Lead Counsel for the proposed class. Hagens Berman has previously been appointed as lead counsel in numerous other cases and has a demonstrated ability to work in an efficient fashion in the class's best interests.[45] Hagens Berman is one of the country's leading securities litigation firms, advising clients in both individual and class-action cases, and has served as Lead Counsel or Co-lead Counsel in several high-profile securities class actions.[46] Moreover, Hagens Berman suffers

---

Court's major concern about counsel involves their role in a parallel securities fraud case against [the same defendant] . . . . The [class in the separate action's] interest in collecting some money from [the same defendant] before this class litigation is concluded is obvious, and the diminution of the defendants' assets by payment to the [class in the separate action] would equally obviously affect the interests of this class").

[43] *See* Ill. Sup. Ct. R. Prof. Conduct, R 1.7.

[44] *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).

[45] *See* ECF No. 31-4 (Hagens Berman Firm Résumé, Kathrein Decl., Exhibit D).

[46] *Id.* at pages 31-32.

13

from no disabling conflict of interest. Accordingly, Mr. Girgis respectfully requests that Hagens Berman be appointed lead counsel.[47]

### III. CONCLUSION

For the foregoing reasons, Mr. Girgis respectfully requests that the Court: (1) appoint Mr. Girgis as Lead Plaintiff pursuant to the PSLRA; (2) approve Mr. Girgis's selection of Hagens Berman to serve as Lead Counsel for the putative/proposed Class; and (3) deny all other competing motions.

DATED:  May 15, 2019

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By  */s/ Reed R. Kathrein*
    Reed R. Kathrein

Reed R. Kathrein
Danielle Smith
Lucas E. Gilmore
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
danielles@hbsslaw.com
lucasg@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

*Counsel for Proposed Lead Plaintiff Arsany Girgis*

---

[47] *See also Chandler*, 2018 WL 3141763, at *6 ("Given the extensive experience of [proposed Lead Counsel] in the area of securities law, the Court approves them as counsel in this case.").

14

**CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed a paper copy of the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

*/s/ Reed R. Kathrein*
REED R. KATHREIN