# Exhibit B

**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue
Suite 1558
Los Angeles, CA 90024
Telephone: (818) 532-6499
E-mail: jpafiti@pomlaw.com

**Attorneys for Plaintiff**
*- additional counsel on signature page –*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID PRENTICE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> DIPLOMAT PHARMACY, INC., BRIAN T. GRIFFIN, JEFFREY PARK, and ATUL KAVTHEKAR, <br><br> Defendants | **Case No.:** <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff David Prentice ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through

Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Diplomat Pharmacy, Inc. ("Diplomat") or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired the publicly traded securities of Diplomat between February 26, 2018 through February 21, 2019, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to §§ 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and § 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and § 27 of the Exchange Act.

4.     Venue is proper in this Judicial District pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as Diplomat conducts business and has offices and locations in this Judicial District, and the alleged misstatements entered and subsequent damages took place within this Judicial District.

5.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Diplomat common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

7.     Defendant Diplomat purports to operate as an independent specialty pharmacy in the United States.  The Company is a Michigan corporation with location(s) in Van Nuys, California.  Diplomat securities trade on the New York Stock Exchange (the "NYSE") under the symbol "DPLO."

3

8.     Defendant Brian T. Griffin ("Griffin") has served as the Company's Chief Executive Officer ("CEO") and Chairman of its Board of Directors (the "Board") since June 4, 2018.

9.     Defendant Jeffrey Park ("Park") served as the Company's Interim CEO from January 5, 2018 until May 2018.

10.     Defendant Atul Kavthekar ("Kavthekar") temporarily served as the Company's interim CEO from May 2018 until June 4, 2018.  Keavthekar has served as the Company's Chief Financial Officer ("CFO") and Treasurer since May 1, 2017.

11.     Defendants Griffin, Park and Kavthekar are herein referred to as "Individual Defendants."

12.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(e)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

4

(f)    approved or ratified these statements in violation of the federal securities laws.

13.    The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

14.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

15.    The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

### **SUBSTANTIVE ALLEGATIONS**

#### **Background**

16.    In late 2017, the Company entered the pharmacy benefit management ("PBM") business through its December 2017 acquisition of LDI Holding Company, LLC, doing business as LDI Integrated Pharmacy Services ("LDI Integrated"), and its November 2017 acquisition of Pharmaceutical Technologies, Inc., doing business as National Pharmaceutical Services ("National Pharmaceutical").

17.    A PBM is a third-party administrator of prescription drug programs.

18. Diplomat's PBM segment purports to "provide[] services designed to help [its] customers reduce the cost and manage the complexity of their prescription drug programs."

19. On April 30, 2018, Diplomat launched a new brand, CastiaRx, which united its specialty pharmacy capabilities with its PBM capabilities of LDI Integrated and National Pharmaceutical to serve as a specialty benefit manager.

## **Defendants' False and Misleading Class Period Statements**

20. The Class Period begins on February 26, 2018, when the Company announced its fourth quarter and 2017 year-end financial results. In the announcement, Defendant Park commented that the Company's "strong performance for the fourth quarter and full year reflects the successful execution of our strategy, as well as the actions we took to position Diplomat for long-term growth, including entering the PBM market and bolstering our bench of talent." The announcement stated, in relevant part:

> Jeff Park, Interim CEO, commented "Our strong performance for the fourth quarter and full year reflects the successful execution of our strategy, as well as the actions we took to position Diplomat for long-term growth, including entering the PBM market and bolstering our bench of talent. As evidenced by our 2018 outlook, we are confident in our ability to build on this momentum and capture the growth opportunities ahead. As we execute on our go-to-market strategies across specialty, infusion and PBM, we are focused on continuing to accelerate growth and profitability, and enhance value for our shareholders while keeping our patients at the center of everything that we do."

6

21. On March 1, 2018, the Company filed a Form 10-K for the fiscal year ended December 31, 2017 (the "2017 10-K") with the SEC, which provided the Company's financial results and position. The 2017 10-K was signed by Defendants Park and Kavthekar. The 2017 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Park and Kavthekar attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud. The 2017 10-K stated the Company's internal control over financial reporting was effective as of December 31, 2017.

22. On May 7, 2018, the Company issued a press release announcing its financial results for the first quarter ended March 31, 2018. In the announcement, Defendant Park commented that the Company's "PBM integration has progressed rapidly[.]" The announcement stated, in relevant part:

> Jeff Park, Interim CEO, commented "Diplomat reached a new high mark this quarter in which the incredible team we've built executed on our plan and achieved record revenues. Our first quarter demonstrated strong performance in both our Specialty segment and our PBM segment — relaunched last week under its new brand, CastiaRx. Our PBM integration has progressed rapidly, and as our innovation, growth and profitability initiatives continue to gain momentum, we believe we can drive substantial market share gains over time and generate long term value for all our stakeholders."

23. On August 6, 2018, the Company issued a press release announcing its financial results for the second quarter ended June 30, 2018. In the announcement,

Defendant Griffin commented that the Company's "PBM integration is reaching its conclusion with CastiaRx demonstrating strong results in the quarter, as well as continued momentum on our growth and profitability initiatives across the entire enterprise." The announcement stated, in relevant part:

> Brian Griffin, Chairman and CEO of Diplomat, commented "The Diplomat team delivered another great quarter with record revenue and adjusted EBITDA, driven by continued solid execution of our plan. Our PBM integration is reaching its conclusion with CastiaRx demonstrating strong results in the quarter, as well as continued momentum on our growth and profitability initiatives across the entire enterprise. I am truly excited to join such a highly energized organization and look forward to exploring our growth potential for the benefit of all of our stakeholders."

24. On November 6, 2018, the Company issued a press release announcing its financial results for the third quarter ended September 30, 2018. In the announcement, Defendant Griffin commented that the Company's "solid" results were driven by the Company's ability to "successfully execute on [its] growth plan" and through "strong . . . PBM performance." The announcement stated, in relevant part:

> Brian Griffin, Chairman and CEO of Diplomat, commented "Third quarter results were solid as we continue to successfully execute on our growth plan. Results were driven by strong Specialty segment growth and PBM performance. We recently opened our new state-of-the-art distribution and call center facility in Chandler, Arizona, furthering our efforts to provide the highest quality patient care nationwide. Every day we put our patients first, while at the same time investing in initiatives to drive further growth and productivity."

25.     On January 7, 2019, the Company issued a press release providing updated 2018 guidance and the Company's preliminary outlook for 2019.  The announcement stated, in relevant part:

In 2019, Diplomat expects:

• Revenue in the range of $5.6 billion to $5.8 billion, representing an approximate 3 percent year-over-year increase based on the midpoints of 2018 and 2019 guidance ranges.
• Flat to low-single-digit percent year-over-year adjusted EBITDA growth compared to the mid-point of updated 2018 guidance.
• Achievement of net debt/EBITDA below 3.0x by the end of 2019.

Griffin commented, "We expect 2019 to be characterized by continued growth in specialty and infusion given our payer-focused strategy, and actions we are taking to return our PBM business to growth." In 2019, Diplomat also expects:

• Continued sales growth in specialty pharmacy, supported by further penetration in the payer space, particularly with health plans, as the company leverages coordinated sales and clinical efforts across specialty and infusion.
• Specialty infusion growth should also benefit from growth in key therapeutic areas, additional sales resources added in 2018, further traction from biosimilars, and new limited-distribution drugs, with the potential to expand therapeutic areas and geographically via tuck-in acquisitions.
• A realignment of the PBM to increase win rates and offset lost business. The company expects to significantly expand experienced sales and account management resources to drive business wins and position the business to return to growth in 2020.

26.     The statements referenced in ¶¶ 20-25 above were materially false and/or misleading because they failed to disclose the following adverse facts pertaining to the Company's business and operations, which were known to Defendants or recklessly

9

disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Diplomat had downplayed its success in integrating and growing its PBM business, which included LDI Integrated and National Pharmaceutical, two companies Diplomat had acquired in late 2017; (ii) consequently, Diplomat would need to record a non-cash impairment charge upwards of approximately $630 million relating to its PBM business and these 2017 acquisitions; (iii) due to the foregoing, Diplomat would withdraw its preliminary 2019 full-year outlook issued less than seven weeks prior; and (iv) as a result, Defendants' statements about Diplomat's business, operations and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

### The Truth Begins to Emerge

27. On February 22, 2019, Diplomat filed a Form 8-K with the SEC, announcing it was postponing the release of its Form 10-K for the fiscal year ended December 31, 2018 due to a "recent determination" that it would need to record a non-cash impairment charge upwards of approximately $630 million relating to 2017 acquisitions for its PBM business. Diplomat also disclosed that it was withdrawing its preliminary 2019 full-year outlook provided in January. The release stated, in relevant part:

**Diplomat Delays Release of 2018 Financial Results and Filing of 10-K**
*Company withdraws 2019 full year preliminary outlook provided in January; will provide updated outlook when it reports 2018 results.*

10

**FLINT, Mich. — February 22, 2019 — Diplomat Pharmacy, Inc. (NYSE: DPLO)**, *announced today that it is postponing the release of its fourth-quarter and full-year 2018 financial results and the related conference call and webcast to March 15, 2019.* The Company expects to file its annual report on Form 10-K for the fiscal year ended December 31, 2018 soon afterwards.

*The postponement is due primarily to the recent determination by Diplomat and its auditors that the company will need to record a non-cash impairment charge related to its PBM business. This charge is expected to be equal to a significant portion of the PBM's Goodwill and Definite-lived intangible assets, which total approximately $630 million as of December 31, 2018, prior to impairment charges. The charge relates to the 2017 acquisitions of NPS and LDI and is driven by reduced financial forecasts for the PBM business.* Despite success in improving our customer service performance to industry standard levels, previously disclosed execution challenges experienced in 2018 continue to impact customer perception and have resulted in further customer losses.

The company and its auditors require additional time to finalize the level of impairment, the allocation between Goodwill and Definite-lived intangible assets, tax implications and the total impact on Diplomat's 2018 fourth quarter and full year financial results. Full-year 2018 revenues and Total Adjusted EBITDA are not impacted by any impairment charge and the company's previously communicated outlook of 2018 revenues of $5.5 - $5.6 billion and 2018 EBITDA of $167 - $170 million remain unchanged.

*However, the company has withdrawn its preliminary 2019 full-year outlook provided in January.*

(Emphasis added.)

28.     On this news, shares of Diplomat fell $7.59, or over 56%, to close at $5.87 per share on February 22, 2019.

11

29.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

30.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the publicly traded securities of Diplomat during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

31.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Diplomat securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

32.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

33.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

34.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

Case: 1:19-cv-02633 Document #: 31 Filed: 03/06/19 Page 14 of 22 PageID #:14

- whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

- whether the prices of Diplomat securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

35. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

36. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Diplomat securities are traded in efficient markets;

- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold Diplomat securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

37. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I
**(Violations of Section 10(b) of The Exchange Act and Rule 10b-5
Against All Defendants)**

38. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

15

39.     This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

40.     During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

41.     The Company and the Individual Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Diplomat securities during the Class Period.

42.     The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the

16

Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

43. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

44. As a result of the foregoing, the market price of Diplomat securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of

Diplomat securities during the Class Period in purchasing Diplomat securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

45.     Had Plaintiff and the other members of the Class been aware that the market price of Diplomat securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased Diplomat securities at the artificially inflated prices that they did, or at all.

46.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

47.     By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of Diplomat securities during the Class Period.

**COUNT II**
**(Violations of Section 20(a) of The Exchange Act**
**Against The Individual Defendants)**

48.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

49. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

50. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

51. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Diplomat securities.

19

52.     Each of the Individual Defendants, therefore, acted as a controlling person of the Company.  By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

53.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated:  March 6, 2019

Respectfully submitted,

**POMERANTZ LLP**

By: */s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:  (818) 532-6499
E-mail: jpafiti@pomlaw.com

**POMERANTZ, LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:(212) 661-8665
E-mail: jalieberman@pomlaw.com
E-mail: ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603

21

Telephone:   (312) 377-1181
Facsimile:    (312) 377-1184
E-mail: pdahlstrom@pomlaw.com

**HOLZER & HOLZER, LLC**
Corey D. Holzer
1200 Ashwood Parkway
Suite 410
Atlanta, Georgia 30338
Telephone: (770) 392-0090
Facsimile: (770) 392-0029
Email: cholzer@holzerlaw.com

*Attorneys for Plaintiff*

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

The undersigned declares, as to the claims asserted under the federal securities laws, that:

Plaintiff has reviewed the initial complaint filed in this action.

Plaintiff did not purchase and/or acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action under the federal securities laws.

Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

Plaintiff's transactions in the security that is the subject of this action during the Class Period are as follows - **List additional transactions on Schedule A, if necessary:**

Purchases:

| Ticker of Company | Date(s) Purchased | # Shares Purchased | Cost/Share |
|---|---|---|---|
| DPLO | 7/24/2018 | 200 | 22.00 |

Sales:

| Ticker of Company | Date(s) Sold | # Shares Sold | Proceeds/Share |
|---|---|---|---|
| DPLO | | | |

During the three (3) years prior to the date of this certification, Plaintiff has not sought to serve or served as a class representative in an action filed under the federal securities laws except for the following (if any):

n/a

Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___26___ day of __Februar y__, 2019

(Signature) X_____

DocuSigned by:

*David Prentice*

B819432ED342459...

(Print Name)_____

David Prentice

First                           Last

**Diplomat Pharmacy (DPLO)**                                                      **Prentice, David**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|------|------------------|-----------------------|----------------------|
| 7/24/2018 | Purchase | 200 | $22.0000 |