# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF ILLINOIS

### EASTERN DIVISION

| | |
|---|---|
| CHASE MORTIMER, Individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>v.<br><br>DIPLOMAT PHARMACY, INC., BRIAN T. GRIFFIN, JEFFREY PARK, JOEL SABAN, and ATAL KAVTHEKAR,<br><br>       Defendants. | Civil Action No. 1:19-cv-01735<br><br><u>CLASS ACTION</u><br><br>Judge Virginia M. Kendall |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION OF ARSANY GIRGIS TO CONSOLIDATE RELATED CASES,
APPOINT LEAD PLAINTIFF, APPROVE SELECTION OF LEAD COUNSEL,
AND IN OPPOSITION TO COMPETING MOTIONS**

**TABLE OF CONTENTS**

I.      INTRODUCTION ..............................................................................................................1

II.     ARGUMENT.....................................................................................................................2

    A.      MR. GIRGIS HAS THE LARGEST RECOGNIZABLE FINANCIAL
            INTEREST AT THE LEAD PLAINTIFF STAGE .................................................2

    B.      AT A MINIMUM, IWLPF'S "IN AND OUT" TRADE HISTORY
            NECESSITATES APPOINTMENT OF MR. GIRGIS AS A CO-LEAD
            PLAINTIFF.............................................................................................................5

    C.      IWLPF'S SELECTION OF CONFLICTED COUNSEL ALSO MANDATES
            APPOINTMENT OF MR. GIRGIS AS A CO-LEAD PLAINTIFF .......................7

    D.      MR. GIRGIS SATISFIES THE RULE 23 REQUIREMENTS ..............................8

    E.      THE DEFECTS IN MR. GIRGIS'S INITIAL CERTIFICATIONS ARE NO
            MORE DISQUALIFYING THAN IWLPF'S FAILURE TO FILE A
            CERTIFICATION EVIDENCING ITS TRADES .................................................10

III.    CONCLUSION................................................................................................................13

## I.     INTRODUCTION

As established in his opposition (ECF No. 53), Mr. Girgis has the largest financial interest among all movants under nearly every one of the *Lax* factors, including by suffering the largest loss of over $130,000.[1]  Mr. Girgis has also demonstrated typicality and adequacy. IWLPF's contentions that Mr. Girgis's correction of his initial certification prove otherwise is like the pot calling the kettle black.  IWLPF similarly filed a corrected certification after failing to attach its Diplomat transactions to its initial certification.  Equally unavailing is IWLPF's claim that its institutional investor status makes it a "more adequate lead plaintiff."  The law rejects such "beauty contest" arguments.

In stark contrast to Mr. Girgis's showing, IWLPF has demonstrated no recognizable financial interest in this litigation.  Specifically, IWLPF sold all of its Diplomat shares by December 19, 2018, well before the alleged curative disclosures "beginning on January 6, 2019 through February 21, 2019, when the Defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the price of Diplomat securities fell precipitously, as the prior artificial inflation came out of the price over time." *See Mortimer* Complaint Loss Causation Section ECF No. 1 ¶ 39.  Because the complaints do not allege an earlier corrective disclosure, IWLPF has failed to carry its evidentiary burden to establish any earlier unpled curative disclosures.  Consequently, under IWLPF's own cited authorities, the Court should not consider IWLPF's claimed losses in determining its financial interest.

If that was not enough, through IWLPF's "in-and-out" trading and selection of Robbins Geller as counsel – a firm that is currently representing a different class of investors in an earlier-

---

[1] All defined terms in Mr. Girgis's Opposition ECF No. 53 shall have the same meaning herein.

filed securities action against Diplomat – IWLPF has proven itself atypical and riddled with fundamental conflicts.

On this record, the Court should appoint Mr. Girgis as Lead Plaintiff and approve its selection of Hagens Berman as Lead Counsel. Alternatively, in light of IWLPF's conflicts, the Court should appoint Mr. Girgis as co-Lead Plaintiff to ensure absent class members' claims and interests are adequately protected.

## II. ARGUMENT

### A. MR. GIRGIS HAS THE LARGEST RECOGNIZABLE FINANCIAL INTEREST AT THE LEAD PLAINTIFF STAGE

IWLPF's claim to have suffered Class Period losses of $220,000 is not based on any allegation in any of the three complaints in this consolidated action. As pointed out in Mr. Girgis's opposition, the *Riehm* and *Prentice* complaints each allege that the disclosures that caused class members' losses occurred on February 22, 2019 (and not before), when the Company announced its inability to release its 2018 Annual Report *due to a massive $630 million impairment charge relating to its PBM business*, which in turn caused Diplomat shares to fall over 56%, wiping out over $560 million in market capitalization (ECF No. 53 at 2; ECF No. 53-3 ¶ 27 and ECF No. 53-4 ¶ 27). The *Mortimer* complaint alleges an additional corrective disclosure on January 7, 2019, when the Company released disappointing news concerning its PBM business causing Diplomat shares to drop 10% and erasing over $100 million in market capitalization (ECF No. 53 at 2; ECF No. 1 ¶39).

Here, IWLPF's proffered trade records show that it disposed of all of its Diplomat shares by December 19, 2018, weeks if not months before the disclosures alleged to have revealed the fraud in any complaint. ECF No. 44. Thus, under well-established Seventh Circuit and Supreme

Court authority, IWLPF cannot establish the essential element of loss causation.[2]  Consequently, IWLPF's claimed losses must be excluded in calculating its financial interest.  *See, e.g., Chandler v. Ulta Beauty, Inc.*, No. 18-CV-1577, 2018 WL 3141763, at *4 (N.D. Ill. June 26, 2018) (Dow, J.) (excluding lead plaintiff movant's losses that were incurred prior to the alleged corrective disclosure dates); *Rossbach v. Vasco Data Services*, No. 15-cv-06605, ECF No. 56, slip opp., at p. 3 (N.D. Ill. Dec. 1, 2016) (Wood, J.), attached as Attachment 1 to ECF No. 52 (same).[3]

Indeed, IWLPF's own authorities confirm its lack of a cognizable financial interest at the lead plaintiff stage.  *See* ECF No. 52 at 3, citing *In re Bally Total Fitness Sec. Litig.*, 2005 WL 627960 (N.D. Ill. Mar. 15, 2005) (Grady, J.).  In *Bally*, Judge Grady refused to appoint as lead plaintiff a complete "in and out" trader like IWLPF.  Although the trader had purportedly suffered the largest loss among all competing movants, the trader "had purchased and then sold all of its stock during the class period, many months before the fraud was first revealed." *Id.* at *6.

Any claim by IWLPF that the Company's November 6, 2018 statements constitute a partial disclosure should not be credited.  Preliminarily, neither the *Riehm*, *Prentice*, nor *Mortimer* complaint alleges the November 6, 2018 disclosures as proximately causing class

---

[2] *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864-65 (7th Cir. 2014) ("[T]hose class members who sold their * * * common stock before * * * the first corrective price decline[ ] cannot be said to have suffered economic loss caused by [the] alleged fraud."); *see also Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("[If] the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.").

[3] *See also Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, No. 14 Civ. 2814 (ER), 2015 WL 1499657, at *6 (S.D.N.Y. Mar. 27, 2015); *Pio v. Gen. Motors Co.*, No. CIV. 14-11191, 2014 WL 5421230, at *3 (E.D. Mich. Oct. 24, 2014); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG)(RER), 2007 WL 680779, at *5 (E.D.N.Y. Mar. 2, 2007).

members' damages; instead, the complaints generally allege the November 6, 2018 disclosures as false statements. As evinced in *Bally*, courts at the lead plaintiff stage regularly refuse to consider unalleged partial disclosures, finding it to be "too complicated at [the lead plaintiff appointment] stage of the litigation to make findings of fact regarding any potential partial disclosures and the effect, if any, these disclosures had on the price of the stock." *See Ruland v. InfoSonics Corp.*, Lead Case No. 06CV1231, 2006 WL 3746716, at *5 (S.D. Cal. Oct. 23, 2006); *see also Bally*, 2005 WL 627960, at *6 (declining to evaluate the merits of in-and-out trader's claim that it would be able to establish loss causation noting it would need to expend "considerable resources" to show that).

More fundamentally, IWLPF has not met its burden of showing the November 6, 2018 news constitutes a legitimate and plausible partial disclosure. Before crediting an unpled partial disclosure at lead plaintiff stage, courts require the movant to offer "facts alleged in the complaint and declarations" supporting the alleged theory of recovery. *See Galmi v. Teva Pharm. Indus. Ltd.*, 302 F. Supp. 3d 485, 502 (D. Conn. 2017). Here, IWLPF provides neither citations to the complaint, publicly available documents, nor a sworn affidavit in support of this unpled partial disclosure. Accordingly, IWLPF cannot rely on the November 6, 2018 news to establish its financial interest. *See, e.g., Id.* at 504 (rejecting complete in and out trader's lead plaintiff application as it had failed to offer evidence establishing the legitimacy and plausibility of the unpled partial disclosures purportedly causing its losses); *Maliarov v. Eros Int'l PLC*, No. 15-cv-8956 (AJN), 2016 WL 1367246, at *5 (S.D.N.Y. Apr. 5, 2016) (refusing to credit unpled partial disclosure because movant did not "identify any particular communication partially disclosing allegations of fraud prior to [the corrective disclosure date], but instead relie[d] on

4

unsupported allegations that those with 'early access to the [financial statement]' leaked such information in an unspecified manner.").[4]

Any reliance by IWLPF on *In re Gentiva Securities Litigation*, 281 F.R.D. 108 (E.D.N.Y. 2012), would be misplaced. There, the court permitted a plaintiff to serve as lead plaintiff even though it sold "most, if not all," of its shares before the full extent of the alleged fraud had been disclosed. *Id.* at 115. The court acknowledged the danger of appointing a plaintiff that has sold a majority of his stock prior to the corrective disclosure alleged in the complaint. Nevertheless, the court appointed the movant lead plaintiff since the movant had identified "several plausible and legitimate partial disclosures" that had been alleged and supported the plaintiff's claimed losses.

As noted above, here in contrast to the movant in *Gentiva*, IWLPF has made no such showing. Accordingly, Mr. Girgis has suffered a greater recoverable loss than IWLPF.

**B.      AT A MINIMUM, IWLPF'S "IN AND OUT" TRADE HISTORY NECESSITATES APPOINTMENT OF MR. GIRGIS AS A CO-LEAD PLAINTIFF**

Even assuming the Court were to find IWLPF as having the largest financial interest in this litigation, Mr. Girgis has offered substantial evidence demonstrating that IWLPF's trade history subjects it to unique typicality and adequacy defenses, thereby necessitating the appointment of Mr. Girgis as a co-lead plaintiff to protect absent class members against IWLPF's fundamental conflicts. *See, e.g., Freudenberg v. E*Trade Fin. Corp.*, No. 07 Civ. 8538, 2008 WL 2876373, at *21 (S.D.N.Y. July 16, 2008) (appointing individual investor as co-

---

[4] *See also In re McKesson HBOC, Inc. Sec. Litig.*, 97 F.Supp.2d 993 (N.D. Cal. 1999) (refusing to consider losses by "in-and-out" traders since movant failed to establish that unpled partial disclosures).

lead plaintiff to protect class on possibility that conflicts between class and movant with largest financial interest arise).

First, given IWLPF's sale of its stock prior to any alleged disclosure, IWLPF will face unique challenges to both its individual and class representative standing. The considerable resources IWLPF will need to expend to show its alleged losses qualify as proximately linked to the alleged fraud in this case will become the focus of the litigation to the detriment of absent class members. Moreover, should IWLPF fail to establish standing, absent class members' claims may be dismissed. Accordingly, IWLPF cannot establish typicality.[5]

Second, even if IWLPF were to establish the November 8, 2018 news as a viable partial disclosure, given its unique transactional history, IWLPF's claims and interests are in conflict with those of the class. Since IWLPF sold all of its shares before the alleged January 7, 2019 and February 21, 2019 disclosures, IWLPF has no interest in devoting resources to pursuing these core alleged claims on behalf of absent class members. Instead, IWLPF has no economic interest in showing that the fraud continued past its December sales. Thus, IWLPF has no incentive to fairly and adequately protect the interests of the Class as to the later pled disclosures. See *Constr. Workers Pension Tr. Fund v. Navistar Int'l Corp.,* No. 13 C 2111, 2013 WL 3934243, at *4-5 (N.D. Ill. July 30, 2013) (denying in and out trader lead plaintiff status since "without net shares purchased" in the class period it would be subject to unique standing defenses and adequacy challenges.

---

[5] *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 241 (E.D.N.Y. 2011) (movant "failed to demonstrate that it will be an adequate lead plaintiff because it was a total in-and-out trader and may be unable to demonstrate loss causation."); *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 311 (S.D. Ohio 2005) (denying appointment of a proposed lead plaintiff that would be subject to unique defenses because it retained so few shares at the end of the class period and left the amount of damage incurred an open question).

6

By contrast, Mr. Girgis purchased Diplomat shares at prices artificially inflated by Defendants' fraud and held these share through both the January 7, 2019 and February 22, 2019 disclosures. ECF Nos. 45, 46. Thus, Mr. Girgis's claims are typical of those of the class, and Mr. Girgis has a substantial interest in successfully prosecuting these claims. Accordingly, in the event the Court were inclined to appoint IWLPF, the Court should appoint Mr. Girgis as Co-Lead Plaintiff to ensure all losses alleged by members of the class are adequately advanced.[6]

## C. IWLPF'S SELECTION OF CONFLICTED COUNSEL ALSO MANDATES APPOINTMENT OF MR. GIRGIS AS A CO-LEAD PLAINTIFF

IWLPF's chosen counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), provides a separate and independent reason for appointing Mr. Girgis as co-Lead Plaintiff. As detailed in Mr. Girgis's opposition, Robbins Geller currently represents a different class of investors alleging securities fraud claims against Diplomat in earlier filed litigation entitled *Zimmerman v. Diplomat Pharmacy et al.*, Case No. 2:16-cv-14005-AC-SDD (E.D. Mich.) (the "Earlier Diplomat Action"). As such, the class here and the class in the Earlier Diplomat Action stand in competition for recovery from the same defendant.

This tension is particularly acute as Diplomat's ability to pay judgments to both classes is by no means guaranteed. For example, as of its latest SEC filing, Diplomat has less than $3 million in cash and short-term assets,[7] its assets only exceed liability based on goodwill, and its cash and cash equivalents are dwindling.[8] Thus, in light of the risk posed by the Earlier

---

[6] *See, e.g.*, *In re BP, PLC Sec. Litig.*, 758 F.Supp.2d 428, 437-38 (S.D. Tex. 2010) (appointing co-lead plaintiffs because movant's trade history risked hurting the interests of the broader class).

[7] *See* ECF No. 53-5.

[8] *Id.*

7

Diplomat Action, Diplomat's financial wherewithal to satisfy a judgment for acts causing over a $560 million loss in market capitalization remains in serious question.

Under similar circumstances, several courts have implemented the prophylactic measure of appointing a co-lead plaintiff and co-lead counsel. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 421 (S.D.N.Y. 2004) (appointment of co-lead plaintiffs). These courts' rationales apply with equal force here, as appointing Mr. Girgis as co-lead plaintiff would ensure that the class's representatives and their counsel would vigorously pursue its claims and obtain the most favorable recovery for the class. *See Simmons v. Spencer*, No. 13 Civ. 8216(RWS), 2014 WL 1678987, at *6 (S.D.N.Y. Apr. 25, 2014) (appointing co-lead plaintiffs "given the closeness in losses alleged between the two parties, as well as the potential conflict arising involving losses in connection with intra-Class Period sales").

## D.    MR. GIRGIS SATISFIES THE RULE 23 REQUIREMENTS

IWLPF's claim that it is a "more adequate" lead plaintiff than Mr. Girgis given its institutional investor status should be given no credence. Courts consistently reject invitations to compare movants on bases other than their financial stake, reasoning that the lead plaintiff process "is not a beauty contest."[9] In any event, "a plaintiff's mere status as an institutional investor does not provide any presumption that the institutional plaintiff is a more adequate lead

---

[9] *See In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) (instructing district to follow "straightforward application of the statutory scheme").

plaintiff than an individual investor with a larger financial interest."[10] Accordingly, IWLPF's status as an institutional investor cannot trump the express language of the PSLRA.[11]

Similarly, IWLPF's charge that Mr. Girgis is an "unknown individual" is baseless. In addition to the facts set forth in his certification, information about Mr. Girgis's adequacy to serve as lead plaintiff is readily available through a variety of public sources, including the internet. If IWLPF thought there was any inadequacy, the burden is on IWLPF to show it.[12] The truth of the matter is no such adverse information exists. Indeed, only a cursory search of Mr. Girgis's name and hometown (set forth in his certification, ECF No. 45 at 2) reveals that he is an Oviedo, Florida-based registered pharmacy technician.[13]

Further, IWLPF's complaint that Mr. Girgis's sworn certification failed to provide sufficient factual detail about himself is disingenuous. Mr. Girgis has attested to, among other things, his review of the complaint, that he did not acquire the securities at issue for an improper purpose, his willingness to serve as a representative party on behalf of the class, including providing testimony at deposition and trial if necessary, and that he will not accept any payment

---

[10] *See In re Groupon, Inc. Sec. Litig.*, No. 12 C 2450, 2012 WL 3779311, at *5 (N.D. Ill. Aug. 28, 2012) (quoting *Mohanty v. BigBand Networks, Inc.*, No. C 07-5101 SBA, 2008 WL 426250, at *6 (N.D. Cal. Feb.14, 2008) and collecting other cases with same holding).

[11] *See Ulta Beauty, Inc.*, 2018 WL 3141763, at *6 (rejecting pension fund's argument that the court should chose it to serve as lead plaintiff over individual investor with largest financial interest in the relief sought simply because fund was an institutional investor).

[12] *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *In re Groupon, Inc. Sec. Litig.*, 2012 WL 3779311, at *4 (institutional investor failed to meet burden of showing individual investor was an inadequate lead plaintiff).

[13] *See* Florida Medical Professional Search, https://www.health-care-professionals-florida.com/healthcity_view.php?editid1=1223557-ARSANY-GIRGIS-OVIEDO-FL (last visited May 22, 2019).

9

for serving as a representative party beyond his pro rata share of any recovery.[14] This is precisely the same information IWLPF has attested to – no more no less.[15] IWLPF cannot hold Mr. Girgis to a more demanding standard then it sets for itself.

**E.  THE DEFECTS IN MR. GIRGIS'S INITIAL CERTIFICATIONS ARE NO MORE DISQUALIFYING THAN IWLPF'S FAILURE TO FILE A CERTIFICATION EVIDENCING ITS TRADES**

Unable to present a genuine challenge to Mr. Girgis's typicality and adequacy, IWLPF devotes much of its opposition to criticizing Mr. Girgis for correcting his original certification. Significantly, IWLPF omits that IWLPF too corrected its initial certification, wherein IWLPF failed to attach its Diplomat share transactions during the Class Period.

IWLPF's charge that Mr. Girgis intentionally omitted transactions on his initial certification to game the lead plaintiff process is unfounded. The errors were clearly inadvertent and once discovered were promptly corrected. In addition, the corrected certification resulted in Mr. Girgis' claiming *fewer* investment losses during the Class Period than originally claimed. *Cf*. ECF Nos. 31-1, 31-2 and ECF Nos. 45, 46. Moreover, IWLPF fails to articulate – because it cannot – how Mr. Girgis's correction prejudiced IWLPF or any of the other applicants in opposing Mr. Girgis's motion. Under similar circumstances, where the original motion was timely filed, courts have disregarded unintentional errors made in their initial certifications and permitted movants to file corrected certifications after the 60-day deadline.[16]

---

[14] *See* ECF No. 45.

[15] *See* ECF No. 26-2.

[16] *See, e.g.*, *Rao v. Quorum Health Corp.*, 221 F. Supp. 3d 987, 988 (M.D. Tenn. 2016) (collecting cases); *Roby v. Ocean Power Techs., Inc.*, No. 14-cv-3799(FLW)(LHG), 2015 WL 1334320, at *9 (D.N.J. Mar. 17, 2015) ("Courts have found supplemental certifications sufficient to remedy deficiencies in the PSLRA certification.") (collecting cases); *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 539 (S.D.N.Y. 2015) ("The failure to correct obvious or inconsequential clerical errors, like the ones at issue, simply is not the type of adequacy issue that

None of IWLPF's authorities holds that a movant's correction of trade records in its certification renders the motion untimely.[17]  Likewise, IWLPF fails to cite any case where errors in a movant's trade records were the sole factor in rendering the movant inadequate.  Instead, IWLPF's authorities generally involve movants that were denied class certification or lead plaintiff status (i) for a multitude of reasons, (ii) situations where an incorrect certification was part of a set of other more egregious deficiencies, or (iii) where the trade discrepancies were discovered through later testimony provided at advanced stages in the litigation.  These cases stand in stark contrast to the circumstances here, where Mr. Girgis promptly and proactively corrected his certification.

For example, in *Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 316 (E.D. Va. 2007), it was the "plaintiff's lack of knowledge and control of the litigation," as shown through his deposition testimony, that proved fatal to his motion for class certification.  It was only "***in conjunction with his other deficiencies***" that the court considered plaintiff's erroneous certification.[18]

---

would divert the fact finders' attention from the merits and thus infect the claims of the class as a whole."); *Niederklein v. PCS EdventuresA.com, Inc.*, No. 1:10-cv-00479-EJL-CWD, 2011 WL 759553, at *11 (D. Idaho Feb. 24, 2011) ("inadvertent mistakes made in a sworn certification do not strike at the heart of Rule 23's adequacy requirement").

[17] *See e.g., In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818-19 (N.D. Ohio 1999) (movant filed a separate related action after the PSLRA deadline, expanding the class period to recognize a six-fold increase in losses); *Singer v. Nicor, Inc.*, No. 02 C 5168, 2002 WL 31356419, at *2 (N.D. Ill. Oct. 17, 2002) (court recognized the original claimed losses of two movants, rather than their amended motions filed after the PSLRA deadline, which claimed higher losses); *Nasin v. Hongli Clean Energy Techs. Corp.*, No. Civ. No. 2:17-3244 (WJM), 2017 WL 5598214, at *3 (D.N.J. Nov. 21, 2017) (court declined to recognize movants' unsworn PSLRA declarations that lacked the required "under penalty of perjury" language, and "[o]nly after having the benefit of the [opposing movants'] opposition papers, did the [movants] file amended, compliant certifications.").

[18] *Shiring,* 244 F.R.D. at 317 (emphasis added).

11

Moreover, the case had progressed all the way to the class certification stage, yet the lead plaintiff had made no effort to rectify the discrepancies in his certification.

Similarly, in *Garbowski v. Tokai Pharm., Inc.*, 302 F. Supp. 3d 441, 453 (D. Mass. 2018), the court declined to appoint a movant as lead plaintiff because his testimony demonstrated that he had clearly failed to select competent class counsel, negotiate the retainer agreement, and to actively supervise the litigation and his counsel. The court pointed to one concern, among several others, that the movant's certification stated that "Plaintiff has reviewed the complaint and authorized its filing" – a statement that was later directly contradicted by the movant's deposition testimony.[19]

As with *Shiring* and *Garbowski*, none of the other cases cited by IWLPF are apposite.[20] Instead, there is an overwhelming weight of authority rejecting similar attacks on a movant's correction of its initial certification.[21]

---

[19] *Garbowski*, 302 F. Supp. at 455.

[20] *See, e.g.*, *In re Enzymotec Ltd. Sec. Litig.*, No. Civ. A. 14-5556, 2015 WL 918535, at *3 (D.N.J. Mar. 3, 2015) (certification's signatory did not identify himself or provide any indication that he was authorized to sign the certification on the movant company's behalf); *Steamfitters Local 449 Pension Fund v. Cent. European Distrib. Corp.,* No. CIV.A. 11-6247 JBS, 2012 WL 3638629, at *13 (D.N.J. Aug. 22, 2012) (certification was invalid because it was signed on behalf of a group of investment entities, rather than the entities' wholly owned subsidiaries which were the true parties with standing); *Bhojwani v. Pistiolis*, No. 06 CIV. 13761(CM)(NKF), 2007 WL 9228588, at *3 (S.D.N.Y. July 31, 2007) (lead plaintiff group rejected as being a "'lawyer driven' plaintiff" in addition to "additional discrepancies" in trade records being found by competing movant even after a corrected motion was filed); *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 144 (S.D.N.Y. 2007) (complaint and lead plaintiff motion were not filed by the entity which actually purchased shares during the class period); *In re Safeguard Sci.*, 216 F.R.D. 577, 582 (E.D. Pa. 2003) (class certification denied due to a myriad of concerns, including that proposed class representative was subject to unique defenses regarding reliance and materiality).

[21] *See e.g., In re Organogenesis Sec. Litig.*, 241 F.R.D. 397, 407 (D. Mass. 2007) (subsequently corrected certification does not "raise an inference of a lack of credibility"); *Brday v. Frontier Comm. Corp.*, No. 3:17-CV-1617 (VAB), 2018 WL 525485, at *10 (D. Conn. Jan. 18, 2018) ("the Court does not find that this corrected certification constitutes 'exacting proof' of inadequacy") (*citing Hansen v. Ferrellgas Partners, L.P.*, No. 16-cv-7840 (RJS), 2017 WL 281742, at *5

Finally, Mr. Girgis's post-Class Period purchases of Diplomat shares are irrelevant.[22] "The fact that [Mr. Girgis] attempted to recoup [his] losses by continuing to purchase [Diplomat] stock after the disclosure of the alleged misrepresentations has no bearing on whether or not [he] relied on the integrity of the market during the class period."[23] For this reason, courts widely regard *In re Safeguard Scientifics*, 216 F.R.D. at 582, cited by IWLPF, as expressing a minority and outdated view.[24]

## III.    CONCLUSION

For the reasons set forth herein and in Mr. Girgis's opening and opposition papers, Mr. Girgis's motion should be granted in its entirety and the competing lead plaintiff motion should

---

(S.D.N.Y. Jan. 19, 2017) ("the Court would be extremely reluctant to impose a rule that would force lead plaintiff movants to choose between leaving mistakes in their filings uncorrected or correcting the mistake and being summarily disqualified.").

[22] *See Rosen v. Textron, Inc.*, 369 F. Supp. 2d 204, 209 (D.R.I. 2005) ("[T]he fact that Bear Stearns concluded, for example, that Textron stock was a good buy at $32.77, following full disclosure, is essentially irrelevant to the question whether it relied on misleading information in buying Textron stock at, for example, $50.51 during the Class Period."); *In re Rent-Way Sec. Litig.*, 218 F.R.D. 101, 114 (W.D. PA. 2003) ("[T]hese purchases, having occurred after the putative class period, are irrelevant to the instant litigation."); *In re Nortel Networks Corp. Sec. Litig.*, No. 01 Civ. 1855(RMB), 2003 WL 22077464, at *3 n. 4 (S.D.N.Y. Sept. 8, 2003) (rejecting argument that plaintiff's purchase of defendant's stock "well after the alleged 'fraud' was 'exposed'" makes plaintiff atypical of class); *In re Bally Mfg. Sec. Corp. Litig.*, 141 F.R.D. 262, 269 n. 7 (N.D. Ill. 1992) ("Bally's contention that plaintiff Karinsky's claims are atypical because he purchased stock after the proposed class period is unavailing.") (emphasis in original).

[23] *See In re Frontier Ins. Group, Inc. Sec. Litig.*, 172 F.R.D. 31, 42 (E.D.N.Y.1997) (holding that plaintiff's purchase of shares after filing the lawsuit insufficient to show plaintiff relied on sources other than the integrity of the market or otherwise rebut the presumption of reliance).

[24] *See Rosen v. Textron, Inc.*, 369 F. Supp. 2d at 209*; In re Computer Sci. Corp. Sec. Litig.*, 288 F.R.D. 112, 124 (E.D. Va. 2012) (observing that "the substantial majority" cases hold that post-disclosure purchases do not disqualify a potential class representative); *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1263 (S.D. Cal. 2010) ("The weight of authority recognizes that an investment strategy, such as averaging down or Sitton's hunt for bargains, does not rebut the fraud on the market presumption as a matter of law.").

be denied.  Alternatively, the Court should appoint Mr. Girgis co-Lead Plaintiff and his counsel,

Hagens Berman Sobol Shapiro LLP, co-Lead Counsel for the Class.

DATED:  May 22, 2019

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By */s/ Reed R. Kathrein*
    Reed R. Kathrein
Reed R. Kathrein
Danielle Smith
Lucas E. Gilmore
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
danielles@hbsslaw.com
lucasg@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

*Counsel for Proposed Lead Plaintiff Arsany Girgis*

14

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed a paper copy of the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

*/s/ Reed R. Kathrein*
REED R. KATHREIN

15