UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| CHASE MORTIMER, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Case No. 1:19-cv-01735 **(Consolidated)** |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) | Honorable Virginia M. Kendall |
| DIPLOMAT PHARMACY, INC., et al., | ) ) ) | |
| Defendants. | ) ) ) | |

THE PENSION FUND'S REPLY IN FURTHER SUPPORT OF MOTION FOR
APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL

4822-8012-9943.v2

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ......................................................................................................1

II. ARGUMENT ...........................................................................................................3

    A. The Presumption in the Pension Fund's Favor Has Not Been Rebutted .................3

        1. The Court Should Decline Mr. Girgis' Invitation to Shrink the Pension Fund's Loss By Switching Methods *and* Ignoring an Alleged Partial Disclosure ..........................................................................3

        2. Mr. Girgis' Other Loss Causation Arguments Are Equally Flawed............8

    B. The Pension Fund's Choice of Counsel Is Not Subject to Any Conflict of Interest.........................................................................................................11

III. CONCLUSION......................................................................................................15

4822-8012-9943.v2

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bang v. Acura Pharm., Inc.*,
2011 WL 91099 (N.D. Ill. Jan. 11, 2011) ...............................................................................3, 4

*Bell v. Disner*,
2018 WL 296035 (W.D.N.C. Jan. 4, 2018) ................................................................................12

*Bell v. Brockett*,
922 F.3d 502 (4th Cir. 2019) ....................................................................................................12

*Bensley v. FalconStor Software, Inc.*,
277 F.R.D. 231 (E.D.N.Y. 2011) ...........................................................................................9, 10

*Bodri v. GoPro, Inc.*,
2016 WL 1718217 (N.D. Cal. Apr. 28, 2016) .............................................................................5

*Chahal v. Credit Suisse Grp. AG*,
2018 WL 3093965 (S.D.N.Y. June 21, 2018) .........................................................................2, 11

*Christian v. BT Grp. PLC*,
2017 WL 3705804 (D.N.J. Aug. 28, 2017) ................................................................................11

*Constance Sczesny Tr. v. KPMG LLP*,
223 F.R.D. 319 (S.D.N.Y. 2004) ..................................................................................................3

*Constr. Workers Pension Tr. Fund v. Navistar Int'l Corp.*,
2013 WL 3934243 (N.D. Ill. July 30, 2013) ............................................................................5, 9

*Cook v. Allergn PLC*,
2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019) .............................................................................5

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005) ..................................................................................................................5, 6

*Ellenburg v. JA Solar Holdings Co. Ltd.*,
262 F.R.D. 262 (S.D.N.Y. 2009) ................................................................................................11

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) ................................................................................................12

*Freudenberg v. E*Trade Fin. Corp.*,
2008 WL 2876373 (S.D.N.Y. July 17, 2008) ............................................................................11

*Hevesi v. Citigroup, Inc.*,
366 F.3d 70 (2d Cir. 2004) .........................................................................................................10

- ii -

**Page**

*In re Bally Total Fitness Sec. Litig.*,
2005 WL 627960 (N.D. Ill. Mar. 15, 2005)................................................................9

*In re BearingPoint, Inc. Sec. Litig.*,
232 F.R.D. 534 (E.D. Va. 2006) ....................................................................6

*In re Cardinal Health, Inc. ERISA Litig.*,
225 F.R.D. 552 (S.D. Ohio 2005)...............................................................13

*In re Fannie Mae Sec. Litig.*,
355 F. Supp. 2d 261 (D.D.C. 2005) .............................................................11

*In re Gentiva Sec. Litig.*,
281 F.R.D. 108 (E.D.N.Y. 2012) ...................................................................6

*In re Hollinger Int'l, Inc. Sec. Litig.*,
2006 WL 1806382 (N.D. Ill. June 28, 2006) .............................................11

*In re Nat'l Football League Players Concussion Injury Litig.*,
821 F.3d 410 (3d Cir. 2016)........................................................................12

*In re SemGroup Energy Partners, L.P., Sec. Litig.*,
2008 WL 4826318 (N.D. Okla. Oct. 27, 2008) ...........................................3

*In re VimpelCom, Ltd.*,
2016 WL 5390902 (S.D.N.Y. Sept. 26, 2016)..............................................8

*In re WorldCom, Inc. Sec. Litig.*,
219 F.R.D. 267 (S.D.N.Y. 2003) .................................................................11

*Juliar v. Sunopta Inc.*,
2009 WL 1955237 (S.D.N.Y. Jan. 30, 2009) ....................................6, 8, 10

*Krim v. pcOrder.com, Inc.*,
210 F.R.D. 581 (W.D. Tex. 2002) .........................................................13, 14

*Kuper v. Quantum Chem. Corp.*,
145 F.R.D. 80 (S.D. Ohio 1992).................................................................13

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
2016 WL 10571774 (N.D. Ill. Nov. 10, 2016) .............................................6

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) ....................................................................14

4822-8012-9943.v2

**Page**

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
  256 F.R.D. 586 (N.D. Ill. 2009)...................................................................................9

*Marcus v. J.C. Penney Co., Inc.*,
  2014 WL 11394911 (E.D. Tex. Feb. 28, 2014) ........................................................9

*Mehl v. Canadian Pac. Ry. Ltd.*,
  227 F.R.D. 505 (D.N.D. 2005) .................................................................................12

*Montoya v. Mamma.com Inc.*,
  2005 WL 1278097 (S.D.N.Y. May 31, 2005) .........................................................11

*Murphy v. JBS S.A.*,
  2017 WL 4480751 (E.D.N.Y. Oct. 6, 2017)..............................................................3

*Norfolk Cty. Ret. Sys. v. Ustian*,
  2009 WL 2386156 (N.D. Ill. July 28, 2009).............................................................6

*Nowak v. Ford Motor Co.*,
  240 F.R.D. 355 (E.D. Mich. 2006) ..........................................................................13

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*,
  63 F. Supp. 3d 394 (D. Del. 2014)............................................................................3

*Ray v. Citigroup Global Mkts., Inc.*,
  482 F.3d 991 (7th Cir. 2007) ....................................................................................6

*Robb v. Fitbit Inc.*,
  2016 WL 2654351 (N.D. Cal. May 10, 2016) ..........................................................5

*Ruland v. InfoSonics Corp.*,
  2006 WL 3746716 (S.D. Cal. Oct. 23, 2006) ...........................................................9

*Sandoval v. M1 Auto Collisions Ctrs.*,
  309 F.R.D. 549 (N.D. Cal. 2015)..............................................................................12

*Sheftelman v. Jones*,
  667 F. Supp. 859 (N.D. Ga. 1987) ...........................................................................14

*Takara Tr. v. Molex Inc.*,
  229 F.R.D. 577 (N.D. Ill. 2005)................................................................................3

*Weiss v. Friedman, Billings, Ramsey Grp., Inc.*,
  2006 WL 197036 (S.D.N.Y. Jan. 25, 2006) ...........................................................11

4822-8012-9943.v2

**Page**

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §78u-4(a)(3)(B)(iii) ..................................................................................................................1

Federal Rules of Civil Procedure
  Rule 23 .......................................................................................................................3, 10

**SECONDARY AUTHORITIES**

1 NEWBERG ON CLASS ACTIONS §3:75 (5th ed. 2018) ............................................................12, 14

- v -

## I.    INTRODUCTION

After two rounds of briefing, it is not credibly disputed that Iron Workers Local No. 25 Pension Fund (the "Pension Fund") suffered the greatest out-of-pocket loss of any lead plaintiff movant on its investment in Diplomat Pharmacy, Inc. securities during the Class Period.  The Pension Fund's status as an institutional investor with prior experience serving as lead plaintiff, and its selection of highly qualified and experienced trial counsel in this Court, further underscore its fitness.  ECF No. 30 at 6-9.  In short, the Pension Fund is the presumptive lead plaintiff.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii); ECF No. 30 at 6-9.

In his effort to rebut that presumption, competing movant Arsany Girgis – an unknown individual who filed an admittedly false Certification and is subject to unique materiality and reliance defenses (*see* ECF No. 52 at 4-8) – offers not proof, but demonstrably false facts and a string of suppositions.  For example, Mr. Girgis proclaims that the Pension Fund suffered no compensable loss and is subject to a loss causation defense because the Pension Fund "sold all of its shares and incurred all of its losses during the Class Period, ***but before any alleged corrective disclosure***."  ECF No. 53 at 8.[1]  Yet, as Mr. Girgis later acknowledges, the Pension Fund actually sold its Diplomat shares ***after*** the Company's November 6, 2018 disclosures, which the *Mortimer* Complaint unambiguously alleges partially revealed the Company's mounting problems relating to its customers and its pharmacy benefit management ("PBM") business which caused a substantial 27% decline in the Company's stock price. *Id.*; ECF No. 1 at ¶¶24-27.  As such, there simply is not a loss causation concern and the Pension Fund's loss is entirely compensable.

Mr. Girgis also suggests the Pension Fund's choice of counsel may have a hypothetical (but not an actual) conflict of interest because, as co-counsel in an unrelated case in a different court

---

[1]    All emphasis is added and all citations are omitted unless otherwise indicated.

- 1 -

4822-8012-9943.v2

involving unrelated facts, two unrelated defendants, and wholly distinct lead plaintiffs and class members harmed during an entirely different time period, Robbins Geller helped secure a recovery for investors (pending final court approval) against Diplomat.[2]  As with his erroneous challenge to the Pension Fund's loss and ability to assert loss causation, Mr. Girgis again stretches the facts and law as the *Zimmerman* Action and this case do not share more than one defendant; nor are there limited funds available, as Mr. Girgis' own exhibit confirms Diplomat has over $500 million in cash and short term asserts and over $1.4 billion in total assets.  Stated differently, for there to be an actual conflict of interest: (1) the settlement of the *Zimmerman* Action would need to be rejected; (2) Robbins Geller's co-counsel and all three lead plaintiffs in the *Zimmerman* Action would need to fall asleep at the wheel and abandon their fiduciary and ethical responsibilities; (3) the defendants in the *Zimmerman* Action would need to be rehired by Diplomat and become defendants in this case; (4) Diplomat would need to lose $500 million in cash or $1.4 billion in total assets; *and* (5) Robbins Geller would have to single-handedly compromise the *Zimmerman* Action for this action (or vice versa) – all without either court, or any of the four plaintiffs, or co-counsel raising any objections along the way.  "This improbable if-you-give-a-mouse-a-cookie hypothetical about a future series of events is far too attenuated to rebut the statutory presumption." *Chahal v. Credit Suisse Grp. AG,* 2018 WL 3093965, at *7 (S.D.N.Y. June 21, 2018) (finding that "any conflict of interest must be grounded in fact to rebut the presumption" and rejecting hypothetical conflict as to proposed lead counsel).  "Accordingly, [Mr. Girgis'] speculation about whether [Robbins Geller] *may* represent a lead plaintiff who *may* have adverse interests is insufficient to rebut the presumption that the [Pension Fund] is lead plaintiff." *Id.* (emphasis in original).

---

[2]    *See Zimmerman v. Diplomat Pharmacy, Inc.,* No. 2:16-cv-14005 (E.D. Mich.) (the "*Zimmerman* Action").  The defendants in the *Zimmerman* Action are Diplomat, Philip R. Hagerman, and Sean M. Whelan. The defendants in the actions before this Court are Diplomat, Brian T. Griffin, Jeffrey Park, Joel Saban, and Atul Kavthekar.

4822-8012-9943.v2

All of Mr. Girgis' arguments are contrary to the facts and the law. As such, the Pension Fund's motion should be granted in full.

## II. ARGUMENT

"The PSLRA creates a rebuttable presumption that the most adequate plaintiff is the person or group of persons that: (1) either has filed the complaint or made a motion in response to a notice; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23." *Bang v. Acura Pharm., Inc.*, 2011 WL 91099, at \*2 & n.2 (N.D. Ill. Jan. 11, 2011). "This presumption may be rebutted if there is ***proof*** that the presumptively most adequate lead plaintiff either will not fairly and adequately protect the class' interests or is subject to some unique defense that renders the lead plaintiff incapable of adequately representing the class." *Id.* at \*2. "Mere innuendo and inferences will not suffice to support allegations of atypicality, conflict of interest or unique defenses." *In re SemGroup Energy Partners, L.P., Sec. Litig.*, 2008 WL 4826318, at \*2 (N.D. Okla. Oct. 27, 2008).[3] Rather, "'***exacting proof***' is needed to rebut the presumption." *Murphy v. JBS S.A.*, 2017 WL 4480751, at \*5 (E.D.N.Y. Oct. 6, 2017).

### A. The Presumption in the Pension Fund's Favor Has Not Been Rebutted

#### 1. The Court Should Decline Mr. Girgis' Invitation to Shrink the Pension Fund's Loss By Switching Methods *and* Ignoring an Alleged Partial Disclosure

"While the PSLRA does not specify how we should decide which plaintiff group has the 'largest financial interest' in the relief sought, most courts simply determine which potential lead plaintiff has suffered the greatest total losses." *Takara Tr. v. Molex Inc.*, 229 F.R.D. 577, 579 (N.D.

---

[3] *See also OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 403 (D. Del. 2014) ("The [competing movant] must produce more than speculation to rebut the presumption. . . . Mere speculation about a unique defense does not meet this standard."); *Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 324-25 (S.D.N.Y. 2004) ("[C]onclusory assertions of inadequacy are . . . insufficient to rebut the statutory presumption under the PSLRA without specific support in evidence of the existence of an actual or potential conflict of interest or a defense to which [the presumptive lead plaintiff] would be uniquely subject.").

4822-8012-9943.v2

Ill. 2005). More specifically, "courts look to the plaintiff with the **_greatest net loss_** during the proposed class period." _Bang_, 2011 WL 91099, at *2. In claiming their financial interest, each of the competing movants emphasized the out-of-pocket losses (_i.e._, net loss) they suffered. As reflected in the chart below, the Pension Fund incurred a net loss of over $220,000 on its investment in Diplomat securities during the Class Period – nearly $100,000 greater than the losses now claimed by Mr. Girgis (or over $70,000 greater than the losses Mr. Girgis claimed in his false Certification):

| _Movant_ | _Loss_ |
|---|---|
| **The Pension Fund** | **$220,005** |
| Arsany Girgis | $130,006 |
| Feihua Xu and Frank Mazur | $47,108 |
| Eugene Klabak | $21,756 |

_See_ ECF Nos. 26-3, 46, 24-3, 19-3, respectively.[4] Recognizing that he did not suffer the greatest loss, Mr. Girgis now attempts to artificially deflate the Pension Fund's loss by contending that "compensable damages," **_but without a partial disclosure alleged in the Mortimer Complaint_**, should be the metric that dictates financial interest for lead plaintiff purposes. ECF No. 53 at 8. Mr. Girgis' pivot from loss to compensable damages – solely in opposition to the Pension Fund's motion – fails for several reasons.

First, his opening papers made no reference to the "compensable damages" methodology he is currently advancing. ECF No. 29 at 6-7. Rather, Mr. Girgis simply asserted his financial interest based on the _Lax_ factors and emphasized his losses as calculated on a LIFO and FIFO basis. _Id._ at 6. "[O]nly **_after_** the parties filed their opening briefs, and the parties were made aware of how their

---

[4]    Notably, Feihua Xu and Frank Mazur acknowledged that the "Pension Fund suffered approximately $220,000 in connection with its transactions in [Diplomat] securities – nearly $100,000 more than the loss claimed by Arsany Girgis." _See_ ECF No. 51 at 2.

respective motions would fare under this methodology, did [Mr. Girgis] argue that the more appropriate measure of greatest financial stake was the [*Dura*-eligible 'compensable damages'] methodology." *Bodri v. GoPro, Inc.*, 2016 WL 1718217, at \*3 (N.D. Cal. Apr. 28, 2016) (noting that movants focused "exclusively" on "losses" in their motions and rejecting attempt to switch metrics). "This fact alone counsels in favor of adopting the [original] methodology, as opposed to the [*Dura* loss] methodology." *Id.*; *Constr. Workers Pension Tr. Fund v. Navistar Int'l Corp.*, 2013 WL 3934243, at \*3 (N.D. Ill. July 30, 2013) (recognizing that "[i]t was only after Retirement Funds discovered that it did not have the largest loss amount when compared to other Plaintiffs that Retirement changed its position in later filings as to the proper loss calculation, seeking to exclude pre-June 7, 2012 losses" and ultimately finding that the "record reflects that Central States has the largest potential LIFO losses").[5]

Regardless, even if the Court considers Mr. Girgis' argument, the "compensable damages" methodology does not result in Mr. Girgis leapfrogging the Pension Fund into the presumptive lead plaintiff position. In fact, if the Court accepts the "compensable damages" methodology as the appropriate yardstick for assessing the movants' financial interest and applies it exactly as Mr. Girgis advocates (excluding all in-and-out transactions before an alleged corrective disclosure), nothing would change because the Pension Fund did not sell any Diplomat shares until ***after*** an alleged corrective disclosure on November 6, 2018 – a fact Mr. Girgis reluctantly admits (as he must). *See* ECF No. 26-3 at 2 (evidencing Pension Fund's sales in December 2018); ECF No. 53 at 7. As such, Mr. Girgis' contention that the Pension Fund "sold all of its Diplomat shares prior to ***any*** alleged

---

[5] *See also Cook v. Allergn PLC*, 2019 WL 1510894, at \*3 (S.D.N.Y. Mar. 21, 2019) ("The fact that DeKalb used the same methodology as BRS in its original moving papers – only to alter its calculation when it learned that someone else had a larger loss – lends validity to the conclusion that the impact of *Dura* on the proposed lead plaintiffs' loss calculations is at best uncertain, and so should be discounted."); *Robb v. Fitbit Inc.*, 2016 WL 2654351, at \*5 n.8 (N.D. Cal. May 10, 2016) (stating that court was "not persuaded" by one movant's "alternative loss calculations" based on *Dura* that were raised in "its opposition and reply briefs" in part because "the movants disagree as to whether this calculation method is valid").

4822-8012-9943.v2

corrective disclosure" is simply false. *Id.* at 1.

Likewise, Mr. Girgis' attempt to discredit, and nullify, the November 6 disclosure by claiming it is not a valid partial disclosure or true loss causation event strains credulity. *See id.* at 3, 5, 8. First, Mr. Girgis admits that the *Mortimer* Complaint "references [the November 6, 2018 disclosures] and the Company's stock price decline in its substantive allegations." *Id.* at 8. To adequately plead loss causation, a plaintiff must simply allege "the fact that the defendant's actions had something to do with the drop in value." *Ray v. Citigroup Global Mkts., Inc.*, 482 F.3d 991, 994-95 (7th Cir. 2007). And, "[l]oss causation may be pled on a theory of partial disclosures." *Norfolk Cty. Ret. Sys. v. Ustian*, 2009 WL 2386156, at *6 (N.D. Ill. July 28, 2009) (citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) (acknowledging that truth can "leak out" into the marketplace)).[6] As such, Mr. Girgis' concession that the *Mortimer* Complaint alleges that certain facts were revealed to the market which caused Diplomat's stock price to decline in November 2018 forecloses his challenge. *See Norfolk Cty. Ret. Sys*, 2009 WL 2386156, at *5 ("In *Dura* the Supreme Court made clear that a plaintiff must allege that 'the truth became known' before 'the share price fell.'"); *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 114-17 (E.D.N.Y. 2012) (where, as here, "there are several plausible and legitimate partial disclosures prior" to the disclosures alleged in an initial complaint filed by an investor with a nominal financial interest, "[a]t this early stage in the proceedings, it is inappropriate for the Court to adjudicate whether the truth regarding [defendants'] alleged fraud had fully been disclosed to and reflected by the market by a specified date").[7]

---

[6]     *See also Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 2016 WL 10571774, at *1 (N.D. Ill. Nov. 10, 2016) (finding Robbins Geller's "decision to pursue damages under the Leakage Model was innovative, as no appellate court had ever accepted the use of a leakage-based damages quantification at trial, and the decision to use this model drastically increased the potential damages").

[7]     *See also Juliar v. Sunopta Inc.*, 2009 WL 1955237, at *2 (S.D.N.Y. Jan. 30, 2009) (refusing to exclude losses incurred before the first corrective disclosure alleged in the complaint when the movant presented sufficient evidence to infer "that there was substantial leakage of . . . misconduct prior to" the complaint's first disclosure); *In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 544 (E.D. Va. 2006) (explaining that

- 6 -

Second, Mr. Girgis' suggestion that ¶39 of the *Mortimer* Complaint (which admittedly only mentions two of the three earlier alleged partial disclosures) is not a typo, but rather a purposeful and deliberate abandonment of the substantive allegations in ¶24-¶27 is a strained elevation of form over substance. Indeed, the *Mortimer* Complaint unambiguously alleges – in bold – that the "truth" began to be "reveal[ed]" on November 6, 2018:

**While Continuing to Obscure the Truth, Defendants Begin to Reveal the Mounting Customer and PBM Problems**

24. On November 6, 2018, after the market closed, Diplomat announced its financial results for the third quarter ended September 30, 2018. In the earnings release, Defendant Griffin commented that the Company's "solid" results were driven by the Company's ability to "successfully execute on [its] growth plan" and through "strong . . . PBM performance." Griffin continued to tout the Company's solid results, stating:

Third quarter results were solid as we continue to successfully execute on our growth plan. ***Results were driven by strong Specialty segment growth and PBM performance.*** We recently opened our new state-of-the-art distribution and call center facility in Chandler, Arizona, furthering our efforts to provide the highest

quality patient care nationwide. Every day we put our patients first, while at the same time investing in initiatives to drive further growth and productivity.

25. On a conference call with investors and analysts that same day, Defendant Saban commented on the PBM's strong customer base, stating:

The other thing I would add is that some of our clients are not necessarily leaving us, but some of their base tends to fluctuate, such as TPAs or Medicare Part D sponsors as they win regions or lose regions. So ***we feel very confident that we -- that our retention rate is typical, if not a little bit better than most PBMs***, but this client base does have some fluctuation based on membership within the clients themselves.

26. Defendants also revealed a portion of the mounting problems and revealed that with less than two months remaining in the year, the Company ***expected to lose roughly $200 million in revenue – 4% of total enterprise revenue – in its PBM business because of client losses***.

27. On this news of client losses and a 4% enterprise value loss, the price of Diplomat common stock declined by 27%, falling $5.54 on heavy volume.

where "there are multiple disclosures, in-and-out traders may well be able to show a loss" and that "the inflationary effect of a misrepresentation might well diminish over time, even without a corrective disclosure," thus allowing in-and-out traders to prove loss causation).

- 7 -

4822-8012-9943.v2

*See* ECF No. 1 at ¶¶24-27. The paragraphs immediately following ¶27 allege that additional disclosures occurred on January 7, 2019 (¶¶28-33) and February 22, 2019 (¶¶35-36).[8] All three events are alleged in the same section of the complaint as a comprehensive series of partial disclosures.[9] As such, the inadvertent omission of one of three dates from a single paragraph cannot, and should not, negate the complaint's unambiguous earlier substantive paragraphs.[10]

Even if the Court applies the compensable damages methodology Mr. Girgis now advocates, the movants' financial interests are the same, and the Pension Fund suffered the greatest loss.

### 2. Mr. Girgis' Other Loss Causation Arguments Are Equally Flawed

Likely recognizing that his loss and loss causation contentions strain credulity, Mr. Girgis attempts to recast the loss causation issue as an atypicality plaguing the Pension Fund. ECF No. 53 at 7-9. For example, Mr. Girgis suggests that "[e]ven if there had been a partial disclosure of

---

[8] Beyond the complaint's allegations, analysts concur that the November 6, 2018 disclosure that caused Diplomat's stock price to decline 27% was new, and concerning, information. *See* Exhibit A attached hereto at 1 ("While management sounded optimistic that they can replace the PBM business, we are very surprised by the magnitude of the loss. . . We are concerned that, in conjunction with another quarter of weak revenue, DPLO may be struggling to win new PBM business and plug the hole left by the ~25% loss of their PBM business . . . ."); *id.* at 4 (management's disclosure that the PBM business is expected to lose ~$200 million "compounds concerns around the future of the recently-acquired PBM business"); *see also id.* at 2 (excerpt of November 8, 2018 report from Barclays indicating that recent stock weakness was due to potential PBM margin compression and "the $200 mln (~4% of total revs) additional PBM business losses").

[9] Even if the Court was inclined to ignore the complaint's substantive allegations of a partial disclosure, the Pension Fund's brief also alleged the partial disclosure (*see* ECF No. 30 at 2-3), which suffices for lead plaintiff purposes. *See, e.g., In re VimpelCom, Ltd.*, 2016 WL 5390902, at *3 (S.D.N.Y. Sept. 26, 2016) (denying motion for reconsideration of order appointing movant that sold shares after an early alleged partial disclosure where movant's "response to the motion for reconsideration . . . alleges that stock prices dropped following the March disclosures"); *Juliar*, 2009 WL 1955237, at *2 (crediting institutional investor's "evidence" in reply brief of "substantial leakage" of misconduct before the first alleged disclosure and finding investor was not subject to loss causation or in-and-out challenge).

[10] One must wonder why Mr. Girgis would argue so strenuously to eliminate a partial disclosure and basis for a substantial portion of the putative class's damages. *See, e.g., Marcus v. J.C. Penney Co., Inc.*, 2014 WL 11394911, at *7 (E.D. Tex. Feb. 28, 2014) ("Ifantides's argument that the Short Class Period is more appropriate than the Long Class Period is troubling. . . . At this stage of the litigation, a shorter class period would have the effect of reducing the class size and limiting the potential amount of damages. It is unclear why a potential lead plaintiff would argue for a shorter class period, unless it was in the best interest of that particular plaintiff. This self-serving behavior is precisely the type of rebuttable evidence provided in the PSLRA that would prohibit this Court from appointing Ifantides lead plaintiff.").

4822-8012-9943.v2

information on November 6, 2018 that could result in recoverable damages," it would be simply "'too complicated'" for the Court to "determine the viability of a potential partial." *Id.* at 9. Yet, there *was* a partial disclosure which the Court can easily determine simply by looking at the *Mortimer* Complaint. Stated differently, there is no law requiring the Court to "determine the viability" of the complaint at the lead plaintiff stage (and Mr. Girgis tellingly cites none). *See Constr. Workers Pension Tr. Fund*, 2013 WL 3934243, at *3 ("While Central States will need to show causation in regard to its losses, it is premature at this juncture to determine that Central States or any Plaintiff will be unable to recover for losses prior to June 7, 2012. Such losses relating to sales at a time when prices were allegedly being artificially manipulated by Defendants may be recoverable. Central States is not required at this juncture to establish causation for all losses and Retirement Funds cites no controlling precedent that specifically includes such a requirement."). In fact, even at the far more rigorous class certification stage, courts have determined that there is "insufficient evidence to conclude, as a matter of law, that a portion of putative class members cannot prove loss causation" where plaintiffs alleged a leakage theory of partial disclosures over several months. *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 256 F.R.D. 586, 596 (N.D. Ill. 2009).

Mr. Girgis' authorities are readily distinguishable. For example, in *Ruland v. InfoSonics Corp.*, 2006 WL 3746716 (S.D. Cal. Oct. 23, 2006), unlike here, there did not "appear to be *any allegation* that the truth began to leak out before June 12, 2006" in the complaint. *Id.* at *5. Likewise, in *In re Bally Total Fitness Sec. Litig.*, 2005 WL 627960 (N.D. Ill. Mar. 15, 2005), unlike here, the movant sold all its shares "many months before the alleged fraud was first revealed." *Id.* at *5. And, contrary to Mr. Girgis' assertion, the court in *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 240 (E.D.N.Y. 2011) did not "credit[]" the partial disclosure in question and nonetheless find a movant subject to defenses; it found insufficient "facts from which this Court can confidently infer that the January disclosure actually revealed fraud or misconduct sufficient to qualify as a

- 9 -

partial disclosure" because there were no allegations that "the public was aware" of any problems in January. ECF No. 53 at 9 n.30; *Bensley*, 277 F.R.D at 240. By contrast, Mr. Girgis concedes that the *Mortimer* Complaint alleges the truth began to be revealed on November 6, 2018, and acknowledges the Pension Fund did not sell its Diplomat shares until a month later in December 2018, rendering the "in and out" argument entirely irrelevant.

Building on that same flawed premise, Mr. Girgis next speculates that if the November 6, 2018 disclosures are rejected in the future, it "potentially subject[s] the entire case to dismissal." ECF No. 53 at 9. This argument is short-sighted as it equally applies to Mr. Girgis who did not hold any shares at the time of the November 6, 2018 and January 7, 2019 disclosures. *See* ECF No. 46 at 2. As such, it can just as easily be said that if the Court rejects the February 22, 2019 disclosures at some later juncture, "none of [Mr. Girgis'] alleged losses would qualify as proximately linked to the alleged fraud in the case, thereby potentially subjecting the entire case to dismissal." ECF No. 53 at 9. By the same logic, Mr. Girgis also "has no interest in devoting resources to pursuing the much larger claims based upon the [November 6, 2018] and January [7], 2019 . . . disclosures." *Id*. Regardless of the wisdom of those arguments, it is well-settled that a lead plaintiff need not hold shares through every disclosure, or throughout the entire Class Period, to satisfy the Rule 23 requirements. *See Hevesi v. Citigroup, Inc*., 366 F.3d 70, 82-83 (2d Cir. 2004) ("Nothing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action. Rather, because the PSLRA mandates that courts must choose a party who has, among other things, the largest financial stake in the outcome of the case, it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim."); *Juliar*, 2009 WL 1955237, at *2 (recognizing that "where a putative lead plaintiff sold all its shares after a partial disclosure of misconduct by the defendant but before the final disclosure that led to the lawsuit, that putative lead plaintiff does not face the unique defense of having to show loss causation to the extent

- 10 -

that it cannot serve as lead plaintiff").[11]

Ultimately, Mr. Girgis' challenges to the Pension Fund's typicality do not hold water as they ignore the facts, cite inapposite law, and apply equally to himself.[12]  As such, the Court should find that Mr. Girgis has not rebutted the presumption in the Pension Fund's favor.

### B.       The Pension Fund's Counsel Is Not Subject to Any Conflict of Interest

Mr. Girgis also argues that Robbins Geller – the Pension Fund's choice of counsel – is subject to a hypothetical conflict of interest because the Firm is co-counsel in an unrelated securities fraud class action in which Diplomat is a defendant.  ECF No. 53 at 1.  Again, Mr. Girgis is wrong.

Hypothetical conflicts are plainly insufficient under the PSLRA to either rebut the presumption or justify appointing a co-lead plaintiff.  *See Chahal*, 2018 WL 3093965, at *7 (rejecting hypothetical conflict because "any conflict of interest must be grounded in fact to rebut the presumption"); *Foley v. Transocean Ltd.,* 272 F.R.D. 126, 133 (S.D.N.Y. 2011) ("[T]he conflict of interest must be shown, not merely speculated, in order to rebut the presumption of the most adequate lead plaintiff."); *In re Fannie Mae Sec. Litig.*, 355 F. Supp. 2d 261, 263 (D.D.C. 2005)

---

[11]    *See also Ellenburg v. JA Solar Holdings Co. Ltd.*, 262 F.R.D. 262, 268 (S.D.N.Y. 2009) ("selling shares during the class period does not disqualify a class member from being appointed lead plaintiff"); *Freudenberg v. E\*Trade Fin. Corp.*, 2008 WL 2876373, at *7 (S.D.N.Y. July 17, 2008) ("Nor does the sale by KSG of their E\*Trade securities by August 20, 2007, prior to the end of the alleged class periods in the current complaints, render them inadequate or atypical under the PSLRA . . . ."); *Weiss v. Friedman, Billings, Ramsey Grp., Inc.*, 2006 WL 197036, at *5 (S.D.N.Y. Jan. 25, 2006) ("the Operating Engineers Trust is not unable to prove loss causation simply because all of its shares were sold before the end of the Class Period"); *Montoya v. Mamma.com Inc.*, 2005 WL 1278097, at *2 (S.D.N.Y. May 31, 2005) (same).

[12]    If appointed lead plaintiff, the Pension Fund will ensure additional class representatives are included in any future consolidated complaint to ensure there are no loss causation challenges. *In re Hollinger Int'l, Inc. Sec. Litig.*, 2006 WL 1806382, at *16 (N.D. Ill. June 28, 2006) (recognizing that "the Plaintiffs in this case will have little difficulty finding named plaintiffs who purchased stock after June 29, 2001" and "find[ing] it a more efficient use of resources to proceed by assuming that Plaintiffs will indeed produce the requisite named plaintiffs" ); *Christian v. BT Grp. PLC*, 2017 WL 3705804, at *8 (D.N.J. Aug. 28, 2017) (appointing institutional investor as lead plaintiff after finding its offer to add additional class representatives provided "comfort" sufficient to negate competing movant's argument that the institutional investor sold stock after an early partial disclosure); *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 286 (S.D.N.Y. 2003) ("The PSLRA does not prohibit the addition of named plaintiffs to aid the Lead Plaintiff in representing the class.").

4822-8012-9943.v2

(rejecting challenge to presumptive lead plaintiff because movant "offer[ed] no proof" of how potential conflicts would become actual conflicts and arguments were "too speculative and hypothetical to rebut the presumption").

Moreover, it is widely recognized that the simultaneous representation of two different classes against a common defendant does not, in and of itself, result in a conflict of interest.[13] Indeed "[t]he few courts that have denied a finding of adequacy due to simultaneous representation of multiple sets of litigants, or simultaneous actions in multiple forums, have done so ***only*** when the recovery of one group or in one forum inherently conflicts with the recovery of the other." 1 NEWBERG ON CLASS ACTIONS §3:75 (5th ed. 2018). "For instance, courts have found that class counsel cannot adequately represent two sets of claimants if, in limited fund situations, the recovery of one set will cut directly into those of another, if the substantive law will permit recovery only by one or the other set of litigants, or if one client is litigating an appeal to a class action settlement in which another claimed recovery." *Id.* (footnotes omitted). Not surprisingly, Mr. Girgis contends that "Diplomat's ability to pay judgments to both classes is not guaranteed. For example, as of its latest SEC filing, Diplomat has less than $3 million in cash and short-term assets." ECF No. 53 at 11. As with his prior arguments, Mr. Girgis again misstates the facts.

Pointing to Diplomat's Form 10-Q for the quarterly period ended March 31, 2019, Mr. Girgis states that "Diplomat has less than $3 million in cash and short-term assets," and speculates that it

---

[13] *See Bell v. Disner*, 2018 WL 296035, at *3 (W.D.N.C. Jan. 4, 2018) ("Courts have generally held that the mere existence of parallel representation does not create an insurmountable conflict of interest.") (collecting cases), *aff'd sub nom. Bell v. Brockett*, 922 F.3d 502 (4th Cir. 2019); *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 429-30 (3d Cir. 2016) (finding no conflict of interest when a lawyer represented a subclass for future claimants of injury and also represented nine plaintiffs with current symptoms in two separate lawsuits against the defendant); *Sandoval v. M1 Auto Collisions Ctrs.*, 309 F.R.D. 549, 570 (N.D. Cal. 2015) (rejecting "[d]efendants' suggestion that the mere fact that Plaintiffs' counsel are maintaining a second class action against them renders counsel inadequate"); *Mehl v. Canadian Pac. Ry. Ltd.*, 227 F.R.D. 505, 515 (D.N.D. 2005) ("Most courts have held that class counsel may represent more than one class against the same set of defendants . . . .").

- 12 -

may be unable to "satisfy a judgment for acts causing over a $560 [sic] loss in market capitalization." *Id*. Yet, Mr. Girgis' own exhibit clearly evidences that Diplomat has over $517 million in *total* current assets and over $1.4 billion in *total* assets:

**PART I. FINANCIAL INFORMATION**
**ITEM 1. FINANCIAL STATEMENTS**

**DIPLOMAT PHARMACY, INC.**
**Condensed Consolidated Balance Sheets (Unaudited)**
**(Dollars in thousands)**

| | March 31, 2019 | December 31, 2018 |
|---|---|---|
| **ASSETS** | | |
| Current assets: | | |
| Cash and equivalents | $ 2,739 | $ 9,485 |
| Receivables, net | 329,881 | 326,602 |
| Inventories | 174,507 | 210,573 |
| Prepaid expenses and other current assets | 10,544 | 9,596 |
| Total current assets | 517,671 | 556,256 |
| Property and equipment, net | 31,244 | 34,525 |
| Capitalized software for internal use, net | 29,844 | 30,506 |
| Operating lease right-of-use assets | 27,325 | — |
| Goodwill | 609,592 | 609,592 |
| Definite-lived intangible assets, net | 227,005 | 240,810 |
| Other noncurrent assets | 4,387 | 4,670 |
| Total assets | $ 1,447,068 | $ 1,476,359 |

*See* ECF No. 53-5 at 5 of 35. Mr. Girgis' argument also ignores the fact that publicly-traded companies like Diplomat also have substantial multi-million dollar insurance policies that are often used to fund settlements. Accordingly, even if the parties in the *Zimmerman* Action had not already reached a settlement (which they have, subject to final court approval), with over $1 *billion* in total assets, there is simply no "limited fund" situation involving Diplomat.

As with the facts, Mr. Girgis' cases are also distinguishable. Two of the three cases involved a limited fund situation that does not exist here.[14] Mr. Girgis' third case, *Krim v. pcOrder.com, Inc.,*

---

[14] *See In re Cardinal Health, Inc. ERISA Litig.*, 225 F.R.D. 552, 557 (S.D. Ohio 2005) (expressing concern about a conflict of interest because "[i]f the amount sought by each proposed class could exceed the total assets of the Defendants, then 'competing claims may impair counsel's ability to vigorously pursue the interest of both classes'"); *Kuper v. Quantum Chem. Corp.*, 145 F.R.D. 80, 83 (S.D. Ohio 1992) (finding "competing claims" between two classes represented by the same class counsel that sought damages from a limited fund "may impair counsel's ability to vigorously pursue the interests of both classes" where plaintiffs repeatedly alleged that corporate defendant had depleted assets and liquidity); *but see Nowak v. Ford Motor Co.*, 240 F.R.D. 355, 366 (E.D. Mich. 2006) (distinguishing *Cardinal Health* because it relied on legal standard abandoned decades ago in favor of ABA Model Rules of Professional Conduct, which "drafted more precise conflict guidelines").

4822-8012-9943.v2

210 F.R.D. 581, 589 (W.D. Tex. 2002), involved overlapping classes and advanced class certification proceedings in which evidence emerged that "counsel 1) failed to disclose their involvement in other lawsuits to their clients; 2) failed to disclose settlement offers and negotiations to their clients; and 3) failed to prepare their clients for their depositions, as demonstrated by the proposed class representatives' utter lack of knowledge about the lawsuit in their depositions." *Id.* at 590. Exacerbating the problem, "[c]ounsel quickly dropped the class in the lower-dollar state action, but decided to stay involved in this and the New York Litigation, both potentially more lucrative." *Id.* None of those events have transpired here. Nor does Mr. Girgis offer proof of any such events.

To reiterate, these actions are on behalf of a separate class during a different time period against five defendants (only one of which is common with the trio of settling defendants in the *Zimmerman* Action), and a completely different set of factual allegations. The presence of additional counsel both in the *Zimmerman* Action and here all but eliminates the possibility that even the most far-fetched conflict of interest scenario could materialize.[15] This is also not a limited fund scenario. Furthermore, the *Zimmerman* Action has been settled (subject to final court approval).[16]

Mr. Girgis' argument is entirely predicated on an attenuated series of remote hypothetical events maybe occurring at some point in the future. *See supra* at 2. That is not enough to rebut the presumption in the Pension Fund's favor.

---

[15]  "[T]he addition of new and impartial counsel can cure a conflict of interest even where previous counsel continues to be involved in the case." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998); *see also Sheftelman v. Jones*, 667 F. Supp. 859, 865 (N.D. Ga. 1987) (no conflict where plaintiffs were represented by co-counsel untainted by alleged conflict).

[16]  In fact, far from amounting to an actual (as opposed to a speculative, and very remote) conflict of interest, Robbins Geller's role, with its clients and co-counsel, in securing a successful recovery in the *Zimmerman* Action shows that it has already once been able to prevail against Diplomat, and that the Firm possesses the requisite experience and resources to do so again. *See* 1 NEWBERG ON CLASS ACTIONS §3:75 (5th ed. 2018) ("[r]epresenting multiple clients in parallel proceedings will also benefit the class to the extent that class counsel gain useful legal and factual knowledge in pursuing the concurrent action") (collecting cases).

- 14 -

## III.   CONCLUSION

Mr. Girgis' attempt to shrink the Pension Fund's loss and subject the Pension Fund to a loss causation defense by both ignoring and erasing an alleged partial disclosure should be rejected. Likewise, Mr. Girgis' misrepresentation of Diplomat's assets in an attempt to conjure a limited fund, and thus a potential conflict of interest (among other remote suppositions that have not manifested), should also be disregarded.  There simply are no facts, let alone proof, sufficient to rebut the presumption in the Pension Fund's favor.

The Pension Fund suffered the greatest loss.  It is an institutional investor with experience serving as lead plaintiff, and has been certified as a class representative in a securities class action case.  Its selected counsel is not subject to a potential, let alone an actual, conflict of interest.  The Pension Fund's motion should be granted.

DATED:  May 22, 2019

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
MICHAEL ALBERT

s/ Danielle S. Myers
DANIELLE S. MYERS

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
JAMES E. BARZ (IL Bar # 6255605)
FRANK A. RICHTER (IL Bar # 6310011)
200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  312/674-4674
312/674-4676 (fax)
jbarz@rgrdlaw.com
frichter@rgrdlaw.com

- 15 -

4822-8012-9943.v2

[Proposed] Lead Counsel for [Proposed] Lead
Plaintiff

SULLIVAN, WARD, ASHER & PATTON, P.C.
MICHAEL J. ASHER
1000 Maccabees Center
25800 Northwestern Highway
Southfield, MI  48075
Telephone:  248/746-0700
248/746-2760 (fax)
masher@swappc.com

HESSIAN & McKASY P.A.
WILLIAM A. CUMMINGS
3700 RBC Plaza
60 South 6th Street
Minneapolis, MN  55402
Telephone:  612/746-5770
612/746-5755 (fax)

Additional Counsel for [Proposed] Lead Plaintiff

- 16 -

4822-8012-9943.v2

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on May 22, 2019, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Danielle S. Myers
DANIELLE S. MYERS

ROBBINS GELLER RUDMAN
  & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  dmyers@rgrdlaw.com

4822-8012-9943.v2

# Mailing Information for a Case 1:19-cv-01735 Mortimer v. Diplomat Pharmacy, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **James E Barz**
  jbarz@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **James Wallace Ducayet**
  jducayet@sidley.com,james-ducayet-9115@ecf.pacerpro.com,efilingnotice@sidley.com

- **Lori Ann Fanning**
  LFanning@MillerLawLLC.com,MMiller@MillerLawLLC.com,ajewell@millerlawllc.com,drobinson@millerlawllc.com,JRamirez@millerlawllc.com

- **David Allan Geiger**
  dgeiger@sidley.com,efilingnotice@sidley.com,david-geiger-9990@ecf.pacerpro.com

- **Matthew Todd Hurst**
  mhurst@heffnerhurst.com,mheffner@heffnerhurst.com

- **Reed R Kathrein**
  reed@hbsslaw.com,danielles@hbsslaw.com,lisal@hbsslaw.com,sf_filings@hbsslaw.com

- **Carl V. Malmstrom**
  malmstrom@whafh.com

- **Marvin Alan Miller**
  Mmiller@millerlawllc.com,ajewell@millerlawllc.com,LFanning@millerlawllc.com,drobinson@millerlawlllc.com,JRamirez@millerlawllc.com

- **Danielle S. Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Frank Anthony Richter**
  frichter@rgrdlaw.com

- **Nilofer Ibrahim Umar**
  numar@sidley.com,efilingnotice@sidley.com,nilofer-umar-6698@ecf.pacerpro.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)