UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| CHASE MORTIMER, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>v.<br><br>DIPLOMAT PHARMACY, INC., BRIAN T. GRIFFIN, JEFFREY PARK, JOEL SABAN, and ATAL KAVTHEKAR,<br><br>                    Defendants. | Civil Action No. 1:19-cv-01735<br><br>CLASS ACTION<br><br>The Honorable Virginia M. Kendall |

### ARSANY GIRGIS'S MOTION FOR PARTIAL RECONSIDERATION OF ORDER APPOINTING LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL

**"[T]he District Court must be able to rely on the representations given by counsel."**
*United States v. Scott*, 900 F.3d 972, 975 (7th Cir. 2018). [1]

On July 19, 2019, this Court entered an order appointing Iron Workers Local No. 25 Pension Fund (the "Pension Fund" or the "Fund") as the sole Lead Plaintiff and approving its selection of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as the sole lead counsel (ECF No. 66). This result was driven in large part by representations that Robbins Geller made to the Court regarding the adequacy of both the Fund and Robbins Geller to serve as stewards of this litigation. Mindful that "motions for reconsideration under Rule 54(b) serve the limited function of correcting manifest errors of law or fact or to presenting newly discovered evidence,"[2] movant Anthony Girgis files this motion for partial reconsideration because of both discovery of new evidence undermining Robbins Geller's representations and the Court making a manifest error of law.

*First,* new evidence central to this Court's decision and demonstrating a surprising lack of candor on the part of Robbins Geller became available just days before the Court's order. Material to this Court's order was a finding that this case *did not* present a "limited fund" scenario.[3] This finding was based on Robbins Geller's emphatic argument that Arsany Girgis's ("Girgis") representations of Diplomat's deteriorating financial condition and inability to satisfy judgments in both *Zimmerman*,[4] and the present case, "misstated the facts" and were

---

[1] *See also* Rule 3.3, Candor Toward Tribunal, ABA Model Rule of Professional Responsibility; L.R. 83.50.

[2] *Webster Bank, N.A. v. Pierce & Assocs.*, P.C., No. 16-cv-2522, 2018 WL 704693, at *2 (N.D. Ill. Feb. 5, 2018).

[3] Memorandum Opinion and Order, ECF 66, at 13.

[4] *See Zimmerman v. Diplomat Pharmacy, Inc. et al.*, No. 2:16-cv-14005-AC-SDD (E.D. Mich.).

- 1 -

"speculative."[5]  Accordingly, the Court found that Robbins Geller's representation of different classes of Diplomat investors both here and in *Zimmerman*, did not represent a potential conflict. Yet, a mere three days before the Court issued its order, Robbins Geller filed papers in *Zimmerman* asserting that Diplomat *is* a "limited fund", thus justifying a meager settlement of approximately 5.5% to 7.3% percent of the estimated damages suffered by Class Members:

> ***Finally, there was the added risk of Diplomat's ability to fund a judgment at a later date***.  While Diplomat was a well-capitalized entity at the outset of the case, the Company's financial condition ***had deteriorated severely*** by the time the Settlement was reached. . . . ***Significantly,*** according to the Company's publicly filed financial reports, as of March 31, 2019, the Company ***reported less than $2.74 million in cash*** on its balance sheet, down from over $17 million Diplomat reported in the period immediately preceding the date the Litigation commenced. . . . ***Thus, Defendants' wasting insurance coverage was likely the only source to fund a settlement***.[6]
>
> \*\*\*\*\*
>
> Diplomat's deteriorating financial condition ***presented real ability-to-pay issues***. . . .  Its cash reserves have fallen to less than $3 million.  ***Lead Counsel reasonably believed that Defendants' director and officer insurance coverage was likely the only available source to fund a judgment***.[7]

---

[5] The Pension Fund's Reply In Further Support Of Motion For Appointment As Lead Plaintiff And Approval Of Selection Of Counsel, ECF 55 at 12-13; The Pension Fund's Opposition To Arsany Girgis' Motion For Leave To File A Sur-Reply, ECF 58 at 2.

[6] Lead Plaintiffs' Motion For Final Approval Of Class Action Settlement, Class Certification And Approval Of Plan Of Allocation, *Zimmerman v. Diplomat Pharmacy, Inc. et. al.*, No. 2:16-cv-14005-AC-SDD (ED Mich.), ECF No. 63.

[7] Joint Declaration Of Matthew I. Alpert And Joshua L. Crowell In Support Of: (A) Lead Plaintiffs' Motion For Final Approval Of Class Action Settlement, Class Certification And Approval Of Plan Of Allocation; And (B) Lead Counsel's Motion For An Award Of Attorneys' Fees, Litigation Costs And Expenses And Awards To Lead Plaintiffs Pursuant To 15 U.S.C. §78u-4(A)(4), *Zimmerman v. Diplomat Pharmacy, Inc. et. al.*, No. 2:16-cv-14005-AC-SDD (ED Mich.) ECF No. 65 at ¶10, 60-62.

010828-11 1155896 V1

These representations are also published by Robbins Geller on a dedicated "Diplomat Securities Settlement" website for Class Members to read.[8]  Indeed, if the *Zimmerman* Court, and the *Zimmerman* Lead Plaintiffs (both of whom filed declarations stating they relied on these representations of a deteriorating financial condition or risk in supporting the settlement[9]) catch wind of Robbins Geller's contemporaneous statements to this Court—that "***with over $1 billion in total assets, there is simply no 'limited fund' situation involving* Diplomat**" —Robbins Geller will have more than a "whole lot of explaining to do."  In any case, the completely inconsistent and irreconcilable judicial statements call into question the candor of the Fund and its chosen counsel's fitness to lead this case, demonstrating the actual manifestation of a previously denied conflict.

 ***Second,*** while the Court found that the "presence of ameliorating factors" made "the potential for conflict [] less remote," chief among these ameliorating factors was that "Robbins Geller has co-counsel in both matters."  Order at 14.  But in *Zimmerman*, Robbins Geller has

---

[8] *See* http://www.diplomatsecuritiessettlement.com/ ("This website has been established to provide general information related to the proposed settlement of the lawsuit referred to as *Zimmerman v. Diplomat Pharmacy, Inc., et al.*, No.2:16-cv-14005-AC-SDD "); http://www.diplomatsecuritiessettlement.com/case-documents.aspx (containing links to all filings relating to the settlement.

[9] Declaration Of David N. Zimmerman In Support Of: (A) Lead Plaintiffs' Motion For Final Approval Of Class Action Settlement, Class Certification, And The Plan Of Allocation; And (B) Lead Counsel's Motion For An A Ward Of Attorneys' Fees And Reimbursement Of Litigation Expenses, *Zimmerman v. Diplomat Pharmacy, Inc., et al.*, No.2:16-cv-14005-AC-SDD, ECF No. 67 ¶9 ("I believe that the Settlement provides an excellent recovery for the Class, particularly in light of the risks of continued litigation, the available insurance***, and Diplomat's financial condition***."); Declaration Of Austin Nibbs As Representative Of The Government Employees' Retirement System Of The Virgin Islands In Support Of Plaintiffs' Motion For Final Approval Of Settlement, *Zimmerman v. Diplomat Pharmacy, Inc., et al., No.2:16-cv-14005-AC-SDD*, ECF No. 66 ¶4 ("In making its determination that the Settlement represented a fair, reasonable and adequate result for the Class, GERS weighed the substantial benefits to the Class against the significant risks and uncertainties of continued litigation.").

- 3 -

PSLRA appointed co-lead counsel which represent different co-lead plaintiffs. Here, Robbins' co-counsel is not PSLRA appointed as co-lead and does not have an equal voice (let alone any official voice) in representing the class. Likewise, both Robbins Geller and co-counsel represent the same client here. Moreover, there has been no showing of co-counsel's adequacy or sole willingness to represent the Class here, including their experience, expertise and resources to litigate this securities class action.

*Third,* the Court's order recognizes that the Pension Fund sold all of its Diplomat shares after the first of three alleged disclosures and therefore runs the risk of losing standing by potentially having sold all of its shares before the "truth" was allegedly revealed. Nevertheless, the Court's Order suggests this fundamental risk and conflict with Class members may be mitigated through the Pension Fund's commitment to add new, unidentified parties to this action:

> To the extent there are concerns about the Fund's incentives to pursue losses related to the second and third disclosures, *the Fund has represented that it will ensure that class representatives are added to the amended consolidated complaint to ward off loss causation challenges*. (Dkt. 55 n.12.) Given its alleged losses, *and its commitment to add class representatives whose losses derive from the second and third disclosures*, the Fund has a substantial interest in the outcome of this case.

Order at 10. Movant Arsany Girgis submits that it is an error of law and contrary to the goals of the PSLRA, to hold that a movant's mere representation to include unknown (and unvetted) investors cures the movant's adequacy defects.

Accordingly, movant Girgis requests that this Court partially reconsider its order and appoint Girgis as co-lead plaintiff and Hagens Berman Sobol Shapiro as co-lead counsel.

## I.      ARGUMENT

### A.      Robbins Geller's Irreconcilable Representation to the Court that Diplomat Pharmacy Does Not Present a "Limited Fund" Situation Requires Reconsideration

- 4 -

**and the Appointment of Girgis as Co-Lead Plaintiff and Hagens Berman as Co-Lead Counsel at a Minimum**

1.      **Robbins Geller's Irreconcilable Judicial Representations Concerning Diplomats Financial Condition (to this Court and the *Zimmerman* Court and Class) Demonstrates an Actual Conflict Exists at a Minimum**

In its motion papers, Girgis identified Diplomat's worsening financial condition, which, together with Robbins Geller's representation of a separate class seeking recovery from Diplomat, created a conflict of interest and a risk that the class in the instant action would not be adequately represented with respect to the recovery of class damages from Diplomat.[10]  Robbins Geller dismissed these arguments as "without merit" and "based solely on Mr. Girgis' baseless speculation" (ECF No. 58 at 1), eschewing Diplomat's declining liquid assets and instead emphasizing that "Diplomat has total current assets of $517 million and total assets of $1.4 billion."  (ECF No. 55 at 13).

But shortly after the close of briefing, Robbins Geller told the *Zimmerman* Court and the *Zimmerman* Lead Plaintiffs just the opposite to justify a paltry class-wide recovery.  In defending the meager settlement of 5.5% to 7.3% of class wide damages, Robbins Geller warns both the *Zimmerman* court and class of Diplomat's "real ability-to-pay issues" and risk of "Diplomat's ability to fund a judgment at a later date," given that "the Company's financial condition had deteriorated severely."  As support, Robbins Geller cites to Diplomat recently "report[ing] less than $2.74 million in cash on its balance sheet, down from over $17 million Diplomat reported in the period immediately preceding the date the Litigation commenced" – the same metric Robbins

---

[10] *See* Memorandum of Law in Further Support of Motion of Arsany Girgis to Consolidate Related Cases, Appoint Lead Plaintiff, Approve Selection of Lead Counsel, and in Opposition to Competing Motions, ECF No. 53 at 10-13 ("Diplomat's ability to pay judgments to both classes is not guaranteed. For example, as of its latest SEC filing, Diplomat has less than $3 million in cash and short-term assets.").

- 5 -

Geller told this Court was "the wrong figure" and to ignore. Robbins Geller concluded that "Defendants' wasting insurance coverage was likely the only source to fund a settlement."

As lead counsel in the *Zimmerman* action, Robbins Geller was in a position to know that what it was telling this Court here was not true. Robbins Geller's irreconcilably inconsistent statements and misrepresentation of facts concerning Diplomat's true financial condition, treads a fine line on the spirit of Rule 3.3 of the ABA's Model Rules of Professional Conduct. The Seventh Circuit has repeatedly observed that lawyers owe courts a duty of candor. *See Schmude v. Sheahan*, 420 F.3d 645, 651 (7th Cir. 2005) (*citing Beam v. Ipco Corp.*, 838 F.2d 242, 247 (7th Cir. 1988)* ("Lawyers have a duty of candor to the tribunal"). S*ee also, e.g., Cleveland Hair Clinic, Inc. v. Puig*, 200 F.3d 1063, 1067 (7th Cir. 2000) (sanctioning lawyer for misleading the court about his involvement in related state court case); *550 Jackson Assocs. v. U.S. Mineral Prods. Co.*, No. 1:93-cv-06638, 1994 U.S. Dist. LEXIS 6807, at *21 n.3 (N.D. Ill. May 20, 1994) ("Lack of candor will not be tolerated by the Court.").

So too, does Robbins Geller "have a continuing duty to inform the Court of any development which may conceivably affect the outcome of the litigation." *Puig*, 200 F.3d at 1067-68 (*citing Bd. of License Comm'rs v. Pastore*, 469 U.S. 238, 240 (1985)). Diplomat's deteriorating financial condition will clearly affect the outcome the litigation, as Girgis has noted, and will impact the likely recovery for both the *Zimmerman* class and the class in the instant action.

Accordingly, the new information concerning Robbins Geller's irreconcilably contradictory representations concerning Diplomat's financial condition demonstrate that a

010828-11 1155896 V1

conflict has already manifested, and reconsideration of lead plaintiff and lead counsel is warranted.[11]

### 2. Robbins Geller's Co-Counsel Do Not Ameliorate Their Potential Conflict

The Court found that Robbins Geller's co-counsel in both *Zimmerman* and here ameliorates its potential conflict by concurrently representing two separate class actions against Diplomat. This conclusion, however, is based on a faulty assumption.

In *Zimmerman*, Robbin's co-counsel is separately appointed co-lead counsel, who has authority to bind the Class under the PSLRA, represents an independent co-lead plaintiff, and made the requisite showing that it has the competence and resources to zealously represent the class. Thus, the co-counsel has a modicum of independence, client obligations, and can adequately prosecute the Zimmerman Class's claims. But here, Robbins Geller's co-counsel has no independent client named as co-lead under the PSLRA, has no independent authority, is not recognized under the PSLRA, and presumably has some arrangement with Robbins as referring counsel. Accordingly, their existence is not independent and does not provide the protection to which the class is entitled. Moreover, co-counsel here has made no showing of its expertise in litigating complex securities class actions like the instant case, let alone the requisite resources.

Sure, the Court would have to approve any Class settlement, but the Court only receives what Lead-Counsel and Defendants want the Court to receive (as aptly demonstrated by Robbins Geller's lack of candor above). The Class would have no discovery, have no understanding of

---

[11] *See City of Livonia Emps.' Ret. Sys. v. The Boeing Co.*, No. 1:09-cv-07143, 2011 WL 824604, at *4 (N.D. Ill. Mar. 7, 2011), aff'd in part, vacated in part sub nom. *City of Livonia Emps.' Ret. Sys. & Local 295/Local 851 v. Boeing Co.*, 711 F.3d 754 (7th Cir. 2013) (granting a motion for reconsideration of a denial of a motion to dismiss an amended complaint upon determining that a manifest factual error was made after Robbins, serving as lead counsel, made "flawed representations directly to the court about [a] confidential source's position and firsthand knowledge.").

010828-11 1155896 V1

the negotiations, and would have nothing to provide the Court.  Appointing Girgis as co-lead

plaintiff and Hagens Berman as co-lead counsel would ameliorate this potential conflict.

**B.      The PSLRA Must Be Followed to Remedy Standing Issues of the Lead Plaintiff**

**1.      Under the PSLRA the Fund Cannot Remedy Its Inadequacy by Committing To Add Strangers to the Litigation**

"The goal of the PSLRA was . . . to promote a client-driven rather than lawyer-driven

process." *Reitan v. China Mobile Games & Entm't Grp., Ltd.*, 68 F. Supp. 3d 390, 399

(S.D.N.Y. 2014).  "Congress found that the named plaintiffs, while ostensibly in charge of the

litigation as fiduciaries for all similarly situated, were, in reality, token figureheads with no

actual control over their cases.  In the vast run of cases, it was the lawyers who initiated them,

selected the plaintiffs, controlled the strategy, controlled the settlement, and collected fees from

the settlement—or at least so Congress found. . . .  In place of . . . a practice wherein the class

lawyer selected the class plaintiff[,] Congress sought to substitute a new model, one that reversed

the roles.  Under the new model, the court would appoint the lead plaintiff who, in turn, would

select and direct class counsel." *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017,

1019-20 (N.D. Cal. 1999).

Here, allowing Robbins Geller to select completely unknown investors to remedy the

Fund's potential standing defect and fundamental conflict with Class members is unprecedented,

and would be reverting to the pre-PSLRA practice, now forbidden, of allowing the attorneys to

select the plaintiffs.[12]  Indeed, there are serious questions about the propriety of such

arrangement.  Such questions include the same posed by Judge Alsup in *Zucker v. Zoran Corp.*

*et al.*, No. 3:06-cv-04843-WHA (Feb. 21, 2007 N.D. Cal.), slip order, ECF No. 79 at 2, when

---

[12] Indeed, the Fund has no interest in finding other plaintiffs if it is found to not have standing, only the attorneys who want their fee do.

- 8 -

confronted with a lead plaintiff's attempt to unilaterally add a new named plaintiff to cure a potential standing issue:

(i)     when and how these unknown Diplomat investors came to the attention of the Fund and why these investors refrained from seeking to participate in the litigation earlier;

(ii)    what steps the Fund has taken to ensure that the addition of a new plaintiff will not interfere with its ability to discharge its duties to the class;

(iii)   whether other would-be plaintiffs were considered;

(iv)    what due diligence (if any) Fund has undertaken with respect to these investors;

(v)     did Robbins Geller acquire these Diplomat investors as clients in a professionally proper way;

(vi)    does counsel have a conflict in representing the multiple separate Diplomat investors;

(vii)   As a class representative, would these investors have a duty to make their own fiduciary decisions with respect to litigating the securities fraud claims, including settlement? What would be the decisional mechanism were it to develop that these investors disagreed with Fund's judgment in this regard?

The Fund put forward no evidence addressing any one of these valid concerns.

Indeed, for these reasons, the PSLRA does not permit plaintiff's counsel to simply hand-select a replacement to cure the lead plaintiff's complete lack of Article III standing. For example, in *Fort Worth Emps. Ret. Fund v. J.P. Morgan Chase & Co.*, 862 F. Supp. 2d 322, 329

- 9 -

(S.D.N.Y. 2012), the court rejected the lead plaintiff's motion to appoint the Laborers Pension Trust Fund for Northern California ("Laborers") as substitute lead plaintiff in a securities class action. In that case, the court had previously granted in part a motion to dismiss, finding that lead plaintiff had standing "to bring claims only in connection with the offerings in which it purchased securities" and not other offerings in which it had not purchased securities. *Id.* at 325. After the dismissal decision, the lead plaintiff moved to withdraw and appoint Laborers as lead plaintiff.

The court granted lead plaintiff's motion to withdraw but denied the motion to substitute Laborers as lead plaintiff. *Id.* at 324. In that case, the defendants argued, "that it is procedurally improper under the PSLRA to allow the substitution of Laborers as lead plaintiff without re-opening the lead plaintiff appointment process as set forth in the PSLRA." *Id.* at 325. Noting that the PSLRA is "silent as to the procedures for substituting a lead plaintiff if the previously appointed lead plaintiff withdraws," the court explained that it was "thus left to craft an order that best adheres to the policy behind the PSLRA." *Id.* at 326. It concluded that it would "deem timely any movant for appointment as lead counsel who either (a) filed the complaint, (b) moved to be appointed lead plaintiff in response to the initial notice of pendency, or (c) moved to be appointed lead plaintiff within 30 days of the withdrawal of the previous lead plaintiff." *Id.* at 328. *See also In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 440 (E.D. Va. 2000) (where original lead plaintiff withdrew, court refused to consider motion for appointment by new lead plaintiff who "did not file a timely motion to be named lead plaintiff" where "other class members [did satisfy] the statute's requirements, and . . . Congress's intent suggest that the statute's time limits should be strictly enforced."); *Endress v. Gentiva Health Servs., Inc.*, 276 F.R.D. 62, 64 (E.D.N.Y. 2011) (refusing to permit substitution of new lead plaintiff that "neither

- 10 -

filed the original complaint, nor moved to be named lead plaintiff within sixty days of [original plaintiff] publishing a notice of the filing of the case.").

The proper legal procedure to follow is clear where a credible threat exists that the Fund may ultimately not have standing or is latter found to not have standing:

> If the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23.

*In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002).  While the PSLRA may not explicitly contemplate invoking the lead plaintiff process more than once, "[t]his does not mean, however, that the withdrawing lead plaintiff or his lead counsel can hand-pick a substitute without abiding by the PSRLA."  *In re Tezos Sec. Litig*., No. 3:17-cv-06779-RS, 2019 WL 2183448, at *2 (N.D. Cal. Apr. 8, 2019) (Appointing new lead plaintiff with second largest losses, over objection of Lead Counsel who attempted to substitute in a new lead plaintiff after court questioned standing in order denying motion to dismiss, class certification motions were filed and the original lead plaintiff withdrew).

## C.      Where a Potential Standing Issue Exists the Court Should Appoint a Co-Lead Plaintiff with the Standing at a Minimum to Avoid Delay and Prejudice

If the Court were to appoint a lead plaintiff in this case that does not include investors whose losses derive from the second and third disclosures —there is a risk that this will invite successful attacks on standing after the motions to dismiss are decided.  *See, e.g., Constr. Workers Pension Fund-Lake Cty. & Vicinity v. Navistar Int'l Corp.*, 114 F. Supp. 3d 633, 645 (N.D. Ill. 2015) ("the Court finds that [lead plaintiff] lacks standing to state a § 10(b) claim for any statements made after October 27, 2011 and those claims are dismissed.") (*citing Roots P'ship v. Lands' End, Inc., 965 F.2d 1411, 1420 (7th Cir. 1992)* ("Having no claim of its own

- 11 -

based on the post-purchase statements, Roots would not be a proper representative of a class of persons who bought [defendants'] stock after defendants' allegedly fraudulent post-July 25, 1989 statements. [internal citation omitted]. Roots therefore cannot defeat dismissal by purporting to represent the interests of post-July 25, 1989 purchasers.")); *see also In re Royal Bank of Scotland Grp. PLC Sec. Litig.*, 765 F. Supp. 2d 327, 337 (S.D.N.Y. 2011) (dismissing lead plaintiffs' claims based on their purchases of ordinary shares, which could not "be used as a basis to pursue claims regarding ADRs").

The above cases are clear examples of the complications that can arise from the failure to ensure that the lead plaintiff has standing. Importantly, not only were the interests of investors who had standing potentially prejudiced in these cases by motions to dismiss, denial of class certification, or a potential shot-gun settlement by an inadequate lead plaintiff, but judicial resources were unnecessarily wasted as a result. Much of that waste could have been avoided by the early appointment of a co-lead plaintiff with curative standing at the onset of the litigation.

Here, an amended complaint has yet to be filed . . . and will be controlled by a lead plaintiff whose interest is only to prove fraud up until mid-November. There is no interest represented by a properly appointed lead plaintiff to investigate further than November, nor plead facts in a complaint after November. And if the court finds that the facts do not sufficiently plead a strong inference up until that date . . . the case is over.

The other real risk, is that if the Fund realizes, through investigation or discovery, that the facts do not support their claim, they will settle early and cheap, before Class Members have access to such information. Another 5.5% to 7.3% settlement should not be a foregone conclusion.

- 12 -

Appointing Girgis as Co-Lead Plaintiff substantially forecloses such attacks. *See, e.g.,* *Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 406 (D. Minn. 1998) ("[O]ur role is not to resolve the standing issue, which appears to remain open to honest debate, but to determine whether the debate itself is substantive enough" to warrant prophylactic measures.).

## II. CONCLUSION

For the reasons set forth above, movant Arsany Girgis respectfully submits that the Court made an error of law and mistake of fact, and requests that this Court partially reconsider its order and appoint Arsany Girgis as co-lead plaintiff and approve Hagens Berman Sobol Shapiro LLP co-lead counsel.

DATED: July 26, 2019

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: */s/ Reed R. Kathrein*
    Reed R. Kathrein
Danielle Smith
Lucas E. Gilmore
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
danielles@hbsslaw.com
lucasg@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

*Counsel for Proposed Lead Plaintiff Arsany Girgis*

- 13 -

- 14 -

**CERTIFICATE OF SERVICE**

I hereby certify that on July 26, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed a paper copy of the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

*/s/ Reed R. Kathrein*
REED R. KATHREIN

- 14 -

010828-11 1155896 V1