**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHASE MORTIMER, | ) | |
| | ) | |
| Plaintiff, | ) | No. 19 C 1735 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| DIPLOMAT PHARMACY INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This is a securities class action against Diplomat Pharmacy, Inc., ("Diplomat"), Brian T. Griffin, Jeffrey Park, Joel Saban, and Atul Kavthekar (collectively, "Defendants"). The Court previously appointed Iron Workers Local No. 25 Pension Fund (the "Fund") as lead plaintiff under the PSLRA and appointed the Fund's chosen counsel, Robbins Geller, to be lead counsel. *Mortimer v. Diplomat Pharmacy Inc.*, No. 19 C 1735, 2019 WL 3252221 (N.D. Ill. July 19, 2019). In doing so, the Court also denied movant Arsany Girgis's motion for the same appointment. Girgis now asks the Court to reconsider that decision and appoint him as co-lead plaintiff and appoint his counsel, Hagens Berman Sobol Shapiro LLP, as co-lead counsel. Girgis's motion for reconsideration [Dkt. 67] is denied.

## BACKGROUND

Defendant Diplomat provides specialty pharmacy services. In 2017, Diplomat entered the Pharmacy Benefit Management ("PBM") business by acquiring National Pharmaceutical Services ("NPS") and LDI Integrated Pharmacy Services ("LDI"). Three complaints were filed and eventually consolidated before this Court. (*See* Dkt. 42.) The complaints generally allege that Defendants violated federal securities laws by making false or misleading statements and failing

to disclose key facts about the integration and growth of Diplomat's PBM business, the LDI and NPS acquisitions, impending impairment charges to its PBM business, and the nature of its preliminary 2019 full-year outlook. *See* Dkt. 1 ¶ 34; *see also* Dkt. 1, No. 19 C 2635 ("*Prentice* Compl.) ¶ 26; Dkt. 1, No. 19 C 2631 ("*Riehm* Compl.") ¶ 26. On November 6, 2018, Diplomat announced its financial results for the third quarter ending September 30, 2018 and Defendants attributed its "solid" results to its ability to "successfully execute on [its] growth plan" and "strong . . . PBM performance." Dkt. 1 ¶ 24; *Prentice* Compl. ¶24; *Riehm* Compl. ¶24.

There are three alleged disclosures at issue in this case. The first happened on November 6, 2018, when Defendants revealed that Diplomat expected to lose roughly $200 million in revenue, 4% of total enterprise revenue, in its PBM business due to client losses. (Dkt. 1 ¶ 26; *see also Prentice* Compl. ¶ 24; *Riehm* Compl. ¶ 24.) After this news, the price of Diplomat's common stock fell by 27%. (Dkt. 1 ¶ 27.) The second disclosure happened on January 7, 2019, when Diplomat issued a press release announcing lower than expected revenue for 2018 and announcing the departure of two senior executives. (Dkt. 1 ¶¶ 28-31; *see also Prentice* Compl. ¶ 25; *Riehm* Compl ¶ 25.) Following this news, the price of Diplomat shares fell by 10.5%. (Dkt. 1 ¶ 33.) The third happened on February 22, 2019, when Diplomat filed a Form 8-K postponing its Form 10-K filing for fiscal year 2018 because it needed to record a non-cash impairment charge of approximately $630 million relating to its 2017 PBM acquisitions. (Dkt. 1 ¶ 35; *Prentice* Compl. ¶ 27; *Riehm* Compl. ¶ 27.) Following the 8-K filing and Diplomat's related press release, the share price fell by 56%. (Dkt. 1 ¶ 36; *Prentice* Compl. ¶ 28; *Riehm* Compl. ¶ 28.)

The Fund sold all its shares by December 19, 2018—*i.e.*, after the first alleged disclosure but before the second and third. (*See* Dkt. 26-3); *see also Mortimer*, 2019 WL 3252221, at *3.

**DISCUSSION**

## I.    Legal Standard

District courts have discretionary authority to reconsider interlocutory orders at any time before final judgment is entered. *Galvan v. Nordberg*, 678 F.3d 581, 587 (7th Cir. 2012); *see also* Fed. R. Civ. P. 54(b) (non-final orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"). That said, issues appropriate for reconsideration "rarely arise" and motions to reconsider "should be equally rare." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996). They are not an appropriate vehicle to advance arguments or legal theories that could and should have been made before the Court entered its order. *Id.* at 1270.

## II.    Robbins Geller's Statements to the Court and the "Limited Fund Scenario"

Girgis first argues that the Court should reconsider its decision in light of "new evidence" that became available after the Court appointed the Fund as lead plaintiff. The evidence Girgis cites is a series of statements made by the Fund's counsel, Robbins Geller, on behalf of different plaintiffs in a separate suit against Diplomat pending in the Eastern District of Michigan. In that suit, Robbins Geller represents a separate class of plaintiffs suing Diplomat for securities fraud based on separate conduct from a different time period than the one at issue here. *See Zimmerman v. Diplomat*, No. 16 C 14005 (E.D. Mich.); *see also* Dkt. 55 at 14. The Court previously ruled that Robbins Geller's representation of the lead plaintiffs in the *Zimmerman* suit and its representation of the Fund as lead plaintiff in this suit was not a disqualifying conflict of interest. *Mortimer*, 2019 WL 3252221, at *5-6.

The Court based its holding in part on its finding that there did not appear to be a "limited fund scenario"—*i.e.*, a situation where Diplomat might not have the ability to pay judgments in both *Zimmerman* and this case, which would require both classes to compete for the same limited pool of funds and which could create a conflict of interest for Robbins Geller, who is now representing both classes. *Id.* at *6. The Fund and Girgis urged the Court to look at different facts to determine whether this was a true limited fund scenario. Girgis argued that the Court should only consider Diplomat's "liquid assets" or "cash on hand," which were less than $3 million according to Diplomat's latest SEC filing. The Fund, on the other hand, argued that the Court should consider Diplomat's "total assets" (which were over $1.4 billion, according to the same SEC filing) and "total current assets" (over $517 million, according to the same), along with the high likelihood that any settlement would be funded by Diplomat's insurance policies. Because courts frequently look to factors other than cash or cash equivalents when determining a defendant's ability to pay at the class settlement approval stage, the Court sided with the Fund, considered Diplomat's total assets and probable insurance, and found that this did not appear to be a limited fund scenario. *Id.*

Meanwhile, the *Zimmerman* case was moving toward settlement. On May 7, 2019, while Girgis and the Fund were in the midst of briefing the lead plaintiff issue in this case, the *Zimmerman* court entered an order preliminarily approving settlement. *Zimmerman*, No. 16 C 14005 (E.D. Mich.) at Dkt. 62. On July 16, the *Zimmerman* lead plaintiffs moved for final approval of the settlement and their attorneys from Robbins Geller submitted an affidavit in support. *Id.* at Dkt. 63, 65. In the affidavit urging the court to approve the settlement, the Robbins Geller attorneys cited "Diplomat's deteriorating financial condition," which "presented real ability-to-pay issues." *Id.* at Dkt. 65 ¶ 10. In particular, the attorneys noted that Diplomat's "cash reserves

have fallen to less than $3 million." *Id.* They argued that settlement was in the class's best interest due to Diplomat's rapidly depleting cash reserves and "wasting director and officer insurance coverage," which they believed "would be the only source available to fund a settlement or judgment." *Id.* ¶¶ 61-62.

Three days later, on July 19, the Court appointed the Fund as lead plaintiff in this case and approved its selection of Robbins Geller as lead counsel. *Mortimer*, 2019 WL 3252221. On July 26, Girgis filed this motion asking the Court to reconsider its decision. (Dkt. 67.) On August 20, the *Zimmerman* court approved the settlement, entered final judgment, and closed the case. (*Zimmerman*, No. 16 C 14005 (E.D. Mich.) at Dkt. 76, 78.)

Now Girgis cries foul. According to Girgis, Robbins Geller made "completely inconsistent and irreconcilable" statements about Diplomat's financial situation in the two cases, which casts doubt on the firm's candor and its fitness to serve as lead counsel in this case. Relatedly, Girgis argues that Robbins Geller's statements to the *Zimmerman* court constitute "new evidence" that requires this Court to reconsider its finding that there is no limited fund scenario. It is undeniable that Robbins Geller took drastically different positions about Diplomat's financial wellbeing in the two cases. Here, Robbins Geller assured this Court that there was no limited fund scenario and pointed to Diplomat's "***$1 billion*** in total assets" and "substantial multi-million dollar insurance policies." (Dkt. 55) (emphasis in original). Then, less than two months later, Robbins Geller attorneys urged the *Zimmerman* court to approve class settlement based on Diplomat's "deteriorating financial condition," dwindling cash reserves, and "wasting" insurance coverage.

There are two separate issues here: first, whether this actually is or is not a limited fund scenario; and second, whether Robbins Geller violated its duty of candor to the Court. Setting aside Robbins Geller's statements for a moment, there is no longer a risk of a limited fund scenario

because the *Zimmerman* court approved the class settlement and closed the case. To the extent Robbins Geller ever faced a potential conflict by representing both classes, that conflict has resolved itself because the *Zimmerman* litigation is over and the two classes are no longer competing over the same pot of money.[1] The size of the pot is irrelevant at this point, because the *Zimmerman* plaintiffs are no longer competing for it. *Cf. In re Cardinal Health, Inc. ERISA Litig.*, 225 F.R.D. 552, 557 (S.D. Ohio 2005) (finding that "[c]ounsel cannot represent different classes of plaintiffs with conflicting claims who are seeking recovery from a common pool of assets").

As for Robbins Geller's candor with the Court, the Court finds that, despite making vastly different arguments in the two cases, Robbins Geller did not misstate or misrepresent any facts or otherwise mislead the Court. Both parties—Girgis and the Fund—relied on the same Diplomat SEC filing to support their arguments here. Girgis urged the Court to consider one figure as relevant (cash on hand), while the Fund urged the Court to consider a few different ones (total assets and insurance). The Fund never misstated or misrepresented any of Diplomat's specific financial figures, it simply argued that some figures were more relevant than others for the limited fund scenario analysis. Girgis is correct that Robbins Geller simultaneously made a very different argument (on behalf of different clients) in the *Zimmerman* litigation and urged that court to consider different financial figures when analyzing Diplomat's financial health for settlement purposes. But Robbins Geller, when representing different parties in different litigation, is not bound to always take the same position on a question. Emphasizing one set of facts to this Court while simultaneously emphasizing a different set of facts to a different court (on a different party's

---

[1] Girgis also argues that the Court erred by finding that the presence of non-PSLRA-appointed co-counsel in this case ameliorated any potential conflict on Robbins Geller's part. Because any potential conflict was resolved by the *Zimmerman* settlement approval, Girgis's co-counsel argument is moot. And in any event, the presence of co-counsel was only one of several ameliorating factors and "procedural safeguards" the Court cited in finding that Robbins Geller did not suffer from a disqualifying conflict. *See Mortimer*, 2019 WL 3252221 at *6.

behalf) is not unethical—it's good advocacy. This is only true up to a point, of course, but there is nothing in the record indicating that Robbins Geller misstated, misrepresented, or concealed any facts in this proceeding and the Court has no reason to question the firm's fitness to serve as lead counsel in this case.

## III. Standing and Additional Named Plaintiffs

Girgis also argues that the Court erred by holding that the Fund could select additional plaintiffs to remedy its standing issues. Girgis argued once already that the Fund is not an adequate or typical plaintiff because it does not have an interest in pursuing losses based on the second and third disclosures, having sold all its shares after the first disclosure. The Court explained, however, that "[t]o the extent there are concerns about the Fund's incentives to pursue losses related to the second and third disclosures, the Fund has represented that it will ensure that class representatives are added to the amended consolidated complaint to ward off loss causation challenges." *Mortimer*, 2019 WL 3252221, at *4.

According to Girgis, allowing the Fund or its counsel to select additional named plaintiffs to cure the Fund's standing issues would be "unprecedented" and would undermine the PSLRA, which aimed to "promote a client-driven rather than lawyer-driven process." (Dkt. 67 at 8) (quoting *Reitan v. China Mobile Games & Entm't Grp., Ltd.*, 68 F. Supp. 3d 390, 399 (S.D.N.Y. 2014)). Girgis is wrong on both accounts. "[T]he PSLRA does not in any way prohibit the addition of named plaintiffs to aid the lead plaintiff in representing a class." *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 83 (2d Cir. 2004). Nor is it necessary "that a different lead plaintiff be appointed to bring every single available claim," as such a requirement "would contravene the main purpose of having a lead plaintiff—namely, to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole." *Id.* at 82 n.13; *see also In re WorldCom, Inc.*

*Sec. Litig.*, 219 F.R.D. 267, 286 (S.D.N.Y. 2003) ("Although the lead plaintiff must 'otherwise satisfy the requirements of Rule 23,' nothing in the text of the PSLRA indicates that every named plaintiff who satisfies the requirements of Rule 23 must also satisfy the criteria established under the PSLRA for appointment as lead plaintiff and actually be appointed as a lead plaintiff.").

And the practice of adding additional named plaintiffs to cure standing issues is not "unprecedented," as Girgis claims. *See, e.g.*, *Van Noppen v. InnerWorkings, Inc.*, 136 F. Supp. 3d 922, 931 (N.D. Ill. 2015) ("Lead plaintiffs can cure standing deficiencies by adding an additional plaintiff who purchased securities later in the putative class period."); *Davis v. SPSS, Inc.*, 431 F. Supp. 2d 823, 825 (N.D. Ill. 2006) ("The addition of AFCO saved [Lead Plaintiffs'] second amended complaint from the standing problems that arose in the court's analysis of the first amended complaint."); *Christian v. BT Group PLC*, No. 17 C 497, 2017 WL 3705804, at *8 (D.N.J. Aug. 28, 2017) ("Finally, I take some comfort in the Pension Fund's offer to 'include an additional class representative who held shares of BT Group through the final disclosure' in an amended complaint. . . . I agree that this should be done."); *In re Third Ave. Mgmt. LLC Sec. Litig.*, No. 16 C 2758, 2016 WL 2986235, at *3 (S.D.N.Y. May 13, 2016) ("Rather than ignoring the plaintiff with the largest financial interest in favor of a plaintiff with standing to sue on all claims— an approach that runs counter to the PSLRA—a lead plaintiff may, consistent with the PSLRA, add named plaintiffs to aid the lead plaintiff in representing a class"); *In re Crocs, Inc. Sec. Litig.*, 2013 WL 4547404 (D. Colo. Aug. 28, 2013) (approving Lead Plaintiff's addition of named plaintiffs to cure standing issues without subjecting additional named plaintiffs to PSLRA lead-plaintiff scrutiny because the "PSLRA does not prevent a lead plaintiff from joining named plaintiffs to an action"); *In re WorldCom*, 219 F.R.D. at 286 ("prudence dictated that named

plaintiffs be added to assist in the representation of the bondholders since [Lead Plaintiff] did not purchase either the 2000 or 2001 Notes"), *aff'd sub nom. Hevesi*, 366 F.3d at 81-83.

Girgis cites only a single case where a court did not allow the PSLRA-appointed lead plaintiff to add additional named plaintiffs. It should be noted that the order in that case is two paragraphs long and does not contain a single case citation. *See Zucker v. Zoran Corp.*, 06 C 4843 (N.D. Cal. Feb. 21, 2007), slip order, Dkt. 79. The weight of authority demonstrates that *Zucker* is an outlier. And the other cases Girgis relies on each involve a situation where the lead plaintiff seeks to withdraw as lead plaintiff and substitute another party to be the new lead plaintiff. That is not what the Fund seeks or intends to do here, so those cases are inapposite. Girgis's concerns about the Fund's lack of standing as to the second and third disclosures should be allayed by the fact that the Fund is well within its rights under the PSLRA to add named plaintiffs to address those deficiencies.

## CONCLUSION

For these reasons, movant Arsany Girgis's motion for reconsideration [Dkt. 67] is denied. The Court grants the Fund's motion for leave to provide notice of additional information [Dkt. 72] and has considered the Fund's additional information in this decision.

_____
Virginia M. Kendall
United States District Judge

Date: October 7, 2019