**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IRON WORKERS LOCAL NO. 25 PENSION FUND, et al., | Case No. 1:19-cv-01735 |
| Plaintiffs, | Hon. John F. Kness |
| v. | |
| DIPLOMAT PHARMACY, INC., et al., | |
| Defendants. | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**THE CONSOLIDATED COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION.................................................................................................................1

ARGUMENT .....................................................................................................................2

I.      Plaintiffs Fail Adequately To Allege That Defendants Made Materially False Or Misleading Statements.......................................................................................................3

      A.      Plaintiffs' Opposition Still Fails To Establish That Any Challenged Statement Was False Or Misleading When Made. ....................................................................4

      B.      Plaintiffs' Opposition Fails to Establish That The Alleged "Omissions" Rendered An Affirmative Statement False Or Misleading........................................7

      C.      Certain Of The Alleged Misstatements Are Immaterial As A Matter Of Law. .........8

II.      The Opposition's Scienter Arguments Are Without Basis.................................................10

      A.      Plaintiffs' Circumstantial Scienter Theories Are Deficient. ...................................10

      B.      The Inference Of Non-Culpable Conduct Is Stronger Than Plaintiffs' Competing Inference. ...........................................................................................14

CONCLUSION .................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                                        **Page(s)**

*In re Akorn, Inc. Sec. Litig.*,
   240 F. Supp. 3d 802 (N.D. Ill. 2017) ......................................................................................14

*Ala. Elec. Pension Fund v. Pharmacia Corp.*,
   554 F.3d 342 (3d Cir. 2009)......................................................................................................9

*In re Allaire Corp. Sec. Litig.*,
   224 F. Supp. 2d 319 (D. Mass. 2002) .......................................................................................9

*Anderson v. Spirit Aerosystems Holdings, Inc.*,
   827 F.3d 1229 (10th Cir. 2016) ..............................................................................................13

*Arbitrage Event-Driven Fund. v. Tribune Media Co.*,
   2020 WL 60186 (N.D. Ill. Jan. 7, 2020) .................................................................................12

*Asher v. Baxter Int'l., Inc.*,
   2005 WL 331572 (N.D. Ill. Feb. 3, 2005) ...............................................................................13

*In re Bally Total Fitness Sec. Litig.*,
   2006 WL 3714708 (N.D. Ill. July 12, 2006).............................................................................11

*Boca Raton Firefighters' & Police Pension Fund v. DeVry Inc.*,
   2012 WL 1030474 (N.D. Ill. Mar. 27, 2012)............................................................................4

*Bondali v. Yum! Brands, Inc.*,
   620 F. App'x 483 (6th Cir. 2015) .............................................................................................3

*Carpenters Pension Tr. Fund for N. Cal. v. Allstate Corp.*,
   2018 WL 1071442 (N.D. Ill. Feb. 27, 2018) .......................................................................9, 11

*City of Livonia Emps.' Ret. Sys. v. Boeing Co.*,
   711 F.3d 754 (7th Cir. 2013) ........................................................................................2, 10, 12

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*,
   632 F.3d 751 (1st Cir. 2011)...................................................................................................10

*City of Lakeland Emps. Pension Plan v. Baxter Int'l Inc.*,
   2012 WL 607578 (N.D. Ill. Jan. 23, 2012) .............................................................................13

*City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*,
   442 F. App'x 672 (3d Cir. 2011) ............................................................................................15

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira*,
   2013 WL 566805 (N.D. Ill. Feb. 13, 2013) ............................................................................13

*Conlee v. WMS Indus., Inc.*,
  2013 WL 1767648 (N.D. Ill. Apr. 24, 2013) ................................................................8

*Danis v. USN Commc'ns, Inc.*,
  73 F. Supp. 2d 923 (N.D. Ill. 1999) .........................................................................11

*Desai v. Gen. Growth Props. Inc.*,
  654 F. Supp. 2d 836 (N.D. Ill. 2009) ........................................................................13

*ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009)..............................................................................11, 12

*Fadia v. FireEye, Inc.*,
  2016 WL 6679806 (N.D. Cal. Nov. 14, 2016) ...........................................................9

*In re First Chi. Corp. Sec. Litig.*,
  769 F. Supp. 1444 (N.D. Ill. 1991) ...........................................................................9

*Institutional Invs. Grp. v. Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009)....................................................................................3

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001)...................................................................................10

*Kurtzman v. Compaq Computer Corp.*,
  2000 WL 34292632 (S.D. Tex. Dec. 12, 2000) ........................................................14

*In re Level 3 Commc'ns, Inc. Sec. Litig.*,
  667 F.3d 1331 (10th Cir. 2012) ................................................................................9

*Lindelow v. Hill*,
  2001 WL 830956 (N.D. Ill. July 20, 2001)................................................................9

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
  513 F.3d 702 (7th Cir. 2008) ..................................................................................13

*In re Motorola Sec. Litig.*,
  2004 WL 2032769 (N.D. Ill. Sept. 9, 2004) ............................................................13

*Neca-Ibew Pension Fund v. N. Tr. Corp.*,
  2013 WL 1290202 (N.D. Ill. Mar. 28, 2013)............................................................7

*In re Neopharm Inc. Sec. Litig.*,
  2003 WL 262369 (N.D. Ill. Feb. 7, 2003) .................................................................9

*Petri v. GeaCom, Inc.*,
  2018 WL 1695367 (N.D. Ill. Apr. 6, 2018) ...............................................................8

*Pierrelouis v. Gogo, Inc.*,
   414 F. Supp. 3d 1164 (N.D. Ill. 2019) ..................................................................12

*Pirraglia v. Novell, Inc.*,
   339 F.3d 1182 (10th Cir. 2003) ...........................................................................5

*Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*,
   679 F.3d 952 (7th Cir. 2012) ...............................................................................7

*Plumbers & Pipefitters Local Union No. 630 Pension-Authority Tr. Fund v.*
   *Allscripts-Misys Healthcare Solutions, Inc.*,
   778 F. Supp. 2d 858 (N.D. Ill. 2011) ...................................................................9

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
   759 F.3d 1051 (9th Cir. 2014) .............................................................................8

*Ross v. Career Education Corp.*,
   2012 WL 5363431 (N.D. Ill. Oct. 30, 2012)......................................4, 12, 13, 14

*Rothman v. Gregor*,
   220 F.3d 81 (2d Cir. 2000)..................................................................................11

*Schleicher v. Wendt*,
   529 F. Supp. 2d 959 (S.D. Ind. 2007) .................................................................13

*Silverman v. Motorola, Inc.*,
   2008 WL 4360648 (N.D. Ill. Sept. 23, 2008) .....................................................13

*Slater v. A.G. Edwards & Sons, Inc.*,
   719 F.3d 1190 (10th Cir. 2013) ...........................................................................3

*Stark Trading & Shepherd Inv. Int'l, Ltd. v. Falconbridge Ltd.*,
   2008 WL 153542 (E.D. Wis. Jan. 14, 2008).......................................................11

*Stratte-McClure v. Morgan Stanley*,
   776 F.3d 94 (2d Cir. 2015)..................................................................................10

*Teamsters Affiliates Pension Plan v. Walgreen Co.*,
   2010 WL 3894149 (N.D. Ill. Sept. 29, 2010) .......................................................5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007).......................................................................2, 3, 10, 14

*In re Ulta Salon, Cosmetics & Flagrance, Inc. Sec. Litig.*,
   604 F. Supp. 2d 1188 (N.D. Ill. 2009) .............................................................9, 13

*Van Noppen v. InnerWorkings, Inc.*,
   136 F. Supp. 3d 922 (N.D. Ill. 2015) ................................................................3, 8

iv

*In re Wilmington Tr. Sec. Litig.*,
   852 F. Supp. 2d 477 (D. Del. 2012)..........................................................................................3

*Zerger v. Midway Games, Inc.*,
   2009 WL 3380653 (N.D. Ill. Oct. 19, 2009)............................................................................12

**Statutes**

15 U.S.C. § 78u–4(b)(1) ...........................................................................................................3, 5, 7

**Other Authorities**

Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1363 (3d ed.).........................................................3

**INTRODUCTION**

Plaintiffs' Opposition confirms that Plaintiffs do not and cannot satisfy the stringent pleading requirements of the PSLRA.[1] Plaintiffs do not respond to the bulk of the arguments raised in Defendants' Opening Brief. And Plaintiffs make no meaningful attempt to distinguish the authority cited by Defendants. Instead, rather than claim that any of Defendants' alleged misstatements was affirmatively false, they now claim that Defendants fraudulently "omitted" to disclose a supposed adverse "trend" of increasing customer complaints and losses. But even under this theory, Plaintiffs still fail to satisfy the PSLRA's requirements for pleading a false or misleading statement, or for pleading a strong inference of an intent to defraud, *i.e.*, scienter.

*First*, the Complaint does not contain any particularized factual allegation that this alleged "trend" had even arisen at the time of the alleged misstatements, the last of which was in November 2018. Though Plaintiffs argue that "the court must treat the pleaded facts as true" (Pls.' Br. at 1 (quotation omitted)), they ignore that the Complaint's *own* allegations make clear that customer service issues first occurred in the mid-to-late third quarter of 2018, and that the impact of customer losses related to those issues manifested even later: in December 2018 and early 2019. Because the PSLRA requires Plaintiffs to plead particularized facts to demonstrate that each alleged misstatement was false or misleading *when made*, this deficiency is fatal. Nor do Plaintiffs identify any affirmative statement that was rendered false or misleading in the absence of disclosing this "trend," as is required to allege an actionable omission under the PSLRA. Instead, as discussed in the Opening Brief, not only did Defendants disclose customer losses as they occurred, but none of the statements that Plaintiffs challenge contained any representation or guarantee as to future customer service or contract renewals. Finally, as also discussed in the

---

[1] Plaintiffs' Opposition (D.E. 105) is referred to as the "Opposition" or "Pls.' Br." The Memorandum in Support of Defendants' Motion to Dismiss (D.E. 94) is referred to as the "Opening Brief" or "Defs.' Br." All other capitalized terms have the same meaning as set forth in the Opening Brief.

1

Opening Brief, many of the challenged statements are generic statements of corporate optimism that are not actionable.

*Second*, despite their burden to plead facts giving rise to a strong inference of scienter, Plaintiffs concede they have not pleaded a single particularized fact indicating what Defendants actually knew—and importantly, when they knew it—with respect to the alleged customer service issues and losses. Instead, the Complaint contains a mishmash of boilerplate circumstantial scienter allegations of the sort that courts routinely reject. Moreover, while Plaintiffs criticize Defendants for "argu[ing] for innocent interpretations of their statements and intent" (Pls.' Br. at 1), the Supreme Court has expressly held that "in determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court *must* take into account plausible opposing inferences." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007) (emphasis added). Here, the inference of non-culpable intent from the pleaded facts—that Defendants disclosed both their lack of visibility into customer decisions, as well as any customer losses as they actually became known—is stronger than any competing inference.

The Complaint must be dismissed.

## ARGUMENT

The PSLRA places a "heavy burden" on pleading falsity and scienter. *City of Livonia Emps.' Ret. Sys. v. Boeing Co.*, 711 F.3d 754, 757 (7th Cir. 2013). To adequately allege falsity, Plaintiffs must plead particularized factual allegations sufficient to demonstrate that each alleged misstatement was false or misleading *when made*—not incorrect in hindsight. (Defs.' Br. at 10.) Plaintiffs must also allege particularized facts giving rise to a "strong inference" of scienter, *i.e.*, an inference that is "cogent and at least as compelling as any opposing inference." *Tellabs*, 551 U.S.

at 324.[2] Plaintiffs fail to meet their burden with respect to either of these elements, each of which provides independent grounds for dismissal.

**I.      Plaintiffs Fail Adequately To Allege That Defendants Made Materially False Or Misleading Statements.**

Plaintiffs bear the burden of showing that each alleged misstatement in the Complaint was materially false or misleading when made. Contrary to Plaintiffs' claim that "the court need not rule on all statements" if it finds Plaintiffs have adequately alleged the material falsity of a single statement by each defendant (Pls.' Br. at 8), the PSLRA plainly requires Plaintiffs to "specify *each statement* alleged to have been misleading" and "the reason or reasons why *the statement* is misleading." 15 U.S.C. § 78u–4(b)(1) (emphasis added). As such, courts must undertake a statement-by-statement analysis to determine whether the complaint meets this pleading standard. *See, e.g.*, *Bondali v. Yum! Brands, Inc.*, 620 F. App'x 483, 491 (6th Cir. 2015) ("[O]ther circuits, like this circuit, undertake a statement-by-statement analysis."); *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 259–60 & n.30 (3d Cir. 2009); *In re Wilmington Tr. Sec. Litig.*, 852 F. Supp. 2d 477, 490 (D. Del. 2012) ("It is Plaintiffs' burden to plead fraud on a statement-by-statement basis."); *see also Van Noppen v. InnerWorkings, Inc.*, 136 F. Supp. 3d 922, 932 (N.D. Ill. 2015) ("This Court analyzes *each statement in turn* and concludes that

---

[2] *Tellabs* further instructs that, in ruling on a motion to dismiss under the PSLRA, courts "must consider … documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." 551 U.S. at 322; *see also Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190, 1196 (10th Cir. 2013) ("In a securities case, we may consider, in addition to the complaint, documents incorporated by reference into the complaint, public documents filed with the SEC, and documents the plaintiffs relied upon in bringing suit."). Yet Plaintiffs criticize Defendants for attaching the very documents that their Complaint quotes from and relies upon extensively. (Pls.' Br. at 1.) Not only must the Court consider those documents, but allegations contradicted by those documents may not be accepted as true. *See* Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1363 (3d ed.) ("The district court will not accept as true pleading allegations that are contradicted by facts that can be judicially noticed or by other allegations or exhibits attached to or incorporated in the pleading."). Moreover, none of Defendants' arguments turn on the five exhibits Plaintiffs complain were not cited in the Complaint. (Pls.' Br. at 1 n.1.) Three of those documents are cited in describing the process of Diplomat's sale to OptumRx (Exs. O, Q, R), and the other two merely provide additional context (Exs. L, S).

dismissal is warranted." (emphasis added)).[3] The Opposition fails to mention, much less defend, many of the alleged misstatements in the Complaint.[4] For each statement Plaintiffs do discuss, their arguments are without merit.

### A. Plaintiffs' Opposition Still Fails To Establish That Any Challenged Statement Was False Or Misleading When Made.

The Opposition abandons the notion that Defendants' statements were literally false, and argues instead that certain statements regarding the PBM integration were "half truths." While Plaintiffs divide these statements into four categories, their theory for each is the same: Defendants omitted to disclose a "negative trend" of customer service issues and complaints and resulting client losses. (*See, e.g.*, Pls.' Br. at 9–12, 14–15, 16.) Critically, however, the Complaint makes clear that these issues only occurred in late 2018 and through 2019.

*Customer Complaints and Service Issues*. Although the Opposition vaguely asserts that the "negative trends of increased customer complaints and losses due to the service level declines" had begun at the time of the first alleged misstatements—*i.e.*, on February 26, 2018 (*id.* at 9 (discussing CC ¶ 58(a))—the *only* particularized allegation in the Complaint as to when customer service issues arose is a statement from Mr. Griffin that "service issues" related to the RxClaim transition occurred in "mid to through third quarter of '18"—*i.e.*, **mid-August through September**

---

[3] Plaintiffs rely on language from *Ross v. Career Education Corp.*, 2012 WL 5363431, at *8 (N.D. Ill. Oct. 30, 2012), which itself relies on a statement from *Boca Raton Firefighters' & Police Pension Fund v. DeVry Inc.*, at *4 (N.D. Ill. Mar. 27, 2012). (Pls.' Br. at 8.) But *DeVry* did not hold that a court need not assess the sufficiency of each individual alleged misrepresentation. Instead, in discussing allegations from a confidential witness, the court merely noted that a plaintiff did not need "to identify a *source* for every *allegation* in the complaint, insofar as one or more deficient *allegations* will not doom the complaint if it is otherwise sufficient." *Id.* (emphasis added). Importantly, in the very next sentence, the court made clear that claims of misrepresentation "stand or fall based upon the allegations that comply with the PSLRA," *id.*, which, as noted, requires a statement-by-statement assessment under the plain language of the statute.

[4] Plaintiffs make no mention of more than a dozen of the Complaint's alleged misstatements, including *all* of the alleged misstatements related to ICFR. (*Compare* Pls.' Br. & Ex. A, *with* CC ¶¶ 60(d), 60(f), 65(e)–(h), 69(c)–(d), 72, 73(c), 73(f), 73(h), 76–77 (abandoned statements).)

4

of 2018. (CC ¶ 100.)[5] Plaintiffs urge the Court to ignore this glaring defect in their theory by arguing that Defendants "challeng[e], rather than accept[], the allegations in the Complaint." (Pls.' Br. at 16.) That is false. Plaintiffs' own Complaint undermines their theory.[6]

***Customer Losses.*** Plaintiffs similarly claim that Defendants failed to disclose an alleged adverse trend in customer losses that rendered various statements false or misleading. To support the existence of this "trend," Plaintiffs argue that Diplomat was "losing customers in May 2018," that Defendants purportedly stated that August 2018 was the "middle" of the busiest part of the selling season, and that as of November 2018, Diplomat's renewal rate was "a bit better" than most PBMs. (*Id.*) These arguments likewise fail.

*First*, Plaintiffs allege no facts to support that the losses of certain low-margin clients in 2018, which were anticipated and announced beginning in May 2018 (*see* Defs.' Br. at 6)—months before the service issues arose—had anything to do with the *unanticipated* losses of customers in December 2018 and early 2019 following service issues later in the year. Even as to the customer losses that Diplomat announced in November 2018, Diplomat explained that one contract related to a bid submitted by a legacy PBM before the Diplomat acquisition, and in the other case, the

---

[5] Although the Complaint mentions complaints from three individuals filed with the Better Business Bureau during the spring and summer of 2018 (CC ¶¶ 54–55), complaints from three of the hundreds of thousands of beneficiaries whose benefits CastiaRx managed show next to nothing, much less a material "trend[]" or "spike[]" (Pls.' Br. at 6) in complaints. (*See* Defs.' Br. at 13.) And Plaintiffs' Opposition puts no weight on those complaints.

[6] While Plaintiffs are entitled to reasonable inferences in their favor drawn from well-pleaded facts, the PSLRA specifically requires that when allegations are made on information and belief—as is the case here (CC at 1)—the complaint must "state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). "Plaintiffs may not circumvent this requirement by asking the court to infer the existence of facts necessary to support a particular allegation," and courts must "refuse to draw inferences in the plaintiffs' favor when doing so would allow them to make allegations 'on information and belief' without satisfying the particularity requirements of the [PSLRA]." *Pirraglia v. Novell, Inc.*, 339 F.3d 1182, 1188 (10th Cir. 2003) (cited in Pls.' Br. at 15–16); *see also Teamsters Affiliates Pension Plan v. Walgreen Co.*, 2010 WL 3894149, at *2 (N.D. Ill. Sept. 29, 2010) ("[T]he PSLRA essentially returns the class of cases it covers to a very specific version of fact pleading—one that exceeds even the particularity requirement of Federal Rule of Civil Procedure 9(b)." (citation omitted)).

5

client was bought by a larger health plan. (*See id.*) These matters do not evince a broader "trend" related to service issues. Moreover, Plaintiffs' argument that Defendants "omitted" this information is belied by the fact that Defendants *did* in fact disclose anticipated client losses in 2018 numerous times. (*See id.* (analyst report stating that Diplomat had been "very public" and "open" about "a couple of larger but very low margin accounts that are winding down").)

*Second*, Plaintiffs misleadingly argue that August was the "middle" part of the selling season. But the PBM selling season is twelve-to-eighteen months long. (*Id*. at 4–5.) The fact that CastiaRx was in the "middle" of the season (*id.*) underscored that—as management repeatedly disclosed—Diplomat would have no indication of customer decisions for several more months. (*See* CC ¶ 65(i); Defs.' Br. at 5 (statements in September 2018 that "[PBM contracting] decisions aren't typically made until much, much later in the year," "we don't really have visibility at this point," and "decisions are made into January").)

*Third*, although Plaintiffs point to a statement that as of November 2018, the PBM customer renewal rate was "a little bit better" than most PBMs, that statement likewise does not constitute a particularized allegation that an adverse trend in customer renewals had arisen by November 2018. To the contrary, it shows that as of November 6, 2018, Diplomat had *not* yet experienced the significant client losses that took place in December 2018 and in early 2019. Nor did management ever indicate that Diplomat's experience as of November 2018 would remain the same: on the very same call, management stated with regard to the ongoing selling season that "we really don't have full visibility into client retention level at this point, right? We're still again in mid-process into the 1/1/2019 selling season." (CC ¶ 73(h); Ex. H at 13.)[7]

---

[7] Plaintiffs rely on factual allegations that are not well-pleaded. For example, Plaintiffs assert that by the summer of 2018, "Diplomat brought in consultants to help with the service declines." (Pls.' Br. at 5 (citing CC ¶ 123 (quoting Ex. M at 9)).) But the actual statement Plaintiffs quote had nothing to do with

**B.** **Plaintiffs' Opposition Fails to Establish That The Alleged "Omissions" Rendered An Affirmative Statement False Or Misleading.**

To state a claim for an actionable omission under the PSLRA, Plaintiffs must allege "not only information that was withheld, but also information whose disclosure was necessary to prevent information that was disclosed from being misleading." *Neca-Ibew Pension Fund v. N. Tr. Corp.*, 2013 WL 1290202, at \*10 (N.D. Ill. Mar. 28, 2013) (citing *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44–45 (2011)). Additionally, Plaintiffs must demonstrate with particularity *how* or *why* the preexisting statement was misleading. 15 U.S.C. § 78u–4(b)(1). Here, though the Opposition conclusorily describes Defendants' statements as "half truths" (Pls.' Br. at 14–15), Plaintiffs fail to meet their burden of demonstrating that any of the challenged statements were false or misleading in the absence of the additional information Plaintiffs seek, much less show with particularity how or why those statements were misleading.

For example, the Opposition repeatedly takes issue with Defendants' description of certain specific client losses being for "one-off" reasons, arguing that these statements were misleading because "service failures created a negative trend of customer losses as contracts came up for non-renewal." (*Id.* at 11, 16.)[8] To begin with, these customer losses were disclosed. And Plaintiffs plead no facts to support that the specific client losses that occurred earlier in 2018 were not actually lost for "one off" reasons. Nor did the statements that these contracts were lost for "one off" reasons create a materially misleading impression or guarantee regarding the Company's future prospects: that a few particular clients were lost for "one-off reasons" does not reasonably

consultants brought in to fix customer service issues. Rather, as the context of the statement makes clear, those consultants were hired to improve "operating efficiencies" to generate cost savings. (Ex. M at 9.)

[8] It also bears mention that the phrase "one off" to which Plaintiffs gravitate was used in the context of an unscripted question and answer session during an investor conference call. The Seventh Circuit has recognized that "[o]ral exchanges are less precise than written ones," particularly where the speaker "did not know what question was coming, had to answer off the cuff, and did not have an opportunity to review the question and edit his answer before the next question was posed." *Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*, 679 F.3d 952, 956 (7th Cir. 2012).

7

imply that other clients might not be lost for other reasons. *See Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1061 (9th Cir. 2014) ("[T]o be actionable under the securities laws, an omission ... must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists.").

The same is true of Defendants' statements reporting "early new client wins" and "strong interest" in the PBM product. (Pls.' Br. at 2, 9.) Not only does the Opposition fail to allege that these statements were actually false, it fails to explain how they were misleading: these statements said nothing about customer service, nor did they reasonably imply that more clients would be won in the future. Plaintiffs also focus on general statements made on August 6, 2018—before the alleged customer service issues arose—about "positive" feedback Diplomat received from clients. (*See, e.g.*, *id.* at 9.) Again, however, not only do Plaintiffs fail to allege those statements were affirmatively false, Plaintiffs also fail to explain how they were misleading, given that Defendants never suggested that customer service issues or customer losses would not occur in the future.[9]

### C.     Certain Of The Alleged Misstatements Are Immaterial As A Matter Of Law.

As discussed in the Opening Brief, fifteen of the alleged misstatements are also, in whole or in part, inactionable statements of generic corporate optimism. (Defs.' Br. at 14–15.) Plaintiffs' arguments to the contrary (Pls.' Br. at 12–14) are baseless. To begin, Plaintiffs incorrectly claim Defendants' argument is "premature" at the motion to dismiss stage. (*Id.* at 12.) But courts within this District routinely hold that generic statements of corporate optimism are inactionable as a matter of law in granting motions to dismiss. *See, e.g.*, *Petri v. GeaCom, Inc.*, 2018 WL 1695367, at *6–8 (N.D. Ill. Apr. 6, 2018); *Van Noppen*, 136 F. Supp. 3d at 941–43; *Conlee v. WMS Indus.*,

---

[9] Nor do alleged misstatements regarding progress in the PBM integration create any such misleading misimpressions. For example, Plaintiffs take issue with the statement that "taking 2 legacy PBMs" and combining them into a single business "platform" has been going "extremely well." (Pls.' Br. at 2.) But that does not reasonably suggest that every aspect of the integration had gone smoothly, much less suggest that clients would be retained going forward.

*Inc.*, 2013 WL 1767648, at *6 (N.D. Ill. Apr. 24, 2013).[10]

Beyond that misstatement of law, Plaintiffs discuss only five of the alleged misstatements to argue that they should not be dismissed as inactionable optimism. (Pls.' Br. at 13 (citing CC ¶¶ 58(b), 65(d), 66, 69(a), 73(e)).) But Defendants never even argued that three of those statements—¶¶ 65(d), 66, and 73(e)—were generic statements of optimism. (*See* Defs.' Br. at 15.) And the other two—¶¶ 58(b) and 69(a)—are clearly inactionable. In both, Defendants made vague statements about the integration, saying they were "quite pleased" with the progress and it was going "very well." (CC ¶¶ 58(b), 69(a).) And while some of the statements mention client relationships, courts have repeatedly held that "broad claims by defendants regarding integration efforts and the customer experience overall are … non-actionable." *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1340 (10th Cir. 2012); *see also Fadia v. FireEye, Inc.*, 2016 WL 6679806, at *8–9 (N.D. Cal. Nov. 14, 2016) (listing a number of statements in the context of integration, including about customer wins, and holding each "are examples of non-actionable statements of corporate optimism and puffery").[11]

---

[10] Plaintiffs contend a drop in the Company's stock price demonstrates the materiality of every alleged misstatement Defendants identify as inactionable optimism. (Pls.' Br. at 12.) Not so. Plaintiffs cite no case in which a court held that statements of corporate optimism are actionable simply because a company's stock dropped; Plaintiffs' cases address fundamentally different, and far more concrete, alleged misstatements. *See In re Ulta Salon, Cosmetics & Flagrance, Inc. Sec. Litig.*, 604 F. Supp. 2d 1188, 1193 (N.D. Ill. 2009) (considering materiality of a prospectus reporting financial information); *Ala. Elec. Pension Fund v. Pharmacia Corp.*, 554 F.3d 342, 352 (3d Cir. 2009) (considering materiality of statements about a clinical study of a medication).

[11] Plaintiffs' cases (Pls.' Br. at 12–13) are not persuasive. In *Plumbers & Pipefitters Local Union No. 630 Pension-Authority Trust Fund v. Allscripts-Misys Healthcare Solutions, Inc.*, 778 F. Supp. 2d 858, 880 (N.D. Ill. 2011), the statement at issue was not generic and instead discussed a particular client. Two cases do not even address whether a statement is inactionable corporate optimism. *Carpenters Pension Tr. Fund for N. Cal. v. Allstate Corp.*, 2018 WL 1071442 (N.D. Ill. Feb. 27, 2018); *In re Neopharm Inc. Sec. Litig.*, 2003 WL 262369 (N.D. Ill. Feb. 7, 2003). And the others involve more precise statements. *See Lindelow v. Hill*, 2001 WL 830956, at *2 (N.D. Ill. July 20, 2001) (statements about strategy and goals); *In re First Chi. Corp. Sec. Litig.*, 769 F. Supp. 1444, 1452 (N.D. Ill. 1991) (statements included "tangible evidence" of confidence); *In re Allaire Corp. Sec. Litig.*, 224 F. Supp. 2d 319, 331–32 (D. Mass. 2002) ("precise statement as to the basis for profit growth").

9

**II.      The Opposition's Scienter Arguments Are Without Basis.**

Plaintiffs concede that they failed to allege particularized facts regarding what Defendants actually knew at the time of their alleged misstatements. Instead, Plaintiffs accuse Defendants of "point[ing] to what is missing," which they characterize as a "fallacy." (Pls.' Br. at 23–24.) That is not accurate. The Supreme Court has expressly held that "omissions and ambiguities"—*i.e.*, what is "missing" from a complaint—"count against inferring scienter." *Tellabs*, 551 U.S. at 310. Moreover, Plaintiffs' hodgepodge of circumstantial theories of scienter (Pls.' Br. at 17–23) is far outweighed by the competing inference of non-culpable conduct.

**A.      Plaintiffs' Circumstantial Scienter Theories Are Deficient.**

Because Plaintiffs complain of *omissions*, rather than affirmative misstatements, mere knowledge of omitted facts is insufficient—although such knowledge is a *necessary* predicate. Instead, Plaintiffs must allege facts giving rise to a strong inference that each Defendant "knew or should have known that their failure to disclose those facts *presented a danger of misleading buyers or sellers*." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*, 632 F.3d 751, 758 (1st Cir. 2011) (emphasis added) (alteration and quotation omitted); *see also Boeing*, 711 F.3d at 756 (recklessness in the scienter context is an "extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it" (alteration and quotation omitted)). Moreover, because Plaintiffs' claims are based upon omissions, no strong inference of scienter may be drawn in the absence of a "clear duty to disclose" the omitted information. *Kalnit v. Eichler*, 264 F.3d 131, 143–44 (2d Cir. 2001). The Opposition identifies no facts remotely suggesting defendants knew or should have known of a danger of misleading the market by omitting an amorphous trend of customer complaints and losses—particularly when, as discussed, any known client losses *were* disclosed. *See Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 107 (2d Cir. 2015) (affirming

10

dismissal based on alleged failure to disclose trend where the complaint "is silent about when employees realized that the more pessimistic assessments of the market were likely to come to fruition").

*Motive.* Plaintiffs' Opposition confirms that their theory of "motive" is that Defendants, operating in a highly acquisitive industry, sought to increase the Company's stock price to facilitate a transaction. (Pls.' Br. at 18.) The Second Circuit in *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187 (2d Cir. 2009)—a case that Plaintiffs make no effort to distinguish—rejected this theory, holding: "Such generalized desires fail to establish the requisite scienter because the desire to achieve the most lucrative acquisition proposal can be attributed to virtually every company seeking to be acquired or to acquire another." *Id.* at 201 (quotation omitted); *see also In re Bally Total Fitness Sec. Litig.*, 2006 WL 3714708, at *9 (N.D. Ill. July 12, 2006).[12] Moreover, the Opposition ignores the absence of any insider sales by Defendants during the Class Period[13] and illogical timing of the alleged fraud—both of which dull any inference of scienter. (*See* Defs.' Br. at 23 (collecting authority).)

Plaintiffs assert that the absence of a meaningful motive is of "little if any significance." (Pls.' Br. at 18 (quoting *Ross v. Career Educ. Corp.*, 2012 WL 5363431, at *11 (N.D. Ill. Oct. 30, 2012)).) But Plaintiffs take *Ross* out of context; what the court *actually* said is that motive was of

---

[12] Plaintiffs' reliance on earlier, pre-*Tellabs* decisions (Pls.' Br. at 18–19) is misplaced. In *Rothman v. Gregor*, the court held that the plaintiffs' motive allegations were "sufficiently particularized" because they identified an actual acquisition within the class period that the company paid for in-part using stock. 220 F.3d 81, 93 (2d Cir. 2000). Likewise, in *Danis v. USN Communications, Inc.*, the plaintiffs alleged a specific "scheme" by which the defendants tried to inflate the value of the company in order to make a "quick profit." 73 F. Supp. 2d 923, 940 (N.D. Ill. 1999). As one post-*Tellabs* court explained in rejecting *Danis*, the monetary benefit associated with completing a sale is "the underlying motive in most every action undertaken by a capitalistic business." *Stark Trading & Shepherd Inv. Int'l, Ltd. v. Falconbridge Ltd.*, 2008 WL 153542, at *11 (E.D. Wis. Jan. 14, 2008), *aff'd* 552 F.3d 568 (7th Cir. 2009).

[13] This stands in stark contrast with *Allstate* (cited in Pls.' Br. at *passim*), in which the company's CEO was alleged to have made "suspicious insider" sales during the alleged class period—including a $33 million sale representing "85% of his direct holdings." 2018 WL 1071442, at *2, *5.

11

little significance "where the *complaint's other allegations provide a strong basis to infer intent*." 2012 WL 5363431, at *11 (emphasis added). And, in any event, Seventh Circuit precedent is clear: "Without a motive to commit securities fraud, businessmen are unlikely to commit it." *Boeing*, 711 F.3d at 758; *see also ECA*, 553 F.3d at 199 ("[T]he strength of the circumstantial allegations must be correspondingly greater if there is no motive." (quotation omitted)).

*Positions/Core Operations*. Defendants' respective roles in the Company (Pls.' Br. at 19–21) are of no help to Plaintiffs. To say, as Plaintiffs do, that the allegedly false statements involve "core operations" simply begs the question of what was known (or knowable) and when—questions which the Complaint fails to answer. *See Zerger v. Midway Games, Inc.*, 2009 WL 3380653, at *10 (N.D. Ill. Oct. 19, 2009) ("Even assuming *arguendo* that Plaintiffs' [core operations] theory is viable in this circuit, … it leaves open the question of *when* anybody knew anything."). Defendants' positions do not, for example, establish that undisclosed future customer losses were known by November 6, 2018, the date of the last alleged misstatement.

Likewise, that Defendants may have attended meetings or had conversations with others in management (Pls.' Br. at 19) says nothing about what they might have learned during those discussions. *See Arbitrage Event-Driven Fund. v. Tribune Media Co.*, 2020 WL 60186, at *10 (N.D. Ill. Jan. 7, 2020); *Pierrelouis v. Gogo, Inc.*, 414 F. Supp. 3d 1164, 1175–76 (N.D. Ill. 2019) ("[N]ot only is mere receipt of reports insufficient to establish scienter, the inferential leap required to tie [such general allegations] to the conclusion that defendants acted knowingly or recklessly when presenting relevant information to the market is untenable given the heightened pleading standards [of the PSLRA]." (quotation omitted)).[14]

---

[14] Plaintiffs' reliance on certain Defendants having signed the Company's financial statements (Pls.' Br. at 23) employs the same inference—a presumed familiarity with the Company's operations—and thus suffers from the same deficiencies. Moreover, the Opposition does not discuss any purported accounting violation, nor do Plaintiffs respond to the Opening Brief (at 22–23 & n.10) regarding accounting policies.

12

Relatedly, Plaintiffs claim that the competing inference to the "core operations" doctrine is that Defendants "were not paying attention" to the PBM business. (Pls.' Br. at 21.) Not so. The competing inference is that Defendants did not learn of facts rendering their statements materially misleading when made because there were no such facts to be known. When customer losses *did* become known after November 6, 2018, Defendants disclosed them. (Defs.' Br. at 6–8.)[15]

***Scope and Severity***. Plaintiffs assert that it is "inconceivable" that Defendants were unaware of "the service failures and customer losses that drove Diplomat to the verge of bankruptcy." (Pls.' Br. at 22.) In doing so, Plaintiffs yet again seek to improperly collapse timeframes. The Company did not announce it was on the verge of bankruptcy until November 2019—*i.e.*, a full ***year*** after the last alleged misstatement. (*See* CC ¶¶ 105, 108.) And in any event, Plaintiffs' argument based on "magnitude of the loss … amount[s] to [an] allegation[] of 'fraud by hindsight,' which does not constitute securities fraud." *Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1247 (10th Cir. 2016); *see also* (Defs.' Br. at 22).

***Executive Departures***. As previously explained, executive departures strengthen an inference of scienter where a complaint contains particularized allegations to differentiate a

---

[15] Plaintiffs' cases on this topic are readily distinguishable. Several involved specific allegations of contemporaneous knowledge—including through the account of confidential witnesses (CWs)—that Plaintiffs here entirely lack. *See Schleicher v. Wendt*, 529 F. Supp. 2d 959, 972 (S.D. Ind. 2007) (complaint includes "specific details about … [CW's] bases of knowledge"); *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira*, 2013 WL 566805, at *25 (N.D. Ill. Feb. 13, 2013) (management met with "every plant manager and plant quality control manager from around the word" to discuss issues); *Ulta*, 604 F. Supp. 2d at 1196 (weekly memoranda); *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 711–12 (7th Cir. 2008) (twenty six CWs); *Ross*, 2012 WL 5363431, at *9, 11 (CWs' statements that "everyone," including the CEO, was "informed directly" of issues); *City of Lakeland Emps. Pension Plan v. Baxter Int'l Inc.*, 2012 WL 607578, at *5 (N.D. Ill. Jan. 23, 2012) (CW allegations set forth knowledge "with specificity"); *Silverman v. Motorola, Inc.*, 2008 WL 4360648, at *14 (N.D. Ill. Sept. 23, 2008) (eight CWs). In others, the court relied on allegations that defendants sold company stock at inflated prices, a feature not present here. *See Desai v. Gen. Growth Props. Inc.*, 654 F. Supp. 2d 836, 860–61 (N.D. Ill. 2009); *Asher v. Baxter Int'l., Inc.*, 2005 WL 331572, at *8–9 (N.D. Ill. Feb. 3, 2005). Plaintiff's other cases pre-date *Tellabs* and did not consider opposing inferences. *E.g.*, *In re Motorola Sec. Litig.*, 2004 WL 2032769, at *29 (N.D. Ill. Sept. 9, 2004) (concluding scienter was "conceivable").

13

suspicious personnel change from a benign one, the latter of which is commonplace following the announcement of poor results. (Defs.' Br. at 24–25 (collecting authority).) Plaintiffs neither challenge this legal proposition nor identify any such particularized facts. To the contrary, the Opposition reiterates that executive departures coincided with the announcement of poor results. (Pls.' Br. at 22–23.) That does not suffice. *Kurtzman v. Compaq Computer Corp.*, 2000 WL 34292632 (S.D. Tex. Dec. 12, 2000), on which Plaintiffs rely, makes this exact point. *Id.* at *45, 48 (scienter allegations were "deficien[t]" where executive's resignation "could reasonably appear to be motivated by a sense of inadequacy for the job").[16]

### B. The Inference Of Non-Culpable Conduct Is Stronger Than Plaintiffs' Competing Inference.

In *Tellabs*, the Supreme Court explained that "in determining whether the pleaded facts give rise to a 'strong' inference of scienter, *the court must take into account plausible opposing inferences*." 551 U.S. at 323 (emphasis added). Plaintiffs nonetheless claim that Defendants' arguments are "premature" because they emphasize a non-fraudulent "innocent interpretation." (Pls.' Br. at 24.) But *Tellabs requires* this Court to consider such an "innocent interpretation" at this stage, and evaluate whether it is stronger than the inference Plaintiffs seek. Here, it is clear that a non-culpable inference is far stronger than any "culpable" inference: Defendants repeatedly disclosed customer losses as they occurred, and also disclosed that they had limited visibility into success of the 2019 selling season.[17] Such disclosures are entirely at odds with an intent to deceive

---

[16] Plaintiffs selectively quote from the section of *Kurtzman* discussing the *plaintiffs' argument*, apparently without realizing that the court *rejected* that argument. (*See* Pls.' Br. at 23 n.9.) Plaintiffs' other cases are also inapposite. In *Ross*, the court emphasized an executive's resignation "given the complaint's *additional allegations regarding [his] knowledge* of improper practices." 2012 WL 5363431, at *10 (emphasis added). Likewise, in *In re Akorn, Inc. Securities Litigation*, the court relied on *Ross* and considered a resignation only as "reinforcing the case for scienter" (as did SEC and DOJ investigations). 240 F. Supp. 3d 802, 820 (N.D. Ill. 2017).

[17] Plaintiffs argue that the seasonality of the PBM selling season—and the fact that customer decisions not to renew their contracts were not made until late 2018 and early 2019—is a veiled attempt to contest

14

the market into believing that customer losses would not occur.

In response, Plaintiffs argue the Defendants erred by not considering the scienter allegations holistically. (Pls.' Br. at 17–18.) But once again, Plaintiffs are wrong. Defendants addressed Plaintiffs' circumstantial allegations head-on and explained why, considered holistically, they do not support a strong inference of scienter. (Defs.' Br. at 21–25.) It makes no difference that Defendants addressed the various theories in separate, logically organized subsections of their brief. Indeed, Plaintiffs organize their brief in the same way. (*See* Pls.' Br. at 18–23.) As the Third Circuit has explained, there is no "need to explain at length that the *total* weight of [the] allegations was also scant" after providing "a lengthy discussion as to why *each* scienter-related allegation add[s] little, if anything, to plaintiffs side of the scienter scale." *City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*, 442 F. App'x 672, 675 (3d Cir. 2011) ("[I]t does not take much to explain that zero plus zero equals zero.").

## CONCLUSION

For the foregoing reasons and those stated in Defendants' Opening Brief, the Complaint should be dismissed with prejudice.

---

facts. (Pls.' Br. at 24.) Not so. The timing of the PBM selling season is evident from the very documents that the Complaint cites to and quotes from extensively. (Defs.' Br. at 5; *see, e.g., id.* (September 2018: "unique characteristics" of the PBM marketplace, in which "decisions are typically made until much, much later in the year," result in not having "visibility … until really deep into the year").) Though Plaintiffs claim that the PBM selling season was not "compressed" at year end because Diplomat disclosed certain customer losses earlier in the year (Pls.' Br. at 24), that does not mean that *every* client made decisions at year end. Plaintiffs also claim that Defendants admitted the PBM Business "tends to be a very stable, very predictable business." (Pls.' Br. at 24; *see* CC ¶ 131.) Plaintiffs remove this quote from context. Mr. Kavthekar was *not* talking about client gains and losses. Rather, he was discussing the profit profile of the PBM business quarter-to-quarter over "the remainder of the year"—that is, the remainder of 2018. (Ex. D, 5/18/18 Call Tr. at 8.) And, in fact, reported PBM profits *were* consistent during 2018. (*See* Ex. K, 3/15/19 Form 8-K at 16.) The customer losses that form the heart of Plaintiffs' allegations impacted the Company's outlook for *future* periods, *i.e.*, in 2019 and onward. (*See* Defs.' Br. at 7 & n.2.)

15

Dated: July 23, 2020

Respectfully submitted,

/s/ James W. Ducayet
_____

James W. Ducayet (IL Bar # 6236997)
Nilofer I. Umar (IL Bar # 6297810)
Nicholas K. Tygesson (IL Bar # 6314168)
Andrew F. Rodheim (IL Bar # 6327514)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000
Fax: (312) 853-7036
jducayet@sidley.com
numar@sidley.com
ntygesson@sidley.com
arodheim@sidley.com

*Counsel for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 23, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Nicholas K. Tygesson*

Nicholas K. Tygesson
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000
Fax: (312) 853-7036
ntygesson@sidley.com

*Counsel for Defendants*