# Exhibit A

In the
# United States Court of Appeals
### For the Seventh Circuit

———————————

No. 20-3258

CITY OF TAYLOR POLICE AND FIRE RETIREMENT SYSTEM, on behalf of a class,

*Plaintiff-Appellant*,

*v.*

ZEBRA TECHNOLOGIES CORPORATION, ANDERS GUSTAFSSON, and MICHAEL C. SMILEY,

*Defendants-Appellees*.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 19 C 5782 — **Harry D. Leinenweber**, *Judge*.

———————————

ARGUED MAY 18, 2021 — DECIDED AUGUST 10, 2021

———————————

Before EASTERBROOK, BRENNAN, and SCUDDER, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. The City of Taylor Police and Fire Retirement System contends that Zebra Technologies Corporation defrauded investors by making bad predictions during a corporate consolidation. Zebra manufactures commercial electronics such as barcode scanners and receipt

printers. In 2014 it acquired a division of Motorola Solutions, Inc., that had a similar line of products. Zebra began to integrate Motorola's assets and operations with its own. Initially Zebra's executives touted the savings expected from the combination and announced that the process was "progressing as planned." But consolidation proved more onerous than anticipated, leading to expenditure of an additional $200 million and a decline in Zebra's share price.

The Retirement System filed this suit under §10(b) of the Securities Exchange Act, 15 U.S.C. §78j(b), and 17 C.F.R. §240.10b-5, seeking to represent a class that purchased Zebra's stock between November 2014 and November 2015. The Retirement System asserts that Zebra, CEO Anders Gustafsson, and CFO Michael Smiley duped investors by knowingly issuing false statements about the integration of Motorola's assets with Zebra's. The district judge dismissed the complaint, finding that the Retirement System failed to state an adequate §10(b) claim and did not satisfy the pleading requirements of the Private Securities Litigation Reform Act. 2020 U.S. Dist. LEXIS 191627 (N.D. Ill. Oct. 16, 2020).

The Retirement System's complaint identifies a variety of asserted misrepresentations. Some consist of optimistic projections. When the acquisition closed, Zebra predicted that the "synergies" of combining Motorola's assets with Zebra's would yield substantial recurring savings. The Retirement System complains that Zebra did not qualify that forecast with the ongoing costs of integration. Later, as consolidation was underway, Zebra projected a gross profit margin of between 45.5 and 46.5 percent for the second quarter of 2015. The actual margin turned out to be 44.2 percent. The complaint also contends that Zebra's executives knew about

issues plaguing integration but told investors that all was well with the process. Most notably, in March 2015, Gustafsson represented that integration was "progressing as planned."

Rule 10b-5 forbids the inclusion in a securities disclosure of "any untrue statement of a material fact". The complaint does not identify any such statement. Consider Zebra's cost-savings estimates. The Retirement System does not allege that those estimates are untrue; rather, it contends that they are misleading when not coupled with more information about the ongoing costs of consolidation. But why should that be? Just as stocks and flows differ, the one-time expenses of integration are categorically distinct from recurring savings gained by melding similar businesses. As we have held, the Securities Exchange Act does not impose a "duty of total corporate transparency". *City of Livonia Employees' Retirement System v. Boeing Co.*, 711 F.3d 754, 759 (7th Cir. 2013). A corporation need not couple each piece of good news with disclosure of some tangential difficulty.

Zebra's profit-margin projection also falls short of fraud. The Securities Exchange Act does not demand perfection from forecasts, which are inevitably inaccurate. "[S]ecurities laws encourage companies to make public predictions of future performance to assist investors in estimating a firm's future value." *Arazie v. Mullane*, 2 F.3d 1456, 1465 (7th Cir. 1993), citing *Wielgos v. Commonwealth Edison Co.*, 892 F.2d 509, 513–14 (7th Cir. 1989). For that reason, the Private Securities Litigation Reform Act exempts certain forward-looking statements from liability. 15 U.S.C. §78u–5. According to the complaint, Zebra's forecast missed the actual profit margin by just over one percentage point. A near miss of that sort is a long way from fraud.

Finally, the Retirement System complains that CEO Gustafsson stated that integration was "progressing as planned." The district judge concluded that this statement is puffery. Several circuits, including ours, have held that non-specific puffery is not actionable under Rule 10b-5. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 746 (7th Cir. 1997) (collecting cases). Gustafsson's statement did not make any concrete assertion; it expressed only vague optimism. And it cannot be called false: the consolidation continued throughout the class period. Although the cost proved higher than expected, Zebra achieved the goal of consolidating its operations with Motorola's.

The Retirement System faces another obstacle. Even if any of Zebra's statements could be deemed a material falsehood, the complaint must satisfy the Private Securities Litigation Reform Act. One provision requires plaintiffs to "state with particularity facts giving rise to a strong inference" that defendants spoke with intent to deceive (the scienter required in a fraud suit). 15 U.S.C. §78u–4(b)(2)(A). A plaintiff must do more than tell a possible or even plausible story about a defendant's intent. Rather, the plaintiff must "plead facts rendering an inference of scienter *at least as likely as* any plausible opposing inference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 328 (2007) (emphasis in original).

Consider two competing inferences from the facts alleged in the Retirement System's complaint. As plaintiff tells the tale, Zebra's executives knew early in the process that consolidation would be costlier and more difficult than anticipated. Rather than disclosing difficulties or simply saying nothing, Gustafsson and Smiley chose to hoodwink investors into thinking that integration was seamless. (Why they would opt for that strategy, when it would conceal the increased costs

No. 20-3258                                                  5

for only a few months, is a mystery.) But one can tell a different story: when consolidation began, Gustafsson and Smiley had only limited information about the inner workings of Motorola. Difficulties in melding the companies' operations would come to light only over time. In this account, their early positive statements stemmed not from fraudulent intent but limited knowledge and optimism. The process did not proceed as smoothly as they hoped, and Zebra later disclosed these difficulties.

The second inference offers a better fit for the facts alleged in the complaint. The sequence of Zebra's statements comports with a company learning about difficulties over time. On a March 2015 conference call, in the early months of the process, Gustafsson announced in general terms that the "integration is progressing as planned." That statement was not unqualified: an SEC Form 10-Q filed that same month warned that absorbing Motorola's assets may not be "performed timely and effectively" and could "adversely affect Zebra's business." True to that warning, Gustafsson stated in November 2015 that "the complexity of the IT systems has been greater than we had expected." The following year, he further elaborated that because Motorola's systems were "different than what we had expected", integrating them with Zebra's entailed more labor than anticipated. The plaintiff asserts that later specificity proves earlier obfuscation. But a more sensible inference is that more information was available to Zebra's executives in November 2015 than in March 2015.

The plausibility of potential inferences depends on context. An inference of scienter may be warranted when a corporate executive communicates false retrospective information to investors. Typically, an executive will be privy to

good historical information about the inner workings of her own corporation. As a result, securities law demands precision from retrospective disclosures. But an ongoing corporate consolidation is a different matter. Executives possess only limited information about the internal operations of other corporations. Gustafsson and Smiley would have known comparatively little about Motorola's operations until consolidation was underway, and the full extent of any roadblocks would take time to come to light. Retrospective disclosures can be precise and so they must be. The same standards do not apply to statements about an ongoing process.

Suppose we deemed §10(b) to require a complete accounting of difficulties as they emerged during a merger or acquisition. That duty would open a corporation to a new swathe of securities claims. Attempting to tally and predict the costs of consolidation while consolidation is ongoing would be a risky business. Guess too high and the company might unnecessarily drive down stock prices; guess too low and the company might be accused of fraudulent misrepresentation. Alternatively, perhaps Zebra could have indicated at the outset that it was setting aside a sum for contingencies. Investors would still demand regular updates about how much of the fund had been spent. Securities law does not force corporations into this sort of no-win circumstance.

Retrospective disclosures can and should be precise because corporations generally possess good information about completed operations. The law tolerates greater imprecision from forecasts because predicting the future is an uncertain enterprise. So too is speaking about a developing process, especially when another corporation's assets are involved. Zebra made retrospective disclosures about the difficulties it

No. 20-3258                                                    7

encountered (and surmounted) when integrating Motorola's assets, but none has been challenged. Instead, the Retirement System elected to challenge only statements made before or during integration. The fatal flaw of the Retirement System's suit is that it seeks to apply rules covering retrospective statements to ongoing developments. Unexpected difficulties that crop up in any corporate consolidation are a business problem, not a securities problem. Because the plaintiff has failed to state a viable claim under the Securities Exchange Act, the district court's dismissal must be

AFFIRMED.