UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| CHASE MORTIMER, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Case No. 1:19-cv-01735 **(Consolidated)** |
| Plaintiff, | ) ) | <u>CLASS ACTION</u> |
| vs. | ) ) | Honorable John F. Kness |
| DIPLOMAT PHARMACY, INC., et al., | ) ) ) | |
| Defendants. | ) ) ) | |

AMENDED STIPULATION OF SETTLEMENT

4855-6384-3595.v1

This Amended Stipulation of Settlement, dated January 24, 2022 (the "Stipulation"), is made and entered into by and among the following Settling Parties (as defined further in Section III hereof) to the above-entitled Litigation: (i) Lead Plaintiff Iron Workers Local No. 25 Pension Fund ("Pension Fund" or "Lead Plaintiff") (on behalf of itself and each of the Class Members), by and through its counsel of record in the Litigation; and (ii) Defendants Diplomat Pharmacy, Inc. ("Diplomat" or the "Company"), Jeffrey Park, Joel Saban, Atul Kavthekar, and Brian Griffin, by and through their counsel of record in the Litigation. The Stipulation is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims, upon and subject to the terms and conditions hereof.

## I.  THE LITIGATION

On March 12, 2019, the initial complaint in this consolidated action was filed in the United States District Court for the Northern District of Illinois as a securities fraud class action on behalf of purchasers of Diplomat securities. On May 1, 2019, the Honorable Virginia M. Kendall entered an order consolidating Civil Action Nos. 19-cv-2631 and 19-cv-2635 with this action. This action is referred to herein as the "Litigation."

On July 19, 2019, Judge Kendall appointed the Pension Fund as lead plaintiff pursuant to §21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and approved Lead Plaintiff's selection of Robbins Geller Rudman & Dowd LLP as lead counsel.

The operative complaint in the Litigation is the Consolidated Complaint for Violations of the Federal Securities Laws (the "Complaint") filed on December 6, 2019. The Complaint alleges violations of §§10(b) and 20(a) of the Exchange Act on behalf of a class of all purchasers of Diplomat common stock between February 26, 2018 and November 11, 2019, inclusive. Among other things, the Complaint alleges violations of the Exchange Act premised on alleged false and

misleading statements that portrayed Diplomat's acquisition and integration of two pharmacy benefit managers ("PBMs") as a success that was growing the PBM business while concealing and omitting to disclose integration and service failures that were leading to customer complaints and losses. Lead Plaintiff alleges that the false and misleading statements artificially inflated Diplomat's stock price and when the truth was eventually disclosed, the price of Diplomat stock declined, resulting in substantial damages to the Class.

On February 7, 2020, Defendants moved to dismiss the Complaint. Lead Plaintiff opposed the motion. The motion was fully briefed in July 2020 and remains pending.

In March 2021, the parties to the Litigation commenced mediation efforts presided over by the Hon. William Cahill (Ret.). The parties participated in an all-day mediation session with Judge Cahill on March 1, 2021, but did not reach an agreement. On October 25, 2021, the parties participated in another mediation session with Judge Cahill, but again did not reach an agreement. Later that day, Judge Cahill issued a "mediator's proposal" to settle the Litigation for $15.5 million, which the parties accepted.

## II. ASSERTIONS AND DENIALS OF THE SETTLING PARTIES AND THE BENEFITS OF THE SETTLEMENT

Lead Plaintiff and Lead Counsel believe that the claims asserted in the Litigation have merit and that the evidence developed to date supports the claims. Lead Plaintiff and Lead Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Litigation against Defendants through trial and through appeals. Lead Plaintiff and Lead Counsel have also taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as the Litigation, as well as the difficulties and delays inherent in such litigation. Lead Plaintiff and Lead Counsel are also mindful of the problems of proof, and possible defenses to the securities law violations asserted in the Litigation. Lead Plaintiff and Lead Counsel

- 2 -

believe that the Settlement set forth in this Stipulation confers substantial benefits upon Class Members in light of the circumstances here, is in the best interests of Lead Plaintiff and Class Members, and is fair, reasonable, and adequate.

Defendants, individually and collectively, have denied and continue to deny each and all of the claims and contentions alleged in the Litigation. Defendants expressly have denied and continue to deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Litigation. Defendants further deny that Lead Plaintiff or the Class have suffered damages, that the price of Diplomat common stock was artificially inflated during the Class Period as the result of any alleged misrepresentations, omissions, or non-disclosures by Defendants, and that any Diplomat investors were harmed by the conduct alleged in the Complaint. In addition, Defendants maintain that they have meritorious defenses to all claims alleged in the Litigation.

Nonetheless, Defendants have concluded that further conduct of the Litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation. Defendants also considered the uncertainty and risks inherent in any litigation, especially in complex cases like the Litigation. Defendants have, therefore, determined that it is desirable and beneficial to them to settle the Litigation in the manner and upon the terms and conditions set forth in this Stipulation.

## III. TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Lead Plaintiff, acting on behalf of itself and all Class Members, and Defendants, by and through their respective counsel or attorneys of record, that, subject to the approval of the Court, the Litigation, the Released Claims, and all matters encompassed within the scope of the releases set forth or referenced in this Stipulation shall be finally, fully, and forever compromised, settled, released,

resolved, relinquished, waived, discharged, and dismissed, and the Litigation shall be dismissed on the merits and with prejudice as to all Settling Parties, upon and subject to the terms and conditions of the Stipulation, as follows.

1.    **Definitions**

As used in this Stipulation, the following terms have the meanings specified below:

1.1    "Authorized Claimant" means any Class Member whose claim for recovery has been allowed pursuant to the terms of the Stipulation.

1.2    "Claimant" means any Class Member who files a Proof of Claim in such form and manner, and within such time, as the Court shall prescribe.

1.3    "Claims Administrator" means Gilardi & Co. LLC.

1.4    "Class," "Class Members," or "Members of the Class" means all Persons who purchased Diplomat common stock from February 26, 2018 through and including November 11, 2019, and were damaged thereby. Excluded from the Class are Defendants, the current and Class Period officers and directors of the Company, the members of the immediate families and the legal representatives, affiliates, heirs, successors-in-interest, or assigns of any excluded person, and any entity in which such excluded persons have or had a controlling interest. Also excluded from the Class are those Persons who timely and validly request exclusion from the Class pursuant to the Notice.

1.5    "Class Period" means the period between February 26, 2018 and November 11, 2019, inclusive.

1.6    "Complaint" means the Consolidated Complaint for Violations of the Federal Securities Laws, filed in the Litigation on December 6, 2019.

1.7    "Court" means the United States District Court for the Northern District of Illinois, Eastern Division.

- 4 -

4855-6384-3595.v1

1.8    "Defendants" means Diplomat, Jeffrey Park, Joel Saban, Atul Kavthekar and Brian Griffin.

1.9    "Effective Date" means the first date by which each of the conditions specified in ¶8.1 of the Stipulation have occurred or have been waived.

1.10    "Escrow Account" means the interest-bearing account controlled by the Escrow Agent into which Defendants shall deposit or cause their insurance carriers to deposit the sum of $15,500,000 on behalf of Defendants.

1.11    "Escrow Agent" means the law firm of Robbins Geller Rudman & Dowd LLP, or its successor(s).

1.12    "Fee and Expense Application" shall have the meaning set forth in ¶7.1 of this Stipulation.

1.13    "Fee and Expense Award" shall have the meaning set forth in ¶6.2(c) of this Stipulation.

1.14    "Final" means when the last of the following with respect to the Judgment approving the Stipulation, in the form of Exhibit B attached hereto, shall occur: (i) the expiration of the time to file a motion to alter or amend the Judgment under Federal Rule of Civil Procedure 59(e) has passed without any such motion having been filed; (ii) the expiration of the time in which to appeal the Judgment has passed without any appeal having been taken, which date shall be deemed to be thirty (30) days following the entry of the Judgment, unless the date to take such an appeal shall have been extended by Court order or otherwise, or unless the thirtieth (30th) day falls on a weekend or a Court holiday, in which case the date for purposes of this Stipulation shall be deemed to be the next business day after such thirtieth (30th) day; and (iii) if a motion to alter or amend the Judgment under Federal Rule of Civil Procedure 59(e) is filed or if an appeal is taken, immediately after the determination of that motion or appeal so that it is no longer subject to any further judicial review or

- 5 -

appeal whatsoever, whether by reason of affirmance by a court of last resort, lapse of time, voluntary dismissal of the appeal or otherwise, and in such a manner as to permit the consummation of the Settlement in accordance with the terms and conditions of this Stipulation. For purposes of this paragraph, an "appeal" shall include any petition for a writ of certiorari or other writ or request for judicial review that may be filed in connection with approval or disapproval of this Settlement, but shall not include any appeal that concerns only the issue of attorneys' fees and costs or expenses or the Plan of Allocation of the Settlement Fund.

1.15 "Final Approval Hearing" means the hearing to determine whether the proposed Settlement embodied by this Stipulation is fair, reasonable, and adequate to the Class, and whether the Court should enter a Judgment approving the proposed Settlement.

1.16 "Judgment" means the judgment to be rendered by the Court, in the form attached hereto as Exhibit B, or such other substantially similar form mutually agreed to by the Settling Parties.

1.17 "Lead Counsel" means Robbins Geller Rudman & Dowd LLP.

1.18 "Lead Plaintiff" means Iron Workers Local No. 25 Pension Fund.

1.19 "Litigation" shall have the meaning set forth in Section I of this Stipulation.

1.20 "Net Settlement Fund" shall have the meaning set forth in ¶6.2(d) of this Stipulation.

1.21 "Notice" shall have the meaning set forth in ¶4.1 of this Stipulation.

1.22 "Notice Order" means the preliminary approval order as entered by the Court for mailing and publication of notice.

1.23 "Person" means a natural person, individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives or assignees.

- 6 -

1.24    "Plaintiffs" means Lead Plaintiff and named plaintiff Eugene Klabak.

1.25    "Plaintiffs' Counsel" means Lead Counsel; Holzer & Holzer, LLC; Sullivan, Ward Asher & Patton, P.C.; AsherKelly; and Hessian & McKasy P.A.

1.26    "Plan of Allocation" means a plan or formula of allocation of the Settlement Fund whereby the Settlement Fund shall be distributed to Authorized Claimants after payment of expenses of notice and administration of the Settlement, Taxes and Tax Expenses, and such attorneys' fees, costs, expenses, and interest as may be awarded by the Court.  Any Plan of Allocation is not part of this Stipulation and Defendants and their Related Parties shall have no responsibility therefore or liability with respect thereto.

1.27    "Proof of Claim" shall have the meaning set forth in ¶5.2 of this Stipulation.

1.28    "Related Parties" means each of a Defendant's past or present directors, officers, employees, partners, insurers, co-insurers, reinsurers, principals, controlling shareholders, members, agents, administrators, attorneys, accountants, auditors, bankers, underwriters, investment advisors, personal or legal representatives, predecessors, successors, direct and/or indirect parents, subsidiaries, divisions, joint ventures, partnerships, limited liability companies, affiliates, assigns, spouses, heirs, estates, related or affiliated entities, any entity in which a Defendant has a controlling interest, any member of a Defendant's immediate family, any trust of which a Defendant is the settlor or which is for the benefit of a Defendant and/or any member of a Defendant's immediate family, and any entity in which a Defendant and/or any member of a Defendant's immediate family has or had a controlling interest (directly or indirectly).

1.29    "Released Claims" shall collectively mean any and all claims (including Unknown Claims as defined in ¶1.40 hereof), rights, demands, liabilities or causes of action of every nature and description whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses, or liabilities whatsoever), to

- 7 -

the fullest extent that the law permits their release in this action, by or on behalf of Lead Plaintiff or any other Class Members against any of the Released Parties that have been alleged or could have been alleged in this action (or in any forum or proceeding or otherwise), whether based on federal, state, local, statutory, or common law or any other law, rule, or regulation, whether known claims or Unknown Claims, whether class, representative, or individual in nature, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, whether at law or in equity, matured or unmatured, that are based on, relate to, or arise out of both (i) the allegations, transactions, facts, matters, events, disclosures, statements, occurrences, circumstances, representations, conduct, acts, or omissions or failures to act that have been or could have been alleged or asserted in the Litigation, and (ii) Lead Plaintiff's or any other Class Member's purchase of Diplomat common stock during the Class Period. Released Claims do not include any derivative or ERISA claims or claims to enforce the terms of the Settlement.

      1.30    "Released Parties" means each and all of the Defendants, and each and all of their respective Related Parties.

      1.31    "Settlement" means the settlement contemplated by this Stipulation.

      1.32    "Settlement Amount" shall have the meaning set forth in ¶2.1 of this Stipulation.

      1.33    "Settlement Fund" means the principal amount of Fifteen Million Five Hundred Thousand U.S. Dollars ($15,500,000), plus any accrued interest earned thereon.

      1.34    "Settling Parties" means, collectively, Lead Plaintiff, on behalf of itself and each of the Class Members, and the Defendants.

      1.35    "Stipulation" means this Stipulation of Settlement, including the recitals and Exhibits hereto.

      1.36    "Summary Notice" shall have the meaning set forth in ¶4.1 of this Stipulation.

1.37    "Supplemental Agreement" shall have the meaning set forth in ¶8.4 of this Stipulation.

1.38    "Taxes" means all taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund.

1.39    "Tax Expenses" means expenses and costs incurred in connection with the calculation and payment of taxes or the preparation of tax returns and related documents, including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in ¶2.8 hereof.

1.40    "Unknown Claims" means collectively any Released Claims that Lead Plaintiff or Class Members do not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties which, if known by him, her or it, might have affected such Class Member's settlement or decisions with respect to the Settlement, including, but not limited to, the release of the Released Parties or the decision not to object to or opt out of this Settlement.  With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Lead Plaintiff and Defendants shall expressly waive, and each of the Class Members shall be deemed to have waived, and by operation of the Judgment shall have expressly waived, any and all provisions, rights, and benefits conferred by the law of any state or territory or other jurisdiction or principle of common law or foreign law that is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party**.

Lead Plaintiff and Class Members may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the

Released Claims, but Lead Plaintiff shall expressly fully, finally, and forever settle and release, and each Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released, any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. Lead Plaintiff and Defendants acknowledge, and Class Members shall be deemed by operation of law (including by operation of the Judgment) to have acknowledged, that the foregoing waiver was separately bargained for and is a key element of the Settlement.

## 2. The Settlement

### a. The Settlement Fund

2.1   In consideration of the terms of this Stipulation, Defendants shall pay or cause their insurers to pay the sum of $15,500,000 (the "Settlement Amount") into the Escrow Account no later than fifteen (15) business days after the later of (a) entry of the Court's order preliminarily approving the Settlement or (b) the receipt by Defendants' counsel of wire/check payee instructions and a Form W-9 providing the tax identification number for the Escrow Account.

2.2   The payment described in ¶2.1 is the only payment to be made by or on behalf of Defendants in connection with this Settlement.

### b. The Escrow Agent

2.3   The Escrow Agent shall invest the Settlement Amount deposited pursuant to ¶2.1 hereof in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof and shall reinvest the proceeds of

- 10 -

these instruments as they mature in similar instruments at their then-current market rates. The Settlement Fund shall bear all risks related to the investments of the Settlement Amount.

2.4     The Escrow Agent shall not disburse the Settlement Fund except as provided in this Stipulation, by an order of the Court, or with the written agreement of Lead Counsel and Defendants' counsel.

2.5     Subject to further order and/or direction as may be made by the Court, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of the Stipulation. The Released Parties shall have no responsibility for, interest in, or liability whatsoever with respect to, the actions of the Escrow Agent, or any transaction executed by the Escrow Agent.

2.6     All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Stipulation and/or further order(s) of the Court.

2.7     Notwithstanding the fact that the Effective Date has not yet occurred, Lead Counsel may pay from the Settlement Fund the costs and expenses reasonably and actually incurred in connection with providing notice to the Class, locating Class Members, administering and distributing the Net Settlement Fund to Authorized Claimants and processing Proofs of Claim. In the event that the Settlement does not become Final, any money paid or incurred for the above purposes, including any related fees, shall not be returned or repaid to Defendants or their insurers. Defendants are not responsible for, and shall not be liable for, any costs incurred in connection with providing notice to the Class, locating Class Members, administering and distributing the Settlement Fund, or processing Proofs of Claim.

c.     **Taxes**

2.8     (a)     The Settling Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1. In

- 11 -

addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶2.8, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b)     For the purpose of §1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)). Such returns (as well as the election described in ¶2.8(a) hereof) shall be consistent with this ¶2.8 and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶2.8(c) hereof.

(c)     All (i) Taxes (including any estimated Taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (ii) Tax Expenses shall be paid out of the Settlement Fund; in no event shall the Released Parties have any responsibility for, or liability whatsoever with respect to, the Taxes or the Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to

- 12 -

Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(l)(2)); the Released Parties are not responsible therefor nor shall they have any liability with respect thereto. The Settling Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this paragraph.

(d)     Except as required by ¶2.1 concerning payment of the Settlement Amount and subject to ¶¶2.9 and 6.1 below, the Released Parties are not responsible for Taxes, Tax Expenses, costs and expenses reasonably and actually incurred in connection with providing notice to the Class, locating Class Members, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, processing Proofs of Claim, or paying escrow fees and costs, nor shall they be liable for any claims with respect thereto.

### d.     Termination of the Settlement

2.9     In the event that the Stipulation is not approved, or is terminated, canceled, or fails to become effective for any reason, the Settlement Amount, including accrued interest, less the expenses and Taxes described in ¶¶2.7 and 2.8 hereof actually incurred or due and owing, shall be refunded to such Persons that paid the Settlement Amount pursuant to written instructions from Defendants' counsel.

### 3.     Certification of the Class

3.1     Solely for purposes of this Settlement, and subject to approval by the Court, the Settling Parties agree that the Class shall be certified and Plaintiffs and Lead Counsel shall be appointed as representatives of the Class pursuant to Federal Rule of Civil Procedure 23. Should the Class not be certified, or should any court amend the scope of the Class, each of the Settling Parties reserves the right to void this Stipulation in accordance with ¶8.5 hereof.

- 13 -

**4.      Notice Order and Final Approval Hearing**

4.1      Once executed, the Settling Parties shall promptly submit the Stipulation together with its Exhibits to the Court and shall apply for entry of the Notice Order, in the form of Exhibit A attached hereto, or such other substantially similar form mutually agreed to by the Settling Parties, requesting, *inter alia*, the preliminary approval of the Settlement set forth in the Stipulation, and approval for mailing a settlement notice ("Notice"), in the form of Exhibit A-1 attached hereto, or such other substantially similar form agreed to by Lead Counsel and Defendants' counsel, and publication of a summary notice ("Summary Notice"), in the form of Exhibit A-3 attached hereto, or such other substantially similar form agreed to by Lead Counsel and Defendants' counsel.  The Notice shall include the general terms of the Settlement set forth in the Stipulation, the proposed Plan of Allocation, the general terms of the Fee and Expense Application as defined in ¶7.1 below, and the date of the Final Approval Hearing.

4.2      Within ten (10) calendar days of entry of the Notice Order, Diplomat shall provide to the Claims Administrator, at no cost to Lead Plaintiff or the Class, reasonably available transfer records in electronic searchable form, such as Excel, containing the names and addresses of registered owners of Diplomat common stock between February 26, 2018 and November 11, 2019, inclusive.  It shall be solely Lead Counsel's responsibility to disseminate the Notice and Summary Notice to the Class in accordance with this Stipulation and as ordered by the Court.  Class Members shall have no recourse as to the Released Parties with respect to any claims they may have that arise from any failure of the notice process.

4.3      Diplomat shall no later than ten (10) calendar days following the filing of this Stipulation with the Court serve or cause to be served proper notice of the proposed Settlement upon those who are entitled to receive notice pursuant to the Class Action Fairness Act of 2005, 28 U.S.C.

- 14 -

§1715, *et seq.* ("CAFA").  Diplomat is solely responsible for the costs of the CAFA notice and administering the CAFA notice.

4.4     The Settling Parties shall request that after notice is given and not earlier than ninety (90) calendar days after the later of the dates on which the appropriate Federal official and the appropriate State officials are provided with notice pursuant to CAFA as set forth in ¶4.3 above, the Court hold a Final Approval Hearing and approve the Settlement of the Litigation as set forth herein. At or after the Final Approval Hearing, Lead Counsel also will request that the Court approve the proposed Plan of Allocation and the Fee and Expense Application.

**5.     Releases**

5.1     Upon the Effective Date, without any further action by anyone, Lead Plaintiff, and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, compromised, settled, resolved, waived, discharged, and dismissed on the merits with prejudice all Released Claims against the Released Parties, whether or not such Class Member executes and delivers a Proof of Claim.  The releases and waivers contained in this section were separately bargained for and are essential elements of this Stipulation and the Settlement.

5.2     The Proof of Claim and Release form ("Proof of Claim") to be executed by Class Members shall release all Released Claims against the Released Parties and shall be substantially in the form contained in Exhibit A-2 attached hereto, or such other substantially similar form mutually agreed to by Lead Counsel and Defendants' counsel.

5.3     Upon the Effective Date, Lead Plaintiff and all Class Members and anyone claiming through or on behalf of any of them, are forever barred and enjoined from commencing, instituting, or continuing to prosecute any action or proceeding in any court of law or equity, arbitration

- 15 -

4855-6384-3595.v1

tribunal, administrative forum, or other forum of any kind, asserting any of the Released Claims against any of the Released Parties, and each of them.

5.4 Upon the Effective Date, each of the Released Parties shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged Lead Plaintiff, Class Members, and their counsel, employees, successors and assigns from all claims (including, without limitation, Unknown Claims) arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement or resolution of (i) the Litigation or (ii) the Released Claims.

6. **Administration and Calculation of Claims, Final Awards and Supervision and Distribution of the Settlement Fund**

6.1 The Claims Administrator shall administer and calculate the claims submitted by Class Members, and shall oversee distribution of the Net Settlement Fund to Authorized Claimants. The Claims Administrator will be subject to such supervision and direction from the Court and/or Lead Counsel as may be necessary or as circumstances may require. Other than Diplomat's obligation to provide its stockholders' records as provided in ¶4.2 above, the Released Parties shall have no responsibility for or interest whatsoever with respect to the administration of the Settlement or the actions or decisions of the Claims Administrator, and shall have no liability whatsoever to the Lead Plaintiff, Class Members, or Lead Counsel, in connection with such administration, including, but not limited to: (i) any act, omission, or determination by Lead Counsel, the Escrow Agent, and/or the Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management or investment of the Settlement Fund or the Net Settlement Fund, or the distribution of the Net Settlement Fund; (iii) the Plan of Allocation; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in value of, the Settlement

Fund; or (vi) the payment or withholding of any taxes, expenses, and/or costs incurred with the taxation of the Settlement Fund or the filing of any federal, state, or local returns.

6.2     The Settlement Fund shall be applied as follows:

(a)     to pay all the fees and expenses reasonably and actually incurred in connection with providing notice, locating Class Members, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, processing Proofs of Claim, and paying escrow fees and costs, if any;

(b)     to pay the Taxes and Tax Expenses described in ¶2.8 hereof;

(c)     to pay Plaintiffs' Counsel's fees and expenses if and to the extent allowed by the Court (the "Fee and Expense Award"); and

(d)     after the Effective Date, to distribute the balance of the Settlement Fund (the "Net Settlement Fund") to Authorized Claimants as allowed by the Stipulation, the Plan of Allocation, or the Court.

6.3     After the Effective Date, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following.

6.4     Within ninety (90) calendar days after the mailing of the Notice or such other time as may be set by the Court, each Person claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Proof of Claim, in the form of Exhibit A-2 attached hereto, or such other substantially similar form mutually agreed to by Lead Counsel and Defendants' counsel, signed under penalty of perjury and supported by such documents as are specified in the Proof of Claim and as are reasonably available to the Authorized Claimant.

- 17 -

6.5     Except as otherwise ordered by the Court, all Class Members who fail to timely submit a Proof of Claim within such period, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments pursuant to the Stipulation and the Settlement set forth herein, but will in all other respects be subject to and bound by the provisions of this Stipulation, the releases contained herein, and the Judgment, and will be barred from bringing any action against the Released Parties concerning the Released Claims. Notwithstanding the foregoing, Lead Counsel shall have the discretion (but not the obligation) to accept late-submitted claims, so long as distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby. No Person shall have any claim against Lead Plaintiff, Lead Counsel, the Claims Administrator or any Class Member by reason of the exercise or non-exercise of such discretion.

6.6     Each Proof of Claim shall be submitted to and reviewed by the Claims Administrator, under the supervision of Lead Counsel, who shall determine, in accordance with this Stipulation and the approved Plan of Allocation, the extent, if any, to which each claim shall be allowed, subject to the review by the Court pursuant to ¶6.8 below.

6.7     Proofs of Claim that do not meet the submission requirement may be rejected. Prior to rejecting a Proof of Claim in whole or in part, the Claims Administrator shall communicate with the Claimant in writing to give the Claimant the chance to remedy any curable deficiencies in the Proof of Claim submitted. The Claims Administrator, under the supervision of Lead Counsel, shall notify, in a timely fashion and in writing, all Claimants whose claims the Claims Administrator proposes to reject in whole or in part for curable deficiencies, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of ¶6.8 below.

6.8     If any Claimant whose timely claim has been rejected in whole or in part for curable deficiency, desires to contest such rejection, the Claimant must, within twenty (20) calendar days after the mailing of the notice required in ¶6.7 above, or a lesser period of time if the claim was untimely, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a claim cannot be otherwise resolved, Lead Counsel shall thereafter present the Claimant's request for review to the Court.

6.9     Each Claimant who declines to be excluded from the Class shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's claim, including, but not limited to, all releases provided for herein and in the Judgment, and the claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to the Claimant's status as a Class Member and the validity and amount of the Claimant's claim.  In connection with processing the Proofs of Claim, no discovery shall be allowed on the merits of the Litigation or the Settlement.  All proceedings with respect to the administration, processing and determination of claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of the Court, but shall not in any event delay or affect the finality of the Judgment.  All Class Members, other Claimants, and parties to this Settlement expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations.

6.10    Following the Effective Date, the Net Settlement Fund shall be distributed to Authorized Claimants substantially in accordance with a Plan of Allocation to be described in the Notice and approved by the Court.  If there is any balance remaining in the Net Settlement Fund after a reasonable period of time after the date of distribution of the Net Settlement Fund (whether by

- 19 -

reason of tax refunds, uncashed checks or otherwise), Lead Counsel shall, if feasible, reallocate such balance among Authorized Claimants who negotiated the checks sent in the initial distribution and who would receive a minimum of $10.00. These redistributions shall be repeated so long as they are economically feasible. Any balance that still remains in the Net Settlement Fund after such reallocation(s) and payments, which is not feasible or economical to reallocate shall be donated to an appropriate, non-profit, charitable organization serving the public interest, selected by Lead Counsel.

6.11    This Settlement is not a claims-made settlement and, if all conditions of the Stipulation are satisfied and the Settlement becomes Final, no portion of the Settlement Fund will be returned to the Defendants or their insurers. The Released Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith.

6.12    No Person shall have any claim against Lead Plaintiff, Lead Counsel, the Released Parties, the Claims Administrator or other entity designated by Lead Counsel based on distributions made substantially in accordance with the Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court. This does not include any claim by any party for breach of this Stipulation.

6.13    It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund, including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel this Stipulation or affect or delay the finality of

- 20 -

the Court's Judgment approving this Stipulation and the Settlement set forth herein (including the releases contained herein), or any other orders entered pursuant to this Stipulation.

### 7. Plaintiffs' Counsel's Fees and Expenses

7.1     Lead Counsel may submit an application or applications (the "Fee and Expense Application") for distributions from the Settlement Fund for: (a) an award of attorneys' fees; plus (b) payment of expenses or charges in connection with prosecuting the Litigation; plus (c) any interest on such fees and expenses at the same rate and for the same time periods as earned by the Settlement Fund (until paid), as may be awarded by the Court.  In addition, Lead Plaintiff may request an award pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Class.  Lead Counsel reserves the right to make additional applications for distributions from the Settlement Fund for fees and expenses incurred.

7.2     The Fee and Expense Award, as awarded by the Court, shall be paid to Lead Counsel from the Settlement Fund, as ordered, immediately after the Court executes an order awarding such fees and expenses.  Lead Counsel may thereafter allocate the attorneys' fees and expenses among counsel for Plaintiffs in a manner in which it in good faith believes reflects the contributions of such counsel to the institution, prosecution, and resolution of the Litigation.   In the event that the Effective Date does not occur, or the Judgment or the order making the Fee and Expense Award is reversed or modified by final non-appealable order, or the Stipulation is canceled or terminated for any other reason, and in the event that the Fee and Expense Award has been paid to any extent, then Lead Counsel shall be obligated, within ten (10) business days from receiving notice from Defendants' counsel or from a court of appropriate jurisdiction, to refund to the Settlement Fund the fees and expenses previously paid to Lead Counsel from the Settlement Fund plus interest thereon at the same rate as earned by the Settlement Fund in an amount consistent with such reversal or modification.  Lead Counsel, as a condition of receiving the Fee and Expense Award, agrees that

- 21 -

Plaintiffs' Counsel's law firms and their respective partners are subject to the jurisdiction of the Court for the purpose of enforcing this provision, and are severally liable and responsible for any required repayment. Without limitation, Lead Counsel and their partners agree that the Court may, upon application of the Defendants and notice to Lead Counsel, summarily issue orders, including, but not limited to, judgments and attachment orders, and may make appropriate findings of or sanctions for contempt, should Lead Counsel fail to timely repay fees and expenses pursuant to this provision.

7.3    The procedure for and the allowance or disallowance by the Court of any applications by counsel for the Plaintiffs for attorneys' fees and expenses, including the fees of experts and consultants, to be paid out of the Settlement Fund, are not part of the Settlement set forth in this Stipulation, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and any order or proceeding relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Stipulation, or affect or delay the finality of the Judgment approving the Stipulation and the Settlement of the Litigation set forth herein (including the releases contained herein).

7.4    The Released Parties shall have no responsibility for or liability with respect to the payment of any Fee and Expense Award to any counsel for Plaintiffs, or with respect to the allocation among Plaintiffs' Counsel, and/or any other Person who may assert some claim thereto.

**8.    Conditions of Settlement, Effect of Disapproval, Cancellation or Termination**

8.1    The Effective Date of this Stipulation shall be conditioned, and shall be deemed to have occurred, upon the occurrence or waiver of all of the following events:

(a)    the Court has entered the Notice Order, as required by ¶4.1 hereof;

- 22 -

(b)       the Settlement Amount has been deposited by Defendants or their insurers into the Escrow Account maintained by the Escrow Agent, as required by ¶2.1 hereof;

(c)       Lead Plaintiff and Defendants have not exercised their option to terminate the Stipulation pursuant to ¶¶8.3-8.4 hereof;

(d)       the Court has entered the Judgment, in the form of Exhibit B attached hereto, or such other substantially similar form mutually agreed to by the Settling Parties; and

(e)       the Judgment has become Final, as defined in ¶1.14 hereof.

8.2       Upon the occurrence of all of the events referenced in ¶8.1 hereof, any and all remaining interest or right of Defendants or their insurers in or to the Settlement Fund, if any, shall be absolutely and forever extinguished.  If all of the conditions specified in ¶8.1 hereof are not met, then the Stipulation shall be canceled and terminated subject to ¶8.5 hereof unless Lead Counsel and counsel for Defendants mutually agree in writing to proceed with the Stipulation.

8.3       The Lead Plaintiff and each of the Defendants shall have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice") to all other parties hereto within thirty (30) calendar days of: (a) the Court's refusal to enter the Notice Order; (b) the Court's refusal to approve the Settlement; (c) the Court's refusal to enter the Judgment; (d) the date upon which the Judgment is reversed or vacated or altered following any appeal taken therefrom, or is successfully collaterally attacked; or (e) the failure of the Effective Date to occur for any reason.

8.4       Defendants shall have the option to terminate the Settlement in the event that Persons who purchased more than a certain number of shares of Diplomat common stock during the Class Period choose to exclude themselves from the Class ("Opt-Out Threshold"), as set forth in a separate agreement (the "Supplemental Agreement") executed between Lead Counsel and Defendants' counsel, which is incorporated by reference into this Stipulation.  The parties shall not file the

- 23 -

Supplemental Agreement with the Court unless instructed to do so by the Court. The Opt-Out Threshold may be disclosed to the Court for purposes of approval of the Settlement, as may be required by the Court, but such disclosure shall be carried out to the fullest extent possible in accordance with the practices of the Court so as to maintain the Opt-Out Threshold as confidential.

8.5    Unless otherwise ordered by the Court, in the event the Stipulation shall terminate, or be canceled, or shall not become effective for any reason, then within ten (10) business days after written notification of such event is sent by counsel for Defendants or Lead Counsel to the Escrow Agent, the Settlement Fund (including accrued interest), less any expenses and costs reasonably and actually incurred pursuant to ¶2.7 and paid from the Settlement Fund and Taxes and Tax Expenses that have been paid pursuant to ¶2.8 hereof, shall be refunded by the Escrow Agent pursuant to written instructions from counsel for Defendants. At the request of Defendants' counsel, the Escrow Agent or its designee shall apply for any tax refund owed on the Settlement Fund and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund, pursuant to written direction from Defendants' counsel.

8.6    In the event that the Stipulation is not approved by the Court or the Settlement set forth in the Stipulation is terminated or fails to become effective in accordance with its terms, the Settling Parties shall be restored to their respective positions in the Litigation as of October 24, 2021. In such event, the terms and provisions of the Stipulation, with the exception of ¶¶2.7-2.9, 8.3-8.4, 8.6, 9.4 and 9.5 hereof, shall have no further force and effect with respect to the Settling Parties and shall not be used in this Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*. No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or any Fee and Expense Award shall constitute grounds for cancellation or termination of the Stipulation.

4855-6384-3595.v1

8.7     If the Effective Date does not occur, or if the Stipulation is terminated pursuant to its terms, neither the Lead Plaintiff nor Lead Counsel shall have any obligation to repay any amounts actually and properly disbursed for notice costs and Taxes and Tax Expenses pursuant to ¶¶2.7-2.8 hereof.  In addition, any expenses already incurred and properly chargeable pursuant to ¶2.7 hereof at the time of such termination or cancellation, but which have not been paid, shall be paid by the Escrow Agent in accordance with the terms of the Stipulation prior to the balance being refunded in accordance with ¶¶2.9 and 8.5 hereof.

**9.     Miscellaneous Provisions**

9.1     The Settling Parties (a) acknowledge that it is their intent to consummate this Settlement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation.

9.2     The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Litigation.  The Settlement compromises claims that are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense.  The Settling Parties agree that each has complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure, and the Judgment will contain a statement that during the course of the Litigation, the parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.

9.3     Neither the Stipulation nor the Settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of Defendants; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any Defendant in any civil, criminal or

- 25 -

administrative proceeding in any court, administrative agency, proceeding or other forum or tribunal. The Released Parties may file the Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of, without limitation, claim preclusion or issue preclusion or similar defense or counterclaim.

9.4     The Released Parties are intended third-party beneficiaries of this Stipulation, and this Stipulation may be enforced by such Persons.

9.5     All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Stipulation, pursuant to their terms.

9.6     All of the exhibits to the Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

9.7     This Stipulation shall not be construed more strictly against one Settling Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations between the Settling Parties and that all Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

9.8     The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

9.9     The Stipulation and the exhibits attached hereto and the Supplemental Agreement constitute the entire agreement among the Settling Parties hereto and no representations, warranties or inducements have been made to any Settling Party concerning the Stipulation or its exhibits or the Supplemental Agreement other than the representations, warranties, and covenants contained and memorialized in such documents.  Except as otherwise provided herein, each Settling Party shall bear its own costs.

- 26 -

9.10    Lead Counsel, on behalf of the Class, is expressly authorized by Lead Plaintiff to take all appropriate action required or permitted to be taken by the Class pursuant to the Stipulation to effectuate its terms and also is expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of the Class that it deems appropriate.

9.11    Each counsel or other Person executing the Stipulation or any of its exhibits on behalf of any Settling Party hereto hereby warrants that such Person has the full authority to do so.

9.12    The Stipulation may be executed in one or more counterparts, including by signature transmitted by email in pdf format.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of executed counterparts shall be filed with the Court.

9.13    The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

9.14    Subject to entry of the Judgment, substantially in the form of Exhibit B hereto, the Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and all Settling Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation.

9.15    The Stipulation and the exhibits hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of Illinois, and the rights and obligations of the parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Illinois without giving effect to that State's choice-of-law principles.

9.16    Pending approval of the Court of this Stipulation and its Exhibits, all non-settlement-related proceedings in this Litigation shall be stayed and all Members of the Class shall be barred and enjoined from prosecuting any of the Released Claims against any of the Released Parties.

4855-6384-3595.v1

9.17    Unless otherwise provided, the Settling Parties may agree to reasonable extensions of time to carry out any of the provisions of this Stipulation without further order of the Court.

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys, dated January 24, 2022.

ROBBINS GELLER RUDMAN
 & DOWD LLP
JAMES E. BARZ (IL Bar # 6255605)
FRANK A. RICHTER (IL Bar # 6310011)
CAMERAN M. GILLIAM (IL Bar # 6332723)

JAMES E. BARZ

200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  312/674-4674
312/674-4676 (fax)
jbarz@rgrdlaw.com
frichter@rgrdlaw.com
cgilliam@rgrdlaw.com

ROBBINS GELLER RUDMAN
 & DOWD LLP
THEODORE J. PINTAR
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
tedp@rgrdlaw.com

Lead Counsel for Lead Plaintiff

- 28 -

4855-6384-3595.v1

HESSIAN & McKASY P.A.
WILLIAM A. CUMMINGS
3700 RBC Plaza
60 South 6th Street
Minneapolis, MN  55402
Telephone:  612/746-5770
612/746-5755 (fax)

Additional Counsel for Lead Plaintiff

SIDLEY AUSTIN LLP
JAMES W. DUCAYET
NILOFER I. UMAR
ANDREW F. RODHEIM

*James W. Ducayet*

JAMES W. DUCAYET

One South Dearborn Street
Chicago, IL 60603
Telephone:  312/853-7000
312/853-7036 (fax)
jducayet@sidley.com
numar@sidley.com
arodheim@sidley.com

Counsel for Defendants

- 29 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on January 24, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Theodore J. Pintar
THEODORE J. PINTAR

ROBBINS GELLER RUDMAN
  & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  TedP@rgrdlaw.com

# Mailing Information for a Case 1:19-cv-01735 Iron Workers Local No. 25 Pension Fund, et al., v. Diplomat Pharmacy, Inc. et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **James E Barz**
  jbarz@rgrdlaw.com,cbarrett@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **James Wallace Ducayet**
  jducayet@sidley.com,james-ducayet-9115@ecf.pacerpro.com,efilingnotice@sidley.com

- **Lori Ann Fanning**
  LFanning@MillerLawLLC.com,MMiller@MillerLawLLC.com,ajewell@millerlawllc.com,drobinson@millerlawllc.com,JRamirez@millerlawllc.com

- **Cameran Gilliam**
  cgilliam@rgrdlaw.com

- **Matthew Todd Hurst**
  mhurst@heffnerhurst.com,mheffner@heffnerhurst.com

- **Carl V. Malmstrom**
  malmstrom@whafh.com

- **Marvin Alan Miller**
  Mmiller@millerlawllc.com,ajewell@millerlawllc.com,LFanning@millerlawlllc.com,drobinson@millerlawlllc.com,JRamirez@millerlawllc.com

- **Danielle S. Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Theodore J. Pintar**
  tedp@rgrdlaw.com

- **Frank Anthony Richter**
  frichter@rgrdlaw.com,E_File_SD@rgrdlaw.com,CReis@ecf.courtdrive.com,creis@rgrdlaw.com

- **Andrew Flynn Rodheim**
  arodheim@sidley.com,efilingnotice@sidley.com,andy-rodheim-4196@ecf.pacerpro.com

- **Nilofer Ibrahim Umar**
  numar@sidley.com,efilingnotice@sidley.com,nilofer-umar-6698@ecf.pacerpro.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`