UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| CHASE MORTIMER, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Case No. 1:19-cv-01735 **(Consolidated)** |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) | Honorable John F. Kness |
| DIPLOMAT PHARMACY, INC., et al., | ) ) ) | |
| Defendants. | ) ) ) | |
| | ) | |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL
OF PLAN OF ALLOCATION

4890-6670-6202.v1

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................1

II. SUMMARY OF THE LITIGATION .................................................................3

III. LEAD PLAINTIFF HAS PROVIDED NOTICE IN COMPLIANCE WITH RULE 23 AND DUE PROCESS.........................................................................4

IV. ARGUMENT ........................................................................................................5

    A. The Proposed Settlement Warrants Final Approval .................................5

        1. Lead Plaintiff and Lead Counsel Adequately Represented the Class..........5

        2. The Settlement Resulted from Extensive Arm's-Length Negotiations ..................................................................................6

        3. The Settlement Provides a Favorable Benefit to the Class Considering the Costs, Risks, and Delay of Trial and Appeal.....................7

            a. Risks to Establishing Liability ..........................................................8

            b. Risks Related to Proving Loss Causation and Damages .................9

        4. The Settlement Is Fair and Adequate Under the Remaining Rule 23(e)(2) Factors ......................................................................10

            a. The Method for Distributing Relief Is Effective...........................11

            b. Counsel's Fees Are Reasonable.......................................................11

            c. Settlement-Related Agreements.......................................................11

            d. The Settlement Treats Class Members Equitably..........................12

        5. The Endorsement of Lead Counsel and the Reaction of the Class Favor Approval .........................................................................12

    B. The Plan of Allocation Warrants Final Approval...................................13

    C. Class Certification Remains Warranted...................................................14

V. CONCLUSION...................................................................................................14

4890-6670-6202.v1

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Eubank v. Pella Corp.*,
753 F.3d 718 (7th Cir. 2014) ................................................................................11

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ................................................................................10

*Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) ..............................................................................10

*In re Career Educ. Corp. Sec. Litig.*,
2008 WL 8666579 (N.D. Ill. June 26, 2008) ..........................................................7

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) ..................................................................................5

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ....................................................9, 13

*Reynolds v. Ben. Nat'l Bank*,
288 F.3d 277 (7th Cir. 2002) ................................................................................10

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) ...................................................8, 9, 12, 13

*Wong v. Accretive Health, Inc.*,
773 F.3d 859 (7th Cir. 2014) ..................................................................... *passim*

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78j(b) ....................................................................................................................3
§78t(a) ....................................................................................................................3

Federal Rules of Civil Procedure
Rule 23 ....................................................................................................4, 5, 12, 13
Rule 23(a) ..............................................................................................................14
Rule 23(b)(3) .........................................................................................................14
Rule 23(c)(2)(B) ......................................................................................................4
Rule 23(e)(2) ................................................................................................ *passim*
Rule 23(e)(2)(A) ..................................................................................................5, 6
Rule 23(e)(2)(A)-(D) ...............................................................................................5
Rule 23(e)(2)(B) ......................................................................................................6
Rule 23(e)(2)(C) ......................................................................................................7

**Page**

Rule 23(e)(2)(C)(ii)-(iv)............................................................................................................10
Rule 23(e)(2)(D) .......................................................................................................................10
Rule 23(e)(3)..............................................................................................................................10

4890-6670-6202.v1

## I. INTRODUCTION

Lead Plaintiff Iron Workers Local No. 25 Pension Fund ("Lead Plaintiff" or the "Pension Fund") respectfully submits this memorandum in support of its motion for final approval of the Settlement of the claims in this Litigation against Defendants Diplomat Pharmacy, Inc. ("Diplomat" or the "Company"), Jeffrey Park, Joel Saban, Atul Kavthekar, and Brian Griffin (collectively, "Defendants").[1]

The $15.5 million all-cash settlement is the result of Lead Plaintiff's and Lead Counsel's diligent litigation and the parties' arm's-length settlement negotiations over the course of several months with the assistance of an experienced and well-respected mediator, the Honorable William Cahill (Ret.). Lead Plaintiff and Lead Counsel believe the Settlement is a highly-favorable result for the Class under the circumstances before the Court and therefore merits approval.

This case has been vigorously litigated from its commencement. Defendants have maintained that Lead Plaintiff could not adequately plead or prove the claims asserted. Lead Counsel expended substantial effort in reaching the Settlement, including, having: conducted a thorough investigation that included analysis of SEC filings, media, analyst reports, press releases, shareholder communications, relevant case law and authorities, and other publicly-available information; prepared the detailed Complaint; prepared an extensive brief in opposition to Defendants' motion to dismiss, followed by filings regarding supplemental authority; prepared for mediation, including the exchange of mediation briefs detailing the parties' respective positions; analyzed available insurance to fund a settlement; and participated in two mediation sessions before Judge Cahill. *See* Declaration of Frank A. Richter in Support of: (I) Lead Plaintiff's Motion for

---

[1] Capitalized terms used herein that are not otherwise defined shall have the meanings provided in the Amended Stipulation of Settlement dated January 24, 2022 (ECF 133) (the "Stipulation"). Citations are omitted and emphasis is added throughout unless otherwise noted.

- 1 -

Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses ("Richter Decl."), ¶6, submitted herewith.

The $15.5 million Settlement provides the Class with a certain and substantial recovery without the risk, delay, and expense of continued litigation. Lead Counsel, who is well-respected and has substantial experience in prosecuting securities class actions, has concluded that the Settlement is a very good result for the Class. This conclusion is based on its diligent prosecution of the Litigation and all the circumstances present here, including the substantial risks, expenses, and uncertainties of continued litigation, the relative strengths and weaknesses of the claims and defenses, the legal and factual issues presented, the likelihood of obtaining a larger judgment against Defendants after trial, and past experience in litigating similar actions. Even if Lead Plaintiff was successful at trial and on post-trial appeals, the uncertain recovery from Defendants would have been years down the road. Lead Plaintiff, who has a significant stake in the Litigation, also believes that the Settlement is in the best interest of the Class. *See* Declaration of Michael Randick and Richard J. Sawhill in Support of Settlement and Award of Attorneys' Fees and Expenses ("Randick and Sawhill Decl."), ¶4, submitted herewith.

For all the reasons discussed herein and in the concurrently-filed declarations, Lead Plaintiff respectfully submits that the Settlement should be approved by the Court. Likewise, the Plan of Allocation, which was developed by Lead Counsel and its damages consultant based on an assessment of the damages theories asserted in the Litigation, is fair, reasonable, and adequate, and should be approved by the Court.

4890-6670-6202.v1

## II.  SUMMARY OF THE LITIGATION

The underlying facts are summarized in the memorandum in support of preliminary approval (ECF 128 at 2-3) and in the accompanying Richter Declaration.  Lead Plaintiff provides a brief summary here.

Lead Plaintiff alleges violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934, claiming that Defendants made false and misleading statements portraying Diplomat's acquisition and integration of two pharmacy benefit managers ("PBMs") as a success that was growing the Company's PBM business while concealing and omitting to disclose integration and service failures that were leading to customer complaints and losses.  The Complaint alleges that the false and misleading statements and omissions artificially inflated Diplomat's stock price and when the truth was eventually disclosed, the price of Diplomat stock declined, resulting in substantial damages to the Class.[2]  On February 7, 2020, Defendants moved to dismiss.  ECF 93.  Lead Plaintiff persuasively rebutted each of the Defendants' arguments in its opposition brief.  ECF 105. Defendants filed their reply brief on July 23, 2020.  ECF 107.

On March 1, 2021, in an effort to conserve judicial resources and wasting insurance proceeds, the parties participated in a full-day mediation session with an experienced mediator, Judge William Cahill (Ret.).  Prior to that mediation, Lead Plaintiff and Defendants prepared and provided to the mediator and participating parties materials detailing their positions on liability and damages.  Although the initial mediation ended with the parties too far apart to reach an agreement, the parties participated in another mediation session with Judge Cahill on October 25, 2021.  Again, while the parties did not reach an agreement during the second mediation, later that day Judge Cahill presented a mediator's proposal to settle the action for $15.5 million.  The parties then negotiated the

---

[2]  On December 6, 2019, Lead Plaintiff filed the operative Consolidated Complaint for Violations of the Federal Securities Laws.  ECF 82.

4890-6670-6202.v1

Stipulation and supporting exhibits, and executed them on January 24, 2022. ECF 133. This Court preliminarily approved the Settlement on January 27, 2022 (the "Preliminary Approval Order"). ECF 135.

### III. LEAD PLAINTIFF HAS PROVIDED NOTICE IN COMPLIANCE WITH RULE 23 AND DUE PROCESS

In granting preliminary approval of the Settlement, the Court approved the form and content of the Notice, Proof of Claim, and Summary Notice as well as Lead Plaintiff's proposed plan for the distribution and mailing of the Notice, which included all the information required by Rule 23 and the PSLRA. *See* ECF 135, ¶6. As detailed in the accompanying declaration of the Claims Administrator, Gilardi & Co. LLC, as of April 28, 2022, more than 22,000 copies of the Notice have been mailed to potential Class Members, brokers, and nominees. *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date, dated April 28, 2022, ¶11 ("Gilardi Decl."), submitted herewith. In addition, the Summary Notice was published in *The Wall Street Journal* and transmitted over the *Business Wire* on February 23, 2022. *Id.*, ¶12. The Claims Administrator has also established a dedicated Settlement website, www.DiplomatSecuritiesLitigation.com, to provide potential Class Members with information concerning the Settlement and access to copies of the Notice, Proof of Claim, Stipulation, Preliminary Approval Order, and other case-related documents. *Id.*, ¶14. This combination of individual notice by first-class mail to Class Members who could be identified with reasonable effort, supplemented by notice in an appropriate, widely circulated publication, transmitted over the newswire, and set forth on internet websites, constitutes "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

- 4 -

4890-6670-6202.v1

## IV.    ARGUMENT

### A.    The Proposed Settlement Warrants Final Approval

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996).  Under Rule 23, as amended in 2018, a district court may approve of a class action settlement upon finding "that it is fair, reasonable, and adequate" after considering whether: (1) the class representatives and counsel adequately represented the class; (2) the proposed settlement was negotiated at arm's length; (3) the relief provided for the class is adequate, taking into account, among other things, the costs, risks, and delay of trial and appeal; and (4) the settlement treats class members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2)(A)-(D).  Prior to the Rule 23 amendment, the Seventh Circuit provided the following factors for district courts to consider:

> (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.

*Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014).[3]

Given the $15.5 million all-cash recovery obtained, the risks faced, and the extensive arm's-length negotiations and efforts of Lead Plaintiff and Lead Counsel that led to the agreement, the Settlement satisfies each of the Rule 23(e)(2) and *Accretive* factors.

### 1.    Lead Plaintiff and Lead Counsel Adequately Represented the Class

Rule 23(e)(2) advises district courts to consider whether "the class representatives and class counsel have adequately represented the class."  Fed. R. Civ. P. 23(e)(2)(A).

---

[3]    The Advisory Committee Notes to the 2018 amendments to the Federal Rules of Civil Procedure indicate that the four factors provided in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."

4890-6670-6202.v1

As detailed herein and in the concurrently filed declarations and Memorandum of Points and Authorities in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses ("Fee Memorandum"), both Lead Plaintiff and Lead Counsel have adequately represented the Class by diligently prosecuting this Litigation and securing the favorable Settlement. *See also infra*, §IV.A.2. Lead Plaintiff has actively overseen and participated in this Litigation by, for example, reviewing case filings and correspondence, engaging with counsel, and evaluating the potential resolution of the Litigation. *See* Randick and Sawhill Decl., ¶¶3-4. Lead Plaintiff also retained highly-experienced and well-respected counsel, who have zealously prosecuted the Litigation from investigation through negotiations, motion to dismiss briefing, mediation, and Settlement. *See* Richter Decl., ¶¶6, 14, 18-20. This diligent and adequate representation of the Class supports final approval. *See* Fed. R. Civ. P. 23(e)(2)(A).

### 2. The Settlement Resulted from Extensive Arm's-Length Negotiations

Rule 23(e)(2) next advises district courts to consider whether the settlement was "negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B).

Here, the Settling Parties reached the Settlement only after protracted, arm's-length negotiations between experienced counsel, including two mediation sessions with Judge Cahill, an experienced mediator. At the time of the March 1, 2021 and October 25, 2021 mediations, Lead Plaintiff and Lead Counsel were well-informed of the strengths and weaknesses of the claims, through, for example:

- Lead Counsel's extensive investigation in connection with preparing Lead Plaintiff's detailed complaint based on an analysis of SEC filings, media and analyst reports, press releases, shareholder communications, and relevant case law and authorities (*see* Richter Decl., ¶6(a) and (b));

- full briefing on Defendants' motion to dismiss, followed by filings regarding supplemental authority, and the review of Defendants' insurance policies (*see id.*, ¶¶5, 6(c)); and

- 6 -

- preparing for the mediation, including the exchange of mediation briefs detailing the parties' respective positions on liability and damages and settlement demands (*see id.*, ¶6(d)).

The mediations involved the further exchange of the parties' respective views on Lead Plaintiff's claims, Defendants' defenses, and issues related to damages. *See id.*, ¶6(e). The negotiations were hard-fought and the parties were unable to reach an agreement at the end of the first all-day session, though they continued negotiations through Judge Cahill. *See id.*, ¶6(e)-(f). Seven months later, the parties engaged in a second mediation with Judge Cahill, but again ended the mediation without the parties reaching an agreement. *Id.* Later that day, Judge Cahill issued a "mediator's proposal" to settle the litigation for $15.5 million, which the parties accepted. *See id.*, ¶7. This contentious, well-informed, arm's-length negotiation process supports final approval. *See Accretive*, 773 F.3d at 864 (affirming approval of securities class action settlement before a ruling on the "contentiously litigated" motion to dismiss where "[t]he settlement was reached through extensive arm's-length negotiations with an experienced third-party mediator"); *In re Career Educ. Corp. Sec. Litig.*, 2008 WL 8666579, at *3 (N.D. Ill. June 26, 2008) (Lefkow, J.) (approving settlement that "resulted from arms-length negotiations and voluntary mediation between experienced counsel").

### 3. The Settlement Provides a Favorable Benefit to the Class Considering the Costs, Risks, and Delay of Trial and Appeal

Rule 23(e)(2) next advises district courts to consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C). The Seventh Circuit has likewise instructed courts to consider: (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; and (2) the complexity, length, and expense of further litigation. *See Accretive*, 773 F.3d at 863-64. The $15.5 million cash recovery obtained for the benefit of the Class provides highly-favorable relief

- 7 -

considering the legal, factual, and practical risks of continued litigation against the Defendants. And, like in *Accretive*, the "stage of the proceedings and the amount of discovery completed" weighs in favor of approval because "[a]lthough formal discovery had not commenced, [Lead Plaintiff] had access to extensive public documents," 773 F.3d at 864, as well as the mediation exchange of information. *See* Richter Decl., ¶6(d); *see also Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 587 (N.D. Ill. 2011) (Dow, J.) (approving settlement prior to discovery and noting that the "'label of "discovery" [either formal or informal] is not what matters'" . . . "[i]nstead, 'the pertinent inquiry is what facts and information have been provided'").

### a.     Risks to Establishing Liability

While Lead Plaintiff believes that it had assembled a strong case against Defendants for liability, a favorable ruling on the motion to dismiss or a finding in favor of the class at trial was never assured. Lead Plaintiff would need to prove to the satisfaction of the Court and jury that Defendants made false and misleading statements, with scienter, that were material to a reasonable investor. Defendants have adamantly denied liability. *See* ECF 93 (Defendants' motion to dismiss).

First, Defendants have argued that Lead Plaintiff's alleged misstatements regarding the PBM integration, the Company's clients, and its internal controls were not actionable because, according to Defendants, the Complaint did not allege particularized facts indicating these statements were false or misleading when made. *See* ECF 93 at 11-17. Defendants further argued that their statements about PBM integration were not actionable because they were merely statements of corporate optimism. *See id.* at 14-15.

Second, Defendants maintained that Lead Plaintiff could not establish scienter, arguing, for example, that the Complaint lacked particularized allegations that any Individual Defendant had contemporaneous knowledge of undisclosed facts that his statements were false or misleading. *See id*. at 17-18. Defendants further argued that Lead Plaintiff's circumstantial allegations – such as the

- 8 -

scope and severity of the underlying issues, motive, and executive departures – failed to establish a strong inference of scienter in the face of their purportedly "more compelling" innocent inference. *See id.* at 21-25.

**b.      Risks Related to Proving Loss Causation and Damages**

Even if Lead Plaintiff established liability, it faced further risks and uncertainty regarding proof of loss causation and damages. Defendants likely would have argued on summary judgment that Lead Plaintiff could not establish loss causation with respect to some or all four alleged corrective disclosures of the alleged fraud. In fact, Defendants likely would retain experts to opine that certain (if not all) of the alleged losses did not correlate to damages attributable to the alleged misstatements, which could reduce or even eliminate recoverable damages. Although Lead Plaintiff would retain experts to opine in support of Lead Plaintiff's causation and damages theories, there is no guarantee that this "battle of the experts" would result in a favorable outcome for the Class.

As set forth above, with conflicting arguments and evidence, there is no certainty that Lead Plaintiff would prevail on summary judgment, at trial, or on appeal with respect to liability or damages. *See Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, 2001 WL 1568856, at *2 (N.D. Ill. Dec. 10, 2001) (Darrah, J.) ("Securities fraud litigation is long, complex and uncertain."). Moreover, the likely "complexity, length, and expense of further litigation" would have been substantial, which weighs in favor of settling the claims. *Accretive*, 773 F.3d at 863. For example, to prove its claims against Defendants, Lead Plaintiff would need to negotiate for, obtain, and analyze voluminous documents from Defendants and non-parties, and Defendants in turn would seek documents from Lead Plaintiff, and both sides would take numerous depositions. *See Schulte*, 805 F. Supp. 2d at 586 ("'The costs associated with discovery in complex class actions can be significant.'"). As discussed, each side could then retain experts, resulting in a "battle of the experts," which is a costly, uncertain, and difficult-to-predict endeavor. *See Accretive,* 773 F.3d at

- 9 -

4890-6670-6202.v1

863 (noting that calculating damages in a securities class action would have "resulted in a lengthy and expensive battle of the experts, with the costs of such a battle borne by the class – exactly the type of litigation the parties were hoping to avoid by settling"). Even if Lead Plaintiff was able to win on every issue, the entire litigation process could span several years, with costs of defense reducing the available insurance.[4] *See* Richter Decl., ¶5.

In contrast, the $15.5 million settlement, at this juncture, results in a certain and favorable recovery, without the considerable risk, expense, and delay of fact and expert discovery, summary judgment motions, and trial and post-trial litigation. *See Reynolds v. Ben. Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("To most people, a dollar today is worth a great deal more than a dollar ten years from now."); *Accretive*, 773 F.3d at 864 (affirming approval of $14 million settlement where the defendant "was prepared to vigorously contest the lawsuit, having raised potentially valid defenses[,] [defendant]'s motion to dismiss was fully briefed and argued before the district court[,] [f]urther litigation almost certainly would have involved complex and lengthy discovery and expert testimony[, and] [i]nsurance proceeds to fund a settlement or judgment were a limited, wasting asset, *i.e.*, further defense costs would have reduced those funds"). Consideration of this factor supports final approval.

### 4. The Settlement Is Fair and Adequate Under the Remaining Rule 23(e)(2) Factors

Rule 23(e)(2) also advises district courts to consider: (i) "the effectiveness of any proposed method of distributing relief to the class"; (ii) "the terms of any proposed award of attorney's fees, including timing of payment"; (iii) "any agreement required to be identified under Rule 23(e)(3)"; and (iv) whether the settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv), (e)(2)(D). Each of these factors further weighs in favor of final approval.

---

[4] Even a meritorious case can be lost at trial. *See, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (affirming judgment as a matter of law following jury verdict partially in plaintiffs' favor). And even trial victory may not end the litigation. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (ordering new trial 13 years after case was commenced).

- 10 -

### a.  The Method for Distributing Relief Is Effective

As explained in §III above and §IV.B. below, the methods used in the notice and claims administration process are effective and they provide Class Members with the necessary information to receive their *pro rata* share of the Settlement. *See* Gilardi Decl., Ex. A (Notice at 4-7). The claims process provides for straightforward cash payments based on the trading information provided, and it provides claimants with an opportunity to cure any deficiencies or request review by the Court of any denial of their claims. *Id.*; Stipulation, ¶¶6.6-6.8. This method for distributing relief in securities class actions is well-established and effective. *See infra*, §IV.B.

### b.  Counsel's Fees Are Reasonable

As detailed in the Fee Memorandum, the proposed attorneys' fees of 25% of the Settlement Amount plus litigation expenses and charges, are reasonable in light of the efforts of Lead Counsel, the contingent nature of its representation, and the risks in the litigation. Since this is not a "claims made" settlement, the entire Net Settlement Fund will be distributed to Class Members until it is no longer economically feasible, so there is no risk that counsel will be paid but Class Members will not. *Cf. Eubank v. Pella Corp.*, 753 F.3d 718, 726-27 (7th Cir. 2014) (rejecting settlement where attorneys would receive fees based on inflated settlement value, as defendants were likely to pay only a fraction of the purported settlement value to the class).

### c.  Settlement-Related Agreements

In addition to the Stipulation, the Settling Parties entered into a confidential Supplemental Agreement that establishes the conditions under which Defendants would be able to terminate the Settlement based on whether requests for exclusion from the Class reach a specified threshold. *See* Stipulation, ¶8.4. This type of agreement is standard in securities class actions. *See, e.g., Rubinstein v. Gonzalez,* No. 1:14-cv-09465, Stipulation of Settlement, ECF 274-1 at ¶8.3 (N.D. Ill. June 19, 2019) (Dow, J.). Lead Plaintiff and the Defendants have no other agreements with each other.

### d. The Settlement Treats Class Members Equitably

Under the Plan of Allocation, eligible claimants will receive their *pro rata* share of the recovery based on, among other things, the number of shares purchased, when the shares were purchased, and whether they were sold or held. Gilardi Decl., Ex. A (Notice at 4-7). Lead Plaintiff will receive the same type of *pro rata* recovery (based on its Recognized Claim as calculated under the Plan of Allocation) as all other similarly situated Diplomat share purchasers. Thus, the Settlement treats Class Members equitably.

### 5. The Endorsement of Lead Counsel and the Reaction of the Class Favor Approval

In addition to the Rule 23(e)(2) factors, the Seventh Circuit has noted that the "opinion of competent counsel," the "amount of opposition to the settlement," and "the reaction of members of the class to the settlement" are also relevant considerations. *See Accretive*, 773 F.3d at 863.

Here, the settled claims have been litigated and settled by experienced and competent counsel on both sides of the case. Lead Counsel is well known for its experience and success in complex class action litigation and has many years of experience in litigating securities class actions. *See* Richter Decl., ¶¶18-19; http://rgrdlaw.com. Based on its extensive experience and expertise, Lead Counsel has determined that the Settlement is in the best interest of the Class after weighing the substantial benefits of the Settlement against the numerous obstacles to a better recovery after continued litigation. *See* Richter Decl., ¶¶8, 19-21. This endorsement favors final approval. *See Schulte*, 805 F. Supp. 2d at 586-87 (holding opinion of counsel with "extensive experience" that the settlement was beneficial to the class and met the requirements of Rule 23 "supports [the court's] approval of the Settlement").

Moreover, as discussed in §III above, the Claims Administrator has sent notice to tens of thousands of potential Class Members in accordance with the Preliminary Approval Order. While

- 12 -

the deadline for the Class Members to exclude themselves or object is April 27, 2022 and May 16, 2022, respectively, to date no objections and no requests for exclusion have been received.[5] Gilardi Decl., ¶16. Lead Plaintiff is a Class Member with significant losses who participated in and oversaw the Litigation, and it endorses the Settlement. *See* Randick and Sawhill Decl., ¶¶1, 4. This favorable reaction by the Class also supports final approval.

Thus, each Rule 23(e)(2) and *Accretive* factor is satisfied. Lead Plaintiff respectfully submits that the Settlement is fair, reasonable, and adequate, and requests that the Court grant final approval.

### B. The Plan of Allocation Warrants Final Approval

Lead Plaintiff also seeks approval of the Plan of Allocation, which is set forth in full in the Notice. *See* Gilardi Decl., Ex. A. Assessment of a plan of allocation under Rule 23 is governed by the same standards of review applicable to the settlement as a whole – the plan must be fair and reasonable. *See Retsky*, 2001 WL 1568856, at *3.

Here, the Plan of Allocation was developed by Lead Counsel in conjunction with its internal damages consultant and is an equitable method of distributing the Net Settlement Fund to Authorized Claimants. The Plan of Allocation distributes the Net Settlement Fund on a *pro rata* basis, as determined by the ratio that an Authorized Claimant's Recognized Loss Amount bears to the total Recognized Loss Amount of all Authorized Claimants. *See* Gilardi Decl., Ex. A (Notice at 4-7). Calculation of an Authorized Claimant's Recognized Loss Amount will depend upon several factors, including when the shares were held, purchased, or sold. *See id*. This method of distributing settlement funds is fair, reasonable, and adequate. *See, e.g.*, *Rubinstein v. Gonzalez*, No. 1:14-cv-09465, Stipulation of Settlement, ECF 274-1 (N.D. Ill. June 19, 2019) (setting forth similar plan of

---

[5] Of course, the mere existence of objections or requests for exclusion does not preclude approval of the agreement. *Accretive*, 773 F.3d 859 (affirming settlement approval over objection); *Schulte*, 805 F. Supp. 2d 560 (approving settlement over 10 objections); *Rubinstein v. Gonzalez*, No. 1:14-cv-09465, Order, ECF 297 (N.D. Ill. Oct. 22, 2019) (Dow, J.) (approving settlement with 10 requests for exclusion). Lead Plaintiff will file reply papers on May 27, 2022 that will address any requests for exclusion or objections received.

allocation); *Rubinstein v. Gonzalez*, No. 1:14-cv-09465, Order, ECF 296 (N.D. Ill. Oct. 22, 2019) (approving plan of allocation); *In re Groupon, Inc. Sec. Litig.*, No. 1:12-cv-02450, Notice, ECF 355-2 at 5-7 (N.D. Ill. Mar. 25, 2016) (setting forth similar plan of allocation); *In re Groupon, Inc. Sec. Litig.*, No. 1:12-cv-02450, Order, ECF 368 (N.D. Ill. July 13, 2016) (Norgle, J.) (approving plan of allocation).

### C. Class Certification Remains Warranted

The Court previously, for settlement purposes only, preliminarily approved this Litigation as a class action pursuant Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. ECF 135, ¶¶4-5 (preliminarily finding that the Class satisfies all the requirements of Rules 23(a) and (b)(3)). None of the facts regarding certification of the Class have changed since Lead Plaintiff submitted its motion for preliminary approval, and there has been no objection to certification. Accordingly, Lead Plaintiff respectfully requests that the Court grant final certification of the Class and appoint Lead Plaintiff as class representative and Lead Counsel as class counsel, for settlement purposes only, pursuant to Rules 23(a) and (b)(3).

## V. CONCLUSION

For the reasons stated in this memorandum, in the accompanying declarations, and in the Fee Memorandum, Lead Plaintiff respectfully requests that the Court approve the Settlement and the Plan of Allocation as fair, reasonable, and adequate, and certify the Class.

DATED: May 2, 2022

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
JAMES E. BARZ (IL Bar # 6255605)
FRANK A. RICHTER (IL Bar # 6310011)
CAMERAN M. GILLIAM (IL Bar # 6332723)

        *s/ Frank A. Richter*
        FRANK A. RICHTER

- 14 -

200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  312/674-4674
312/674-4676 (fax)
jbarz@rgrdlaw.com
frichter@rgrdlaw.com
cgilliam@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
THEODORE J. PINTAR
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
tedp@rgrdlaw.com

Lead Counsel for Lead Plaintiff

HESSIAN & McKASY P.A.
WILLIAM A. CUMMINGS
3700 RBC Plaza
60 South 6th Street
Minneapolis, MN  55402
Telephone:  612/746-5770
612/746-5755 (fax)

Additional Counsel for Lead Plaintiff

HOLZER & HOLZER, LLC
COREY D. HOLZER
211 Perimeter Center Parkway, Suite 1010
Atlanta, GA  30346
Telephone:  770/392-0090
770/392-0029 (fax)
cholzer@holzerlaw.com

Counsel for named Plaintiff Eugene Klabak

- 15 -

4890-6670-6202.v1

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on May 2, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ FRANK A. RICHTER
FRANK A. RICHTER

ROBBINS GELLER RUDMAN
    & DOWD LLP
200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Telephone: 312/674-4674
312/674-4676 (fax)

Email: frichter@rgrdlaw.com

# Mailing Information for a Case 1:19-cv-01735 Iron Workers Local No. 25 Pension Fund, et al., v. Diplomat Pharmacy, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **James E Barz**
  jbarz@rgrdlaw.com,cbarrett@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **James Wallace Ducayet**
  jducayet@sidley.com,james-ducayet-9115@ecf.pacerpro.com,efilingnotice@sidley.com

- **Lori Ann Fanning**
  LFanning@MillerLawLLC.com,MMiller@MillerLawLLC.com,ajewell@millerlawllc.com,drobinson@millerlawllc.com,JRamirez@millerlawllc.com

- **Cameran Gilliam**
  cgilliam@rgrdlaw.com

- **Matthew Todd Hurst**
  mhurst@heffnerhurst.com,mheffner@heffnerhurst.com

- **Carl V. Malmstrom**
  malmstrom@whafh.com

- **Marvin Alan Miller**
  Mmiller@millerlawllc.com,ajewell@millerlawllc.com,LFanning@millerlawllc.com,drobinson@millerlawlllc.com,JRamirez@millerlawllc.com

- **Danielle S. Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Theodore J. Pintar**
  tedp@rgrdlaw.com

- **Frank Anthony Richter**
  frichter@rgrdlaw.com,E_File_SD@rgrdlaw.com,CReis@ecf.courtdrive.com,creis@rgrdlaw.com

- **Andrew Flynn Rodheim**
  arodheim@sidley.com,efilingnotice@sidley.com,andy-rodheim-4196@ecf.pacerpro.com

- **Nilofer Ibrahim Umar**
  numar@sidley.com,efilingnotice@sidley.com,nilofer-umar-6698@ecf.pacerpro.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)