UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| CHASE MORTIMER, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Case No. 1:19-cv-01735 **(Consolidated)** |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) | Honorable John F. Kness |
| DIPLOMAT PHARMACY, INC., et al., | ) ) ) | |
| Defendants. | ) ) ) | |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD COUNSEL'S
MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES

4860-1292-4698.v1

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION .................................................................................................................1

II.    AWARD OF ATTORNEYS' FEES.....................................................................................2

     A.     A Reasonable Percentage of the Fund Recovered Is the Appropriate
          Approach to Awarding Attorneys' Fees in Common Fund Cases...........................2

     B.     The Requested Fee Is Reasonable and Appropriate .................................................4

          1.     The 25% Attorneys' Fee Request Is Consistent with, and Below,
               Fees Awarded in this District........................................................................5

          2.     Lead Counsel Provided Quality Legal Services that Produced
               Excellent Benefits for the Class....................................................................7

          3.     The Requested Attorneys' Fees Are Fair and Reasonable in Light
               of the Contingent Nature of the Representation ...........................................8

          4.     The Stakes of the Litigation Favor a 25% Fee Award...............................11

          5.     The Reaction of the Class Supports the Requested Award.........................11

          6.     Lead Plaintiff Approved the 25% Fee Request...........................................12

III.   LEAD COUNSEL'S EXPENSES ARE REASONABLE..................................................13

IV.    CONCLUSION..................................................................................................................14

4860-1292-4698.v1

# TABLE OF AUTHORITIES

**Page**

CASES

*Abbott v. Lockheed Martin Corp.*,
2015 WL 4398475 (S.D. Ill. July 17, 2015) ...........................................................................13

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
2019 WL 4193376 (S.D. Ind. Sept. 4, 2019) ............................................................................3

*Bristol Cty. Ret. Sys. v. Allscripts Healthcare Sols., Inc.*,
No. 1:12-cv-03297, slip op. (N.D. Ill. July 22, 2015)........................................................6, 13

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*,
2014 WL 12767763 (N.D. Ill. Aug. 5, 2014) ...........................................................................6

*Gaskill v. Gordon*,
160 F.3d 361 (7th Cir. 1998) ...................................................................................................3

*George v. Kraft Foods Global, Inc.*,
2012 WL 13089487 (N.D. Ill. June 26, 2012).........................................................................13

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ..................................................................................................11

*Gupta v. Power Sols. Int'l, Inc.*,
2019 WL 2135914 (N.D. Ill. May 13, 2019)............................................................................6

*Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) ................................................................................................10

*In re Alstom SA Sec. Litig.*,
741 F. Supp. 2d 469 (S.D.N.Y. 2010)....................................................................................10

*In re Cont'l Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ..................................................................................................13

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
80 F. Supp. 3d 838 (N.D. Ill. Feb. 20, 2015) .......................................................................4, 6

*In re JDS Uniphase Corp. Sec. Litig.*,
2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) .......................................................................10

*In re Spiegel, Inc. Sec. Litig.*,
No. 1:02-cv-08946, slip op. (N.D. Ill. Mar. 2, 2007)...............................................................6

*In re Sw. Airlines Voucher Litig.*,
799 F.3d 701 (7th Cir. 2015) ....................................................................................................7

4860-1292-4698.v1

**Page**

*In re Synthroid Mktg. Litig.*,
    264 F.3d 712 (7th Cir. 2001) ...............................................................3, 11, 12, 13

*In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005)...................................................................10

*Kirchoff v. Flynn*,
    786 F.2d 320 (7th Cir. 1986) ..............................................................................3, 5

*Lowry v. RTI Surgical Holdings, Inc.*,
    No. 20-cv-01939, slip op. (N.D. Ill. Jan. 26, 2022) ...............................................6

*McKinnie v. JP Morgan Chase Bank, N.A.*,
    678 F. Supp. 2d 806 (E.D. Wis. 2009)...................................................................5

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) ..................................................................................7

*Robbins v. Koger Props. Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ............................................................................10

*Ronge v. Camping World Holdings, Inc.*,
    No. 1:18-cv-07030, slip op. (N.D. Ill. Aug. 5, 2020) .........................................6, 13

*Rubinstein v. Gonzalez*,
    No. 1:14-cv-09465, slip op. (N.D. Ill. Oct. 22, 2019)............................................6

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ..............................................................6, 9, 11

*Silverman v. Motorola, Inc.*,
    2012 WL 1597388 (N.D. Ill. May 7, 2012)
    *aff'd*, 739 F.3d 956 (7th Cir. 2013)..................................................................4, 7, 13

*Silverman v. Motorola, Inc.*,
    739 F.3d 956 (7th Cir. 2013) ....................................................................... *passim*

*Sokolow v. LJM Funds Management, LTD*,
    No. 1:18-cv-01039, slip op. (N.D. Ill. Dec. 18, 2019).............................................6

*St. Lucie Fire Dist. Firefighters Pen. Tr. Fund v. Stericycle, Inc.*,
    No. 1:16-cv-07145, slip op. (N.D. Ill. May 19, 2020)........................................7, 13

*Sutton v. Bernard*,
    504 F.3d 688 (7th Cir. 2007) ..............................................................................3, 10

4860-1292-4698.v1

**Page**

*Taubenfeld v. Aon Corp.*,
415 F.3d 597 (7th Cir. 2005) ...................................................................................5, 7, 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007).................................................................................................4

*Trustees v. Greenough*,
105 U.S. 527 (1881)................................................................................................3

*Van Noppen v. Innerworkings, Inc.*,
No. 1:14-cv-01416, slip op. (N.D. Ill. Nov. 2, 2016) ...............................................7

*Will v. Gen. Dynamics Corp.*,
2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) ...........................................................3

*Williams v. Rohm & Haas Pension Plan*,
658 F.3d 629 (7th Cir. 2011) ..................................................................................3

*Wolff v. Cash 4 Titles*,
2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) ......................................................3, 4

*Wong v. Accretive Health, Inc.*,
2014 WL 7717579 (N.D. Ill. Apr. 30, 2014) ......................................................6, 13

*Wong v. Accretive Health, Inc.*,
773 F.3d 859 (7th Cir. 2014) ..................................................................................7

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
§78u-4(a)(3)(B)......................................................................................................12

## SECONDARY AUTHORITIES

Cornerstone Research,
*Securities Class Action Filings: 2020 Year in Review* (2021)...................................7

4860-1292-4698.v1

## I.  INTRODUCTION

Lead Counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), has obtained a Settlement[1] consisting of $15.5 million, plus interest earned thereon.  For the reasons set forth herein and in the accompanying Memorandum of Points and Authorities in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation ("Settlement Memorandum"), the Settlement is a very favorable result and was achieved through the skill and effective advocacy of Lead Counsel.  As compensation for its efforts in achieving this result, Lead Counsel seeks an award of attorneys' fees of 25% of the $15.5 million fund, plus expenses/charges ("expenses") incurred in the prosecution of the Litigation in the amount of $18,155.42, plus interest at the same rate and for the same period as that earned by the Settlement Fund.[2]  As detailed in §II.B.1. below, the 25% fee request, negotiated by Lead Plaintiff, is below the 28%-33% fees often awarded in comparable securities class action settlements.

The 25% fee requested is warranted in light of the contingent nature of counsel's representation, the efforts of counsel in obtaining this favorable result, and the risks faced in the prosecution and settlement of the Litigation.  Absent the Settlement, and assuming Lead Plaintiff prevailed on Defendants' pending motion to dismiss, the claims against Defendants could have continued for many years through fact discovery, expert discovery, summary judgment, trial, and likely appeals.  The Settlement provides Class Members with a substantial cash benefit now, rather than a potential recovery after several years of continued litigation, and eliminates the possibility of

---

[1]  All capitalized terms not otherwise defined herein have the meanings ascribed in the Amended Stipulation of Settlement dated January 24, 2022, ECF 133 (the "Stipulation").  Citations are omitted and emphasis is added unless otherwise noted.

[2]  Counsel that will be sharing in the fee award are Plaintiffs' Counsel on the operative Complaint (ECF 82; *see also* Stipulation, ¶1.25) as well as Johnson Fistel, LLP and Miller Law LLC, who together filed the initial complaint in this action (*see* ECF 1).  A copy of this memorandum and supporting materials will be available on the Settlement website for Class Members.

4860-1292-4698.v1

no recovery at all or of the costs of litigation diminishing the recovery. It is rare to obtain such a significant settlement prior to a ruling on a motion to dismiss and is reflective of counsel's experience, reputation, and skill in prosecuting securities class actions.

Lead Counsel undertook representation of the Class on a contingent fee basis and no payment has been made to date for its services or the litigation expenses it has incurred on behalf of the Class. Faced with complex issues, and opposed by experienced defense counsel, Lead Counsel nevertheless succeeded in securing a favorable result for the Class. Lead Counsel believes its reputation as a leader in this field, its diligent efforts, and its dedication to the interests of the Class substantially contributed to obtaining the Settlement. The requested fee is well within the range of percentages normally awarded in securities class actions in this Circuit, and is the appropriate method of compensating counsel. In addition, Lead Plaintiff was actively involved in the Litigation and has approved the requested fee. *See* accompanying Declaration of Michael Randick and Richard J. Sawhill in Support of Settlement and Award of Attorneys' Fees and Expenses ("Randick and Sawhill Decl."), ¶3.

For all the reasons set forth herein and in the accompanying declarations, Lead Counsel respectfully submits that the requested attorneys' fees and expenses are fair and reasonable and should be awarded by the Court.

## II.     AWARD OF ATTORNEYS' FEES

### A.     A Reasonable Percentage of the Fund Recovered Is the Appropriate Approach to Awarding Attorneys' Fees in Common Fund Cases

For its efforts in creating a common fund for the benefit of the Class, Lead Counsel seeks as attorneys' fees a reasonable percentage of the fund recovered for the Class. Both the Supreme Court and the Seventh Circuit have long recognized that attorneys who represent a class and aid in the creation of a settlement fund are entitled to compensation for legal services from the settlement fund.

4860-1292-4698.v1

Under this "equitable" or "common fund" doctrine established more than a century ago in *Trustees v. Greenough*, 105 U.S. 527, 528 (1881), attorneys who create a common fund for a class are entitled to an award of fees and expenses from that fund as compensation for their work. *See Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007).

While the "lodestar" method (multiplying reasonable hours by reasonable rates) to assess attorneys' fees is an additional method for assessing an appropriate fee award, courts have recognized it can create perverse incentives that reward inefficient staffing of cases, discourage early settlement talks, cause unnecessary delay in resolving disputes, and thereby increase the burden on the judicial system. *See, e.g.*, *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 721 (7th Cir. 2001) (stating the lodestar approach creates the "incentive to run up the billable hours"); *Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986) (noting in civil rights fee-shifting case the challenge of judicial review of attorney time because the "judge cannot readily see what legal work was reasonably necessary at the time" and that rewarding lawyers for hours billed can create a "conflict of interests").[3]

Thus, "[i]n a common fund class action settlement, the Seventh Circuit Court of Appeals uses a percentage of the relief obtained rather than a lodestar or other basis." *Bell v. Pension Comm. of ATH Holding Co., LLC*, 2019 WL 4193376, at *3, *5 (S.D. Ind. Sept. 4, 2019) (noting that while district courts have discretion on the appropriate method for a given case, "the use of a lodestar cross-check is no longer recommended in the Seventh Circuit"); *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 637 (7th Cir. 2011) (rejecting objector's appeal and declining to "disturb the district court's assessment of fees" on a percentage-of-the-fund basis); *Gaskill v. Gordon*, 160 F.3d

---

[3]   *See also, e.g.*, *Will v. Gen. Dynamics Corp.*, 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010) ("The use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive."); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) ("'Where success is a condition precedent to compensation, "hours of time expended" is a nebulous, highly variable standard, of limited significance.  One thousand plodding hours may be far less productive than one imaginative, brilliant hour.'").

4860-1292-4698.v1

361, 362 (7th Cir. 1998) (stating that "[w]hen a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund" and affirming award).

Consistent with this case law, judges in this District routinely award a reasonable percentage-of-the-fund as fees without any regard to lodestar. *See, e.g.*, *Silverman v. Motorola, Inc.*, 2012 WL 1597388, at *4 (N.D. Ill. May 7, 2012) (St. Eve, J.) (stating it was unnecessary to consider lodestar and citing cases), *aff'd*, 739 F.3d 956 (7th Cir. 2013) (affirming percentage award without any discussion of lodestar); *see also In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 80 F. Supp. 3d 838, 844, 849 (N.D. Ill. Feb. 20, 2015) (Dow, J.) (finding that the percentage method has "emerged as the favored method for calculating fees in common-fund cases in this district" and stating "the Court sees no utility in considering" counsel's submitted lodestar).

Accordingly, Lead Counsel requests attorneys' fees of 25% of the Settlement Amount.

**B.      The Requested Fee Is Reasonable and Appropriate**

The Supreme Court has emphasized that private securities actions provide a "'most effective weapon in the enforcement' of securities laws and are 'a necessary supplement to [SEC] action.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 318-19 (2007). It is well documented that large defense firms representing corporations attract talented lawyers who are very well compensated, and fee awards should serve to attract equally talented lawyers to take on the risks of contingent fee representation of plaintiffs. *See Silverman v. Motorola, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013); *Wolff*, 2012 WL 5290155, at *5 ("Mindful of the need to attract counsel of this high caliber, courts have recognized the importance of providing incentives to experienced counsel who take on complex litigation cases on a contingent fee basis so those cases can be prosecuted both efficiently and effectively."). In addition to providing just compensation, awards of attorneys' fees from a common fund serve to encourage skilled counsel to take on the risk of representing plaintiffs in class action cases on a contingent fee basis. *See, e.g.*, *Silverman*, 739 F.3d at 958 (approving fee

- 4 -

award and noting that "[t]he greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel").

The percentage-of-the-fund method is intended to mirror the private marketplace for negotiated contingent fee arrangements. *See Kirchoff*, 786 F.2d at 324 ("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee is the 'market rate.'"); *see also McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 816 (E.D. Wis. 2009) (stating "[t]he 'percentage of the fee' method is preferable" to the lodestar method "because it more closely replicates the contingency fee market rate for counsel's legal services").

Here, the requested 25% fee appropriately compensates Lead Counsel for the quality of services provided and the risks of obtaining no compensation at all. To date, no Class Member has objected to the fee, and it was negotiated by Lead Plaintiff. Lead Counsel respectfully requests that the 25% fee be approved.

### 1. The 25% Attorneys' Fee Request Is Consistent with, and Below, Fees Awarded in this District

The Seventh Circuit has held that, in deciding common fund cases, district courts should "'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *Taubenfeld v. Aon Corp.*, 415 F.3d 597, 599 (7th Cir. 2005); *Silverman*, 739 F.3d at 957, 958 (holding that attorneys' fees should "approximate the market rate" and that "[c]ontingent fees compensate lawyers for the risk of nonpayment"). Had this case been litigated on an individual rather than class basis, the customary fee arrangement would be in the range of 33-1/3% to 40% of the recovery. *See Kirchoff*, 786 F.2d at 323 (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled before trial). Moreover, courts in this District have recognized that in common fund cases, "an award of 33.3% of the settlement fund is

within the reasonable range." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 (N.D. Ill. 2011) (Dow, J.).

The percentage sought here, 25% of the $15.5 million Settlement Amount, is below this range and also below percentages awarded to Lead Counsel (Robbins Geller) in other securities class action cases in this District. *See, e.g.*, *Ronge v. Camping World Holdings, Inc.*, No. 1:18-cv-07030, slip op. at ¶4 (N.D. Ill. Aug. 5, 2020) (Pallmeyer, J.) (awarding Robbins Geller and co-counsel 30% on $12.5 million settlement);[4] *Sokolow v. LJM Funds Management, LTD*, No. 1:18-cv-01039, slip op. at ¶4 (N.D. Ill. Dec. 18, 2019) (Dow, J.) (awarding Robbins Geller and co-counsel 28% on $12.85 million settlement); *Bristol Cty. Ret. Sys. v. Allscripts Healthcare Sols., Inc.*, No. 1:12-cv-03297, slip op. at ¶4 (N.D. Ill. July 22, 2015) (Alonso, J.) (awarding Robbins Geller 33% on $9.75 million settlement); *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, 2014 WL 12767763, at \*1 (N.D. Ill. Aug. 5, 2014) (St. Eve, J.) (awarding Robbins Geller and co-counsel 30% on $60 million settlement); *Wong v. Accretive Health, Inc.*, 2014 WL 7717579, at \*1 (N.D. Ill. Apr. 30, 2014) (Coleman, J.) (awarding Robbins Geller and co-counsel 30% on $14 million settlement); *In re Spiegel, Inc. Sec. Litig.*, No. 1:02-cv-08946, slip op. at ¶3 (N.D. Ill. Mar. 2, 2007) (Pallmeyer, J.) (awarding Robbins Geller 30% on $17.5 million settlement).

The 25% fee request is also below the range of fees often awarded in this District to other law firms in securities and complex class actions. *See, e.g.*, *Rubinstein v. Gonzalez*, No. 1:14-cv-09465, slip op. at ¶1 (N.D. Ill. Oct. 22, 2019) (Dow, J.) (awarding 30% of $16.75 million securities settlement); *Dairy Farmers of Am.*, 80 F. Supp. 3d at 862 (awarding 33% of $46 million antitrust settlement); *Lowry v. RTI Surgical Holdings, Inc.*, No. 20-cv-01939, slip op. at ¶18 (N.D. Ill. Jan. 26, 2022) (Kennelly, J.) (awarding 30% fee on $10.5 million securities settlement); *Gupta v. Power Sols.*

---

[4]    Attached hereto as Exhibit A is an appendix of unreported authorities cited herein.

- 6 -

*Int'l, Inc.*, 2019 WL 2135914, at *1 (N.D. Ill. May 13, 2019) (Kendall, J.) (awarding 33-1/3% on $8.5 million securities settlement); *Van Noppen v. Innerworkings, Inc.*, No. 1:14-cv-01416, slip op. at ¶4 (N.D. Ill. Nov. 2, 2016) (Blakey, J.) (awarding 30% fee on $6.025 million securities settlement).[5]  Thus, Lead Counsel's request for fees of 25% of the total recovery is fair and reasonable and consistent with, if not below, prior fee awards in this District.

### 2. Lead Counsel Provided Quality Legal Services that Produced Excellent Benefits for the Class

In evaluating counsel's fee request, courts may consider the "quality of legal services rendered." *Taubenfeld*, 415 F.3d at 600; *see also Silverman*, 2012 WL 1597388, at *3 (noting that "[t]he representation that Class Counsel provided to the class was significant, both in terms of quality and quantity").  From the outset, Lead Counsel sought to obtain the best possible recovery for the Class.  Securities cases are well known to be complex and recovery is far from certain due to the heightened pleading standards, which has resulted in a significant dismissal rate.  *See, e.g.*, Cornerstone Research, *Securities Class Action Filings: 2020 Year in Review* (2021), at 18 (noting that for federal securities class actions, excluding mergers and acquisition actions, "[r]ecent annual dismissal rates have been closer to 50%").

---

[5]    The securities class action cases cited all awarded fees based on a percentage of the settlement amount. Recently, a court held that, under *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014), expenses and notice and administration costs should be deducted from the settlement amount and the fee awarded as a percentage of the remainder.  *See, e.g.*, *St. Lucie Fire Dist. Firefighters Pen. Tr. Fund v. Stericycle, Inc.*, No. 1:16-cv-07145, slip op. at 4 (N.D. Ill. May 19, 2020) (Wood, J.).  But *Redman* was a consumer case coupon settlement, and the Seventh Circuit has repeatedly noted concerns regarding assessing the actual recovery in coupon settlements because such cases can have a low claims rate and also because such settlements might provide for a reversion feature where any unclaimed funds revert to the defendants.  *See Redman*, 768 F.3d at 629-37; *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 708 (7th Cir. 2015).  In contrast, the Seventh Circuit has affirmed a percentage fee award in a securities class action based on the aggregate settlement, without deducting such expenses.  *See Silverman*, 739 F.3d 956 (affirming fee award of 27.5% of $200 million settlement); *see also Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014) (affirming final approval of settlement and noting that district court "awarded attorneys' fees of 30% of the [$14 million] settlement proceeds, or $4.2 million").

4860-1292-4698.v1

This case required a determined investigation and the skill to respond to a host of legal and factual defenses raised by Defendants. During the course of the Litigation, Lead Counsel spent over 1,600 hours of attorney and paraprofessional time investigating the claims, drafting the detailed Complaint, preparing an extensive brief in opposition to Defendants' motion to dismiss (followed by additional briefing regarding supplemental authority), and preparing for and participating in two mediation sessions that included the exchange of mediation statements and joint session discussions regarding the parties' respective positions on the claims and defenses, and damages. *See* accompanying Declaration of Frank A. Richter in Support of: (I) Lead Plaintiff's Motion for Final Approval of Class Action Settlement; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses, ¶6. During settlement negotiations, Lead Counsel demonstrated its willingness to continue to litigate the claims rather than accept a settlement that was not in the best interest of the Class. Notably, the case did not settle at the first mediation, but rather Lead Counsel pressed forward with litigation efforts.

Lead Counsel was opposed in this Litigation by counsel from Sidley Austin LLP, which has an excellent reputation for the defense of complex civil cases. In the face of this formidable opposition, Lead Counsel developed its case so as to persuade Defendants to settle the Litigation on terms favorable to the Class prior to the Court deciding Defendants' pending motion to dismiss, sparing the Class both the risk of an unfavorable outcome and the considerable costs of further litigation (*e.g.*, depositions, experts, etc.). Lead Counsel's skill, expertise, and excellent advocacy in representing the Class is reflected in this favorable result.

### 3. The Requested Attorneys' Fees Are Fair and Reasonable in Light of the Contingent Nature of the Representation

"Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic

- 8 -

counsel." *Silverman*, 739 F.3d at 958; *see also Taubenfeld*, 415 F.3d at 600 (stating courts should consider "the contingent nature of the case" and the fact "that lead counsel was taking on a significant degree of risk of nonpayment"). "All contingent fee class action cases involve some degree of risk for plaintiffs' counsel." *Schulte*, 805 F. Supp. 2d at 598. Lead Counsel undertook this Litigation on a contingent fee basis, assuming a significant risk that the Litigation would yield no recovery and leave them uncompensated. As in *Schulte*, "there was no certainty that Plaintiff would win, or that the case would settle; and if Plaintiff had lost, Class Counsel 'would receive no fees at all.'" 805 F. Supp. 2d at 597-98. Unlike counsel for defendants, who are paid an hourly rate and paid for their expenses on a regular (*e.g.*, monthly) basis, Lead Counsel had no such guarantee of payment, had to wait for any payment while the case was prosecuted, and had to incur unpaid expenses while the case was ongoing. While the outcome here was favorable, there was no guarantee it would be at the time counsel agreed to take the case.

Not only was there a risk of dismissal, but even if Lead Plaintiff successfully opposed Defendants' motion to dismiss, Lead Plaintiff still faced significant obstacles. Assuming Lead Plaintiff was able to overcome Defendants' motion for summary judgment after costly discovery efforts, it still would have faced risks in proving falsity, materiality, scienter, and loss causation before a jury. *See* Settlement Memorandum §IV.A.3. Moreover, even apart from proving liability, proving damages in securities cases is complex and requires expert testimony to establish the amount – and indeed the existence – of actual damages. *See id.* Here, the damages assessments of the parties' respective experts who would testify at trial would likely be polar opposites and the determination of the amount, if any, of damages suffered by the Class at trial would have turned into a "battle of the experts."

There are numerous examples where plaintiffs' counsel in contingent cases such as this, after the expenditure of significant time and expenses, have received no compensation. Securities cases

- 9 -

4860-1292-4698.v1

have been dismissed at the pleading stage, dismissed on summary judgment, lost at trial, and even reversed after plaintiffs prevailed at trial, as the law is complex and continually evolving. *See, e.g.*, *In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556, at \*1 (N.D. Cal. Nov. 27, 2007) (jury verdict for defendants after lengthy trial); *In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469, 471-73 (S.D.N.Y. 2010) (claims based on purchases on foreign exchanges eliminated by the "new 'transactional' rule" enunciated by the Supreme Court). In fact, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005).[6] Quite simply, "Defendants prevail outright in many securities suits." *Silverman*, 739 F.3d at 958.

Because the fee in this matter was entirely contingent, the only certainty was that there would be no fee without a successful result and that such a result would be realized only after considerable effort and after working without compensation. Notably, the case did not settle during the two mediation sessions, as Lead Counsel continued to negotiate toward a better result. It was not until the mediator issued a "mediator's proposal" following the second mediation session that the case settled. Lead Counsel committed its time and money to the vigorous and successful prosecution of the Litigation for the benefit of the Class. The contingent nature of counsel's representation strongly favors approval of the requested fee. *See, e.g.*, *Sutton*, 504 F.3d at 694 (reversing district court's reduced fee award and stating "[b]ecause the district court failed to provide for the risk of loss, the possibility exists that Counsel, whose only source of a fee was a contingent one, was undercompensated").

---

[6]    *See also, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (affirming judgment as a matter of law following jury verdict partially in plaintiffs' favor); *Robbins v. Koger Props. Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversal of jury verdict of $81 million).

4860-1292-4698.v1

### 4. The Stakes of the Litigation Favor a 25% Fee Award

The Court should also consider the "stakes of the case" in assessing a reasonable attorneys' fee. *Synthroid*, 264 F.3d at 721. As in other commercial class actions, the stakes here were high "given the size of the Class, the scale of the challenged activity, the complexity and costs of the legal proceedings, and the amount of money involved." *Schulte*, 805 F. Supp. 2d at 598.

Lead Counsel successfully obtained a favorable recovery at an early stage of the litigation, which is more beneficial to the Class than waiting several more years to obtain a recovery, not only because of the time value of money but also because the increased expenses of continued litigation could have reduced the recovery to the Class. As the litigation advances, the risks can also increase. Absent a successful outcome, Lead Counsel would not have been compensated for more than 1,600 hours of attorney and support staff time, and would have had to write off all of its litigation expenses. And, even if Lead Plaintiff prevailed at trial, Defendants would have the opportunity to appeal any judgment obtained, possibly delaying a favorable resolution for years. *See Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (securities action prosecuted by Robbins Geller that was filed in 2002, resulted in jury verdict for plaintiffs in 2009, remanded after appeal and settled in 2016). Lead Counsel undertook this case fully prepared to litigate against these obstacles.

### 5. The Reaction of the Class Supports the Requested Award

Pursuant to this Court's January 27, 2022 Preliminary Approval Order (ECF 135), more than 22,000 copies of the Notice have been mailed to potential Class Members and nominees. Class Members were informed in the Notice that Lead Counsel would apply for attorneys' fees not to exceed 25% of the Settlement Amount, plus expenses not to exceed $25,000, plus interest earned on both amounts. Class Members were also advised of their right to object to Lead Counsel's fee and expense request and the procedure for doing so. While the deadline to file objections – May 16,

- 11 -

2022 – has not yet passed, to date, no objection to any aspect of the Settlement, including the fee and expense request, has been received. Lead Counsel will address any objections received in its reply brief to be filed on May 27, 2022.

### 6.    Lead Plaintiff Approved the 25% Fee Request

Lead Plaintiff, who worked with counsel throughout the Litigation, has negotiated and approved the 25% fee request sought here. *See* Randick and Sawhill Decl., ¶5. Unlike consumer and other class action cases, securities fraud cases have unique procedures for appointing as the lead plaintiff the class member with the largest financial interest. *See Silverman*, 739 F.3d at 959 (stating that it is "a premise of several rules in the Private Securities Litigation Reform Act" that investors with a large stake in the settlement fund, in "looking out for themselves, help to protect the interests of class members with smaller stakes"); 15 U.S.C. §78u-4(a)(3)(B). The Seventh Circuit has also considered the makeup of the class in reviewing fee awards and considering the lack of objection. *See, e.g.*, *Synthroid*, 264 F.3d at 717 (noting that "[u]nlike members of the consumer class, TPPs [third party payers] are sophisticated purchasers of pharmaceuticals" and "[t]heir consent to this deal shows that a larger judgment was unlikely"); *Silverman*, 739 F.3d at 959 (noting lack of objection by "institutional investors [that] have in-house counsel with fiduciary duties to protect the beneficiaries" and high fee awards could be "worth a complaint to the district judge if the lawyers' cut seems too high"). That Lead Plaintiff, a sophisticated institutional investor, approved Lead Counsel's fee request also weighs in favor of its reasonableness.

Accordingly, all of the factors discussed above support the fee award requested by Lead Counsel, and the Court should grant counsel's application.

- 12 -

4860-1292-4698.v1

### III.   LEAD COUNSEL'S EXPENSES ARE REASONABLE

In addition to an award of attorneys' fees, attorneys who create a common fund for the benefit of a class are entitled to payment of reasonable litigation expenses from the fund. *Synthroid*, 264 F.3d at 722; *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992).

Lead Counsel is requesting payment of expenses in the amount of $18,155.42. As set forth in the accompanying counsel declarations, these expenses were reasonably incurred in the prosecution of this Litigation. *See* Declaration of James E. Barz Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses, ¶¶6, 7; Declaration of Corey D. Holzer Filed on Behalf of Holzer & Holzer, LLC in Support of Application for Award of Attorneys' Fees and Expenses, ¶¶5, 6; Declaration of Frank J. Johnson Filed on Behalf of Johnson Fistel, LLP in Support of Application for Award of Attorneys' Fees and Expenses, ¶5; Declaration of Marvin A. Miller Filed on Behalf of Miller Law LLC in Support of Application for Award of Attorneys' Fees and Expenses, ¶¶5, 6; *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *4 (S.D. Ill. July 17, 2015) ("It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses, which includes such things as expert witness costs; computerized research; court reporters; travel expense; copy, phone and facsimile expenses and mediation.").[7]

---

[7]   With regard to these expenses, judges in this District have split on whether electronic legal research expenses should be awarded or should be considered part of the attorneys' fee award. *Compare Silverman*, 2012 WL 1597388, at *4 (declining to approve legal research expenses) *with George v. Kraft Foods Global, Inc.*, 2012 WL 13089487, at *4 (N.D. Ill. June 26, 2012) (allowing recovery of electronic legal research expenses). Recent cases appear to have continued to approve electronic legal research expenses. *See Wong v. Accretive Health, Inc.*, No. 1:12-cv-03102, Transcript of Proceedings, ECF 85 at 4-5 (N.D. Ill. Apr. 30, 2014) (discussing split); *Accretive*, 2014 WL 7717579 (awarding legal research expenses); *Allscripts*, No. 1:12-cv-03297, ECF 116 at 14-15 (N.D. Ill. June 17, 2015) (memorandum discussing split); *Allscripts*, slip op. at ¶4 (awarding legal research expenses); *Camping World*, No. 1:18-cv-07030, ECF 140 at 13 n.7 (N.D. Ill. July 1, 2020) (memorandum noting split); *Camping World*, slip op. at ¶4 (awarding expenses). *But see Stericycle*, slip op. at 4 (declining to approve legal research expenses). Allowing recovery of these expenses separate from the fee award is consistent with the Seventh Circuit's directive that fee awards should mimic the market. *See, e.g., Cont'l Ill.*, 962 F.2d at 570 ("[T]he paying, arms' length market reimburses lawyers' LEXIS and

- 13 -

Thus, Lead Counsel respectfully requests payment of these reasonable litigation expenses from the Settlement Fund.

## IV.    CONCLUSION

For all the reasons stated herein, in the Settlement Memorandum, and in the accompanying declarations, Lead Counsel submits that the Court should approve the fee and expense application and enter an order awarding Lead Counsel 25% of the Settlement Amount, plus payment of $18,155.42 in expenses, plus the interest earned on both amounts at the same rate and for the same period as that earned on that portion of the Settlement Fund until paid.

DATED:  May 2, 2022

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
JAMES E. BARZ (IL Bar # 6255605)
FRANK A. RICHTER (IL Bar # 6310011)
CAMERAN M. GILLIAM (IL Bar # 6332723)


_s/ Frank A. Richter_
FRANK A. RICHTER

200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  312/674-4674
312/674-4676 (fax)
jbarz@rgrdlaw.com
frichter@rgrdlaw.com
cgilliam@rgrdlaw.com

---

WESTLAW expenses.").  In this case, legal research expenses amount to $2,068.77 of the total $18,155.42 in expenses for which reimbursement is being sought.

- 14 -

4860-1292-4698.v1

ROBBINS GELLER RUDMAN
  & DOWD LLP
THEODORE J. PINTAR
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
tedp@rgrdlaw.com

Lead Counsel for Lead Plaintiff

HESSIAN & McKASY P.A.
WILLIAM A. CUMMINGS
3700 RBC Plaza
60 South 6th Street
Minneapolis, MN  55402
Telephone:  612/746-5770
612/746-5755 (fax)

Additional Counsel for Lead Plaintiff

HOLZER & HOLZER, LLC
COREY D. HOLZER
211 Perimeter Center Parkway, Suite 1010
Atlanta, GA  30346
Telephone:  770/392-0090
770/392-0029 (fax)
cholzer@holzerlaw.com

Counsel for named Plaintiff Eugene Klabak

- 15 -

4860-1292-4698.v1

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on May 2, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ FRANK A. RICHTER
FRANK A. RICHTER

ROBBINS GELLER RUDMAN
    & DOWD LLP
200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  312/674-4674
312/674-4676 (fax)

Email:  frichter@rgrdlaw.com

# Mailing Information for a Case 1:19-cv-01735 Iron Workers Local No. 25 Pension Fund, et al., v. Diplomat Pharmacy, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **James E Barz**
  jbarz@rgrdlaw.com,cbarrett@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **James Wallace Ducayet**
  jducayet@sidley.com,james-ducayet-9115@ecf.pacerpro.com,efilingnotice@sidley.com

- **Lori Ann Fanning**
  LFanning@MillerLawLLC.com,MMiller@MillerLawLLC.com,ajewell@millerlawllc.com,drobinson@millerlawllc.com,JRamirez@millerlawllc.com

- **Cameran Gilliam**
  cgilliam@rgrdlaw.com

- **Matthew Todd Hurst**
  mhurst@heffnerhurst.com,mheffner@heffnerhurst.com

- **Carl V. Malmstrom**
  malmstrom@whafh.com

- **Marvin Alan Miller**
  Mmiller@millerlawllc.com,ajewell@millerlawllc.com,LFanning@millerlawllc.com,drobinson@millerlawlllc.com,JRamirez@millerlawllc.com

- **Danielle S. Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Theodore J. Pintar**
  tedp@rgrdlaw.com

- **Frank Anthony Richter**
  frichter@rgrdlaw.com,E_File_SD@rgrdlaw.com,CReis@ecf.courtdrive.com,creis@rgrdlaw.com

- **Andrew Flynn Rodheim**
  arodheim@sidley.com,efilingnotice@sidley.com,andy-rodheim-4196@ecf.pacerpro.com

- **Nilofer Ibrahim Umar**
  numar@sidley.com,efilingnotice@sidley.com,nilofer-umar-6698@ecf.pacerpro.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)